BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE CASH SWEEP LITIGATION, | ) MDL Docket No.<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR TRANSFER AND
CONSOLIDATION PURSUANT TO 28 U.S.C. §1407

1

Pursuant to Rule 6.2 of the U.S. Judicial Panel on Multidistrict Litigation ("JPML" or the "Panel") Rules of Procedure, Plaintiffs Safron Capital Corp. and Brickman Investments Inc. ("Plaintiffs"), by and through their undersigned counsel, submit this brief in support of their motion to transfer several related actions to the United States District Court for the Southern District of New York ("Southern District of New York") for coordinated or consolidated pretrial proceedings. Plaintiffs respectfully request that pursuant to 28 U.S.C. §1407 the Panel transfer all related actions to the Southern District of New York because the Southern District of New York is the most convenient and appropriate forum to conduct this litigation.

## BACKGROUND

There are currently 21 related class action lawsuits ("Related Actions") pending in eight jurisdictions against one or more common defendants alleging that the defendants unlawfully used customer cash to generate revenue while paying unreasonably low, below-market interest rates to customers. *See* Schedule of Related Actions, attached as Exhibit A.

Defendants in the Related Actions are financial services companies, such as banks and brokerage firms, who offer "cash sweep" programs to their customers. Cash sweep programs automatically "sweep" uninvested customer cash balances into interest-bearing deposit accounts at a network of banks. Cash sweep deposits are a significant capital source for funding current and new business, including lending activities and investments. Because paying customers lower interest rates increases profitability, these cash sweep programs present a conflict of interest.

Plaintiffs in the Related Actions allege that one or more defendants engaged in the same or substantially similar misconduct related to the cash sweep programs – namely, defendants unlawfully enriched themselves by failing to pay or secure reasonable cash sweep interest rates on their customers' cash balances. The substantial legal and factual similarities across the Related Actions, as set forth more fully below, warrant transfer to a single multidistrict litigation court for

coordinated or consolidated proceedings pursuant to 28 U.S.C. §1407. This will streamline discovery, pretrial motions (including class certification), and administrative management, and will also minimize any waste, confusion, and delay that may arise as a result of prosecuting each of the Related Actions, and any subsequently filed actions, separately.

Plaintiffs submit that the Southern District of New York is the most suitable forum for transfer and consolidation or coordination of the Related Actions for the following reasons:

- The Southern District of New York has a well-established track record of handling complex cases, including those that, like the Related Actions, involve allegations of violations of fiduciary duties, contractual obligations against financial institutions, and claims brought under the U.S. securities laws and/or the Racketeer Influenced and Corrupt Organizations Act;

- All defendants are either headquartered or have major business operations and contacts in or near the Southern District of New York;

- Nine of the 21 Related Actions are currently pending in the Southern District of New York, while the rest are dispersed across seven other districts, including the District of New Jersey and the Western District of Pennsylvania;

- The Southern District of New York is geographically accessible and convenient for all parties;

- Relevant documents and key witnesses are more likely to be found in and around the Southern District of New York than in more distant, less accessible jurisdictions;

- The first of the Related Actions was filed in the Southern District of New York;

- Several of the defendants' customer cash sweep agreements at issue are governed by New York law, such as the customer agreements of defendants Wells Fargo, Merrill Lynch, E*Trade, Morgan Stanley, JPMorgan Chase, Bank of America, and UBS;

- Several Related Actions bring New York state law claims, such as Related Actions against Wells Fargo, Merrill Lynch, Morgan Stanley, UBS, and JPMorgan Defendants;

- Several law firms currently representing plaintiffs in the Related Actions have offices in or near New York, such as Robbins Geller Rudman & Dowd LLP, Bernstein Litowitz Berger & Grossmann LLP, Buzin Law, P.C., Simmons Hanly

Conroy LLC, and Wolf Popper LLP, while the others routinely file law suits in and/or appear before the Southern District of New York, and all law firms currently representing the defendants have offices in New York.

