# BEFORE THE UNITED STATES JUDICIAL PANEL
## ON MULTIDISTRICT LITIGATION

IN RE CASH SWEEP LITIGATION,

MDL No. 3136

## AMERIPRISE DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR TRANSFER AND CONSOLIDATION PURSUANT TO 28 U.S.C. § 1407

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

    A.    The Minnesota Case .................................................................................. 3

    B.    The California Case .................................................................................. 4

    C.    The Motion ................................................................................................ 5

ARGUMENT ..................................................................................................................... 6

    I.    The Cases Lack Common Questions of Fact Across The Different
        Sweep Defendants ..................................................................................... 7

    II.    Consolidation and Transfer Would Not Serve the Convenience of the
        Parties and Witnesses .............................................................................. 9

    III.    Transfer Would Not Promote the Just and Efficient Conduct of the
        Cases ........................................................................................................ 11

CONCLUSION ................................................................................................................. 13

## TABLE OF AUTHORITIES

**Cases**

*In re Baby Food Mktg., Sales Pracs. & Prods. Liab. Litig.*,
544 F. Supp. 3d 1375 (J.P.M.L. 2021) ................................................................ 8, 9

*In re Benzoyl Peroxide Mktg., Sales Pracs. & Prod. Liab. Litig.*,
2024 WL 3629067 (J.P.M.L. Aug. 1, 2024) .......................................................... 13

*In re Best Buy, Co. Cal. Song-Beverly Credit Card Act Litig.*,
804 F. Supp. 2d 1376 (J.P.M.L. 2011) ............................................................. 3, 12

*In re Comcast Corp. Emp. Wage & Hour Emp. Pracs. Litig.*,
190 F. Supp. 3d 1344 (J.P.M.L. 2016) .................................................................. 12

*In re COVID-19 Bus. Interruption Prot. Ins. Litig.*,
482 F. Supp. 3d 1360 (J.P.M.L. 2020) ...................................................................11

*In re CP4 Fuel Pump Mktg., Sales Pracs. & Prods. Liab. Litig.*,
412 F. Supp. 3d 1365 (J.P.M.L. 2019) .................................................................... 8

*In re Highway Accident Near Rockville Conn.*,
388 F. Supp. 574 (J.P.M.L. 1975) ........................................................................... 6

*In re Honey Prod. Mktg. & Sales Pracs. Litig.*,
883 F. Supp. 2d 1333 (J.P.M.L. 2012) .................................................................... 7

*In re Ivy*,
901 F.2d 7 (2d Cir. 1990) .......................................................................................11

*In re Mortgage Indus. Foreclosure Litig.*,
996 F. Supp. 2d 1379 (J.P.M.L. 2014) .................................................................... 7

*In re Pharmacy Benefit Plan Adm'rs Pricing Litig.*,
206 F. Supp. 2d 1362 (J.P.M.L. 2002) .................................................................... 9

*In re Proton-Pump Inhibitor Prods. Liab. Litig.*,
273 F. Supp. 3d 1360 (J.P.M.L. 2017) .................................................................. 10

*In re Secondary Ticket Mkt. Refund Litig.*,
481 F. Supp. 3d 1345 (J.P.M.L. 2020) .................................................................... 9

*In re Sensipar (Cinacalcet Hydrochloride Tablets) Antitrust Litig.*,
412 F. Supp. 3d 1344 (J.P.M.L. 2019) .................................................................... 9

*In re Supplemental Nutrition Assistance Program Litig.*,
619 F. Supp. 3d 1348 (J.P.M.L. 2022) .................................................................... 8

*In re Table Saw Prods. Liab. Litig.*,
641 F. Supp. 2d 1384 (J.P.M.L. 2009) .................................................................. 10

*In re Video Game Addiction Prod. Liab. Litig.*,
2024 WL 2884795 (J.P.M.L. June 5, 2024) ............................................................ 7

*In re Yellow Brass Plumbing Component Prods. Liab. Litig.*,
844 F. Supp. 2d 1377 (J.P.M.L. 2012) .................................................................... 3

**Statutes**

28 U.S.C. § 1407(a) ...................................................................................................... 6

**Other Authorities**

Ameriprise Custom Advisory Relationship Agreement,
   Ameriprise Financial (September 2024) ................................................................ 12

David F. Herr, *Multidistrict Litig. Manual* § 5:4 (updated May 2024) .......................... 8

Defendants Ameriprise Financial, Inc., American Enterprise Investment Services Inc., Ameriprise Financial Services, Inc., and Ameriprise Financial Services, LLC (the "Ameriprise Defendants," or "Ameriprise") respectfully submit this memorandum of law in opposition to the Motion for Transfer and Consolidation Pursuant to 28 U.S.C. § 1407 (the "Motion") filed by Safron Capital Corp. and Brickman Investments Inc. ("Plaintiffs").

