**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

| | | |
|---|---|---|
| IN RE: Cash Sweep Programs Contract Litigation | ) ) | MDL Docket No. 3136 |

**OPPOSITION TO PLAINTIFFS' MOTION FOR TRANSFER AND FOR
CONSOLIDATION PURSUANT TO 28 U.S.C. §1407 SUBMITTED BY
DEFENDANTS J.P. MORGAN SECURITIES LLC AND JPMORGAN CHASE & CO.**

JONES DAY
250 Vesey Street
New York, New York 10281
(212) 326-3939
*Counsel for J.P. Morgan Securities LLC and
JPMorgan Chase & Co.*

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................................ 1
BACKGROUND.............................................................................................................................2
LEGAL STANDARD......................................................................................................................5
ARGUMENT...................................................................................................................................6
   I.    These Actions, Which Involve Different Defendants with Separate Cash Sweep Deposit Programs, Do Not Involve Common Questions of Fact........................................................6
   II.   An MDL Will Not Promote Convenience or Efficiency......................................................9
CONCLUSION.................................................................................................................... 11

## TABLE OF AUTHORITIES

Cases

*In re ABA L. Sch. Accreditation Litig.*, 325 F. Supp. 3d 1377 (J.P.M.L. 2018) .......................... 8, 11

*In re Baby Food Mktg., Sales Pracs. & Prod. Liab. Litig.*,
    544 F. Supp. 3d 1375, (J.P.M.L. 2021) ........................................................... 5, 10, 11

*In re Best Buy Co., Inc., Cal. Song-Beverly Credit Card Act Litig.*,
    804 F. Supp. 2d 1376 (J.P.M.L. 2011) ..................................................................... 6

*In re Chase Inv. Servs. Corp. Fair Lab. Standards Act (FLSA) & Wage & Hour Litig.*,
    908 F. Supp. 2d 1372 (J.P.M.L. 2012) ..................................................................... 5

*In re CP4 Fuel Pump Mktg., Sales Pracs., & Prod. Liab. Litig.*,
    412 F. Supp. 3d 1365 (J.P.M.L. 2019). .............................................................. 7, 8, 9,10

*In re Gerber Probiotic Prods. Mktg. & Sales Practices Litig.*,
    899 F. Supp. 2d 1378 (J.P.M.L. 2012)  ................................................................... 11

*In re Hotel Indus. Sex Trafficking Litig.*, 433 F. Supp. 3d 1353 (J.P.M.L. 2020) ................. 7, 8, 11

*In re London Silver Fixing, Ltd., Antitrust Litig.*, 52 F. Supp. 3d 1381 (J.P.M.L. 2014) ............... 9

*In re Mortg. Indus. Home Affordable Modification Program (HAMP) Cont. Litig.*,
    867 F. Supp. 2d 1338 (J.P.M.L. 2012) ..................................................................... 7

*In re Nat'l Ass'n for Advancement of Multijurisdiction Prac. Litig.*,
    52 F. Supp. 3d 1377 (J.P.M.L. 2014) ..................................................................... 8

*In re Paycheck Prot. Program Agent Fees Litig.*, 481 F. Supp. 3d 1335 (J.P.M.L. 2020) ......... 7, 8

*In re Proton-Pump Inhibitor Prods. Liab. Litig.*, 273 F. Supp. 3d 1360 (J.P.M.L. 2017) ...... 2, 5, 9

*In re Transocean Ltd. Sec. Litig.*, 753 F. Supp. 2d 1373 (J.P.M.L. 2010) ...................................... 5

*In re Treasury Sec. Auction Antitrust Litig.,* 148 F. Supp. 3d 1360 (J.P.M.L. 2015) ..................... 9

*In re UnumProvident Corp. Sec., Derivative & "ERISA" Litig.*,
    280 F. Supp. 2d 1377 (J.P.M.L. 2003) ..................................................................... 9

*In re Video Game Addiction Prod. Liab. Litig.*,  -- F. Supp. 3d. --, 2024 WL 2884795,
    (J.P.M.L. June 5, 2024). ................................................................................ 1, 2, 5, 9

*In re Watson Fentanyl Patch Prods. Liab. Litig.*, 883 F. Supp. 2d 1350 (J.P.M.L. 2012).............10

