BEFORE THE UNITED STATES JUDICIAL
PANEL ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE: CASH SWEEP PROGRAMS CONTRACT LITIGATION | MDL 3136 |

**PLAINTIFF CAMPTON'S RESPONSE IN OPPOSITION TO THE MOTION FOR TRANSFER AND COORDINATION PURSUANT TO 28 U.S.C. § 1407**

Plaintiff Robert J. Campton Jr. ("Plaintiff Campton") respectfully submits this response in opposition to the motion to transfer filed by Plaintiffs Safron Capital Corp. and Brickman Investments Inc. ("Movants") pursuant to 28 U.S.C. § 1407 for Consolidated or Coordinated Pretrial Proceedings.

**I.      PRELIMINARY STATEMENT**

Pending before the Panel is Movants' motion to transfer 23 actions ("Related Actions") against financial services companies in the United States, such as banks and brokerage firms, who offer "cash sweep" programs to their customers ("Motion").[1]  The Motion argues that the Related Actions should be consolidated because of commonalities among the various defendants' alleged unlawful failure to pay or secure reasonable interest rates on cash sweep programs' customer cash balances.  But despite similar legal theories, there are many factual and legal differences between the cases—including the parties involved and the progress of the underlying actions.  Accordingly, the Motion should be denied to permit the actions against each defendant to be self-organized.[2]

---

[1] Movants identified 21 actions pending in eight jurisdictions. ECF 1 ("Mot.").  After the filing of the Motion, Plaintiff Campton filed his Notice of Related Action on November 19, 2024 and Plaintiff DM Cohen, Inc. filed its Notice of Related Action on November 25, 2024.  ECF 12, 58.  Accordingly, presently before the Panel are 23 actions pending in nine jurisdictions.  *Id.*

[2] *See e.g., Mehlman v. Ameriprise Financial, Inc.*, No. 0:24-cv-03018-JRT-DLM (D.M.N. Oct. 3, 2024), ECF 50 (Order consolidating cases against Ameriprise Financial, Inc.); *Goldsmith v. UBS Financial Services Inc.*, No. 1:24-cv-6354-GHW-GWG (S.D.N.Y. Nov. 1, 2024), ECF 29 (Order consolidating cases against UBS Financial Services Inc.).

The Related Actions name twelve different banks and brokerage firms and implicate defendant-specific inquiries, including how the structures for defendants' "cash sweep" programs function, how interest was accrued and distributed (and the variations in the interest rates offered and adjustments to those rates over time), and to whom these products were offered (*e.g.*, retail, high net-worth, or institutional clients). Most importantly, there will be little to no overlap in the discovery to be produced by the parties which will differ from defendant to defendant. Indeed, each defendants' documents and evidentiary record will be drastically different, and there will be practically zero overlap in witnesses or in findings of what a defendant knew and when they knew it.

Moreover, only five of twelve defendants are headquartered in New York -- the others are located in Minnesota, Pennsylvania, Massachusetts, South Carolina, North Carolina, Virginia, and Florida. Yet the Related Actions involve violations of *state law*. The cases are also at different procedural postures, filed months, even *years* apart, with one action already having a briefing schedule set for summary judgment. *See, e.g., Valelly v. Merrill Lynch, Pierce, Fenner & Inc.*, No. 1:19-cv-07998 (S.D.N.Y.), ECF 262. These stark differences among the defendants would make the proposed MDL inefficient and impractical.

The Panel has repeatedly emphasized that centralization under Section 1407 "should be the last solution after considered review of all other options." *In re Comcast Corp.*, 190 F. Supp. 3d 1344, 1345 (J.P.M.L. 2016) (cleaned up). Here, the actions against each defendant are already being self-organized and consolidated. An MDL simply is not necessary. In fact, it is almost sure to create inefficiency, confusion, and delay. For these reasons, Movants' request for an MDL should be denied.

II.     <u>FACTUAL BACKGROUND</u>

There are currently twenty-three related class action lawsuits pending in nine jurisdictions

against twelve different financial services companies, such as banks and brokerage firms, who offer "cash sweep" programs to their customers. Mot. at 1. A cash sweep program is a "service provided by a broker or dealer where it offers to its client the option to automatically transfer free credit balances in the securities account of the client to either a money market mutual fund product . . . or an account at a bank whose deposits are insured by the Federal Deposit Insurance Corporation." *See* 17 CFR 240.15c3-3(a)(17). Sweep deposits provide an important source of capital for banks—the difference between the interest rate paid on a sweep account and the interest rate earned by a bank contributes to the bank's net interest income. ECF 12-3 at 7.

