**BEFORE THE UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE: CASH SWEEP LITIGATION | Case MDL No. 3136 |

**RESPONSE IN OPPOSITION TO MOTION FOR TRANSFER AND
CONSOLIDATION UNDER 28 U.S.C. § 1407 BY PLAINTIFFS SARAH VALELLY,
MARGARET MCCRARY, SERGEY BURMIN AND KENNETH W. LUKE**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii
I.   INTRODUCTION ........................................................................................................... 1
II.  BACKGROUND ............................................................................................................. 2
III. ARGUMENT ................................................................................................................... 7
     A.   The Actions Do Not Share Predominating Common Factual Issues ...................... 7
     B.   Transfer Would Be Unjust ..................................................................................... 11
IV.  CONCLUSION ............................................................................................................. 13

# TABLE OF AUTHORITIES

**Cases**

*In re Benzoyl Peroxide Mktg.*,
  No. MDL No. 3120, 2024 U.S. Dist. LEXIS 136839 (J.P.M.L. Aug. 1, 2024) .......................... 9

*In re Brandywine Communs. Techs., LLC*,
  959 F. Supp. 2d 1377 (J.P.M.L. 2013) .......................................................................... 7

*In re Checking Account Overdraft Litig.*,
  626 F. Supp. 2d 1333 (J.P.M.L. 2009) ........................................................................ 10

*In re CP4 Fuel Pump Mktg. Sales Practices, & Prods. Liab. Litig.*,
  412 F. Supp. 3d 1365 (J.P.M.L. 2019) .......................................................................... 9

*In re Droplets, Inc.*,
  908 F. Supp. 2d 1377 (J.P.M.L. 2012) ........................................................................ 12

*In re Enhanced Recovery Co., LLC*,
  278 F. Supp. 3d 1371 (J.P.M.L. 2017) ........................................................................ 12

*In re Fla., P.R., & United States V.I. 2016 & 2017 Hurricane Seasons Flood Claims Litig.*,
  325 F. Supp. 3d 1367 (J.P.M.L. 2018) ........................................................................ 13

*In re Hotel Indus. Sex Trafficking Litig.*,
  433 F. Supp.3d 1353 (J.P.M.L. 2020) .......................................................................... 8

*In re IDT Corp. Calling Card Terms Litig.*,
  278 F. Supp. 2d 1381 (J.P.M.L. 2003) ........................................................................ 10

*In re Janus Mut. Funds Inv. Litig.*,
  310 F. Supp. 2d 1359 (J.P.M.L. 2004) ........................................................................ 10

*In re Japanese Elec. Prods. Antitrust Litig.*,
  388 F. Supp. 565 (J.P.M.L. 1975) .............................................................................. 10

*In re Lehman Brothers Holdings, Inc., Sec. & Emp. Ret. Income Sec. Act (ERISA) Litig.*,
  598 F. Supp. 2d 1362 (J.P.M.L. 2009) ........................................................................ 10

*In re Lloyds Bank PLC Int'l Mortg. Serv. Loan Litig.*,
  997 F. Supp. 2d 1352 (J.P.M.L. 2014) ........................................................................ 12

*In re Louisiana-Pacific Corp.*,
  867 F. Supp. 2d 1346 (J.P.M.L. 2012) ........................................................................ 12

*McCrary v. Merrill Lynch, Pierce, Fenner & Smith Inc.*,
  23-CV-10768-VM-BCM, 2024 U.S. Dist. LEXIS 92103 (S.D.N.Y. May 20, 2024) ................. 4

*In re Multidistrict Litig. Involving Banking Agreements with Stirling Homex Corp.*,
  388 F. Supp. 572 (J.P.M.L. 1975) .............................................................................. 10

*In re Pilot Flying J Fuel Rebate Contract Litig (No. II)*,
   11 F. Supp. 3d 1351 (J.P.M.L. 2014) .......................................................................................... 10

*In re Prescription Drug Co-Pay Subsidy Antitrust Litig.*,
   883 F. Supp. 2d 1334 (J.P.M.L. 2012) ........................................................................................ 10

*In re Proton-Pump Inhibitor Prods. Liab. Litig.*,
   273 F. Supp. 3d 1360 (J.P.M.L. 2017) .......................................................................................... 9

