BEFORE THE UNITED STATES
JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

| IN RE: Cash Sweep Programs Contract Litigation | MDL Docket No. 3136 |
|---|---|

MORGAN STANLEY'S OPPOSITION
TO PLAINTIFFS' MOTION FOR TRANSFER AND CONSOLIDATION
PURSUANT TO 28 U.S.C. § 1407

Morgan Stanley,[1] by their counsel and pursuant to Rule 6.1(c) of the Rules of Procedure for the United States Judicial Panel on Multidistrict Litigation, opposes Safron Capital Corp. ("Safron") and Brickman Investments Inc.'s (each a "Movant" and collectively, "Movants") Motion for Transfer and Consolidation pursuant to 28 U.S.C. § 1407 (the "Motion").

**I.     INTRODUCTION**

The Motion should be denied because the underlying cases simply do not share a common core of facts that would make centralization in an MDL appropriate or efficient.

The cases involve what are known as "cash sweep" programs, whereby broker-dealers disclose to customers that when they have *uninvested* cash sitting idle in their brokerage accounts, that cash will automatically be "swept" into deposit accounts where it can earn interest and receive FDIC protection until it is ready to be invested. Each of the underlying cases here—all of which are putative class actions—is against a single broker-dealer and its affiliates on behalf of that broker-dealer's customers.[2] Each broker-dealer has a distinct customer base, and

---

[1] "Morgan Stanley" or the "Morgan Stanley Defendants" refers to Morgan Stanley, Morgan Stanley Smith Barney, LLC ("MSSB"), and E*TRADE Securities, LLC ("E*TRADE"), defendants in one or more actions subject to the Motion. Movants identified Morgan Stanley & Co. LLC as a defendant in *The Estate of Bernard Sherlip v. Morgan Stanley*, No. 1:24-cv-04571 (S.D.N.Y. June 14, 2024) (*see* Corrected Schedule of Actions, ECF No. 3-1 at 3), but that entity was terminated as a defendant on October 10, 2024, *see Sherlip*, No. 1:24-cv-04571 (S.D.N.Y. Oct. 10, 2024) ECF No. 40 (Am. Compl.), and is not currently a party to any cash sweep case.

[2] For ease of reference, broker-dealers and their affiliates are referred to collectively as "broker-dealers" or "broker-dealer defendants."

each broker-dealer's cash sweep program is separate and distinct from the others, with different governing contracts, different disclosures, different rates, different options, different internal decision-making processes, and different procedures for monitoring the program, among other differences. There is no allegation in any of the complaints that any of the broker-dealers acted in concert with one another regarding their individualized cash sweep programs. Accordingly, the only type of consolidation that may be necessary or appropriate is consolidating the duplicative class actions that have been filed against *each broker-dealer* into the first-filed court—a process that is already well underway—not centralization *across* broker-dealers into an MDL. As described below, in the context of these particular cases, an MDL would do nothing to enhance efficiency or convenience and would only raise the types of complexities and *inefficiencies* that have caused this Panel to reject similar applications in the past.

The Motion should be seen for what it is: a baseless attempt by the Movants and their counsel—who filed their cases long after other putative class actions against the same defendants had been filed—to garner some control of these cases from other plaintiffs and their counsel, despite the fact that these cases are patently not suitable candidates for an MDL.

## II.      FACTUAL AND PROCEDURAL BACKGROUND

### A.      Cash Sweep Programs

As noted above, cash sweep programs are disclosed features of brokerage accounts offered independently by each of the broker-dealer defendants that automatically "sweeps" uninvested cash balances into FDIC-insured, interest-bearing deposit accounts. Mot. at 1. This is where the commonalities end. As alleged in the underlying complaints, each broker-dealer offers a different, and inherently independent, cash sweep program, with different governing contracts, disclosures, rates, and options, among other things. *See generally* Mot. Exs. 1–31.

The underlying complaints contain no allegation that any of the broker-dealers coordinated with one another in connection with their independent cash sweep programs.

### B.  The Cash Sweep Cases

The Motion concerns 31 cases against 11 different broker-dealers (the "Cash Sweep Cases"). *See* Schedule of Actions.[3] The first of the Cash Sweep Cases was filed more than five years ago. *See* Mot. Ex. 17 (*Valelly v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 1:19-cv-07998 (S.D.N.Y. Aug. 17, 2019) ECF No. 1 (Compl.)). Though Movants assert that this action "is not a class action," Mot. at 9 n.1, it is in fact a putative class action like the rest of the Cash Sweep Cases, though the Court did not grant and has deferred ruling on the certification motion. *See* Mot. Ex. 17 (*Valelly*, No. 1:19-cv-07998 (S.D.N.Y. Feb. 5, 2021) ECF No. 55 (Am. Compl.); *Valelly*, No. 1:19-cv-07998 (S.D.N.Y. Aug. 27, 2022) ECF No. 145 (Order) (dismissing without prejudice plaintiff's motion for class certification). That action has advanced significantly: the parties have completed fact and expert discovery, the Court has ruled on *Daubert* motions, and the parties' summary judgment motions will be fully briefed by January 24, 2025. *Valelly*, No. 1:19-cv-07998 (S.D.N.Y. Oct. 11, 2024) ECF No. 260 (Opinion & Order); *Valelly*, No. 1:19-cv-07998 (S.D.N.Y. Oct. 21, 2024) ECF No. 263 (Memo Endorsement). The remaining Cash Sweep Cases were filed within the last year, though motions to dismiss have already been filed or will soon be filed in a number of these cases.[4]

---

[3] Notices of Related Actions have been filed for three additional cases against already-named broker-dealers. *See* DM Cohen, Inc. Notice of Related Action, ECF No. 59; McKinney and Christner Notice of Related Action, ECF No. 63.