## ARGUMENT

### I. The Related Actions Should Be Transferred to the Southern District of New York and Consolidated or Coordinated for Pretrial Proceedings

The Related Actions should be transferred to the Southern District of New York for consolidated or coordinated pretrial proceedings because they share the same common core of factual and legal issues involving defendants' use of cash sweep programs to generate massive revenue by paying customers unreasonably low interest rates. Under 28 U.S.C. §1407(a), the Panel may transfer and consolidate cases that meet three requirements: (1) the cases "involv[e] one or more common questions of fact;" (2) transfer and consolidation or coordination will further "the convenience of parties and witnesses"; and (3) transfer and consolidation or coordination "will promote the just and efficient conduct of [the] actions." The Related Actions meet each of these requirements.

#### A. The Related Actions Involve Common Questions of Fact

Section 1407(a) requires one or more common questions of fact for centralization. . This threshold requirement is satisfied where, as here, two or more complaints assert consistent core factual allegations against similar defendants arising from similar transactions and events. *See, e.g.*, *In re UnumProvident Corp. Sec., Derivative & "ERISA" Litig.*, 280 F. Supp. 2d 1377, 1379 (J.P.M.L. 2003) (finding centralization appropriate where "all actions [could] be expected to focus on a significant number of common events, defendants, and/or witnesses" and contain consistent "core factual allegations"). The focus is not on "strict identity of issues and parties but rather on the existence of one or more common questions of fact." *In re Japanese Elec. Prods. Antitrust Litig.*, 388 F. Supp. 565, 567 (J.P.M.L. 1975). *See, e.g.*, *In re Treasury Sec. Auction Antitrust Litig.*, 148 F. Supp. 3d 1360, 1362 (J.P.M.L. 2015) (centralizing actions against several banks,

- 3 -

including Merrill Lynch, Pierce, Fenner & Smith Inc. ("Merrill Lynch"), Morgan Stanley & Co. LLC ("Morgan Stanley"), J.P. Morgan Securities LLC ("J.P. Morgan"), UBS Securities LLC ("UBS"), and Bank of America Corp. ("Bank of America")); *In re London Silver Fixing, Ltd., Antitrust Litig.*, 52 F. Supp. 3d 1381, 1381 (J.P.M.L. 2014) (centralizing actions against several defendant banks, including HSBC Bank PLC ("HSBC"), Deutsche Bank AG ("Deutsche Bank"), and Scotiabank).

Each of the Related Actions share a common core of operative factual allegations based on defendants' failure to pay or secure reasonable interest rates on their cash sweep program customers' cash balances in order to maximize defendants' financial gain from the sweep programs. As such, the Related Actions raise many common factual and legal questions, including:

- whether defendants paid unreasonably low interest rates to cash sweep program customers;

- whether defendants and their affiliates increased their financial gains through the payment of unreasonably low interest rates to cash sweep program customers;

- whether defendants made material misstatements and omitted material facts regarding the cash sweep programs;

- whether defendants violated their contractual obligations, fiduciary duties, or other laws in connection with their establishment and operation of cash sweep programs;

- whether the proposed classes in the Related Actions should be certified under the Federal Rules of Civil Procedure;

- whether defendants' establishment and operation of the cash sweep programs caused injury to class members; and

- the amount of damages sustained by class members and the scope of relief available to them.

These common allegations and questions merit centralization of the Related Actions for the sake of efficiency and to avoid inconsistent rulings. *In re Insulin Pricing Litig.*, 709 F. Supp. 3d 1384,

1389 (J.P.M.L. 2023) ("We . . . find that transfer under 28 U.S.C. §1407 will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation.").

That some plaintiffs might raise additional or different types of legal claims does not bar centralization. As this Panel has explained,

> Transfer to a single district under Section 1407 . . . has the salutary effect of placing all related actions before one court which can formulate a pretrial program that: 1) allows pretrial proceedings with respect to any non-common issues to proceed concurrently with pretrial proceedings on common issues; and 2) ensures that pretrial proceedings will be conducted in a streamlined manner leading to the just and expeditious resolution of all actions to the overall benefit of the parties.