## INTRODUCTION

Plaintiffs' Motion seeks consolidation of thirty separate purported class actions against various financial firms pending in seven jurisdictions (the "Sweep Cases").[1]  In the Sweep Cases, customers of the respective defendant firms (the "Sweep Defendants") try to manufacture claims based on the allegation that the rates of interest they offer on uninvested cash that is swept to interest-bearing accounts were unreasonable.  Plaintiffs argue that consolidation and transfer is warranted because the cases against each of the Sweep Defendants are premised upon similar legal theories.

In fact, Plaintiffs do not meet any of the requirements under 28 U.S.C. § 1407.  While Plaintiffs claim that the cases arise from a "common core of factual" issues, the Motion's singular focus on various plaintiffs' collective dissatisfaction with sweep interest rates individually offered by each of the Sweep Defendants ignores that the Sweep Cases are factually dissimilar in every other regard.  The Sweep Defendants include distinct entities, with unique customer bases, financial products and business models, terms of customer engagement, and sweep services, such that the proceedings in each case will be dominated by firm- and customer-specific factual and legal issues.  Plaintiffs are also wrong that centralization will further the

---

[1] On November 11, 2024, Plaintiffs filed a Corrected Motion for Transfer and Consolidation Pursuant to 28 U.S.C. § 1407, correcting the Schedule of Actions included within the Motion.  (ECF No. 3.)  References to the "Sweep Cases" include the actions listed on the corrected Schedule of Actions, except for *Frey v. Ameriprise Financial, Inc.*, 24-cv-03360, which was voluntarily dismissed.

convenience of the parties and witnesses.  Since each of the cases concerns a different financial institution with its own governing contracts, documents, customers and witnesses, consolidation will not promote the efficient conduct of the cases because there will be no elimination of duplicative discovery, reduction of litigation costs, or conservation of the parties' and attorneys' time and efforts.

Plaintiffs also wrongly contend that the Southern District of New York is the most convenient forum for coordinated pre-trial proceedings.  While nine of the Sweep Cases are pending in New York, the majority of the other thirty cases are located in other states, and most of the plaintiffs and defendants are not located in New York.  A proceeding in New York would be particularly inconvenient for the Ameriprise Defendants: none of their constituent cases have been filed in New York, and their corporate witnesses and documents are located primarily in the District of Minnesota where they are headquartered and where all but one of the constituent actions against the Ameriprise Defendants (the one being in the Central District of California) is pending.

Finally, centralization is particularly inappropriate here because the Sweep Defendants have already undertaken appropriate efforts to coordinate the groups of cases pending against each firm separately.  Courts in the District of Minnesota have already consolidated for all purposes overlapping purported class actions filed against the Ameriprise Defendants in the District (*Mehlman v. Ameriprise Financial, Inc.*, 24-cv-03018, the "Minnesota Case"), and the parties in that consolidated proceeding have filed motions to transfer to the District of Minnesota a more recently-filed case against the Ameriprise Defendants in the Central District of California (*Lourenco v. Ameriprise Financial, Inc.*, 24-cv-08825, the "California Case").  Parties in several of the other cases have engaged in similar self-organization along firm-specific lines.  Thus,

2

there is no need for this Panel to stage industry-wide pre-trial proceedings to achieve the aims that firm-specific consolidation and transfer efforts are already poised to accomplish.  The Panel has repeatedly stated that centralization under Section 1407 should be the last resort, *see, e.g.*, *In re Best Buy, Co. Cal. Song-Beverly Credit Card Act Litig.*, 804 F. Supp. 2d 1376, 1378 (J.P.M.L. 2011) (holding consolidation under section 1407 "should be the last solution after considered review of all other options"), and has exercised caution in ordering the kind of industry-wide multidistrict litigation Plaintiffs seek here. *See, e.g.*, *In re Yellow Brass Plumbing Component Prods. Liab. Litig.*, 844 F. Supp. 2d 1377, 1378 (J.P.M.L. 2012) (holding that the Panel is "typically hesitant to centralize litigation against multiple, competing defendants which marketed, manufactured and sold similar products").  For these reasons, and as further explained below, the Panel should deny Plaintiffs' Motion.