Statutes

28 U.S.C. § 1404........................................................................................................................... 10

28 U.S.C. § 1407......................................................................................................................*passim*

Treatises

Manual for Complex Litigation, Fourth (2004)............................................................................ 11

## INTRODUCTION

The Panel should deny this motion to improperly drag an entire industry into multi-district litigation despite the obvious lack of overlap and the plain differences among the 21 supposedly "Related Actions." These actions were brought by different plaintiffs (and putative classes) against different defendants and their affiliates. Each of the defendant entities structures its unique cash sweep deposit program differently, pays customers different rates pursuant to different types of accounts and account agreements, and makes different disclosures about how its cash sweep deposit program works. These fundamental factual differences—which the movants ignore—necessarily negate the existence of the requisite common questions of fact across the actions.

The movants gloss over these differences and instead attempt to distract the Panel by pointing to similar allegations and theories of liability in the actions. But that tactic ducks the necessary legal reality: because the actions do not pose common questions of fact, they fail to satisfy 28 U.S.C. § 1407(a)'s most basic requirement. Nor have the movants demonstrated that an industry-wide MDL that pulls together individual actions against competitors would promote convenience or efficiency. Separate discovery will be needed from each defendant, each plaintiff, and each purported class. And because the defendants in these cases are competitors, consolidated discovery would raise complicated trade secret and confidentiality issues that would unnecessarily bog down the pre-trial process. Simply put, the movants have not, and cannot, satisfy their "heavy" burden to show that this "industry-wide MDL" is appropriate. *See In re Video Game Addiction Prod. Liab. Litig.*, No. MDL 3109, -- F. Supp. 3d. --, 2024 WL 2884795, at *2 n.5 (J.P.M.L. June 5, 2024) (citation omitted).

The best course for these actions is the path that they are already on. That is, that individual actions against the same defendant are in the process of being consolidated so that there will be a single action (or coordinated actions) against each defendant. This process is already well underway and does not require any assistance from this Panel. Accordingly, defendants J.P. Morgan Securities LLC and JPMorgan Chase & Co. (collectively, "J.P. Morgan") respectfully request that the Panel deny the movants' request for consolidation.

## BACKGROUND

The cases that the movants seek to consolidate relate to a feature of brokerage accounts called a cash sweep deposit program. At a high level, a cash sweep deposit program moves, or "sweeps," uninvested cash from customers' brokerage accounts into FDIC-insured bank deposit accounts. This type of program pays customers interest on idle cash until the customer chooses to do something else with that cash, such as invest in a new product or withdraw it.

While cash sweep deposit programs are common, they are not uniform, and the defendants in these actions structure their programs differently. For instance, the cash sweep deposit program of J.P. Morgan Securities LLC ("JPMS") sweeps cash exclusively to its affiliated bank, whereas other defendants do not have an affiliated bank or use only unaffiliated institutions, and still others use a mixture of both. JPMS also pays different—and often much higher—rates than its competitors. And the criteria to determine which customers receive which rates may be different at JPMS than its competitors. For example, some defendants offer rates that vary based on the amount of cash held in each customer's account, but JPMS pays the same rate regardless of cash balances. And of course, each defendant has unique account agreements, disclosures, and communications with its customers about its own cash sweep program and rates. Accordingly, while the plaintiffs across the cases generally allege that interest rates paid on each

defendant's cash sweep deposit program were unreasonably low and that disclosures about each individual program contained material misstatements and omissions, each case involves different cash sweep programs, different rates, and different disclosures.

Not only do the cash sweep programs at issue differ, the contours of the actions themselves differ. With regard to J.P. Morgan, three cases were brought against JPMS and JPMorgan Chase & Co. by purported classes of J.P. Morgan customers. These two J.P. Morgan entities were the only defendants named in the actions. Each action revolves around JPMS' cash sweep deposit program, its cash sweep rates, and its cash sweep agreements and disclosures. There are no allegations that J.P. Morgan coordinated or colluded with any other defendant or party with regard to its cash sweep program or rates.