Plaintiffs in the Related Actions allege that each of the defendants unlawfully enriched themselves by failing to pay or secure reasonable cash sweep interest rates on their customers' cash balances. Mot. at 1. Yet the actual questions and legal issues in common between the cases against each defendant end at this surface level generalization. The factual and legal distinctions are clear and will include:

- Diverse Cash Sweep Programs: Defendants utilized different types of cash sweep mechanisms, such as bank deposit programs versus money market funds, leading to variations in risk profiles and returns for clients;

- Client Agreements: The contractual terms between clients and defendants varied, including differences in interest rates, fees, and the management of cash balances;

- Applicable Law: Defendants operated in different states and so the fiduciary and contractual obligations each defendant owed to their clients must be examined under the applicable common law doctrines in each state;

- Choice of Law and Venue Provisions: Contracts specified different governing laws, and determining where an action may be filed;

- Policies and Procedures: Each defendant had unique internal policies regarding interest rate setting and cash management, which affected their conduct and client outcomes;

- Financial Instruments Used: Defendants used different financial instruments for cash sweeps resulting in differences in returns and risk exposure for clients;

- Decision-Makers: The individuals or committees responsible for setting interest rates and policies varied among defendants, resulting in different operational decisions and practices;

- Knowledge of Misconduct: Some defendants may have willfully engaged in the misconduct, while others did so negligently or inadvertently, resulting in varying degrees of culpability; and

- Customer Bases: Defendants served different types of clients—retail, institutional, or high-net-worth—which influenced how their cash sweep programs were structured and managed.

### III. ARGUMENT

#### A. MOVANTS HAVE FAILED TO MEET THEIR BURDEN TO SHOW CENTRALIZATION IS NECESSARY OR DESIRABLE

To succeed in their bid to centralize the litigation pursuant to 28 U.S.C. § 1407, Movants must show: (1) common questions of fact among the cases; (2) consolidation serves the convenience of the parties and witnesses; and (3) transfer and consolidation serve the just and efficient conduct of the actions. 28 U.S.C. § 1407. The movants bear the burden of persuasion on all three factors. *In re Best Buy Co., Inc., Cal. Song-Beverly Credit Card Act Litig.*, 804 F. Supp. 2d 1376, 1379 (J.P.M.L. 2011). Movants do not meet this burden on any of the three factors.

##### 1. The Minimal Factual Overlap Between Cases Counsels Against Centralization

The Panel regularly denies centralization where cases present minimal factual overlap, or where the common inquiries are not complex. *See, e.g., In re Accellion, Inc., Customer Data Sec. Breach Litig.*, 543 F. Supp. 3d 1372, 1374 (J.P.M.L. 2021) (denying consolidation and transfer where "any factual overlap . . . may be eclipsed by factual issues specific to each client defendant"); *In re Energy Drilling, LLC Litig.*, 140 F. Supp. 3d 1333, 1334 (J.P.M.L. 2015) (denying consolidation because of "limited factual overlap").

The Panel's decision in *In re: Bank of New York Mellon Securities Lending Litig.*, 716 F. Supp. 2d 1361 (J.P.M.L. 2010) ("*BNY Mellon*"), is particularly instructive. There, participant

plaintiffs allegedly lost money as a result of investments of their collateral in a bank's lending program. *Id.* at 1362. The Panel denied centralization, reasoning that while "at first blush, the cases might seem to benefit from centralization" there existed "[u]nique issues concerning each respective plaintiff's participation…likely to overwhelm any common factual issues." *Id.* For instance, the actions involved "allegations that defendants breached…separate agreements[,]" there existed issues unique to plaintiffs' "participation in the…program[,]" and there were differences between the parties that may have "touch[ed] upon unique legal issues and involve[d] discovery sources not present in the other actions." *Id.* Finally, because one of the actions was significantly more advanced than the others, for that reason too, consolidation was inappropriate. *Id.*

Here, as in *BNY Mellon*, the factual overlap between the cases (if any) is overwhelmingly outweighed by highly individualized factual inquiries into each defendant. The cases against each of defendants' customers involve separate breaches of fiduciary duty, contractual duties, or incidents of unjust enrichment. The claims against each defendant will revolve around highly individualized factual and legal issues. The only "common question[] of fact among the cases" is the question of whether any given financial institution's cash sweep program was lawful—and as described above there is no common answer to that question nor common set of facts or legal analysis that would be furthered by the creation of an MDL. 28 U.S.C. § 1407.