*In re Qwest Communs. Int'l, Inc.*,
   395 F. Supp. 2d 1360 (J.P.M.L. 2005) ........................................................................................ 13

*In re Republic Nat'l-Realty Equities Sec. Litig.*,
   382 F. Supp. 1403 (J.P.M.L. 1974) ............................................................................................. 10

*In re Secondary Ticket Mkt. Refund Litig.*,
   481 F. Supp. 3d 1345 (J.P.M.L. 2020) .......................................................................................... 8

*In re Table Saw Prods. Liab. Litig.*,
   641 F. Supp. 2d 1384 (J.P.M.L. 2009) ........................................................................................ 12

*In re Tex. Prison Conditions-Of-Confinement Litig.*,
   52 F. Supp. 3d 1379 (J.P.M.L. 2014) .......................................................................................... 12

*In re Treasury Sec. Auction Antitrust Litig.*,
   148 F. Supp. 3d 1360 (J.P.M.L. 2015) ........................................................................................ 10

*In re UnumProvident Corp. Sec., Derivative & "ERISA" Litig.*,
   280 F. Supp. 2d 1377 (J.P.M.L. 2003) ........................................................................................ 10

*In re Video Game Addiction Prods. Liab. Litig.*,
   No. MDL No. 3109, 2024 U.S. Dist. LEXIS 102145 (J.P.M.L. June 5, 2024) .......................... 9

*In re Yamaha Motor Corp. Rhino ATV Prods. Liab. Litig.*,
   597 F. Supp. 2d 1377 (J.P.M.L. 2009) ........................................................................................ 13

*In re: Yellow Brass Plumbing Component Prods. Liab. Litig.*,
   844 F. Supp. 2d 1377 (J.P.M.L. 2012) .......................................................................................... 9

**Statutes**

26 U.S.C. § 4975 ................................................................................................................................ 5

28 U.S.C. § 1407 ........................................................................................................................... 7, 8

29 U.S.C. §1108 ................................................................................................................................ 5

I. **INTRODUCTION**

Wolf Popper LLP, undersigned counsel, represents Sarah Valelly, Margaret McCrary, Sergey Burmin and Kenneth Luke (the "Retirement Claim Plaintiffs"), in a series of three actions on behalf of Individual Retirement Account ("IRA") customers that derive from contractual obligations to pay "reasonable" interest rates in cash sweep programs: (i) the first-filed action, *Valelly v. Merrill Lynch, Pierce, Fenner & Smith Inc.,* C.A. No. 1:19-cv-07998-VEC (S.D.N.Y.) ("*Valelly*"; assigned to Judge Valerie Caproni); (ii) *McCrary v. Merrill Lynch, Pierce, Fenner & Smith Inc.,* C.A. No. 1:23-cv-10768-VM-BCM (S.D.N.Y.) ("*McCrary*"; assigned to Judge Victor Marrero); and (iii) *Burmin, et al. v. E*Trade Securities, et al.,* C.A. No. 2:24-cv-00603-ES-MAH (D.N.J.) ("*Burmin*"; assigned to Judge Esther Salas) (the "Retirement Claim Actions"). These three actions precede each of the other actions sought to be consolidated. Retirement Claim Plaintiffs oppose the motion for transfer and consolidation filed by Safron Capital Corp. and Brickman Investments Inc. ("Movants") in this above-captioned proceeding (the "Motion").

Movants seek an industry-wide centralization over actions that are not related and that (at least with respect to the Retirement Claim Actions) are too far progressed. Indeed, Judge Caproni of the Southern District of New York, whom Movants identify as a preferred transferee judge (ECF 1-1 at 13), has already considered whether two of these actions, *Valelly* and *McCrary*, are related to each other and determined that they are not. *See infra* at 4. Although the *Safron* action against Merrill Lynch, Pierce Fenner & Smith, Inc. ("Merrill") was filed as related to both *Valelly* and *McCrary*, it alleged a different theory of liability on behalf of non-retirement accountholders, which is not based on the reasonable rate provision at issue in the Retirement Claim Actions. There is no indication that the plaintiff in *Safron* (an entity, not an individual) is an individual retirement accountholder. *Safron* was also assigned by the Clerk of the Court to a different judge.