[4] *See Burmin v. E*TRADE Securities LLC*, No. 2:24-cv-00603 (D.N.J. April 15, May 23, June 17, 2024) ECF Nos. 31, 35, 38 (motion to dismiss fully briefed as of June 17, 2024); *Mehlman v. Ameriprise Financial, Inc.*, No. 0:24-cv-03018 (D. Minn. Nov. 1, 2024) ECF No. 56 at 2 (Order) (setting Defendants' deadline to respond to complaint for Dec. 20, 2024); *Safron Capital Corp. v. Bank of America Corporation*, No. 1:24-cv-07743, (S.D.N.Y. Nov. 6, 2024) (….continued)

As alleged in the complaints, the governing contracts that customers entered into with their respective broker-dealers are in many instances governed by the laws of different states.[5] Plaintiffs have also brought different legal claims in many of the underlying actions. Among other differences, some have brought contract claims but not fiduciary duty claims; some have brought fiduciary duty claims but not contract claims; some have brought claims under state consumer protection statutes and some have not, and those that have done so have brought them under different states' statutes, depending on the residence of the particular broker-dealer (California, Florida, Massachusetts, Minnesota, New York); some have brought claims under the Investment Advisers Act while others have not; and some (in particular, Movants) have even gone so far as to bring far-fetched claims under RICO, while the rest have not. *See generally* Mot. Exs. 1–31 (causes of action). Because plaintiffs in each case have alleged only claims against the broker-dealer whose cash sweep program they participated in—not any of the other broker-dealers or their affiliates—the putative class is inherently different in each case.

In instances where several actions have been filed against a single broker-dealer, most of those related cases have already been consolidated into the appropriate court based on the order in which the cases were filed and normal venue considerations. As of the date of this filing, Cash Sweep Cases against eight out of the 11 broker-dealers have been or will be consolidated.[6]

---

ECF No. 21 at 1-2 (Stipulation and Order) (motion to dismiss briefing to commence December 20, 2024 and conclude February 28, 2025).

[5] *See e.g.*, Mot. Ex. 19 ¶ 97 (Morgan Stanley: New York); Mot. Ex. 1 ¶ 106 (Ameriprise: Minnesota); Mot. Ex. 8 ¶ 36 (Schwab: California); Mot. Ex. 16 ¶ 34 (LPL: Massachusetts); Mot. Ex. 21 ¶ 89 (PNC: Massachusetts); Mot. Ex. 22 ¶ 22 (Raymond James: Florida).

[6] *See Sherlip*, No. 1:24-cv-04571 (S.D.N.Y. Nov. 21, 2024) ECF No. 48-1 (Prop. Order and Joint Stip.); *In re Wells Fargo Cash Sweep Litig.*, No. 3:24-cv-04616 (N.D. Cal. Sept. 23, 2024) ECF No. 31 (Order to Consolidate Cases); *In re Charles Schwab Cash Sweep Litig.*, No. 2:24-cv-7344 (C.D. Cal. Oct. 22, 2024) ECF No. 32 (Order Granting the Parties' Stipulation for (….continued)

Of the remaining three broker-dealers, PNC has only had a single case filed against it, Merrill Lynch is uniquely situated because the first case against it was filed over five years ago, and a second action against E*TRADE was filed just one week prior to the date of this opposition.

Movants' counsel filed three Cash Sweep Cases on the same date—October 11, 2024—which was well after other plaintiffs had filed their cases against the same defendants, and after many of the cases had already been consolidated.[7] After filing this Motion, they filed two additional cases (against broker-dealers they already sued) and filed a notice of relatedness for those cases on November 26, 2024. *See* McKinney and Christner Notice of Related Action, ECF No. 63.

### C. Cases Filed Against the Morgan Stanley Defendants

The Motion lists three Cash Sweep Cases that have been filed against the Morgan Stanley Defendants. The first of those cases, which was filed in the District of New Jersey challenges