*In re Lehman Brothers Holdings, Inc., Sec. & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 598 F. Supp. 2d 1362, 1364 (J.P.M.L. 2009) (citation omitted). Indeed, a "transferee court can employ any number of pretrial techniques – such as establishing separate discovery and/or motion tracks – to efficiently manage this litigation." *Id.*; *see also In re Janus Mut. Funds Inv. Litig.*, 310 F. Supp. 2d 1359 (J.P.M.L. 2004) (same). In short, the Southern District of New York is equipped to handle a small set of unique legal claims while streamlining the resolution of the common allegations amongst the Related Actions.

### B. Centralization Will Further the Convenience of the Parties and Witnesses

Centralization of the Related Actions in the Southern District of New York will also "serve the convenience of the parties and witnesses" by saving the parties from prosecuting and defending competing and overlapping class actions in multiple federal district courts across the country. 28 U.S.C. § 1407(a). As this Panel has held, the convenience of the parties and witnesses is furthered by avoiding duplicative discovery. *See In re Pilot Flying J Fuel Rebate Contract Litig (No. II)*, 11 F. Supp. 3d 1351, 1352 (J.P.M.L. 2014) ("Centralization will avoid repetitive depositions . . . and duplicative document discovery regarding the alleged scheme."); *In re Multidistrict Litig. Involving Banking Agreements with Stirling Homex Corp.*, 388 F. Supp. 572, 573 (J.P.M.L. 1975)

(transferring to the Southern District of New York "in order to prevent unnecessary duplication of discovery").

Given that each of the Related Actions arises from a common core of factual and legal issues involving the payment of unreasonably low interest rates to customers enrolled in cash sweep programs, counsel in all of the Related Actions will seek the same essential testimony, documents, and other information from defendants and third parties, including: (1) internal communications regarding the design, implementation, and oversight of the cash sweep programs; (2) documents detailing the policies and procedures for "sweeping" idle customer cash, including any consent forms and agreements presented to customers; (3) agreements and correspondence related to the banks to which customer cash was swept; (4) documents illustrating the structure of cash sweep deposit accounts and how these accounts were maintained; (5) cash sweep program marketing materials, disclosures, and related communications with customers; (6) financial records interest income and revenue generated from the cash sweep programs; and (7) testimony from disclosure experts, fiduciary experts, regulatory experts, finance experts – all which will be the same across the cases. Without consolidation, Plaintiffs would be required to issue, and defendants would be required to respond to, multiple and duplicative discovery requests seeking the same information, and key witnesses would be required to sit for numerous, and duplicative, depositions, resulting in increased costs and burdens for everyone involved. Therefore, transfer and centralization of the Related Actions for consolidated or coordinated pretrial proceedings is appropriate to accommodate the convenience of parties and witnesses.

### C. Centralization Will Promote the Just and Efficient Conduct of the Related Actions.

Transfer of the Related Actions for consolidated or coordinated pretrial proceedings will also "promote the just and efficient conduct of [the] actions." 28 U.S.C. §1407(a). The Related

Actions will involve many of the same pretrial issues, such as the nature and scope of discovery, the sufficiency of the allegations, and class determinations. If eight (or more) districts were required to resolve these issues in separate pretrial proceedings, valuable judicial resources would be wasted, and the parties face a substantial likelihood of conflicting and inconsistent rulings. *See, e.g.*, *In re Republic Nat'l-Realty Equities Sec. Litig.*, 382 F. Supp. 1403, 1406 (J.P.M.L. 1974) (transferring to the Southern District of New York, finding it "necessary to have all class action questions resolved by a single judge in order to eliminate the possibility of conflicting class determinations").