## BACKGROUND

### A.    The Minnesota Case

On July 29, 2024, plaintiffs Susanne Mehlman and Joy Hultman filed a putative class action challenging the Ameriprise Defendants' sweep programs.  *See* Decl. of Lauren Wagner (Wagner Decl.), Ex. 1.  On August 21, 2024, a second complaint challenging the Ameriprise Defendants' sweep programs was filed in the District of Minnesota by plaintiff Mindy Bender. *Id.* Ex. 2.  On October 3, 2024, the two Minnesota complaints were consolidated before the Honorable Judge John R. Tunheim.  *Id.* Ex. 3.  The following month, on November 4, the Minnesota plaintiffs filed a consolidated complaint against the Ameriprise Defendants, superseding the prior complaints.  *Id.* Ex. 4 (the "Minnesota Consolidated Complaint").  The Minnesota Consolidated Complaint combines the majority of the allegations in the prior Minnesota complaints, alleging that Ameriprise's sweep rates are unreasonable and allegedly

conflict with the Ameriprise Defendants' supposed fiduciary and contractual duties.  *Id.* ¶¶ 1–10.
The complaint brings claims for breach of fiduciary duty, breach of contract, unjust enrichment,
and breach of the implied covenant of good faith and fair dealing.  *Id.* ¶¶ 148–75.

The Minnesota Consolidated Complaint was brought by four named plaintiffs, allegedly
residing in Maryland, Florida, North Carolina, and New York, respectively (the "Minnesota
Plaintiffs").  *Id.* ¶¶ 15–18.  They claim to represent a purported class of Ameriprise customers
who had cash deposits or balances in Ameriprise's sweep programs.  *Id.* ¶ 133.  Each of the
Ameriprise Defendants maintains a principal place of business in Minnesota.  *Id.* ¶¶ 11–13.  The
Ameriprise Defendants' response to the Minnesota Consolidated Complaint is due to be filed on
December 20, 2023.  Wagner Decl. Ex. 5.

**B.      The California Case**

On October 14, 2024, plaintiff Ted Lourenco filed a copycat class action in the Central
District of California, challenging the same conduct at the center of the Consolidated Minnesota
Complaint, i.e., that the Ameriprise Defendants' sweep programs offered allegedly unreasonable
rates of interest.  Wagner Decl. Ex. 6 (the "California Complaint") ¶ 2.  The California
Complaint similarly brings claims for breach of fiduciary duty, breach of contract, unjust
enrichment, and breach of the implied covenant of good faith and fair dealing and throws in a
claim for violation of California's Unfair Competition Law as well.  *Id.* ¶¶ 120–31.  Plaintiff
Lourenco allegedly resides in California.  *Id.* ¶ 12.

On November 8, 2024, the Ameriprise Defendants filed a motion to transfer the
California Case to the District of Minnesota given its significant overlap with the first-filed
Minnesota Case.  Wagner Decl. Ex. 7 (the "Motion to Transfer").  On November 13, 2024, the
Minnesota Plaintiffs filed a motion to intervene and to transfer the California Case to the District

of Minnesota.  *Id.* Ex. 7.  The Ameriprise Defendants and Lourenco have agreed to stay the Ameriprise Defendants' response to the California Complaint until a disposition on the Ameriprise Defendants' Motion to Transfer.  *Id.* Ex. 8.

**C.     The Motion**

On October 30, 2024, Plaintiffs in four of the Sweep Cases filed the Motion, seeking to consolidate thirty separate Sweep Cases that have been filed over the last several years against some of the largest financial services firms in the industry.  Nine of these actions are pending in the Southern District of New York, while the others are proceeding in courts scattered around the country—namely, the District of Minnesota, the Central District of California, the Southern District of California, the Middle District of Florida, the District of New Jersey, and the Western District of Pennsylvania.  (ECF No. 2-1, at 1–5.)