The same holds true for the other actions that the movants seek to consolidate into a multidistrict litigation. Contrary to the movants' assertion that these cases "overlap[]," *see* Plaintiffs' Motion for Transfer and Consolidation Pursuant to 28 U.S.C. § 1407 ("Motion") at 5, each action is only brought against a single financial services company or institution and its affiliates.[1] None of the actions involve more than one financial services company and its affiliates. Each action revolves around that particular entity's cash sweep deposit program and that entity's cash sweep rates, agreements, and disclosures. There are no allegations that the various defendants coordinated or colluded with regard to their cash sweep programs in a way that would cause one defendant to have evidence relevant to a different defendant's cash sweep program. And while each of the actions is a purported class action, the classes themselves are

---

[1] The financial services institutions that have been named as defendants across the 21 actions are: Ameriprise Financial, Bank of America and its affiliate Merrill Lynch, Charles Schwab, Morgan Stanley and its affiliate E*Trade, LPL Financial, PNC Investments, Raymond James, UBS, Wells Fargo, and J.P. Morgan.

limited to the customers of each particular defendant entity. In other words, neither the defendants nor the plaintiffs overlap across cases.

Many of the 21 "Related Actions" that the movants identify have already been transferred and/or consolidated so that all actions against a particular defendant will be heard together by a single judge.[2] That process is essentially complete for the three cases brought against J.P. Morgan. Two of the cases against J.P. Morgan have already been consolidated, *see In re JP Morgan Chase Cash Sweep Program*, Case No. 1:24-cv-06404-LGS (S.D.N.Y. Oct. 8, 2024), and the third case, *Canales v. JP Morgan Chase and Co., et al*, Case No. 5:24-cv-02018 (C.D. Cal. Nov. 1, 2024), has been transferred from the Central District of California to the Southern District of New York. All three of these cases are pending before the Honorable Lorna G. Schofield.

Finally, the number of plaintiffs' counsel involved in these cases is relatively low and coordination appears to already be underway. Counsel representing the plaintiffs in roughly half of the pending cases includes an alliance of firms that refers to itself as "Sweeps Counsel."[3] This "Sweeps Counsel" alliance purports to have been collaborating to "investigate, file, and

---

[2] For instance, consolidation is well underway for cases brought against Ameriprise Financial, Inc., *see Mehlman v. Ameriprise Fin., Inc.,* No. 0:24-cv-03018 (D. Minn. Oct. 3, 2024) (consolidating two cases); Charles Schwab, *see In re Charles Schwab Cash Sweep Litig.,* No. 2:24-cv-07344 (C.D. Cal. Oct. 22, 2024) (consolidating three cases); LPL Financial, *see In re LPL Fin. Cash Sweep Litig.,* No. 3:24-cv-01228 (S.D. Cal. Oct. 16, 2024) (consolidating three cases); Raymond James Financial, Inc., *see Schmidlin v. Raymond James Fin., Inc. et al.,* No. 8:24-cv-02041 (M.D. Fl. Nov. 14, 2024) (consolidating two cases); UBS Financial Services, Inc., *see Goldsmith v. UBS Fin. Servs., Inc.*, No. 1:24-cv-06354 (S.D.N.Y. Nov. 1, 2024) (consolidating two cases), and Wells Fargo & Co., *see In Re Wells Fargo Cash Sweep Litig.,* No. 3:24-cv-04616 (N.D. Cal. Nov. 11, 2024) (consolidating four cases).

[3] The "Sweeps Counsel" alliance includes the firms Berger Montague PC, Bernstein Litowitz Berger & Grossmann LLP, Simmons Hanly Conroy LLP, Williams Dirks Dameron LLC, Rosca Scarlato LLC, and Oakes & Fosher, LLC.

prosecute" class sweep cases "for nearly a year." *See* Declaration of Laura W. Sawyer, Exhibit A (Memorandum of Law In Support of Plaintiff Dan Bodea's Motion for Appointment of Interim Class Counsel, No. 1:24-cv-06404-LGS, ECF No. 39) at 1 n.1, 6.