Although *BNY Mellon* concerned only one putative class action and three individual actions, the Panel has also often found that in the context of class actions when "only a minimal number of actions are involved, the proponent of centralization bears a heavier burden to demonstrate that centralization is appropriate." *In re Emerg. Helicopter Air Ambul. Rate Litig.*, 273 F. Supp. 3d 1365, 1366 (J.P.M.L. 2017) (citing *In re Transocean Ltd. Sec. Litig. (No. II)*, 753

F. Supp. 2d 1373, 1374 (J.P.M.L. 2010), and denying consolidation of four class actions that alleged the provider of helicopter air ambulance services overcharged patients). Here, as in *Emerg. Helicopter*, there are, at most, four class actions pending against each individual defendant—with the exception of Wells Fargo & Company which is named as a defendant in six class actions—and with only one class action pending against defendants Bank of America Corporation and E*Trade Securities. ECF 3-1. Instead, "informal cooperation among the relatively few involved attorneys and coordination among the involved courts, are eminently feasible and will be sufficient to minimize any potential for duplicative discovery or inconsistent pretrial rulings."[3] *Emerg. Helicopter*, 273 F. Supp. at 1367. As stated above, the parties have already begun the process of self-organizing in several of the Related Actions. The "'mere possibility' of additional actions […] does not support centralization of this litigation." *In re California Wine Inorganic Arsenic Levels Prods. Liab. Litig.*, 109 F. Supp. 3d 1362, 1363 (J.P.M.L. 2015).

Movants list several purported factual and legal similarities between the cases they seek to centralize. Mot. at 2-3. But they fail to recognize that the answers to their questions—*i.e.*, whether the financial institutions breached their fiduciary obligations, caused injury to customers, violated the common law, etc.—will vary depending on which defendant the question pertains to.

---

[3] *See also In re: Nutella Mktg. and Sales Pracs. Litig.*, 804 F. Supp. 2d 1374 (J.P.M.L. 2011) (denying centralization of three nationwide class actions in two districts concerning "alleged misrepresentations of Nutella as a healthy and nutritious food"); *In re: Skinnygirl Margarita Beverage Mktg. and Sales Pracs. Litig.*, 829 F. Supp. 2d 1380 (J.P.M.L. 2011) (denying centralization of six nationwide class actions in six districts where "the central allegation that Skinnygirl Margarita beverage was marketed as being all natural despite some level of sodium benzoate appears to be undisputed"); *In re: Kashi Co. Mktg. and Sales Pracs. Litig.*, 959 F. Supp. 2d 1357 (J.P.M.L. 2013) (denying centralization where no party opposed centralization in the Southern District of California of four nationwide class actions in two districts alleging the presence of allegedly inappropriate terms "evaporated cane juice" or "evaporated cane juice crystals" in numerous products).

Movants' reliance on *In re UnumProvident Corp. Sec., Derivative & "ERISA" Litig.*, 280 F. Supp. 2d 1377 (J.P.M.L. 2003) is likewise misplaced. The case serves as a stark point of contrast. In *UnumProvident*, twelve actions alleging violations of the Employee Retirement Income Security Act of 1974 (ERISA) were brought by policyholders against **one corporate defendant** and its related entities. *Id.* at 1379. That fact was central to the Panel's decision to create an MDL: finding "all actions can be expected to focus on a significant number of common events, defendants, and/or witnesses. " *Id.* Here, none of those common events, defendants, or witnesses are present. To the extent that multiple actions have been filed against one defendant, those actions may self-organize including through informal coordination or transfer pursuant to 28 U.S.C. § 1404.

At most, the cases only overlap insofar as they allege a common course of conduct through defendants not passing on their returns from plaintiffs' capital. *See infra* § II. Yet, this issue is discrete as to each defendant, because it must be litigated under the lens of the common law for the governing state and in the context of what each defendant did or did not do. It does not require erecting a large-scale MDL that would include many other disparate factual issues irrelevant to the claims against each defendant. The first factor therefore weighs in favor of denying Movants' request for centralization.