1

Even if the actions sought to be centralized were related, their centralization would be inconvenient, inefficient, and unjustly prejudice the putative classes. *Valelly* in particular, has been pending for over ***five years***, and the parties have completed merits discovery and expert discovery and are currently briefing summary judgment. *McCrary* (commenced in December 2023) and *Burmin* (commenced in February 2024) are likewise further progressed than the other cases Movants seek to centralize—discovery has been underway in both cases for months—and the putative classes represented would be materially prejudiced from centralization and the corresponding inefficiencies and delays that would occur if the Motion is granted. Movant's motion should be denied in all respects, and certainly with respect to *Valelly*, *McCrary*, and *Burmin,* i.e., the Retirement Claim Actions.

## II.     BACKGROUND

Retirement Claim Plaintiffs allege breach of contract claims on behalf of classes of online retirement accountholders, based on brokerage terms requiring the payment of a "reasonable rate" of interest on retirement assets.

*Valelly* was initiated on August 27, 2019, and alleges that Merrill breached the term of its Merrill Edge Self-Directed Investing Client Relationship Agreement ("CRA") providing that "[t]he interest paid on retirement account assets will be at no less than a reasonable rate." *Valelly*, ECF 55. Specifically, Valelly alleges that the sweep rate paid to brokerage customers as part of Merrill's Retirement Asset Savings Program ("RASP"), whereby Merrill automatically transfers free credit balances to its affiliate, Bank of America, N.A. ("BANA"), was unreasonably low. During the five years spent litigating *Valelly* before Judge Caproni, the parties have completed extensive fact and expert discovery and engaged in substantial motion practice. On September 27, 2024, the Court issued its most recent ruling on the parties' competing *Daubert* motions, sustaining

in substantial part the testimony of both sides' experts (*Valelly*, ECF 257, the "*Daubert* Decision"), and thereafter, on October 21, 2024, set a schedule for summary judgment motions, to be filed no later than November 27, 2024, i.e., today. *Valelly*, ECF 263.[1]

The JPML Motion, at 9 n.1, while acknowledging that *Valelly* is in "advanced" stages, claims (without citation) that it is "not a class action." This statement is not accurate. *Valelly* has always been litigated as a class action, although the Court has deferred ruling on class certification in favor of first ruling on *Daubert* and summary judgment motions. *Valelly,* ECF 145, 263.[2]

The *McCrary* case was initiated on December 11, 2023, on behalf of a putative class of online Merrill Edge retirement account customers from March 17, 2022 through the present, alleging that, in the high post-Covid interest rate environment, Merrill is now breaching its reasonable rate obligations even more brazenly, with rates on similar cash preservation products paying hundreds of times more than RASP, which pays most customers only 0.01% in interest. *McCrary*, ECF 1.

*McCrary* was filed as a separate action against the same defendant (Merrill) because merits and expert discovery already had been completed in *Valelly* when market interest rates beginning in 2022 had begun to increase after a two-year hiatus of near-zero interest rates caused by the Covid-19 pandemic. Although market benchmark rates, such as the federal funds rate, increased to above 5.0% in 2023, Merrill's sweep rates stayed at 0.01%, warranting the filing of a new action on behalf of retirement account customers who were underpaid in this more recent period.

---

[1] Earlier motions for summary judgment (filed alongside *Daubert* motions) were dismissed without prejudice on October 10, 2023 (*Valelly,* ECF 213), as the Court directed the parties to re-file standalone *Daubert* motions. *Valelly,* ECF 218.

[2] Without prejudging the issue, Judge Caproni stated at an April 7, 2023 conference, following briefing on class certification, that she "in all likelihood" would ultimately certify a class of retirement customers alleging a breach of the CRA. *Valelly,* ECF 171 at 4.