---

Consolidating Actions); *In re JP Morgan Chase Cash Sweep Program*, No. 1:24-cv-06404 (S.D.N.Y. Oct. 8, 2024) ECF No. 29 (Order to Consolidate Claims); *In re LPL Fin. Cash Sweep Litigation*, No. 3:24-cv-1228 (S.D. Cal. Oct. 16, 2024) ECF No. 30 (Order Consolidating Cases); *Mehlman*, No. 0:24-cv-03018 (D. Minn. Oct. 3, 2024) ECF No. 50 (Order); *Schmidlin v. Raymond James*, No. 8:24-cv-2041 (M.D. Fla. Nov. 14, 2024) ECF No. 41 (Order); *Goldsmith v. UBS Fin. Servs. Inc.*, No. 1:24-cv-6354 (S.D.N.Y. Nov. 1, 2024) ECF No. 29 (Order). Other motions to transfer cases against a particular broker-dealer into the consolidated action against that broker-dealer are also pending. *See Lourenco v. Ameriprise Fin.*, No. 2:24-cv-8825 (C.D. Cal. Nov. 8, 2024) ECF Nos. 26 (Defendants' Motion to Transfer); *id.* (C.D. Cal. Nov. 13, 2024) ECF No. 30 (Proposed Intervenors' Motion to Transfer); *Brickman*, No. 1:24-cv-7751 (S.D.N.Y. Nov. 6, 2024) ECF No. 17 (Proposed Intervenors' Motion to Transfer); *Chakravarthy v. Wells Fargo & Co.*, No. 2:24-cv-08831 (C.D. Cal. Nov. 11, 2024) ECF No. 19 (Proposed Intervenors' Motion to Transfer); *Morris v. Charles Schwab Corp.*, No. 2:24-cv-0985 (M.D. Fla. Nov. 25, 2024) ECF No. 13 (Proposed Intervenors' Motion to Transfer).

[7] *See* Mot. Ex. 5 (*Safron Cap. Corp. v. Bank of America Corp.*, No. 1:24-cv-07743 (S.D.N.Y. Oct. 11, 2024) ECF No. 1 (Compl.)) (asserting claims against Merrill Lynch approximately five years after first cash sweep case against Merrill Lynch was filed); Mot. Ex. 20 (*Safron Cap. Corp. v. Morgan Stanley*, No. 1:24-cv-07750 (S.D.N.Y. Oct. 11, 2024) ECF No. 1 (Compl.)) (filed four months after first lawsuit relating to MSSB's cash sweep program was filed); Mot. Ex. 26 (*Brickman Invs. Inc. v. Wells Fargo & Co.*, No. 1:24-cv-7751 (S.D.N.Y. Oct. 11, 2024) ECF No. 1 (Compl.)) (filed after four cases against Wells Fargo were consolidated).

the cash sweep practices of E*TRADE. E*TRADE, which is headquartered in Arlington, Virginia, was a separate broker-dealer before being acquired by Morgan Stanley in 2020 and, until recently, maintained its own cash sweep program distinct from the one operated by MSSB. *See* Mot. Ex. 10 ¶¶ 4–7 (*Burmin v. E*TRADE Securities LLC*, No. 2:24-cv-00603 (D.N.J. Feb. 1, 2024) ECF No. 1 (Compl.)). That case asserts a single claim for breach of contract on behalf of a putative class of retirement accountholders. *Id.* at ¶¶ 128-132. On June 14, 2024, a case was filed in the Southern District of New York asserting a variety of claims relating to MSSB's cash sweep program. *See* Mot. Ex. 19 (*The Estate of Bernard J. Sherlip v. Morgan Stanley*, No. 1:24-cv-04571 (S.D.N.Y June 14, 2024) ECF No.1 (Compl.)). Then on October 11, 2024, Safron—one of the Movants—filed a second putative class action relating to MSSB's cash sweep program in the Southern District of New York. Mot. Ex. 20 (*Safron Capital Corp. v. Morgan Stanley*, No. 1:24-cv-07750 (S.D.N.Y. Oct. 11, 2024) ECF No. 1 (Compl.)). The parties in *Sherlip* and *Safron* stipulated to consolidation of those actions. *Sherlip*, No. 1:24-cv-04571 (S.D.N.Y. Nov. 21, 2024) ECF No. 48-1 (Prop. Order and Joint Stip.).

In addition to those three cases, on November 20, 2024, Movant's counsel filed another lawsuit, this time naming Morgan Stanley, MSSB, and E*TRADE. A notice of related action in the instant proceeding was filed on November 26, 2024. *See* ECF No. 63 Ex. A (*McKinney v. Morgan Stanley*, No. 1:24-cv-8860 (S.D.N.Y. Nov. 20, 2024) ECF No. 1 (Compl.). *McKinney* concerns E*TRADE's cash sweep program (which until 2023 was separate from MSSB's cash sweep program) and was assigned to the same judge presiding over *Sherlip* and *Safron*. On November 22, 2024, the court asked the parties to inform the court by November 27 whether the parties believe *McKinney* should be consolidated with *Sherlip* and *Safron*. *Sherlip*, No. 1:24-cv-04571 (S.D.N.Y. Nov. 22, 2024) ECF No. 49 (Order). The Morgan Stanley Defendants will

6

state that they would oppose a motion to consolidate *McKinney* with *Sherlip* and *Safron* because the two sets of cases concern different cash sweep programs governed by different agreements.