The risk of conflicting and inconsistent pretrial rulings is exceptionally high because the Related Actions are almost exclusively putative class actions. *See In re Plumbing Fixture Cases*, 298 F. Supp. 484, 493 (J.P.M.L. 1968) ("It is in the field of class action determinations in related multidistrict civil actions that the potential for conflicting, disorderly, chaotic judicial action is the greatest."). Indeed, "in related multidistrict litigation coming to the attention of the Panel, separate district courts have been requested to make conflicting class action determinations." *Id.* And it is likely that the number of Related Actions will only continue to increase given that 19 of the 21 Related Actions were filed within the last year in eight different jurisdictions. But, as this Panel has noted, "[i]t is certain . . . that if these conflicting requests are determined under Section 1407 in a transferee court, the information and means for fair, speedy and economical coordinated determinations will exist." *Id.* Ordering transfer and consolidation at this early stage will, therefore, allow the Related Actions to proceed in a coordinated and efficient manner. *See also In re IDT Corp. Calling Card Terms Litig.*, 278 F. Supp. 2d 1381, 1381 (J.P.M.L. 2003) (centralizing multidistrict litigation that involved "overlapping putative class actions").

**II.     The Southern District of New York Is by Far the Most Appropriate Venue for This Litigation**

Plaintiffs respectfully submit that the Southern District of New York is, by far, the most appropriate forum for this action. In choosing an appropriate transferee forum, this Panel often considers (1) "where the largest number of cases is pending, [(2)] where discovery has occurred, [(3)] where cases have progressed furthest, [(4)] the site of the occurrence of the common facts, [(5)] where the cost and inconvenience will be minimized, and [(6)] the experience, skill, and caseloads of available judges." *Manual for Complex Litig. (Fourth)* §20.131 (2004); *see also id.* §22.33 ("[T]he Panel looks for an available and convenient transfer forum, usually one that (1) is not overtaxed with other MDL cases, (2) has a related action pending on its docket, (3) has a judge with some degree of expertise in handling the issues presented, and (4) is convenient to the parties."). The Southern District of New York satisfies each of these factors.

**A.     The Southern District of New York Has the Largest Number of Cases Pending**

Nine of the 21 Related Actions are pending in the Southern District of New York, far more than any other district. And three other Related Actions are in the same time zone as the Southern District of New York (the Eastern Time Zone). As such, 12 of the Related Actions are already venued in or near the Southern District of New York, which heavily favors transfer and consolidation of all the Related Actions there. *See, e.g.*, *In re Customs & Tax Admin. of the Kingdom of Denmark (SKAT) Tax Refund Scheme Litig.*, 338 F. Supp. 3d 1347, 1349 (J.P.M.L. 2018) ("The majority of actions are concentrated ***in or near this district***, and it is conveniently located for this nationwide litigation.") (emphasis added); *In re PersonalWeb Techs., LLC, & Level 3 Commc'ns, LLC, Pat. Litig.*, 340 F. Supp. 3d 1373, 1374-75 (J.P.M.L. 2018) ("The majority of the cases are pending in this district, and numerous defendants are based there.").

### B. Discovery Has Occurred, and Cases Have Progressed Furthest, in the Southern District of New York

The first of the Related Actions was filed in the Southern District of New York in 2019. Discovery in that case has occurred, and the parties have filed a briefing schedule for summary judgment.[1]  *Valelly v. Merrill Lynch, Pierce, Fenner & Inc.*, No. 1:19-cv-07998 (S.D.N.Y.), ECF 262.  The second of the Related Actions was also filed in the Southern District of New York in 2023, and discovery is currently underway in that case. *See McCrary v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, No. 1:23-cv-10768 (S.D.N.Y.).  The remaining Related Actions were filed in 2024, and mostly in the second half of the year.  That discovery has occurred and multiple cases have progressed the furthest in the Southern District of New York heavily favors transfer to that district.  *See In re L'Oréal Wrinkle Cream Mktg. & Sales Pracs. Litig.*, 908 F. Supp. 2d 1381, 1381 (J.P.M.L. 2012) (noting that the district "where the first-filed action is pending, is an appropriate transferee district" when the litigation is "slightly more procedurally advanced"); *see also In re Refined Petroleum Prods. Antitrust Litig.*, 528 F. Supp. 2d 1365, 1367 (J.P.M.L. 2007) (transferring to the district where "[t]he action pending there is one of the earliest filed and most advanced").

### C. The Southern District of New York Is the Site of the Occurrence of Common Facts and Where Cost and Inconvenience Will Be Minimized

The center of gravity is unmistakably in the Southern District of New York.  This multidistrict litigation involves alleged misconduct by multinational banks and major financial services companies operating in or near New York, which is the largest financial hub in the world. All defendants have either their headquarters or significant offices in New York.  *See London*

---

[1] The case, however, is not a class action.  Therefore, although advanced, it will not impeded administration of the putative class actions.