Plaintiffs claim that consolidation and transfer are warranted because the Sweep Cases "share the same common core of factual and legal issues involving defendants' use of cash sweep programs."  Mot. at 3.  Plaintiffs argue that centralization will further the convenience of the parties and witnesses because it will minimize duplicative discovery.  *Id.* at 5–6.  Nevertheless, they do not identify a single witness who has relevant knowledge across all the Sweep Defendants' operations, and thus could be subject to duplicative demands.  Plaintiffs also insist that centralization will conserve judicial resources by allowing a single judge to address common legal questions, and by ensuring consistent pre-trial rulings across the cases.  *Id.* at 6–7.  Yet Plaintiffs fail to address that fact that the various Sweep Defendants' customer agreements are governed by different choice of law provisions that may call for the application of the law of different jurisdictions.  And Plaintiffs fail to acknowledge that unique legal issues and factual differences predominate over any common ones, and that those may be dispositive of the claims.

5

According to Plaintiffs, the Southern District of New York is the most appropriate venue for the industry-wide proceeding they propose because (i) nine of the cases are pending there, (ii) the earliest of the Sweep Cases, *Valelly v. Merrill Lynch, Pierce, Fenner & Inc.*, 19-cv-07998, has been pending in New York since 2019, and discovery in that case has progressed the farthest, (iii) "the center of gravity" for the Sweep Cases is New York because New York is the "largest financial hub in the world" and is easily accessible, and the Sweep Defendants have "significant offices," in New York, and (iv) the Southern District of New York has expertise in corporate and financial matters. *Id.* at 9–14. As discussed in more detail below, none of these arguments has merit.

## ARGUMENT

To justify multidistrict litigation ("MDL"), a movant must show the Panel that (i) the cases share common questions of fact, (ii) transfer would be for the convenience of the parties and witnesses, and (iii) transfer would advance the just and efficient conduct of the cases. 28 U.S.C. § 1407(a); *In re Highway Accident Near Rockville Conn.*, 388 F. Supp. 574, 575 (J.P.M.L. 1975) ("Before transfer will be ordered, the Panel must be satisfied that all of the statutory criteria have been met."). For the reasons developed below, Plaintiffs do not satisfy Section 1407(a)'s requirements. Contrary to Plaintiffs' suggestions, an MDL would undermine rather than further the objectives of centralization, and the parties in the Sweep Cases—including the parties to cases against the Ameriprise Defendants—have already taken appropriate steps to coordinate proceedings in the groups of cases filed against each Sweep Defendant. The Motion should be denied.

I.      **The Cases Lack Common Questions of Fact Across The Different Sweep
        Defendants.**

Plaintiffs come nowhere close to meeting their "heavy burden to show that the actions
will share sufficient overlap" warranting centralization. *In re Video Game Addiction Prod. Liab.
Litig.*, 2024 WL 2884795, at *2 (J.P.M.L. June 5, 2024). While the Sweep Defendants are all
financial institutions alleged to offer their customers a sweep service, the similarity ends there.
Each Sweep Defendant is a distinct financial firm. Each financial firm offers its own unique
sweep program that involves different features and choices (including different depository
vehicles), different fee arrangements, and different contractual terms and conditions. Each
financial firm also has its own unique customer base, and, accordingly, each plaintiff purports to
represent a distinct customer class. Plaintiffs are therefore incorrect in assuming that these cases
will share facts material to the questions whether the Sweep Defendants' divergent sweep
services offered rates of interest that were unreasonably low in light of the full array of services
that customers received, or violated the distinct terms and conditions found in each of the Sweep
Defendants' customer agreements. Mot. at 4. *In re: Honey Prod. Mktg. & Sales Pracs. Litig.*,
883 F. Supp. 2d 1333, 1333 (J.P.M.L. 2012) (denying motion to transfer because actions involved
different defendants, marketing different honey products).