## LEGAL STANDARD

28 U.S.C. § 1407(a) permits consolidation of separate cases into a multidistrict litigation only when three requirements are met: (1) the actions involve "one or more common questions of fact"; (2) transfer would be "for the convenience of parties and witnesses"; and (3) transfer would "promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). As movants, Safron Capital Corp. and Brickman Investments Inc. bear the burden of demonstrating that these requirements are met. *See, e.g., In re Chase Inv. Servs. Corp. Fair Lab. Standards Act (FLSA) & Wage & Hour Litig.*, 908 F. Supp. 2d 1372, 1373 (J.P.M.L. 2012) (citing *In re Transocean Ltd. Sec. Litig.*, 753 F. Supp. 2d 1373, 1374 (J.P.M.L. 2010)). Where, as here, the movants seek an "industry-wide MDL," that burden is "heavy." *In re Video Game Addiction Prod. Liab. Litig.*, 2024 WL 2884795, at *2 n.5 (citing *In re Proton-Pump Inhibitor Prods. Liab. Litig.*, 273 F. Supp. 3d 1360, 1362 (J.P.M.L. 2017)).

Even where some common questions of fact exist, informal coordination is preferable to consolidation under Section 1407. *See, e.g., In re Baby Food Mktg., Sales Pracs. & Prod. Liab. Litig.*, 544 F. Supp. 3d 1375, 1378 (J.P.M.L. 2021). Indeed, the Panel has emphasized that consolidation "should be the last solution after considered review of all other options." *Id.* at 1377 (quoting *In re Best Buy Co., Inc., Cal. Song-Beverly Credit Card Act Litig.*, 804 F. Supp. 2d 1376, 1378 (J.P.M.L. 2011)).

**ARGUMENT**

I. **These Actions, Which Involve Different Defendants with Separate Cash Sweep Deposit Programs, Do Not Involve Common Questions of Fact**

The movants cannot satisfy § 1407(a)'s first requirement that there be common questions of fact because they seek to consolidate cases brought by different putative classes against different defendants that arise out of different cash sweep programs, different contracts, and different disclosures. The supposedly common factual questions that the movants identify, *see* Motion at 4, are not common at all. Instead, each purportedly "common" question actually is unique for each defendant and its customers. For instance, facts relevant to whether one defendant "paid unreasonably low interest rates to cash sweep program customers," *id.*, would have no bearing on whether a different defendant paid unreasonably low rates to its different customers. Similarly, whether one defendant and its affiliates "increased their financial gains through the payment of unreasonably low interest rates," *id.*, hinges on facts particular to the financial statements and business practice of that defendant and its affiliates, not common facts across defendants. And finally, whether one defendant "made material misstatements and omitted material facts regarding [its] cash sweep program[]," *id.*, is a distinct factual question from whether a different defendant—which made different statements in different disclosures to different customers—did so.

The movants gloss over these differences and argue that consolidation is appropriate because "[e]ach of the Related Actions share[s] a common core of operative factual allegations based on defendants' failure to pay or secure reasonable interest rates on their cash sweep program customers' cash balances in order to maximize defendants' financial gain from the sweep programs." *Id*. But the supposed "common core" of the these cases boils down to allegations of "similar industry-wide misconduct" which, as the Panel has repeatedly held, do not

support consolidation. *In re Mortg. Indus. Home Affordable Modification Program (HAMP) Cont. Litig.*, 867 F. Supp. 2d 1338, 1338 (J.P.M.L. 2012) (denying industry-wide consolidation because the "alleged circumstances surrounding" each defendant's alleged misconduct differed).

Section 1407(a) requires common factual questions, not similar allegations. As the Panel has explained, that requirement is not met by allegations of similar misconduct or even by the existence of "similar policies and practices by the defendant banks." *In re Paycheck Prot. Program Agent Fees Litig.*, 481 F. Supp. 3d 1335, 1337 (J.P.M.L. 2020). To the contrary, when, as here, "[t]here is no overlap among the defendants," that "indicat[es] an absence of common factual issues and no overlapping discovery." *Id.* at 1337 n.4; *see also, e.g., In re Hotel Indus. Sex Trafficking Litig.*, 433 F. Supp. 3d 1353, 1356 (J.P.M.L. 2020) ("[T]here is no common or predominant defendant across all actions, further indicating a lack of common questions of fact."). Accordingly, the Panel consistently requires a compelling reason "to overcome [its] usual reluctance to centralize actions against different defendants in one MDL." *In re CP4 Fuel Pump Mktg., Sales Pracs., & Prod. Liab. Litig.*, 412 F. Supp. 3d 1365, 1367 (J.P.M.L. 2019).