>             2.     The Requested Centralization Would Inconvenience the Parties and Witnesses

The Panel's "past decisions make clear that centralization under Section 1407 should be the last solution after considered review of all other options." *In re Comcast Corp.*, 190 F. Supp. 3d 1344, 1345 (J.P.M.L. 2016) (internal quotation marks and citations omitted) (denying motion for centralization). Such alternatives "include transfer pursuant to 28 U.S.C. § 1404, as well as voluntary cooperation and coordination among the parties and the involved courts to avoid

duplicative discovery or inconsistent pretrial rulings." *Id.*; *see also In re Mirena IUS Levonorgestrel-Related Prods. Liab. Litig.*, 38 F. Supp. 3d 1380, 1381 (J.P.M.L. 2014) (denying motion for centralization) ("[I]nformal cooperation among the involved attorneys is both practicable and preferable to centralization."). Rather what makes most sense is to continue what many of the parties have already started pursuing: separate single-defendant consolidated proceedings.

### 3. Centralization is Not Efficient Here

Centralization will not lead to more efficient pre-trial proceedings—on the contrary, it will expand and complicate what should be straightforward defendant-specific discovery into a morass that combines 12 separate streams of discovery of 12 entirely separate defendants and their related entities and subsidiaries (all with their own unique and separate defenses and factual issues, and unique damages considerations). *See In re Varsity Athlete Abuse Litig.*, 677 F. Supp. 3d 1376, 1378 (J.P.M.L. 2023) (denying centralization where "[d]iscovery regarding each individual defendant's conduct and their relationship to and interactions with the common defendants will not overlap. Therefore, any efficiencies to be gained by centralization may be diminished by unique factual issues.").

The Panel may be inclined to find that the number of defendants and districts involved in this litigation, along with the possibility of overlapping classes, weighs in favor of consolidation. But the opposite is true. To sweep all related cases into a single MDL would only complicate and prolong pretrial issues, require complex motions practice, multiple discovery tracks, and a lengthy bellwether process. *See In re OSF Healthcare Sys. Emp. Ret. Income. Sec. Act (ERISA) Litig.*, 223 F. Supp. 3d 1343, 1344 (J.P.M.L. 2016) (denying centralization despite overlapping classes of plaintiffs because of small number of actions and coordination efforts among the parties). To the

extent discovery does overlap across certain cases, the parties can easily achieve efficiencies by coordinating and sharing third-party discovery via stipulations as necessary.

In short, centralization is neither efficient nor necessary here.

## IV.  CONCLUSION

For the foregoing reasons, the Motion should be denied.

Dated: November 27, 2024                                      Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　　　　　/s/ James E. Cecchi
　　　　　　　　　　　　　　　　　　　　　　　　James E. Cecchi
　　　　　　　　　　　　　　　　　　　　　　　　Kevin G. Cooper
　　　　　　　　　　　　　　　　　　　　　　　　Jordan M. Steele
　　　　　　　　　　　　　　　　　　　　　　　　**CARELLA BYRNE CECCHI**
　　　　　　　　　　　　　　　　　　　　　　　　**BRODY & AGNELLO, P.C.**
　　　　　　　　　　　　　　　　　　　　　　　　5 Becker Farm Road
　　　　　　　　　　　　　　　　　　　　　　　　Roseland, New Jersey 07068
　　　　　　　　　　　　　　　　　　　　　　　　Telephone: (973) 994-1700
　　　　　　　　　　　　　　　　　　　　　　　　Email: jcecchi@carellabyrne.com
　　　　　　　　　　　　　　　　　　　　　　　　Email: kcooper@carellabyrne.com
　　　　　　　　　　　　　　　　　　　　　　　　Email: jsteele@carellabyrne.com

　　　　　　　　　　　　　　　　　　　　　　　　Joseph H. Meltzer
　　　　　　　　　　　　　　　　　　　　　　　　Ethan Barlieb
　　　　　　　　　　　　　　　　　　　　　　　　**KESSLER TOPAZ**
　　　　　　　　　　　　　　　　　　　　　　　　  **MELTZER & CHECK, LLP**
　　　　　　　　　　　　　　　　　　　　　　　　280 King of Prussia Road
　　　　　　　　　　　　　　　　　　　　　　　　Radnor, Pennsylvania 19087
　　　　　　　　　　　　　　　　　　　　　　　　Telephone: (610) 667-7706
　　　　　　　　　　　　　　　　　　　　　　　　Email: jmeltzer@ktmc.com
　　　　　　　　　　　　　　　　　　　　　　　　Email: ebarlieb@ktmc.com

　　　　　　　　　　　　　　　　　　　　　　　　*Counsel for Plaintiff Robert J. Campton Jr.*
　　　　　　　　　　　　　　　　　　　　　　　　(24-8629, S.D. New York)