Upon filing *McCrary*, counsel filed a statement of relatedness identifying *Valelly* as "related" to *McCrary*, but noted that the "two actions are different in that the rates paid by Merrill are lower in the second period and underlying market conditions are different." *McCrary,* ECF 4. Judge Caproni determined that the two cases were **not** related, and *McCrary* is now proceeding before Judge Marrero.[3] On February 21, 2024, the Court stayed Merrill's deadline to respond to the complaint until 30 days after the *Daubert* Decision in *Valelly*, but ordered the parties to proceed with preliminary stages of discovery. *McCrary,* ECF 24. As such, the parties have served initial disclosures, and served and responded to interrogatories and document requests (including a subpoena served on BANA, which BANA has responded to). The parties and BANA have met and conferred extensively on discovery issues, including the breadth of certain discovery requests, custodians, and search terms. Plaintiff has also filed one motion to compel, which was successful.[4] As 30 days have now passed since the September 27, 2024 *Daubert* Decision, the partial stay of *McCrary* has expired. In anticipation of forthcoming document discovery, the parties submitted a protective order to the Court, which was so-ordered on November 13, 2024. *McCrary,* ECF 37. On October 30, 2024, Merrill filed a joint motion to strike certain allegations in McCrary's complaint pursuant to Rule 12(f) of the Federal Rules of Civil Procedure and for a continued stay pending resolution of the Motion (*McCrary* ECF 33), and McCrary filed her opposition on November 15, 2024. *McCrary,* ECF 38.

The *Burmin* case was initiated on February 1, 2024 against E*Trade Securities LLC ("E*TRADE") and Morgan Stanley Smith Barney LLC ("Morgan Stanley") on behalf of a putative

---

[3] *See* December 13, 2023 minute entry ("CASE DECLINED AS NOT RELATED. Case referred as related to 1:19-cv-07998-VEC and declined by Judge Valerie E. Caproni and returned to wheel for assignment").

[4] *See McCrary v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 23-CV-10768-VM-BCM, 2024 U.S. Dist. LEXIS 92103 (S.D.N.Y. May 20, 2024).

4

class of E*TRADE retirement account customers. *Burmin* alleges that E*TRADE and Morgan Stanley breached their contractual obligation to pay E*TRADE retirement account customers a "reasonable rate of interest" on their free credit balances under their own sweep programs. *Burmin*, ECF 1.[5] The parties have fully briefed E*TRADE and Morgan Stanley's motion to dismiss, with replies filed on June 17, 2024. *See Burmin*, ECF 38. In the interim, the parties have served initial disclosures and served and responded to document requests and interrogatories, repeatedly met and conferred about discovery and ESI issues, appeared at multiple status conferences before Judge Michael Hammer, the assigned magistrate judge (*Burmin,* ECF Nos. 41, 45), and negotiated and thereafter filed a protective order and ESI stipulation, both of which were so-ordered by the Court on October 11, 2024. *Burmin* ECF Nos. 43, 44.  The parties have also begun document production, with more extensive productions forthcoming once the Court rules on Defendants' motion to dismiss.

Each of the Retirement Claim Actions allege claims predicated on contracts informed by ERISA Section 408, 29 U.S.C. § 1108, and Internal Revenue Code Section 4975, 26 U.S.C. § 4975.  Those statutes define related party transactions, such as sweeps to affiliates, as "prohibited transactions," but create a safe harbor if the conflict-of-interest transaction still pays a "reasonable" interest rate.  The corresponding brokerage agreements, consistent with the statutes, require the payment of a "reasonable rate" to retirement accountholders, who are, as a result, differently situated than taxable accountholders.  *See, e.g., Burmin,* ECF 1 ¶¶44-58 (discussing statutory and regulatory background of reasonable rate provisions found in some brokerage agreements).

---

[5] The *Burmin* plaintiffs initially held retirement accounts with E*TRADE.  E*TRADE was acquired by and consolidated into Morgan Stanley effective September 1, 2023, upon which plaintiffs' account name changed to "E*TRADE from Morgan Stanley."  Morgan Stanley continues to do business both as E*TRADE from Morgan Stanley and as Morgan Stanley.

Movants' motion seeks to centralize several purportedly related class action lawsuits (which they call the "Related Actions"), including the *Valelly, McCrary*, and *Burmin* cases, against a myriad of "financial services companies, such as banks and brokerage firms, who offer 'cash sweep programs' to their customers." *See* ECF 1-1 at 1. These actions involve dissimilar claims ranging from breach of contract to breach of fiduciary duties to violations of regulatory obligations, and now, with the intervention of Movants, violations of RICO and corresponding mail and wire fraud statutes. These actions involve different defendants, many of whom are direct competitors, different contracts and different disclosures. Movants do not allege that they anticipate any common witnesses or document depositaries.