Defendants' motion to dismiss the *Burmin* complaint has already been fully briefed as of June 17, 2024 and is awaiting decision. *Burmin*, No. 2:24-cv-00603 (D.N.J. April 15, May 24, June 17, 2024) ECF Nos. 31, 35, 38. The *Burmin* parties were directed to engage in phased discovery during the pendency of the motion to dismiss, and the Magistrate Judge overseeing discovery has already held two conferences with the parties. *See id.* (D.N.J. July 2, 2024) (Scheduling Conf.); *id*. (D.N.J. Oct. 21, 2024) (Tel. Status Conf.). The *Sherlip* defendants filed a motion to dismiss on August 30, 2024. *Sherlip*, No. 1:24-cv-04571 (S.D.N.Y. Aug. 30, 2024) ECF No. 33. Rather than oppose the motion, the plaintiff elected to file an amended complaint, which was filed on October 10, 2024. *Id*. (S.D.N.Y. Oct. 10, 2024) ECF No. 40 (Am. Compl.). After the *Safron* complaint was filed, the parties stipulated to consolidate the two cases. *See id.* (S.D.N.Y. Nov. 21, 2024) ECF No. 48-1.

Despite Movants' claim that centralization of the cases into an MDL would be more "efficient" for all parties, the *Burmin* and *Sherlip* plaintiffs, like the defendants, have indicated that they plan to oppose centralization of the Morgan Stanley cases with the cases against the other unrelated broker-dealers.

**III.   LEGAL STANDARD**

Under 28 U.S.C. § 1407(a), transfer and centralization are not appropriate unless: (1) the actions involve "one or more common questions of fact"; (2) transfer will be "for the convenience of parties and witnesses"; and (3) transfer will "promote the just and efficient conduct of such actions." *Id.* The party seeking consolidation bears the burden of showing that transfer "will further the purposes of Section 1407." *In re Cable Tie Patent Litig.*, 487 F. Supp. 1351, 1354 (J.P.M.L. 1980). Consolidation under section 1407 "should be the *last solution* after

considered review of all other options," such as "informal coordination" or "transfer under section 1404." *In re Best Buy, Co. Cal. Song-Beverly Credit Card Act Litig.*, 804 F. Supp. 2d 1376, 1378–79 (J.P.M.L. 2011) (emphasis added); *see also In re Coll. Athlete Comp. Antitrust Litig.*, No. MDL 3105, 2024 WL 1597524, at *1–*2 (J.P.M.L. April 11, 2024) (same). When evaluating the first element, the Panel considers not simply whether there is any factual overlap, but whether "sufficient" commonality of facts exists to warrant an MDL. *See, e.g.*, *In re Credit Card Payment Prot. Plan. Mktg. & Sales Pracs. Litig.*, 753 F. Supp. 2d 1375, 1375–76 (J.P.M.L. 2010) (denying centralization, despite "some" overlapping facts, where cases lacked "sufficient common questions of fact" because there were "different defendants . . . different products, marketing, cardholder agreements, and customer claim administration").

IV. **ARGUMENT**

    A. **Movants Cannot Meet Their Burden to Show that the Cash Sweep Cases Involve Sufficient Commonality of Facts to Warrant an MDL.**

Centralization is inappropriate because the actions against different broker-dealers do not involve common facts, much less "sufficient" factual commonality to justify multidistrict litigation. To the extent these actions have more than superficial commonalities, it is some overlap on questions of law (albeit limited), but as the Panel has made clear, the existence of common questions of law is not a basis for centralization.

        i. **The Cash Sweep Cases Against Different Broker-Dealers Do Not Involve Common Facts.**

Movants do not—and cannot—demonstrate that the actions against different broker-dealers share common facts in any meaningful sense. Each of the underlying cases is against a particular broker-dealer, not multiple broker-dealers. That is for good reason, because each case rests on the terms of that particular broker-dealer's cash sweep program—namely, what its governing contract provides, what disclosures it made, what cash sweep options it offered, what

rates it paid, how it made decisions concerning its cash sweep program, how the cash sweep program was administered, etc. These facts are all inherently broker-dealer specific. The facts concerning MSSB's cash sweep program have nothing to do with plaintiffs' claims against any other broker-dealer, and vice versa, nor have any of the plaintiffs alleged coordinated conduct by the broker-dealers. There is therefore no common discovery that could or should take place across the different broker-dealers or the different putative classes of broker-dealer customers.

Movants do not seriously attempt to argue that there are common *facts* that cut across the cases against different broker-dealers, because there is no basis to do so. Instead, Movants simply offer a list of "common factual and legal *questions*" that would be relevant to the various actions, including: whether defendants' cash sweep rates were reasonable; whether defendants profited thereby; whether defendants made material misstatements/omissions; whether defendants violated their legal duties; whether the proposed classes should be certified; whether defendants' programs caused injury; and the amount of damages sustained. Mot. at 4. That these common *questions* would need to be addressed in the underlying cases is irrelevant, because the *answers* to these questions would depend on the *facts* that are specific to each broker-dealer's program, which are not common across the various broker-dealers.[8]

The Panel has previously denied centralization where the relevant facts were inherently defendant-specific and where, for that reason, there was "no common defendant in these actions." *In re COVID-19 Bus. Interruption Prot. Ins. Litig.* ("*In re COVID-19*"), 482 F. Supp. 3d 1360, 1362 (J.P.M.L. 2020). In that case, the Panel considered consolidating putative class action and individual lawsuits that were filed against "either a single insurer or insurer-group."