*Silver Fixing*, 52 F. Supp. 3d at 1381 (selecting Southern District of New York because several defendant banks, including HSBC, Deutsche Bank, and Scotiabank, "all have corporate offices in the district").

Indeed, the headquarters for the majority of defendants are geographically closer to the Southern District of New York courthouse than any courthouse in the other Districts where the Related Actions are filed.[2] Many of the attorneys, too, hail from New York law offices. In fact, as of October 30, 2024, every single defense counsel that has appeared in the Related Actions is affiliated with law firms that have offices in New York.[3] That number is likely to increase, too, as counsel has not appeared in every pending action yet and as new tag-along actions are filed.

What's more, many of the defendants' cash sweep agreements – even those in cases filed outside of New York – are governed by New York state law.[4] New York is, therefore, the locus

---

[2] New York, NY (Merrill Lynch, Morgan Stanley, J.P. Morgan, UBS); Minneapolis, MN (Ameriprise Financial); Pittsburgh, PA (PNC Investments); Boston, MA (National Financial Services, LLC); Fort Mill, SC (LPL Financial LLC); Charlotte, NC (Bank of America); Arlington, VA (E*TRADE Securities); St. Petersburg, FL (Raymond James).

[3] Davis Polk & Wardwell LLP; Blank Rome LLP; Fried, Frank, Harris, Shriver & Jacobson LLP; O'Melveny & Myers LLP; White & Case LLP; Katten Muchin Rosenman LLP; Jones Day; Dorsey & Whitney LLP; Marino Tortorella & Boyle, PC; Foley & Lardner, LLP; Faegre Drinker Biddle & Reath LLP; Buchanan Ingersoll & Rooney, PC; Gibson, Dunn and Crutcher LLP; Morgan Lewis and Bockius LLP.

[4] *See, e.g.*, *Safron Capital Corp. v. Bank of America Corp. et al.*, No. 1:24-cv-07743 (S.D.N.Y.), ECF 1; *Burmin v. E*Trade Securities LLC et al.*, No. 2:24-cv-00603 (D.N.J.), ECF 1; *Bodea v. JPMorgan Chase & Co. et al.*, No. 1:24-cv-06404 (S.D.N.Y.), ECF 1; *Canales v. JPMorgan Chase & Co. et al.*, No. 5:24-cv-02018 (C.D. Cal.), ECF 1; *McCrary v. Merrill Lynch, Pierce, Fenner & Smith Inc. et al.*, No. 1:23-cv-10768 (S.D.N.Y.), ECF 1; *Estate of Sherlip v. Morgan Stanley et al.*, No. 1:24-cv-04571 (S.D.N.Y.), ECF 1; *Safron Capital Corp. v. Morgan Stanley et al.*, No. 1:24-cv-07750 (S.D.N.Y.), ECF 1; *Goldsmith v. UBS Financial Services Inc.*, No. 1:24-cv-06354 (S.D.N.Y.), ECF 1; *Davitt v. UBS Financial Services Inc.*, No. 1:24-cv-06692 (S.D.N.Y.), ECF 1; *Bujold v. Wells Fargo & Co. et al.*, No. 3:24-cv-04616 (N.D. Cal.), ECF 1; *Nadolny v. Wells Fargo & Co. et al.*, No. 3:24-cv-04633 (N.D. Cal.), ECF 1; *Varady v. Wells Fargo & Co. et al.*, No. 3:24-cv-04917 (N.D. Cal.), ECF 1; *Cobb v. Wells Fargo & Co. et al.*, No. 3:24-cv-06696 (N.D. Cal.), ECF 1; *Brickman Investments Inc. v. Wells Fargo & Co. et al.*, No. 1:24-cv-07751 (S.D.N.Y.), ECF 1. For cases that rely on cash sweep agreements governed by New York law, but that do not explicitly state so in the complaint, see *Valelly v. Merrill Lynch, Pierce, Fenner & Smith Inc. et al.*, No. 1:19-cv-07998 (S.D.N.Y.); *Chakravarthy v. Wells Fargo & Co. et al.*, No. 2:24-cv-08831 (C.D. Cal.).