Here, as to any cases that proceed past the pleading stage, the vast majority, if not all, of
the relevant discovery will be defendant- and plaintiff-specific. For example, the agreements
between the Ameriprise Defendants and their customers detailing the sweep programs available
through different types of accounts on the Ameriprise platform have no relevance to Plaintiffs'
claims against other firms. Moreover, the Ameriprise Defendants' customer agreements may
require distinct analysis, undermining Plaintiffs' assertion that there will necessarily be
efficiencies in having a single judge interpret and apply customer agreements across the

securities industry.  *See In re: Mortgage Indus. Foreclosure Litig.*, 996 F. Supp. 2d 1379, 1379–80 (J.P.M.L. 2014) (denying motion to transfer because actions involved "contractual interpretation questions under different state laws").  Similarly, the different interest rates paid on swept cash by each Sweep Defendant at different times over the multi-year periods for which plaintiffs seek a recovery, and the relationship between those rates and other relevant features of the Sweep Defendants' services (including the level of other fees assessed against customer accounts), raise distinct factual questions under plaintiffs' theories—even if Plaintiffs contend that the core question is whether credited interest is "reasonable."  Moreover, the individual plaintiffs in the Sweep Cases are unique because they each held different accounts at the different firms.  The need for inquiries into each plaintiff's understanding of the distinct account agreements at issue, and of their choices with respect to sweep services, will accordingly only add ***more*** complexity to the factfinders' tasks in grappling with these firm-specific factual issues, and decrease efficiencies in discovery.  *See, e.g.*, *In re Baby Food Mktg., Sales Pracs. & Prods. Liab. Litig.*, 544 F. Supp. 3d 1375, 1377–78 (J.P.M.L. 2021) (declining centralization given the "minimal number of common factual questions" and "the potential for a multi-defendant MDL to introduce added complexity").[2]  There is no meaningful efficiency to be had in bringing all such cases into a single MDL proceeding.

Finally, the fact that some of the Sweep Defendants may be direct competitors with each other could complicate an industry-wide MDL proceeding.  Discovery of each Sweep Defendant's records with respect to product design, fee structures, and financial performance will

---

[2] The other purported overlapping issues that Plaintiffs cite are predominantly legal (e.g., the questions whether defendants violated contractual obligations or fiduciary duties or made material misstatements).  But "transfer is inappropriate in cases involving common legal questions and disparate factual issues." David F. Herr, *Multidistrict Litig. Manual* § 5:4 (updated May 2024); *In re Supplemental Nutrition Assistance Program Litig.*, 619 F. Supp. 3d 1348, 1348–49 (J.P.M.L. 2022) (denying centralization where common questions were "legal rather than factual" and factual questions were "largely [case]-specific").

doubtless touch on material that each firm will want to protect against disclosure to its peers. This will add needless complexity to the case management process. *See, e.g.*, *In re CP4 Fuel Pump Mktg., Sales Pracs. & Prods. Liab. Litig.*, 412 F. Supp. 3d 1365, 1367 (J.P.M.L. 2019) (emphasizing that centralizing competing defendants in the same MDL "likely would complicate case management" due to "the need to protect trade secret and confidential information" and "the possible need for separate discovery and motion tracks").

For these reasons, the Panel has been especially hesitant to "create[e] an industry-wide MDL" where "the factual commonality across the actions appears to be superficial at best." *In re Secondary Ticket Mkt. Refund Litig.*, 481 F. Supp. 3d, 1345, 1346 (J.P.M.L. 2020) (holding that the creation of an industry-wide MDL "would seem to complicate pretrial proceedings more than it would streamline them"); *see also In re Baby Food*, 544 F. Supp. 3d at 1378 ("Given the relatively minimal number of common factual questions, the potential for a multi-defendant MDL to introduce added complexity to this litigation, and the strong opposition of numerous plaintiffs and defendants, we are not persuaded that industry-wide centralization is appropriate."). That is the case with Plaintiffs' Motion here. *In re Pharmacy Benefit Plan Adm'rs Pricing Litig.*, 206 F. Supp. 2d 1362, 1363 (J.P.M.L. 2002) (denying transfer where cases had "common legal questions and, perhaps, a few factual questions," but unique questions of fact predominated).