The other supposedly "common" issues Movants identify are legal—not factual—questions. *See* Motion at 4. For instance, one of the supposedly common issues is "whether defendants violated their contractual obligations, fiduciary duties, or other laws in connection with their establishment and operation of cash sweep programs." *Id.* Another is "whether the proposed classes in the Related Actions should be certified under the Federal Rules of Civil Procedure." *Id.* But those are legal questions, and it is well settled that "[c]ommon legal questions are insufficient to satisfy Section 1407's requirement of common factual questions." *In re Hotel Indus. Sex Trafficking Litig.*, 433 F. Supp. 3d at 1356 (alteration in original) (quoting *In re ABA Law School Accreditation Litig.*, 325 F. Supp. 3d 1377, 1378 (J.P.M.L. 2018)); *see*

*also, e.g.*, *In re Nat'l Ass'n for Advancement of Multijurisdiction Prac. Litig.*, 52 F. Supp. 3d 1377, 1378 (J.P.M.L. 2014) ("[C]ommon legal questions are insufficient to satisfy Section 1407's requirement of common factual questions."); *In re Paycheck Prot. Program Agent Fees Litig.*, 481 F. Supp. 3d at 1337 & n.6 (collecting cases).

Additionally, each of the actions raises factual questions that differ from plaintiff to plaintiff.  Substantial individualized evidence will be required from the plaintiffs and class members in these cases, including evidence related to each plaintiff's account particulars and the agreements governing those accounts; each plaintiff's understanding of what cash sweep rates those accounts would be eligible to receive; the decisions each plaintiff made about what type of account to open, whether to enroll that account in cash sweep, and whether to leave cash in the sweep program rather than directing it to a higher-yield product; and the communications between each plaintiff and the relevant defendant institution.  Discovery into these issues will not overlap between plaintiffs, much less between cases.  As the Panel has recognized, the existence of individualized issues affecting plaintiffs weighs against MDL consolidation.  *See, e.g.*, *In re CP4 Fuel Pump Mktg., Sales Pracs., & Prod. Liab. Litig.*, 412 F. Supp. 3d 1365 at 1366-67.

The movants do not acknowledge that the difference in the defendants and the plaintiffs across actions will give rise to different factual questions.  Instead, they blithely assert that § 1407(a) does not require "strict identity of issues and parties."  Motion at 3.  But the three cases on which Movants rely for that assertion are readily distinguishable.  In one, the cases were all brought against the same defendant (UnumProvident), and both sides supported consolidation.  *See In re UnumProvident Corp. Sec., Derivative & "ERISA" Litig.*, 280 F. Supp. 2d 1377, 1379 (J.P.M.L. 2003).  In the others, the defendant financial institutions were alleged to have colluded to fix prices in violation of federal antitrust laws.  *See In re Treasury Sec. Auction*

*Antitrust Litig.,* 148 F. Supp. 3d 1360, 1362 (J.P.M.L. 2015); *In re London Silver Fixing, Ltd., Antitrust Litig.,* 52 F. Supp. 3d 1381, 1381 (J.P.M.L. 2014).  While allegations of a conspiracy may be able to overcome the Panel's reluctance to consolidate cases against different defendants in certain circumstances, *see In re CP4 Fuel Pump*, 412 F. Supp. 3d at 1367, there are no such allegations here.

In short, individualized issues abound in these cases.  The movants have not identified even a single factual question that is truly common across the actions, much less satisfied their "heavy burden" to show that they "will share sufficient overlap that including them will promote the just and efficient conduct of the litigation."  *In re Video Game Addiction Prod. Liab. Litig.*, 2024 WL 2884795, at *2 n.5 (citing *In re Proton-Pump Inhibitor Prods. Liab. Litig.*, 273 F. Supp. 3d at 1362).