The actions further involve non-overlapping classes, and these classes and subclasses often consist of various brokerage customers, not just retirement customers like the Retirement Claim Plaintiffs. For example, another case against Morgan Stanley was filed on June 14, 2024, *Sherlip v. Morgan Stanley, et al.*, No. 24-CV-4571 (VEC) (S.D.N.Y.), on behalf of Morgan Stanley brokerage customers with taxable (i.e., non-retirement) accounts. In a joint letter to Judge Caproni, counsel for *Sherlip* confirmed that *Sherlip* "does not encompass the E*TRADE class and the proposed classes in *Burmin* and [*Sherlip*] do not overlap." *Sherlip*, ECF 27 at 1 n.1.

At no time did Movants or their counsel contact the undersigned counsel to suggest that any of their cases be centralized with the Retirement Claim Actions before the same judge. Instead, Movants now request the formation of a colossal and untenable industry-wide MDL among varied and differently situated classes, against an expansive list of financial institution defendants, many of whom are competitors.

### III. ARGUMENT

Pursuant to 28 U.S.C. § 1407(a), this Panel should centralize "civil actions involving one or more common questions of fact" only if it "determin[es] that transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." Movants have failed to show that centralization is warranted here. Instead, Movants (purported customers of brokerage accounts with multiple defendants) have filed belated and duplicative actions and thereafter sought to "MDL" *all* earlier actions alleging inadequate sweep rates against any broker, which is not to the benefit of any of the parties or witnesses. *See In re Brandywine Communs. Techs., LLC,* 959 F. Supp. 2d 1377, 1379 (J.P.M.L. 2013) (citation omitted) ("The Panel's primary purpose is not to divine the motives and strategies of the various litigants …. Nevertheless, where a Section 1407 motion appears intended to further the interests of particular counsel more than those of the statute, we would certainly find less favor with it."). An MDL will work great prejudice on the classes represented in *Vallely, McCrary,* and *Burmin*, who have been litigating their actions aggressively.[6]

### IV. The Actions Do Not Share Predominating Common Factual Issues

There are no common questions of fact between the actions at issue within the meaning of 28 U.S.C. § 1407. The cases involve distinct plaintiffs, defendants, witnesses, documents, class periods, and underlying agreements. Each case requires its own discovery, with separate document productions and separate depositions. Movants have identified no concrete risk of inconsistent rulings. The purported common issues identified by Movants are generic; many of them are factors that are true of all class actions (i.e., whether classes should be certified), or even of all civil

---

[6] Consolidation here would be improvident under the circumstances and reward delay, particularly when Retirement Claim Plaintiffs' counsel has already invested years of labor and enormous expense (including paying multiple experts) litigating such actions zealously, diligently, and efficiently.

lawsuits (i.e., whether plaintiffs have suffered injuries and damages), *see* ECF 1-1 at 4,[7] but do not show a common question of ***fact*** specific to these cases warranting centralization. *In re Hotel Indus. Sex Trafficking Litig.*, 433 F. Supp.3d 1353, 1356 (J.P.M.L. 2020) ("Common legal questions are insufficient to satisfy Section 1407's requirement of common factual questions."). Indeed, as explained above, Judge Caproni has already determined that *Valelly* and *McCrary* are not related, and counsel in *Sherlip* have confirmed that *Burmin* and *Sherlip* do not overlap.[8]  And the Clerk of the Court for the Southern District of New York assigned *Safron* to a different judge notwithstanding that it was designated by plaintiff's counsel as related to *Valelly* and *McCrary.*

What the cases have in common, broadly speaking, is that they all concern the interest rate paid on sweep accounts by various financial institutions. *See id.* But Movants have not cleared the high burden of showing that an industry-wide MDL would be appropriate, given the lack of overlap between the parties and claims, and given the absence of any allegations that the defendants shared information or acted in concert such that there would be any shared witnesses or documents.