---

[8] Of course, insofar as many of these questions are legal in nature, they likewise do not support centralization because the Panel has been clear that even where (unlike here) there are substantial common legal questions, that it not enough to warrant an MDL. *See infra* at 8.

*Id.*  The Panel denied the motion on the basis that, among other things, there would be "little potential for common discovery across the litigation" because the "cases involve different insurance policies with different coverages, conditions, exclusions, and policy language, purchased by different businesses in different industries located in different states."  *Id*.

As another example, the Panel denied centralization for similar reasons in *In re Paycheck Prot. Program Agent Fees Litig.* ("*In re Paycheck Prot.*"), 481 F. Supp. 3d 1335, 1337–38 (J.P.M.L. 2020).  In that case, the Panel similarly found that, although "[t]he actions undoubtedly allege similar policies and practices by the defendants banks—specifically, that defendants failed to pay fees . . . contrary to the provisions of [federal statutes] and federal regulations," centralization was inappropriate because "[c]ommon factual questions are lacking, as the policies and practices for paying agent fees are unique to each lender which differ significantly across the actions."  *Id*. at 1337.  Indeed, the Panel explained that the "vast majority of defendants are named in only one action[ ] further indicat[ed] a lack of common questions of fact."  *Id.*

The same reasoning applies here.  The Cash Sweep Cases, each of which is brought against a single broker-dealer, involve different customer agreements and disclosures, different interest rates, and different processes for setting those rates and administering the cash sweep programs.  The facts as to one institution are *irrelevant* to the merits of the claims against a different institution, and Movants do not and cannot argue otherwise.  Accordingly, as in *In re COVID*-19 and *In re Paycheck Prot.*, there are not common facts warranting centralization.  *See also, e.g.*, *In re Baby Food Mktg. Sales Pracs. & Prods. Liab. Litig.*, 544 F. Supp. 3d 1375, 1376–77 (J.P.M.L. 2021) (denying centralization where "[i]t is not disputed . . . that each defendant manufactures, markets, and distributes its own baby food products subject to different manufacturing processes, suppliers, and quality control procedures"; "[t]he claims against each

10

defendant thus are likely to rise or fall on facts specific to that defendant"; and "[m]uch of the discovery and pretrial practice will be defendant-specific."); *In re Hotel Indus. Sex Trafficking Litig.*, 433 F. Supp. 3d 1353, 1355–56 (J.P.M.L. 2020) (denying centralization of actions alleging that various hotel chains knowingly profited from sex trafficking, where "[t]he vast majority of actions involve different hotels, . . . different alleged sex trafficking ventures, different hotel brands, different owners and employees, different geographic locales, different witnesses, different indicia of sex trafficking, and different time periods," and where the absence of a "common or predominant defendant across all actions[] further indicat[es] a lack of common questions of fact"); *In re Mortg. Lender Force-Placed Ins. Litig.*, 895 F. Supp. 2d 1352, 1353–54 (J.P.M.L. 2012) (denying centralization of cases "involv[ing] not only different defendants but different lender agreements with insurers, different alleged abuses, and different mortgage loan documents" because they lack "sufficient common questions of fact"); *In re CP4 Fuel Pump Mktg., Sales Pracs., & Prod. Liab. Litig.*, 412 F. Supp. 3d 1365, 1366–67 (J.P.M.L. 2019) (denying centralization on the grounds, in part, that there are "numerous [defendant]-specific and plaintiff-specific issues," such as "each [defendant's] design and testing of the subject vehicles" and "its marketing and communications with consumers").

The cases cited by Movants do not support a different conclusion. The Movants' reliance on the Panel decisions "centralizing [antitrust] actions against several banks" and other antitrust actions, Mot. at 3-4, are unavailing, as allegations of a conspiracy between defendants obviously suggests that common issues of fact would be highly relevant, and that discovery against one defendant may heavily overlap with discovery against its alleged co-conspirators. *See, e.g.*, *In re Treasury Sec. Auction Antitrust Litig.*, 148 F. Supp. 3d 1360, 1362 (J.P.M.L. 2015) (centralizing cases where defendants allegedly "conspired to manipulate . . . pricing"); *In re London Silver*

11

*Fixing Ltd. Antitrust Litig.*, 52 F. Supp. 3d 1381, 1381 (J.P.M.L. 2014) (centralizing cases where defendants allegedly "conspired to manipulate the prices of silver"); *In re Japanese Elec. Prods. Antitrust Litig.*, 388 F. Supp. 565, 566 (J.P.M.L. 1975) (centralizing cases where defendants allegedly "conspired to sell television receivers . . . at artificially low prices"). Here, there are no allegations of coordinated conduct of any kind regarding the cash sweep programs.