of common facts, key events, and witnesses. None of the other fora in which the Related Actions are pending possess a comparable evidentiary nexus or relevant business practice. *In re Credit Default Swaps Antitrust Litig.*, 978 F. Supp. 2d 1374, 1375 (J.P.M.L. 2013) (selecting the Southern District of New York because the "district has a strong connection to this litigation, inasmuch as most defendants are based there"); *In re Mun. Derivatives Antitrust Litig.*, 560 F. Supp. 2d 1386, 1387 (J.P.M.L. 2008) (transferring to the Southern District of New York in part because "relevant documents and witnesses are likely to be found there"); *In re Invs. Funding Corp. of N.Y. Sec. Litig.*, 437 F. Supp. 1199, 1203 (J.P.M.L. 1977) (selecting the Southern District of New York because defendants were "headquartered within that district and therefore many of the relevant documents and witnesses are located in the New York vicinity"); *In re Samsung Customer Data Sec. Breach Litig.*, 655 F. Supp. 3d 1368, 1369 (J.P.M.L. 2023) (transferring to the district where the defendant was headquartered, "where common witnesses and other evidence likely will be found").

New York State is also a significant air, rail, and road hub, making it an easily accessible location for all parties, witnesses, and counsel. Cost and inconvenience would be minimal, as the Southern District of New York has the infrastructure to accommodate any out-of-town parties, lawyers, and witnesses. All parties would have easy access to the Southern District of New York through multiple international airports, and New York has an extensive public transportation system and many adequate and affordable hotel rooms near the courthouse.

Notably, New York City's JFK International Airport is among the most, if not the most, convenient U.S. airport for European-based defendant banks.[5] *See In re Publ'n Paper Antitrust*

---

[5] As of October 22, 2024, UBS is the only European Defendant in the Related Actions. Although its global headquarters is in Zurich, Switzerland, it maintains its U.S. headquarters in New York and New Jersey.

*Litig.*, 346 F. Supp. 2d 1370, 1372 (J.P.M.L. 2004) (observing that the selected "district is a geographically convenient location, given the location of principal defendants and potential defendants and witnesses in the eastern part of the United States and in Europe"). And New York offers a well-developed support system for legal services and ample office space. *See In re WorldCom, Inc. Sec. & "ERISA" Litig.*, 226 F. Supp. 2d 1352, 1355 (J.P.M.L. 2002) (transferring to the Southern District of New York because multiparty litigation "will benefit from centralization in a major metropolitan center that is well served by major airlines, provides ample hotel and office accommodations, and offers a well developed support system for legal services"). These facts make the Southern District of New York the most appropriate forum to host this multidistrict litigation. *See In re Merrill Lynch & Co., Inc., Rsch. Reps. Sec. Litig.*, 223 F. Supp. 2d 1388, 1390 (J.P.M.L. 2002) (noting that the Southern District of New York "i) is conveniently located for many parties and witnesses, and ii) possesses the necessary resources to be able to devote the substantial time and effort to pretrial matters that [a] complex docket is likely to require").

      **D.**      **The Experience, Skill, and Caseloads of Available Judges Favors the Southern District of New York**

The Southern District of New York additionally has particular familiarity with and proven expertise in litigation involving large-scale corporate and financial matters. In evaluating a potential transferee forum, the Panel assesses the forum's resources and considers whether the forum has "relatively favorable caseload statistics." *In re Xybernaut Corp. Sec. Litig.*, 403 F. Supp. 2d 1354, 1355 (J.P.M.L. 2005). The Southern District of New York satisfies this important criterion, and the Panel can reasonably expect the Related Actions to move promptly and efficiently through the pretrial process in the Southern District of New York.