## II.   Consolidation and Transfer Would Not Serve the Convenience of the Parties and Witnesses.

Plaintiffs have likewise failed to establish that transfer and centralization would be for the convenience of the parties and the witnesses. The Panel has found that this element is met when transfer and consolidation "will eliminate duplicative discovery, the possibility of inconsistent rulings on class certification and other pretrial matters, and conserve judicial and party

resources." *In re Sensipar (Cinacalcet Hydrochloride Tablets) Antitrust Litig.*, 412 F. Supp. 3d 1344, 1346 (J.P.M.L. 2019).  Here, however, the claims against each Sweep Defendant are firm-specific—as noted, each of the cases proposed for consolidation involves distinct plaintiffs, distinct customer bases and putative classes, distinct contracts and account documentation, and distinct groups of witnesses with knowledge of each Sweep Defendant's product design and implementation.  Should the cases survive past the pleading stage, the testimony of witnesses responsible for the Ameriprise Defendants' sweep services will be utterly irrelevant to the claims against, say, Merrill Lynch, and vice versa.  The testimony of the lead Ameriprise Plaintiff in the already-consolidated Minnesota litigation, Mehlman, will similarly not have a whit of relevance to an unrelated customer's claim against Schwab.  In these circumstances, Plaintiffs' assertion that centralization will "sav[e] the parties from prosecuting and defending competing and overlapping class actions in multiple federal district courts," and avoid duplicative discovery such as "repetitive depositions" (Mot. at 5) rings hollow.  *In re Proton-Pump Inhibitor Prods. Liab. Litig.*, 273 F. Supp. 3d 1360, 1362 (J.P.M.L. 2017) (denying centralization of actions because "a significant amount of the discovery" was "almost certain to be defendant-specific").

Plaintiffs are also incorrect that the Southern District of New York is the most convenient geographic location for the industry's parties and witnesses.  That is certainly untrue for the Ameriprise Defendants.  The witnesses and documents most relevant to the claims against the Ameriprise Defendants are located over one thousand miles from New York, in Minnesota.  *In re Proton*, 273 F. Supp. 3d at 1361–62 (noting "named defendants vary from action to action" and "centralization thus appears unlikely to serve the convenience of most, if not all, defendants and their witnesses"); *see also In re Table Saw Prods. Liab. Litig.*, 641 F. Supp. 2d 1384, 1385 (J.P.M.L. 2009) (denying centralization of forty-two actions, where no defendant was sued in all

10

actions and some were "named in, at most, two or three"). And various Sweep Defendants are located in other states, including on the other side of the country in California. (ECF No. 2-1, at 503.)

## III.    Transfer Would Not Promote the Just and Efficient Conduct of the Cases.

Finally, Plaintiffs cannot meet their burden to show that an industry-wide MDL proceeding will promote the just and efficient conduct of the underlying actions. *In re COVID-19 Bus. Interruption Prot. Ins. Litig.*, 482 F. Supp. 3d 1360, 1362 (J.P.M.L. 2020) (denying centralization where there was "little potential for common discovery," and each case involved different contracts and other differences that would "overwhelm any common fact questions"); *see also In re Ivy*, 901 F.2d 7, 9 (2d Cir. 1990) ("[T]ransfer is to be ordered only where significant economy and efficiency in judicial administration may be obtained."). For the reasons already explained, creating an industry-wide proceeding to coordinate the Sweep Cases will only impair the efficient management and disposition of the underlying actions. True, if the cases against the Ameriprise Defendants and other securities firms recently sued survive on the pleadings, there may be a need for discovery on the same topics from each of the parties. But records and testimony will need to be drawn from each party ***separately***—the Ameriprise Defendants' internal records and testimony about their sweep services and contracts will have no relevance to claims against Schwab, for example. The way each firm maintains business records may also create firm-specific questions of undue burden. Aggregating all such discovery and other pretrial matters before a single judge could significantly delay the ultimate resolution of the cases rather than hasten them. This is particularly so as to the cases proposed for consolidation that are already years old.

Plaintiffs abstractly argue that, absent centralization, there is a risk of inconsistent pretrial rulings across the cases. (Mot. at 7.) But the argument ignores that each of the cases proposed

for consolidation concerns separate and distinct customer contracts and disclosures, and many of

the cases—like the cases against the Ameriprise Defendants—are governed by distinct bodies of

law and may require distinct analysis.  The terms of the Ameriprise Defendants' account

applications and contracts, including their dispute-resolution terms,[3] may have no relevance to

understanding the meaning of JP Morgan Chase's account agreements, for example.  Nor will the

question whether Minnesota law assigns fiduciary status to a financial services firm be

dispositive on the question of whether New York law yields the same answer.