## II.    An MDL Will Not Promote Convenience or Efficiency

The movants' arguments addressing § 1407(a)'s convenience and efficiency requirements fail because the supposedly overlapping pretrial issues they identify do not actually overlap.  First, while Movants observe that "the convenience of the parties and witnesses is furthered by avoiding duplicative discovery," Motion at 5, they do not actually identify any duplicative discovery that would occur across these cases.  As discussed above, the discovery in each case will be focused on each defendant's cash sweep program and each defendant's customers making up the putative class.  Moreover, consolidating these cases, which involve direct competitors, would reduce efficiency and needlessly introduce roadblocks to the discovery process.  As the Panel has recognized, "centralizing competing defendants in the same MDL likely would complicate case management due to the need to protect trade secret and confidential

information." *In re CP4 Fuel Pump Mktg.*, 412 F. Supp. 3d at 1367 (citing *In re Watson Fentanyl Patch Prods. Liab. Litig.*, 883 F. Supp. 2d 1350, 1351 (J.P.M.L. 2012)).

The movants also claim that MDL consolidation will promote efficiency because the cases "will involve many of the same pretrial issues, such as the nature and scope of discovery, the sufficiency of the allegations, and class determinations." Motion at 6-7. But these are merely reasons to consolidate separate actions against the *same* defendant and its affiliates, not consolidate actions against different defendants into a multi-district litigation. *See, e.g.*, *In re CP4 Fuel Pump Mktg.*, 412 F. Supp. 3d at 1366 & n.1 (consolidation of defendant-specific cases makes any "risk of redundant discovery and inconsistent class certification rulings . . . less significant" and weighs against MDL consolidation). Indeed, J.P. Morgan agreed to consolidate the two actions that had been brought against it in the Southern District of New York and also sought to transfer one of the actions filed against it, the *Canales* Action, from the Central District of California to the Southern District of New York for these precise reasons. The other defendants in these cases are similarly seeking the similar transfer and consolidation of cases brought against them. The consolidation of cases brought against each single defendant and its affiliates will ensure efficiency and promote convenience to the parties and witnesses. The movants do not address these consolidations or explain why an MDL is needed in light of them. Nor could they, as the MDL Panel has "repeatedly observed" that transfer pursuant to 28 U.S.C. § 1404 and the first-to-file rule, as has occurred already in these actions, "is preferable to Section 1407 centralization." *In re Baby Food Mktg., Sales Pracs. & Prod. Liab. Litig.*, 544 F. Supp. 3d at 1378 (citing *In re Gerber Probiotic Prods. Mktg. & Sales Practices Litig.*, 899 F. Supp. 2d 1378, 1380–81 (J.P.M.L. 2012).

Finally, the movants have not even attempted to explain why multidistrict consolidation, rather than informal coordination, is needed.  While the movants claim there are 21 "Related Actions" to be consolidated, that number is substantially reduced by the ongoing transfer and consolidation of cases against unique defendants and their affiliated entities.  *See supra* at 4 (discussing transfer and consolidation of cases).  Moreover, many plaintiffs' firms have banded together to form a single working alliance, *supra* at 4-5, meaning there are relatively few groups of counsel involved in these cases.  As the Panel has recognized, when there is a "limited number of overlapping plaintiffs' counsel," that counsel is "well-positioned to facilitate informal coordination."  *In re Hotel Indus. Sex Trafficking Litig.,* 433 F. Supp. 3d at 1357.  Therefore, to the extent any overlapping issues arose, they could readily be addressed without MDL consolidation.  *See Manual for Complex Litigation, Fourth* § 20.14 (2004) (encouraging judges to "coordinate proceedings in their respective courts to avoid or minimize duplicative activity and conflicts"); *see also, e.g.*, *In re ABA L. Sch. Accreditation Litig.*, 325 F. Supp. 3d at 1379 (observing that parties can file notices of deposition across actions, stipulate that overlapping discovery may be used across actions, and request court orders directing the parties to coordinate other pretrial activities).

## CONCLUSION

For the foregoing reasons, J.P. Morgan respectfully requests that the Panel deny the movants' motion for transfer and consolidation pursuant to 28 U.S.C. §1407.

- 12 -

Dated: November 27, 2024

Respectfully Submitted,

/s/ Laura Washington Sawyer

Laura Washington Sawyer
JONES DAY
250 Vesey Street
New York, NY  10281
Telephone: +1.212.326.3936
lwsawyer@jonesday.com

*Counsel for Defendants J.P. Morgan Securities LLC and JPMorgan Chase & Co.*