This Panel routinely declines such requests for industry-wide centralization. The Panel is "typically skeptical of requests to centralize claims filed against multiple defendants who are competitors in a single MDL because it often will not promote judicial efficiency or serve the convenience of the parties and witnesses." *In re Secondary Ticket Mkt. Refund Litig.*, 481 F. Supp. 3d 1345, 1346 (J.P.M.L. 2020). For example, in *Valelly*, Merrill moved to show cause to seal parts of the *Daubert* Decision based on a declaration from a Bank of America ("BANA") employee,

---

[7] I.e., "whether the proposed classes in the Related Actions should be certified under the Federal Rules of Civil Procedure; whether defendants' establishment and operation of the cash sweep programs caused injury to class members; and the amount of damages sustained by class members and the scope of relief available to them." *Id.*

[8] It appears that E*TRADE and Morgan Stanley agree that the overlap in the two cases is minimal if not nonexistent, having hired separate outside counsel in those cases, and declining to move to consolidate.

alleging that "competitors could use" the methodology used and factors considered in setting sweep rates "to infer what BANA's maximum rates might be on a forward-looking basis and to make pricing decisions that could cause competitive harm to BANA, Merrill, and the broader Bank of America enterprise." *Valelly*, ECF 259. The Panel will deny centralization where "[t]here are no allegations of a conspiracy and no defendant is named in an action alongside another" such that "[c]reating an industry-wide MDL for all [of the] defendants would seem to complicate pretrial proceedings more than it would streamline them." *Id.*; *see also In re CP4 Fuel Pump Mktg. Sales Practices, & Prods. Liab. Litig.*, 412 F. Supp. 3d 1365, 1367 (J.P.M.L. 2019) (denying centralization where "centralizing competing defendants in the same MDL likely would complicate case management due to the need to protect trade secret and confidential information," and where "there is no allegation of a conspiracy," such that "centralizing these … cases likely would result in significant inefficiencies and delay, without producing any substantial offsetting benefits"); *accord In re Benzoyl Peroxide Mktg.*, No. MDL No. 3120, 2024 U.S. Dist. LEXIS 136839, at *4 (J.P.M.L. Aug. 1, 2024) (denying centralization where the cases, as here, "do not allege an industry-wide conspiracy or an indivisible physical injury caused by multiple defendants' products or conduct"); *In re Video Game Addiction Prods. Liab. Litig.*, No. MDL No. 3109, 2024 U.S. Dist. LEXIS 102145, at *2 (J.P.M.L. June 5, 2024) (denying centralization based only on "broad similarities among the actions concerning the [relevant] industry"); *In re Proton-Pump Inhibitor Prods. Liab. Litig.*, 273 F. Supp. 3d 1360, 1361-62 (J.P.M.L. 2017) (denying centralization where, as here, "the named defendants vary from action to action," and "the various defendants are competitors," and "a significant amount of the discovery in these actions appears almost certain to be defendant-specific"); *In re: Yellow Brass Plumbing Component Prods. Liab. Litig.*, 844 F. Supp. 2d 1377, 1378 (J.P.M.L. 2012) (denying centralization; "we are typically

9

hesitant to centralize litigation against multiple, competing defendants which marketed, manufactured and sold similar products"); *In re Prescription Drug Co-Pay Subsidy Antitrust Litig.*, 883 F. Supp. 2d 1334, 1335 (J.P.M.L. 2012) (denying centralization where, as here, "[i]ndividualized discovery and legal issues are likely to be numerous and substantial").[9]

On the rare occasions that this Panel has approved requests for industry-wide centralization, it has been where the responding parties have largely consented to it. *See e.g., In re Checking Account Overdraft Litig.,* 626 F. Supp. 2d 1333, 1334 (J.P.M.L. 2009) (all but one of the responding defendants "support[ed] the creation of one MDL docket encompassing all overdraft actions."); *In re Janus Mut. Funds Inv. Litig.*, 310 F. Supp. 2d 1359, 1360 (J.P.M.L. 2004) (all of the responding parties in the related actions before the Panel "support[ed] coordinated or consolidated Section 1407 proceedings" in some form). This is not the case here, as multiple defendants have already stated their intent to oppose the current Motion.[10]