### ii. The Cash Sweep Cases Contain, at Most, Certain Common Questions of Law, Which Are Irrelevant to Centralization.

Many of the common "questions" that Movants rely upon—such as whether defendants made material misstatements/omissions, whether they violated various legal duties, causation, damages, and whether the proposed classes should be certified, Mot. at 4 —are actually legal questions. But the Panel has clearly held that "common legal questions do not satisfy Section 1407's requirement of common factual questions." *In re Veroblue Farms USA, Inc.*, 437 F. Supp. 3d 1363, 1364 (J.P.M.L. 2020); *see also, e.g.*, *In re Nat'l Ass'n for Advancement of Multijurisdiction Practice Litig.*, 52 F. Supp. 3d 1377, 1378 (J.P.M.L. 2014) (same).

Moreover, even the legal issues raised by the Cash Sweep Cases are not predominantly common. As noted above (*see* p. 6–7, *supra*), many of the underlying cases bring substantially different claims, which in many instances are governed by different states' laws. Even those claims that are brought in most of the underlying actions—i.e., the breach of contract and breach of fiduciary duty claims—will be inherently defendant-specific, not only because different states' laws will often apply, but also because the merits of the claims will depend on each broker-dealer's specific contract terms and disclosures, among other factors, specific to each defendant's conduct. Movants are therefore wrong to invoke the specter of "conflicting and inconsistent rulings," Mot. at 7, because courts' rulings on legal issues (including class certification) *should*

12

be based on the facts and circumstances specific to each broker-dealer's program.[9]  Even if common legal questions were relevant to the Motion—which they are not—centralization would not lead to more efficient and just resolution of these legal questions.

> **B.** **Transfer Would Not Serve the Convenience of the Parties and Witnesses and Would Not Promote the Just and Efficient Conduct of the Actions.**

The absence of common facts between the cases brought against different broker-dealers is fatal to the Motion, but the Motion also fails under the second and third prongs of section 1407(a) for similar reasons.  Given the absence of overlapping facts across the Cash Sweep Cases necessitating defendant-specific discovery, multidistrict litigation would not serve the interests of efficiency or the convenience of the parties or witnesses and would instead most likely result in undue delay, inefficiency, and other significant and unnecessary complications.  The efficient conduct of the actions, and the convenience of the parties and witnesses, would be best served by the consolidation of duplicative class actions against *each individual broker-dealer*—which has largely already occurred—rather than by centralization into an MDL of cases against *different broker-dealers* that do not share common underlying facts.

> **i.** **Centralization Is Neither Convenient Nor Efficient Where There Is No Reasonable Prospect of Coordinated Discovery, and There Is No Need for an MDL to Avoid "Duplicative" Discovery.**

The discovery that each putative class of customers will seek to take from each broker-dealer, and that each broker-dealer will seek to take from its customers, will necessarily be specific to that particular broker-dealer's cash sweep program and that particular broker-dealer's interactions with its customers.  Where, as here, there are no allegations of coordinated

---

[9] The same is true of rulings on "the nature and scope of discovery," Mot. at 7, which should likewise depend on the different facts and circumstances of each broker-dealer's program, measured against the particular claims brought against that broker-dealer.

conduct, customers of broker-dealer A will have no basis to seek discovery of broker-dealer B. Nor would broker-dealer A have a basis to seek discovery from the customers of broker-dealer B. Each of the seven categories of discovery that Movants contend "will be the same across the cases" (*id.* at 6) is highly defendant-specific, and therefore case-specific. For example, "internal communications regarding the design, implementation, and oversight of the cash sweep programs" (*id.*) will necessarily be different for each broker-dealer. The same is true for each of the other categories listed by Movants. *See id.* Because there will be no "common discovery" across cases against different broker-dealers, there are no efficiencies to be gained. *See, e.g.*, *In re Recore Antitrust Litig.*, No. MDL 3016, 2024 WL 1596924, at *1 (J.P.M.L. April 11, 2024) (denying centralization where discovery was expected to be "case-specific as to the pre-contract discussions and materials exchanged between defendants and each plaintiff, and as to defendants' conduct toward each plaintiff after contracts were entered into.").

Nor is there any basis for Movants to argue that an MDL is necessary to avoid "duplicative" document requests and depositions. If Movants are referring to document requests and depositions by customers of one broker-dealer against other broker-dealers, there is no prospect of that occurring for the reasons described above. If instead Movants are referring to "overlapping" class actions against the *same* broker-dealer in different courts, those cases are already being consolidated where appropriate to avoid such duplication. In the event that additional class actions are brought against any broker-dealer, there is no basis to conclude that they will not likewise be consolidated into the existing consolidated class action against that broker-dealer. Movants have no grounds to argue that defendants will be required to respond to duplicative discovery requests or that "key witnesses would be required to sit for numerous, and duplicative, depositions." Mot. at 6. The judges overseeing the consolidated class actions

against each broker-dealer can and should be trusted to manage discovery efficiently. *See, e.g.*, *In re Benzoyl Peroxide Mktg., Sales Pracs. & Prods. Liab. Litig.*, MDL No. 3120, 2024 WL 3629067, at *2 (J.P.M.L. Aug. 1, 2024) (denying centralization where Panel concluded "defendant-specific 'hubs' ultimately may prove the most efficient means of moving the litigation toward resolution.").