Another factor the Panel considers is the potential transferee forum's experience in managing multidistrict litigation. *See, e.g.*, *Janus*, 310 F. Supp. 2d at 1361 ("[W]e have searched

for a transferee district with the capacity and experience to steer this litigation on a prudent course.") Recognizing its skill and efficiency in handling such matters, the Panel has transferred numerous complex cases, and in particular those involving national banks, to the Southern District of New York. *See, e.g.*, *In re Colocotronis Tanker Sec. Litig.*, 420 F. Supp. 998 (J.P.M.L. 1976); *In re Invs. Funding Corp.*, 437 F. Supp. at 1199; *In re N.Y.C. Mun. Sec. Litig.*, 439 F. Supp. 267 (J.P.M.L. 1977); *In re Merrill Lynch*, 223 F. Supp. 2d at 1388; *In re Bank of N.Y. Mellon Corp. Foreign Exch. Transactions Litig.*, 857 F. Supp. 2d 1371 (J.P.M.L. 2012).

This Panel has also afforded significant consideration to a transferee judge's record of efficient case management and available time to navigate a multidistrict litigation. *See, e.g.*, *In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig.*, 990 F. Supp. 834, 836 (J.P.M.L. 1998) (noting the "obvious need for a transferee judge with the ability and temperament to manage this large and growing litigation in an efficient and expeditious manner"). The Southern District of New York has an abundance of qualified transferee judges, further making the Southern District of New York an appropriate transferee forum for the Related Actions.

For example, Judge Caproni has managed countless complex cases from the heart of the world's finance capital. She was nominated to the bench by President Obama and has served as District Judge for 11 years. In that time, Judge Caproni has gained experience as a multidistrict litigation transferee judge. *See In re Commodity Exchange, Inc., Gold Futures & Options Trading Litig.*, MDL No. 2548 (S.D.N.Y.), ECF 112 ("[Judge Caproni's] impressive résumé leaves us with no doubt that she is more than capable of handling this litigation."); *In re London Silver Fixing, Ltd., Antitrust Litig.*, MDL No. 2573 (S.D.N.Y.). Judge Caproni's practice prior to her judicial appointment, including her service as the regional director of the Securities and Exchange Commission, makes her knowledgeable and well-equipped to handle issues relating to securities

regulation and financial compliance. Of note, she currently presides over the first-filed cash sweep case among the Related Actions, *Valelly v. Merrill Lynch, Pierce, Fenner & Inc.*, No. 1:19-cv-07998 (S.D.N.Y.), which provides her with significant insight into the facts and claims that arise out of cash sweep programs.

Likewise, Judge Oetken was also nominated by President Obama and has served on the bench for 13 years. He also has relevant experience as a transferee judge, having presided over a multidistrict securities litigation involving a huge corporate fraud. *See In re Satyam Computer Servs., Ltd., Sec. Litig.*, MDL No. 2027 (S.D.N.Y.). Notably, Judge Oetken is currently presiding over a multidistrict litigation involving allegations against major banks concerning the manipulation of interest rate swap markets. *See In re Interest Rate Swaps Antitrust Litig.*, MDL No. 2704 (S.D.N.Y.). Judge Oetken's experience is directly relevant and proves his ability to effectively oversee a cash sweep multidistrict litigation.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that, pursuant to 28 U.S.C. §1407, the Panel order the transfer and centralization of the Related Actions (and any future tag-along actions), for coordinated or consolidated pretrial proceedings to the Southern District of New York.

DATED: October 30, 2024

ROBBINS GELLER RUDMAN & DOWD LLP
STEPHEN R. ASTLEY
ANDREW T. REES
RENE A. GONZALEZ

*s/ Stephen R. Astley*
STEPHEN R. ASTLEY

225 NE Mizner Boulevard, Suite 720
Boca Raton, FL 33432
Telephone: 561/75p0-3000
sastley@rgrdlaw.com
arees@rgrdlaw.com
rgonzalez@rgrdlaw.com

ABRAHAM FRUCHTER & TWERSKY LLP
JACK G. FRUCHTER
450 7th Ave 38th Floor
New York, NY 10123
Telephone: 212/279-5050

*Attorneys for Plaintiffs Safron Capital Corp. and Brickman Investments Inc.*

- 15 -