What Plaintiffs ignore is that the "just and efficient" conduct of the actions here readily

can be facilitated by coordinating (and perhaps consolidating) the actions that have been filed

against each firm separately; an industry-wide proceeding is not only unnecessary, but also

counterproductive.  As the Panel has repeatedly made clear, "centralization under Section 1407

should be the last solution after considered review of all other options."  *In re Best Buy Co., Inc.*,

804 F. Supp. 2d at 1378.  "These options include transfer pursuant to 28 U.S.C. § 1404, as well

as voluntary cooperation and coordination among the parties and the involved courts."  *In re

Comcast Corp. Emp. Wage & Hour Emp. Pracs. Litig.*, 190 F. Supp. 3d 1344, 1345 (J.P.M.L.

2016).  The parties in some of the firm-specific cases have already undertaken these kinds of

self-organization efforts, and throwing the entire collection of cases into a single MDL would

only frustrate the efficiencies the parties have achieved through those efforts.  The Ameriprise

Defendants have, for example, already moved to transfer the California Case to the District of

Minnesota under the first-filed rule so that it can be addressed in coordination with the already-

---

[3] The contracts the Ameriprise Defendants sign with customers seeking investment advisory services through their accounts include dispute-resolution clauses requiring compulsory, non-class arbitration before the AAA.  *See* Ameriprise Custom Advisory Relationship Agreement, Ameriprise Financial (September 2024), https://www.ameriprise.com/binaries/content/assets/ampcom/wcm/AMP_114935.pdf.

consolidated Minnesota litigation.  Given the distinct contract terms and legal standards in play, permitting the parties to continue their efforts to coordinate on a firm-by-firm basis is the most efficient means to move the Sweep Cases to completion.  *See In re Benzoyl Peroxide Mktg., Sales Pracs. & Prod. Liab. Litig.*, 2024 WL 3629067, at *2 (J.P.M.L. Aug. 1, 2024) ("Creating defendant-specific 'hubs' ultimately may prove the most efficient means of moving [ ] litigation toward resolution.").

## CONCLUSION

For the foregoing reasons, the Panel should deny the Motion.

Dated:  November 27, 2024

*/s/ Meaghan VerGow*

Meaghan VerGow, DC Bar No. 977165
Brian Boyle, DC Bar No. 419773
Shannon Barrett, DC Bar No. 476866
**O'MELVENY & MYERS LLP**
1625 Eye Street, N.W.
Washington, DC  20006-4061
Telephone: (202) 383-5300
Facsimile: (202) 383 5414
mvergow@omm.com
bboyle@omm.com

Jorge deNeve, CA Bar No. 198855
jdeneve@omm.com
**O'MELVENY & MYERS LLP**
400 South Hope Street, 19th Floor
Los Angeles, CA
Telephone: (213) 430-6000
Facsimile: (213) 430-6407
jdeneve@omm.com

Lauren Wagner, NY Bar No. 5430640
**O'MELVENY & MYERS LLP**
1301 Avenue of the Americas, Suite 1700
New York, NY  10019
Telephone: (212) 326-2000
Facsimile: (212) 326-2061
lwagner@omm.com

Edward B. Magarian, MN Bar No. 0208796
Jack Huerter, MN Bar No. 0399277
**DORSEY & WHITNEY LLP**
50 South Sixth Street, Suite 1500
Minneapolis, MN
Telephone: (612) 340-2600
Facsimile: (612) 340-2868
magarian.edward@dorsey.com
huerter.jack@dorsey.com

*Attorneys for Defendants*

14

**PROOF OF SERVICE**

In compliance with Rule 4.1(a) of the Rules of Procedure for the United States Judicial Panel on Multidistrict Litigation, I hereby certify that on November 27, 2024, I caused the foregoing Opposition to Plaintiffs' Motion for Transfer and Consolidation, Declaration of Lauren Wagner In Support of the Opposition and its accompanying exhibits, and this Proof of Service to be electronically filed with the Clerk of the Panel using CM/ECF system, which constitutes service of pleadings on registered CM/ECF participants via this Panel's ECF filing system.

Dated:  November 27, 2024          */s/ Meaghan VerGow*_____
                                                          Meaghan VerGow