---

[9] The cases Movants cite are inapposite. *See, e.g., In re Lehman Brothers Holdings, Inc., Sec. & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 598 F. Supp. 2d 1362, 1364 (J.P.M.L. 2009) (centralizing the action where affiliated co-defendants allegedly "made materially false and/or misleading statements which had a negative impact on Lehman Brothers securities,"); *In re UnumProvident Corp. Sec., Derivative & "ERISA" Litig.*, 280 F. Supp. 2d 1377, 1380 (J.P.M.L. 2003) (centralizing the action where affiliated co-defendants collectively facilitated "improper claims denial by UnumProvident" and violated the federal securities laws); *In re Multidistrict Litig. Involving Banking Agreements with Stirling Homex Corp.*, 388 F. Supp. 572, 573 (J.P.M.L. 1975) (centralizing action where members of a banking consortium allegedly collectively participated in a scheme to defraud investors); *In re Republic Nat'l-Realty Equities Sec. Litig.*, 382 F. Supp. 1403, 1404 (J.P.M.L. 1974) (centralizing action where affiliated co-defendants allegedly "violated the federal securities laws by participating in a massive scheme to defraud the investing public,"); *In re Insulin Pricing Litig.*, 709 F. Supp. 3d 1384 (J.P.M.L. 2023), *In re Treasury Sec. Auction Antitrust Litig.*, 148 F. Supp. 3d 1360 (J.P.M.L. 2015), *In re London Silver Fixing, Ltd., Antitrust Litig.*, 52 F. Supp. 3d 1381 (J.P.M.L. 2014), *In re Japanese Elec. Prods. Antitrust Litig.*, 388 F. Supp. 565 (J.P.M.L. 1975) (centralizing each action where common defendants their affiliated co-defendants allegedly conspired to manipulate product prices and auctions); *In re Pilot Flying J Fuel Rebate Contract Litig (No. II)*, 11 F. Supp. 3d 1351 (J.P.M.L. 2014) and *In re IDT Corp. Calling Card Terms Litig.*, 278 F. Supp. 2d 1381 (J.P.M.L. 2003) (centralizing each action where common defendants and their affiliated co-defendants allegedly perpetrated schemes to defraud their customers).

[10] *See Estate of Bernard J. Sherlip v. Morgan Stanley et al.,* Case No. 1:24-cv-4571-VEC (S.D.N.Y.), ECF No. 48 at 2 ("The Sherlip Plaintiffs and the Defendants in both actions [*Safron Capital Corp. v. Morgan Stanley et al.*, Case No. 1:24-cv-7750-VEC (S.D.N.Y.)] oppose the JPML Motion and do

10

## V. Transfer Would Be Unjust

The Panel should "deny consolidation by transfer if the pretrial proceedings in a case or group of cases have been completed or are near completion, because a transfer of the actions under the multidistrict litigation statute would not serve any of the purposes of the statute." 1 Moore's Manual—Federal Practice and Procedure § 2.07 (2024). Centralization would be especially unjust for the *Valelly*, *McCrary*, and *Burmin* Plaintiffs and the classes they represent, because their cases were filed before all others at issue in this MDL request and all have been litigated aggressively (and in *Valelly's* case, litigated aggressively since 2019). They have all progressed to the point that any centralization would result in unfair delay, as discussed earlier.

*Valelly* in particular would be greatly prejudiced by centralization. Movants acknowledge that *Valelly* is far more advanced than any other case. Motion at 9 n.1. After five years of litigation, pretrial proceedings in *Valelly* are nearly complete: the parties completed fact and two rounds of expert discovery (for both class certification and damages purposes), the Court has resolved the parties' competing *Daubert* motions and sustained the testimony of both experts, and the parties are briefing summary judgment (for a second time), to then be followed by class certification briefing. In *Burmin*, the defendants' motion to dismiss has been fully briefed since June 17, 2024, and the parties are currently engaged in various discovery efforts while the motion is pending. Discovery has also been progressing in *McCrary* despite multiple attempts by Merrill to stay the action (*McCrary*, ECF 14, 33), and Merrill's (non-dispositive) motion to strike will be fully briefed

---

not believe there is any basis for the JPML to grant that motion, which seeks centralization of a number of cash sweep cases filed in different courts."); *Brickman Investments Inc. v. Wells Fargo & Co.*, No. 24-cv-7751 (S.D.N.Y.), ECF No. 27 at 3 (Wells Fargo & Company and affiliated co-defendants believe "[g]ranting the [Section 1404] Motion to Transfer now will promote the parties' efforts to 'self-organize' these cases" over the current Motion); *Lourenco v. Ameriprise Financial, Inc*., No. 24-cv-08825 (C.D. Cal. Nov. 8, 2024), ECF No. 26 at 11 (Ameriprise Financial, Inc. and their affiliated co-defendants intend to "oppose the MDL Motion's suggestion that an industry-wide proceeding would create efficiencies.").

as of today. In short, Retirement Claim Plaintiffs and their counsel have already expended considerable efforts in *Valelly*, *McCrary*, and *Burmin*, and halting the progress of these cases through centralization would only prejudice the classes. The prejudice is not hypothetical: at least one high-ranking individual in *Valelly* who was involved in consequential rate-setting recommendations and who had important discussions with BANA leadership about these recommendations is now deceased. Memories fade, documents are sometimes destroyed, and witnesses move. Further delay will invite similar setbacks.