### ii. Industry-Wide Centralization Is Disfavored and Is Not Conducive to Efficiency or the Convenience of the Parties.

The absence of common discovery, and the fact that duplicative class actions against each broker-dealer can and are being consolidated without the need for an MDL, decisively supports the conclusion that an MDL would not serve the interests of efficiency or convenience. But the Motion should also be denied for the additional reason that the Panel is "typically hesitant to centralize litigation against multiple, competing defendants which marketed, manufactured and sold similar products." *In re Yellow Brass Plumbing Component Prods. Liab. Litig.*, 844 F. Supp. 2d 1377, 1378 (J.P.M.L. 2012). Industry-wide centralization is the exception, not the rule, in MDL cases because such centralization "usually adds few efficiencies and does not serve the convenience of the parties and witnesses." *In re Nat'l Ski Pass Ins. Litig.*, 492 F. Supp. 3d 1352, 1353 (J.P.M.L 2020) (denying request for centralization of cases against "separate businesses that sold different, albeit similar, policies" because "few efficiencies would be gained by creating an industry-wide MDL"); *see also, e.g.*, *In re Mortg. Indus. Home Affordable Modification Program (HAMP) Cont. Litig.*, 867 F. Supp. 2d 1338, 1338 (J.P.M.L. 2012) (denying centralization because, without greater overlap in factual issues, industry-wide consolidation would not serve judicial economy).

The administrative issues associated with industry-wide centralization are particularly acute where, as here, there are no multi-institution cases and each broker-dealer's confidential

information and trade secrets (for example, the process, methods, and internal communications relating to setting interest rates) is potentially subject to discovery. Centralization in these circumstances would *create* inefficiencies and challenges in administering the cases that do not exist now. *See, e.g.*, *In re Benzoyl Peroxide Mktg., Sales Pracs. & Prods. Liab. Litig.*, 2024 WL 3629067, at *2 (denying centralization where defendants' "widely varying product formulations . . . could result in an unwieldly MDL and require separate discovery tracks to safeguard the confidentiality of defendants' unique formulations"); *In re CP4 Fuel Pump Mktg., Sales Pracs., & Prod. Liab. Litig.*, 412 F. Supp. 3d at 1367 (denying centralization because, among other things, "centralizing competing defendants in the same MDL likely would complicate case management due to the need to protect trade secret and confidential information"); *In re Proton-Pump Inhibitor Prods. Liab. Litigation*, 273 F. Supp. 3d 1360, 1362 (J.P.M.L. 2017) (citing the case management complications arising from "the need to protect trade secret[s] and confidential information" as one reason that actions against multiple competing defendants are rarely centralized). In short, even if there were some basis for pursuing common discovery in these cases—which there is not—it would raise additional concerns that have supported denial of industry-wide centralization of cases involving competitors under section 1407(a).

The challenges, burdens, and inefficiencies associated with centralizing cases against different broker-dealers would not end there. Because the cases against each broker-dealer will depend on the facts specific to that broker-dealer, the very effort to determine which issues are common, if any, relative to the vast majority of issues that are not, would itself be complicated and subject to dispute, consuming substantial time and energy of the parties and the court. Similarly, each broker-dealer would be forced to monitor and participate in disputes arising in other cases, even though they are not defendants in those cases and even though the facts in each

16

of those cases would be different, because the MDL court's rulings could impact their own cases. This would be a substantial and unnecessary burden. *See, e.g., In re COVID-19*, 482 F. Supp. 3d at 1362 (declining to consolidate where doing so "raises significant managerial and efficiency concerns" such that consolidation would "not promote a quick resolution of these matters"); *In re CP4 Fuel Pump Mktg., Sales Pracs., & Prod. Liab. Litig.*, 412 F. Supp. 3d at 1367 (declining to consolidate 12 actions against three competing car manufacturers in part because "a multi-defendant MDL may prolong pretrial proceedings, because of, *inter alia*, the possible need for separate discovery and motion tracks"); *In re Invokana (Canagliflozin) Prod. Liab. Litig.*, 223 F. Supp. 3d 1345, 1348 (J.P.M.L. 2016) (denying centralization of cases involving different defendants, in part, because of the burdens to defendants who were only named in a small number of cases relative to the total number being centralized).

In a recent joint letter consenting to consolidation of the *Sherlip* and *Safron* actions, Movants' counsel argued that certain deadlines should be postponed pending the JPML's determination of this Motion, relying on *In re Checking Account Overdraft Litigation*, 626 F. Supp. 2d 1333, 1335 (J.P.M.L. 2009) (hereinafter *Overdraft Litigation*), to argue that there is precedent for centralizing cases against multiple financial institutions into an MDL. *See Sherlip*, No. 1:24-cv-04571 (S.D.N.Y. Nov. 21, 2024) ECF No. 48 (Joint Letter Mot. Consolidate). Movants have not relied on that case here, but, in the event they try to do so for the first time on reply, the case is entirely distinguishable. Unlike the present Motion, which involves no commonality among broker-dealer defendants, *Overdraft Litigation* involved "share[d] . . . factual questions relating to industry-wide bank posting policies and procedures to warrant centralization," (*id.* at 1335), and allegations that the banks were acting in "collusion." *Overdraft Litigation*, No. 2036 (J.P.M.L. Feb. 25, 2009) ECF No. 1 at 3 (Revised Mot.