This Panel routinely declines such requests for centralization of cases of disparate procedural postures. *See In re Enhanced Recovery Co., LLC*, 278 F. Supp. 3d 1371, 1372 (J.P.M.L. 2017) (denying centralization because "[f]act discovery in several actions is scheduled to be completed within six months" and therefore "[c]entralization at this juncture appears unlikely to produce significant efficiencies and may delay resolution of these actions"); *In re Lloyds Bank PLC Int'l Mortg. Serv. Loan Litig.,* 997 F. Supp. 2d 1352, 1353 (J.P.M.L. 2014) (denying centralization of action that was, "by any measure, quite advanced" and where discovery was "essentially over"); *In re Tex. Prison Conditions-Of-Confinement Litig.,* 52 F. Supp. 3d 1379, 1379-80 (J.P.M.L. 2014) (finding that "we are not persuaded that Section 1407 centralization would serve the convenience of the parties and witnesses or promote the just and efficient conduct of the litigation" where the "actions are at markedly different procedural postures" and denying centralization of action that is "well ahead" of the others); *In re Droplets, Inc.*, 908 F. Supp. 2d 1377, 1378 (J.P.M.L. 2012) (denying centralization where "a potentially case-dispositive motion is pending and has been fully briefed" in one of the actions); *In re Louisiana-Pacific Corp.*, 867 F. Supp. 2d 1346, 1347 (J.P.M.L. 2012) (centralization would not benefit more advanced action); *In re Table Saw Prods. Liab. Litig.*, 641 F. Supp. 2d 1384, 1384 (J.P.M.L. 2009) (denying

centralization where "[a] significant number of the actions are substantially advanced"); *In re Qwest Communs. Int'l, Inc.,* 395 F. Supp. 2d 1360, 1361 (J.P.M.L. 2005) (denying centralization "[g]iven the more advanced stage of proceedings" in one set of cases); *see also In re Fla., P.R., & United States V.I. 2016 & 2017 Hurricane Seasons Flood Claims Litig.*, 325 F. Supp. 3d 1367, 1369 (J.P.M.L. 2018) ("The widely varying procedural posture of the cases further weighs against centralization."); *In re Yamaha Motor Corp. Rhino ATV Prods. Liab. Litig.*, 597 F. Supp. 2d 1377, 1379 (J.P.M.L. 2009) (earlier actions "should not be included in centralized proceedings. Both actions appear to be relatively well advanced, with discovery nearing completion, trial dates set, and no responding party to either action favoring transfer.").

## VI. CONCLUSION

The motion for centralization should be denied, especially with respect to *Valelly*, *McCrary*, and *Burmin*.

Dated: November 27, 2024

Respectfully submitted,

**WOLF POPPER LLP**

By: */s/ Robert C. Finkel*
Robert C. Finkel
Adam J. Blander
Philip M. Black
Antoinette A. Adesanya
Emer Burke
845 Third Avenue
New York, NY 10022
Telephone: 212-759-4600
rfinkel@wolfpopper.com

*Counsel for Retirement Claim Plaintiffs and the Putative Classes*

**PROOF OF SERVICE**

In compliance with Rule 4.1(a) of the Rules of Procedure for the United States Judicial Panel on Multidistrict Litigation, I hereby certify that on November 27, 2024, I caused the foregoing Response in Opposition to Plaintiffs' Motion for Transfer and Consolidation and this Proof of Service to be electronically filed with the Clerk of the Panel using CM/ECF system, which constitutes service of pleadings on registered CM/ECF participants via this Panel's ECF filing system.

Dated: November 27, 2024

                                          */s/ Robert C. Finkel*
                                             Robert C. Finkel