17

Consolidate). Specifically, the movants in *Overdraft Litigation* argued that "each defendant bank" offered services through Visa, whose check card was "at the heart of the allegations of each complaint." *Id.*, (J.P.M.L. April 2, 2009) ECF No. 11 at 5 (Reply). Customer purchases using the check card were processed by "the same authorization network," with the banks using "an identical common software program to process customer transactions." *Id.* Here, in stark contrast, there are no allegations of "collusion" and no basis to conclude that discovery against one broker-dealer would be relevant to the claim against a different broker-dealer. Moreover, some of the defendants in *Overdraft Litigation* consented to consolation, which is not the situation here. *Id.*, 626 F. Supp. 2d at 1334.

In short, given the absence of common facts across the cases against different broker-dealers, an MDL would not be conducive to efficiency or convenience, and would instead be contrary to those interests.

### iii. Ongoing Litigation Offers a Reasonable Prospect of Efficient Resolution.

The Panel has long recognized that it should not centralize cases when, as here, dispositive motion practice offers a reasonable prospect to weed out claims and reduce the number of plaintiffs and cases. *See, e.g., In re Customized Promotion Prod. Antitrust Litig.*, 289 F. Supp. 3d 1342, 1343 (J.P.M.L. 2018); *In re ATM Interchange Fee Antitrust Litig.*, 350 F. Supp. 2d 1361, 1362–63 (J.P.M.L. 2004); *In re The Boeing Co. Emp. Practices Litig. (No. II)*, 293 F. Supp. 2d 1382, 1383 (J.P.M.L. 2003). The parties in the Cash Sweep Cases have already made concerted efforts at self-organization on a broker-dealer specific basis, obviating the need for case-wide centralization.

A dispositive motion has already been pending in the *Burmin* action since June. *Burmin*, No. 2:24-cv-00603 (D.N.J. April 15, May 24, June 17, 2024) ECF Nos. 31, 35, 38 (Mot.

18

Dismiss, Opp'n Mot. Dismiss, Reply). In *Sherlip*, the plaintiff filed an amended complaint on October 10, 2024. *Sherlip*, No. 1:24-cv-04571 (S.D.N.Y. Oct. 10, 2024) ECF No. 40 (Am. Compl.). After the *Safron* complaint was filed, the parties stipulated to consolidate the two cases and submitted competing schedules to brief defendant's motion to dismiss a consolidated complaint. *See id.* (S.D.N.Y. Nov. 21, 2024) ECF No. 48 (Joint Letter Mot. Consolidate). As noted above, motions to dismiss have also been filed or are scheduled to be filed soon in other cases as well. *See supra*, page 3, fn 4.

The Panel prefers "not to preempt the consideration of important motions by a district court," DAVID F. HERR, MULTIDISTRICT LITIGATION MANUAL § 6:21 (2024), and has repeatedly denied or delayed transfer when dispositive motions are pending. *See, e.g.*, *In re Nat'l Grid Tax Gross-Up Adder Litig.*, 669 F. Supp. 3d 1381, 1382 (J.P.M.L. 2023) (denying centralization, in part because of the "reasonable prospect . . . that the multidistrict character of [the] litigation could be resolved through resolution" of pending motions to dismiss); *In re Droplets, Inc., Pat. Litig.*, 908 F. Supp. 2d 1377, 1378 (J.P.M.L. 2012) (denying centralization where, in an underlying case, "a potentially case-dispositive motion is pending and has been fully briefed since [two months before the Panel's decision]"); *In re Telecomm. Providers' Fiber Optic Cable Installation Litig.*, 199 F. Supp. 2d 1377, 1378 (J.P.M.L. 2002) (denying centralization motion where, among other things, motions in underlying cases, including motions to dismiss, "have been fully briefed and decided or are pending in various courts").

Moreover, centralization is only likely to slow these litigations down. In *Burmin*, the court has issued a pretrial scheduling order and directed the parties to conduct phased discovery while it considers the motion to dismiss, and such discovery has already commenced in earnest. *See Burmin*, No. 2:24-cv-00603 (D.N.J. July 2, 2024) ECF No. 41 (Pretrial Scheduling Order).

19

In the *Sherlip* and *Safron* actions, an MDL would only delay a ruling on the motion to dismiss, and the *Sherlip* plaintiffs have already served document requests. The interest in resolving these motions and cases expeditiously cuts against centralization, not in favor of it.

## V. CONCLUSION

For the foregoing reasons, the Panel should deny the Motion.

Dated: November 27, 2024

Respectfully submitted,

/s/ Meaghan VerGow
Meaghan VerGow
O'MELVENY & MEYERS LLP
1625 Eye Street, NW
Washington, DC 20006
(202) 383-5300
mvergow@omm.com

*Counsel for Defendants*
*E*TRADE Securities LLC*

/s/ Brian S. Weinstein
Brian S. Weinstein
DAVIS POLK & WARDWELL LLP
450 Lexington Ave
New York, NY 10017
brian.weinstein@davispolk.com
(212) 450-4972

*Counsel for Defendants Morgan Stanley*
*and Morgan Stanley Smith Barney LLC*