**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

| | | |
|---|---|---|
| IN RE CASH SWEEP PROGRAMS CONTRACT LITIGATION | ) ) ) ) ) | MDL No. 3136 |

**BRIEF OF DEFENDANTS RAYMOND JAMES FINANCIAL, INC., RAYMOND JAMES FINANCIAL SERVICES ADVISORS, INC., RAYMOND JAMES FINANCIAL SERVICES, INC., AND RAYMOND JAMES & ASSOCIATES, INC. IN OPPOSITION TO PLAINTIFFS' MOTION FOR TRANSFER AND <u>CONSOLIDATION PURSUANT TO 28 U.S.C. § 1407</u>**

Case MDL No. 3136   Document 71   Filed 11/27/24   Page 2 of 19

## **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 3
FACTUAL BACKGROUND .............................................................................................. 5
    I.     Movants' Proposed Multidistrict Litigation ............................................... 5
    II.    Plaintiffs' Claims Against Raymond James. ............................................. 8
ARGUMENT ..................................................................................................................... 10
    I.     Multi-Defendant Centralization Is Inappropriate Because There Is No Common Issue of Fact. ........................................................................... 10
    II.    The Costs of Multi-Defendant Centralization Would Outweigh Any Benefit. ..................................................................................................... 14
    III.   Other Case Management Options Are Superior to Multi-Defendant Centralization. ........................................................................................... 17
    IV.   Centralization Is Inappropriate as to Raymond James. .......................... 18
CONCLUSION .................................................................................................................. 19

2

**INTRODUCTION**

The Panel should deny Plaintiffs Safron Capital Corp. and Brickman Investments Inc.'s ("Movants") Motion for Transfer and Consolidation Pursuant to 28 U.S.C. § 1407 ("Transfer Motion"). As detailed below, there is nothing in this record "to overcome [the Panel's] usual reluctance to centralize actions against different defendants in one MDL." *In re CP4 Fuel Pump Mktg., Sales Pracs., & Prods. Liab. Litig.*, 412 F. Supp. 3d 1365, 1367 (J.P.M.L. 2019). Movants' proposed MDL would not promote judicial economy, the convenience of the parties and witnesses, or the just and efficient conduct of litigation. In fact, as to Raymond James[1]—a defendant named in only one consolidated case in Florida—the opposite would be true.

**First**, there is no common evidence connecting the cases or defendants, and centralization would therefore result in substantial inefficiencies. Movants seek to centralize what are now 19 separate putative class actions against eleven groups of wholly separate and unrelated financial services defendants, alleging claims related to the unique programs offered by each defendant. Each case will rise or fall (on the merits and at class certification) based on facts specific to each defendant and its corresponding program, and each named plaintiff's interaction with the specific defendants they sued. In these circumstances—where discovery and questions of liability and class certification will be unique to each defendant and each program—centralization should be denied.

**Second**, centralizing cases against eleven direct competitors when each provided distinct programs to their customers will create burdens that outweigh any perceived benefit. An industry-wide MDL, as Movants propose, would create inefficiencies due to the need to protect trade secret

---

[1] "Raymond James" collectively refers to the Raymond James affiliated entities named as defendants in *Schmidlin v. Raymond James Fin., Inc.*, No. 8:24-cv-02041 (M.D. Fla.) ("*Schmidlin*") and *Conran v. Raymond James Fin., Inc.*, No. 8:24-cv-2511 (M.D. Fla.) ("*Conran*"), including Raymond James Financial, Inc., Raymond James Financial Services Advisors, Inc., Raymond James Financial Services, Inc., and Raymond James & Associates, Inc.

and confidential information and the need to conduct discovery along separate tracks for each defendant because of defendant- and program-specific issues. Meanwhile, Raymond James would be forced to participate in dozens of unrelated cases merely to protect its interests in the single consolidated case in which it is named. These inefficiencies would result in unnecessary time and wasted resources for all parties involved, weighing heavily against multi-defendant centralization.

**Third**, the parties can and already have taken steps other than multi-defendant centralization to promote the just and efficient litigation of these cases. Only two actions (*Schmidlin* and *Conran*) have been filed naming Raymond James as a defendant, one of which was already transferred from the Middle District of Florida's Fort Myers Division to the Tampa Division where the other case was filed, where Raymond James is headquartered, and where the court ruled the litigation is "most directly connected" and "most conveniently advanced." Those cases have further already been consolidated into a single action before a single judge.[2] To uproot this action from its ideal forum in the name of non-existent case management efficiencies would be nonsensical and, to say the least, counterproductive.

Outside of the consolidated action against Raymond James, other cases involving other plaintiffs and defendants have likewise been subject to special case management orders to facilitate efficient litigation—including multiple Rule 42 consolidations in jurisdictions much more convenient to the claims at issue in those cases. Given the productive steps already taken to achieve case management efficiencies in each jurisdiction, and the inefficiencies that would result from an industry-wide consolidation, it is unsurprising that Movant's Transfer Motion has not garnered material support from the plaintiffs or defendants in these cases.

---

[2] Opinion and Order, *Conran v. Raymond James Fin., Inc.*, No. 2:24-cv-780, ECF 33 (Oct. 25, 2024 M.D. Fla.) (transferring *Conran* from Fort Myers Division to Tampa Division) (Ex. B).

4

For these reasons, there is nothing about Movants' proposed MDL that would result in the just and efficient conduct of litigation. The Panel should therefore deny Movants' Transfer Motion.

## FACTUAL BACKGROUND

**I.     Movants' Proposed Multidistrict Litigation**

Movants seek to centralize 19 actions[3] against eleven different groups[4] of separate and unrelated financial services defendants.[5] The claims in these actions relate to defendants' different "cash sweep programs," which include accounts offered by defendants that, according to Movants, "automatically 'sweep' uninvested customer cash balances into interest-bearing deposit accounts at a network of banks." (Transfer Motion at 1.) Movants allege generically that defendants' "cash sweep programs present a conflict of interest," and seek to form an MDL because, they say, "one or more defendants engaged in the same or substantially similar misconduct related to the cash sweep programs . . . by failing to pay or secure reasonable cash sweep interest rates on their customers' cash balances." (*Id.*)

---

[3] Although Movants list 31 separate actions in their Schedule of Actions (*see* ECF 1-2), two of the actions were voluntarily dismissed prior to Motion filing, including *Frey v. Ameriprise Financial, Inc.*, No. 0:24-cv-3360-SRN-LIP (D. Minn.) and *Vu v. LPL Financial LLC*, No. 3:24-cv-01484-TWR-AHG (S.D. Cal.). Further, as discussed below, many of the remaining 29 listed actions have already been consolidated into or otherwise formally related to other cases involving the same defendants and similar issues. By Raymond James' current count, there are 19 unique cases that currently remain. *See* **Exhibit A**: Comparative Chart of Cases Subject to Motion to Transfer.

[4] The defendants named in these cases include eleven different financial services companies and related corporate entities, including, *inter alia*: Ameriprise; Charles Schwab; E*Trade Securities; Morgan Stanley Smith Barney; J.P. Morgan Chase; LPL Financial; Merrill Lynch; PNC; Raymond James; UBS; and Wells Fargo. *See id.* With the exception of Morgan Stanley and E*Trade, these defendants are wholly unrelated to one another.

[5] Before Movants filed the Transfer Motion, plaintiffs filed copycat putative class actions against two newly-named defendants, RBC and Robinhood, in relation to their cash sweep programs. These cases have not been tagged as related actions at this point, but they potentially increase by two the number of disparate cases (as well as named defendants and banking programs) that would be subject to Movants' requested centralization order. *See* Complaint, *Uzel v. RBC Capital Markets, LLC*, No. 1:24-cv-08226, ECF 1 (S.D.N.Y. Oct. 29, 2024) (Ex. C); Complaint, *Dey v. Robinhood Markets, Inc.*, No. 3:24-cv-07442 (N.D. Cal. Oct. 25, 2024) (Ex. D).

But that is where the similarities end. Notwithstanding Movants' attempt to cast these cases as "related," Movants have not specifically identified overlapping fact witnesses or documentary evidence among the 19 separate putative class actions. Each case will rise or fall (on the merits and at class certification) based on facts specific to each defendant, the respective cash sweep program used by plaintiffs, and each named plaintiff's interaction with the specific defendants they sued. In particular, the facts underlying the plaintiffs' claims in each case are specific to the defendants named, the specified cash sweep programs offered by those defendants, the contracts and disclosures defining those programs, the defendants' specific conduct in offering and fulfilling their obligations under the relevant programs, as well as the nature of each defendant's relationships and agreements with its customers.

As the following chart demonstrates,[6] the cases Movants seek to centralize are spread thin among at least eleven different financial services companies, each of whom offers their own unique programs that plaintiffs separately challenge in different lawsuits.

| Defendant Group | Cases Named | Banking Programs at Issue |
|---|---|---|
| Ameriprise | Two cases:<br>• *Mehlman*, *Bender* (consol.), D. Minn.<br>• *Lourenco*, C.D. Cal. | • Ameriprise Insured Money Market Account<br>• Ameriprise Insured Sweep Account |
| Charles Schwab | Two cases:<br>• *Loughran*, *Saunders*, *Davis* (consol.), C.D. Cal.<br>• *Morris*, M.D. Fla. | • Charles Schwab Bank Sweep Program |
| E*Trade Securities | One case:<br>• *Burmin*, D.N.J. | • E*Trade Retirement Sweep Deposit Account |
| J.P. Morgan Chase | Two cases:<br>• *Bodea*, *Lopez* (consol.), S.D.N.Y.<br>• *Canales*, S.D.N.Y. | • J.P. Morgan Chase Bank Deposit Sweep Program |
| LPL Financial | One case:<br>• *Peters*, *Nevitt*, *White* (consol.), S.D. Cal. | • LPL Automatic Cash Sweep Program |

---

[6] The data reflected in this chart was sourced from the plaintiffs' complaints (*see generally* ECF 1-4 through 1-34) and consolidation orders, as further reflected, summarized, and documented within **Exhibit A**: Comparative Chart of Cases Subject to Motion to Transfer, and its Appendix.

| Merrill Lynch | Three cases:<br>• *Safron Capital*, S.D.N.Y.<br>• *Valelly*, S.D.N.Y.<br>• *McCrary*, S.D.N.Y.[7] | • Retirement Asset Savings Program |
|---|---|---|
| Morgan Stanley | Three cases:<br>• *Burmin*, D.N.J.<br>• *Sherlip*, S.D.N.Y.<br>• *Safron Capital II*, S.D.N.Y.[8] | • Morgan Stanley Bank Deposit Program |
| PNC | One case:<br>• *Vallin*, W.D. Penn. | • PNC Proprietary Bank Deposit Sweep Program |
| Raymond James | One case:<br>• *Schmidlin*, *Conran* (consol.), M.D. Fla. | • Raymond James Bank Deposit Program |
| UBS | One case:<br>• *Goldsmith*, *Davitt* (consol.), S.D.N.Y.[9] | • UBS Insured Sweep Program |
| Wells Fargo | Three cases:<br>• *Bujold*, *Nadolny*, *Varady*, *Cobb* (consol. as *In re Wells Fargo Cash Sweep Litig.*), N.D. Cal.<br>• *Brickman*, S.D.N.Y.<br>• *Chakravarthy*, C.D. Cal. (pending motion to intervene in *In re Wells Fargo*)[10] | • Wells Fargo Standard Bank Deposit Sweep<br>• Wells Fargo Expanded Bank Deposit Sweep |

Not only do the programs at issue vary across the cases, so too do the causes of action alleged, the applicable law, and the entirety of the underlying evidence relevant to plaintiffs' defendant-specific and program-specific allegations.

Movants seek to centralize these diverse actions into one conglomerate MDL, without regard to the vastly disparate nature of the underlying claims, defendants, customer relationships, programs, and evidence. Although there are small subsets of cases that do involve the same

---

[7] Since the filing of Movants' Transfer Motion, an additional action against Merrill Lynch (*Campton*) has been noticed as a related action. *See* ECF 12.

[8] The parties in the *Sherlip* and *Safron II* cases stipulated to consolidation on November 21. *See* 11/21/2024 Consolidation Letter and Stipulation (*Sherlip*, *Safron II*) (Ex. E).

[9] On November 25, 2024, an additional action against UBS (*Cohen*) was noticed as a related action. *See* ECF 59.

[10] On November 20, 2024, plaintiffs filed an additional action against Wells Fargo in the S.D.N.Y. (*Christner*), which has been noticed as a related action. *See* ECF 63.

defendant as reflected in the chart above, they are by and large already either consolidated or pending before common judges or jurisdictions.

**II.     Plaintiffs' Claims Against Raymond James.**

Nationwide, there have been only two actions filed against Raymond James, both putative class actions. These cases were originally filed as *Schmidlin v. Raymond James Fin., Inc.*, No. 8:24-cv-02041 (M.D. Fla.), and *Conran v. Raymond James Fin., Inc.*, No. 8:24-cv-02511 (M.D. Fla.).[11] Both were filed in the Middle District of Florida, and although originally filed in separate Divisions (*Schmidlin* in Tampa Division, *Conran* in Fort Myers Division), *Conran* was recently transferred to the Tampa Division[12] and formally consolidated into *Schmidlin* pursuant to Rule 42(a). *See* Order, *Conran v. Raymond James Fin., Inc.*, No. 8:24-cv-2511, ECF 53 (Nov. 14, 2024 M.D. Fla.) (consolidating *Conran* into *Schmidlin* and administratively closing *Conran* action) (Ex. H). The Honorable Kathryn Kimball Mizelle now presides over the consolidated action (No. 8:24-cv-2041-KKM-CPT (Consolidated)) and has ordered that plaintiffs may file a consolidated complaint, which will "control both actions," after interim class counsel is appointed. *Id.*

Raymond James is incorporated in Florida, with its headquarters located in St. Petersburg within the Tampa Division, where the consolidated *Schmidlin*/*Conran* action is pending. Thus, in transferring *Conran* from the Fort Myers Division to the Tampa Division, the court concluded the Tampa Division was where both cases were "most directly connected" and would be "most conveniently advanced." *See* Opinion and Order, *Conran v. Raymond James Fin., Inc.*, No. 2:24-

---

[11] *See Schmidlin* Complaint (Ex. F); *Conran* Complaint (Ex. G).

[12] *See* Opinion and Order, *Conran v. Raymond James Fin., Inc.*, No. 2:24-cv-780, ECF 33 (Oct. 25, 2024 M.D. Fla.) (transferring *Conran* action from the Fort Myers Division to the Tampa Division pursuant to 28 U.S.C. § 1404 and L.R. 1.04(b)) (Ex. B).

cv-780, ECF 33 (Oct. 25, 2024 M.D. Fla.) (transferring *Conran* action from the Fort Myers Division to the Tampa Division pursuant to 28 U.S.C. § 1404 and L.R. 1.04(b)) (Ex. B).

Plaintiffs' claims and putative class claims against Raymond James will rise or fall on evidence that is unique to Raymond James and its customers. Plaintiffs contend that Raymond James, through its Master Client Agreement and related disclosures, owed fiduciary and contractual duties to its customers, and breached those duties with respect to the Raymond James Bank Deposit Program. *See Schmidlin* Complaint ¶¶ 19-49, 56, 62-70, 84-91 (Ex. F); *Conran* Complaint ¶¶ 21-80, 86, 93-98, 106-110 (Ex. G). Plaintiffs further allege claims against Raymond James for unjust enrichment (*Schmidlin* and *Conran*), gross negligence, and violation of the Florida Unfair and Deceptive Trade Practices Act, and seek punitive damages (*Schmidlin* only) as a result of its alleged conduct with respect to the Raymond James Bank Deposit Program. *See Schmidlin* Complaint ¶¶ 71-83, 92-106 (Ex. F); *Conran* Complaint ¶¶ 99-105 (Ex. G).

Notably, none of the defendants in other cases are mentioned in the complaints filed against Raymond James, just as Raymond James is not mentioned in the complaints filed against other defendants. The vast majority of the allegations against Raymond James concern alleged conduct, statements, acts, and omissions purportedly taken at Raymond James' headquarters and principal place of business in St. Petersburg in the Tampa Division, and nearly all of the relevant witnesses Raymond James is aware of are located in the Tampa Division. *See* Declaration of D. Brocato ¶¶ 3-9, 14 (Ex. I). The cash sweep programs relevant to the consolidated *Schmidlin*/*Conran* action were created and managed in the Tampa Division; the relevant contracts were drafted in the Tampa Division; the relevant meetings and communications occurred in the Tampa Division; and nearly all of the relevant witnesses to those facts are in the Tampa Division. *See id.* ¶¶ 3-9, 14. In transferring the *Conran* action from the Fort Myers Division to the Tampa Division, the Middle

District of Florida court ruled that the Plaintiff "takes issue with Raymond James' policies, the implementation of which occurred in Tampa by individuals located in Tampa" and, in fact, "the entirety of Plaintiff's claim occurred in the Tampa Division," so "the case *must* be transferred to Tampa." Opinion and Order, *Conran v. Raymond James Fin., Inc.*, No. 2:24-cv-780, ECF 33 (Oct. 25, 2024 M.D. Fla.) (emphasis in original) (Ex. B). Accordingly, a substantial portion of the parties' discovery on the plaintiffs' claims and Raymond James' defenses to these claims will take place within the Middle District of Florida, Tampa Division, and will focus on Raymond James and its customers. There are no issues of fact in this case that are common to any of the other cases that Movants seek to centralize through the Transfer Motion.

**ARGUMENT**

The Panel may transfer civil actions to a single district for centralized pretrial proceedings when: (a) the actions involve one or more common questions of fact, (b) the transfer will be for the convenience of the parties and witnesses, and (c) the transfer will promote the just and efficient conduct of the actions. 28 U.S.C. § 1407(a). The proponent of transfer bears the burden to demonstrate these factors are met. *In re Chase Inv. Servs. Corp. Fair Lab. Standards Act (FLSA) & Wage & Hour Litig.*, 908 F. Supp. 2d 1372, 1373 (J.P.M.L. 2012). For the reasons discussed below, Movants have not and cannot establish that these factors favor centralization, and the Panel should deny Movants' Motion to Transfer.

**I.    Multi-Defendant Centralization Is Inappropriate Because There Is No Common Issue of Fact.**

Centralization should be denied where, as here, "[m]uch of the discovery and pretrial practice will be defendant-specific." *See In re Baby Food Mktg., Sales Pracs. & Prod. Liab. Litig.*, 544 F. Supp. 3d 1375, 1376-77 (J.P.M.L. 2021). Movants seek to centralize actions against eleven different financial institutions regarding their varying "cash sweep" programs, including the terms

10

and disclosures associated with those programs. These include, *inter alia*: (1) Ameriprise Insured Money Market Account; (2) Ameriprise Insured Sweep Account; (3) Charles Schwab Bank Sweep Program; (4) J.P. Morgan Chase Bank Deposit Sweep Program; (5) LPL Automatic Cash Sweep Program; (6) Merrill Lynch Retirement Asset Savings Program; (7) Morgan Stanley Bank Deposit Program; (8) E*Trade Retirement Sweep Deposit Account; (9) PNC Proprietary Bank Deposit Sweep Program; (10) Raymond James Bank Deposit Program; (11) UBS Insured Sweep Program; (12) Wells Fargo Standard Bank Deposit Sweep; and (13) Wells Fargo Expanded Bank Deposit Sweep.

Although Movants generically claim these programs are all similar, the defendants are each distinct, unrelated financial institutions, and their respective programs are subject to different contractual terms, different customer relationships, different disclosures, and different applicable law. In these circumstances, where the claims against each defendant rest on facts specific to that defendant, uncommon issues predominate and multi-defendant centralization is disfavored. *See In re CP4 Fuel Pump*, 412 F. Supp. 3d at 1366–67; *In re Baby Food*, 544 F. Supp. 3d at 1376-77; *In re Secondary Ticket Mkt. Refund Litig.*, 481 F. Supp. 3d 1345, 1346 (J.P.M.L. 2020) (denying centralization because "[a]ll defendants are separate businesses that employed different terms of use, different arbitration agreements, different marketing and different choice of law provisions").

The Panel's decision in *In re CP4 Fuel Pump* is instructive. There, plaintiffs sought multi-defendant centralization of ten actions brought against three vehicle manufacturers, based upon the common allegation that a Bosch-supplied fuel pump used in each manufacturer's vehicles was defective. *In re CP4 Fuel Pump,* 412 F. Supp. 3d at 1366. Denying centralization, the Panel emphasized the defendant-specific problems that multi-defendant proceedings create:

> [T]hese cases also present numerous automaker-specific and plaintiff-specific issues. Individualized issues include each

11

> automaker's design and testing of the subject vehicles, its knowledge of the alleged defect, its interactions with Bosch, and its marketing and communications with consumers. Plaintiffs' own allegations indicate that the alleged defect does not manifest itself in the same way from vehicle to vehicle, and thus that considerable discovery likely will target plaintiffs' individual — and varying — ownership experiences.

*Id.* at 1366-1367. Notably, the Panel denied centralization even though a key common factual issue existed, whether the Bosch-supplied fuel pump was defective, and centralization may have avoided duplicative discovery. *Id.* at 1366.

The Panel employed similar reasoning in *In re Baby Food*, where plaintiffs sought multi-defendant centralization of 38 actions targeting baby food products containing heavy metals. Despite similarities in the allegations made in each case, the Panel denied multi-defendant centralization because the claims were dependent upon defendant-specific facts:

> At a general level, these actions are similar. All plaintiffs allege that defendants knowingly sold baby food products containing heavy metals and did not disclose this in their marketing. It is not disputed, though, that each defendant manufactures, markets, and distributes its own baby food products subject to different manufacturing processes, suppliers, and quality control procedures. The claims against each defendant thus are likely to rise or fall on facts specific to that defendant, such as the amount of heavy metals in its products, the results of its internal testing, if any, and its marketing strategies. Much of the discovery and pretrial practice will be defendant-specific.

*In re Baby Food*, 544 F. Supp. 3d at 1376-1377; *see also In re Proton-Pump Inhibitor Prod. Liab. Litig.*, 273 F. Supp. 3d 1360, 1362 (J.P.M.L. 2017) (denying multi-defendant centralization where, though each defendant marketed proton-pump inhibitors, the products were non-identical, had unique development, testing, and marketing histories, and where plaintiffs alleged different categories of injuries); *In re: Credit Card Payment Prot. Plan Mktg. & Sales Pracs. Litig.*, 753 F. Supp. 2d 1375, 1376 (J.P.M.L. 2010) (denying industry-wide centralization of cases alleging

"deceptive marketing of defendants' debt cancellation and/or suspension products" where "each defendant appear[ed] to have offered several different products, which were marketed in different ways and subject to different disclosures").

The Panel's reasoning in *In re CP4 Fuel Pump* and *In re Baby Food* applies equally here. Each of the cash sweep programs at issue were formed and offered by different financial institutions, defined by different contractual terms, subject to different laws, accompanied by different disclosures, offered customers different benefits, and were ultimately utilized by customers in different ways. Although Movants loosely argue the cases involve common questions of fact, they fail to identify specific common facts or overlapping fact witnesses that would result in duplicative discovery. (*See* Transfer Motion at 3-5.) As centralization was not warranted in *In re CP4 Fuel Pump* or *In re Baby Food*, it is even less warranted here.

Movants also improperly rely upon the Panel's centralization of several antitrust cases. (*Id.* at 3-4.) Here, there are no allegations of a conspiracy among the defendants, thus, decisions granting centralization of antitrust cases are inapplicable. *See*, *e.g.*, *In re Japanese Elec. Prod. Antitrust Litig.*, 388 F. Supp. 565, 567 (J.P.M.L. 1975) ("[U]nless the two actions are transferred for coordinated or consolidated pretrial proceedings pursuant to Section 1407, discovery on the economic and conspiratorial issues common to both actions will be unnecessarily duplicated."); *In re Treasury Sec. Auction Antitrust Litig.*, 148 F. Supp. 3d 1360, 1362 (J.P.M.L. 2015) (ordering centralization where actions "share[d] common factual questions arising out of allegations that over 20 financial institutions . . . conspired to manipulate the pricing . . ."); *In re London Silver Fixing, Ltd., Antitrust Litig.*, 52 F. Supp. 3d 1381 (J.P.M.L. 2014) ("These actions share factual issues arising from largely similar allegations that the defendant banks conspired to manipulate the prices of silver . . ."); *see also In re CP4 Fuel Pump*, 412 F. Supp. 3d at 1367 ("The record before

us contains little, if anything, to overcome our usual reluctance to centralize actions against different defendants in one MDL – for example, there is no allegation of a conspiracy involving the three [defendant] vehicle makers").

Because there are no common issues of fact, no purported conspiracy among defendants, and the claims against each defendant rest on defendant- and program-specific facts, the Panel should deny multi-defendant centralization.

## II. The Costs of Multi-Defendant Centralization Would Outweigh Any Benefit.

Even if the Panel were to conclude that common issues of fact exist among the cases at issue, the Panel should still deny Movants' Transfer Motion because the costs of industry-wide multi-defendant centralization would heavily outweigh any potential benefits. *See In re Uponor, Inc.*, *F1960 Plumbing Fittings Prod. Liab. Litig.*, 895 F. Supp. 2d 1346, 1349 (J.P.M.L. 2012).

***Prolonged pretrial practice.*** The special case management procedures that would be required in a multi-defendant setting would be onerous for the transferee court and would not promote the efficient administration of the cases, especially in this litigation where an array of different programs are at issue. *See In re Invokana (Canagliflozin) Prod. Liab. Litig.*, 223 F. Supp. 3d 1345, 1348 (J.P.M.L. 2016) (multi-defendant centralization "may prolong pretrial proceedings, because of, *inter alia*, the possible need for separate discovery and motion tracks, as well as the need for additional bellwether trials"); *In re Proton-Pump Inhibitor*, 273 F. Supp. 3d at 1362. Because discovery of each defendant will necessarily be program- and defendant-specific, and may implicate trade secret and other proprietary information as to each defendant, discovery would not be a litigation-wide exercise, but rather would need to proceed along separate tracks for each defendant. The need for separate tracks reduces (if not eliminates) perhaps the greatest efficiency

traditionally thought to be gained through centralization—the development and use of one common discovery record.

In addition, because the liability-determining facts in each case will differ (*e.g.*, the contractual terms and disclosures associated with each program and each defendant's individual relationships with its customers), each defendant may have distinct defenses requiring separate treatment at the dispositive motion stage. These unique defenses would likewise complicate any bellwether class certification briefing or trial process that might be pursued by the transferee court or the parties. *See* Manual for Complex Litig. (Fourth) § 22.315 ("If individual trials, sometimes referred to as bellwether trials or test cases, are to produce reliable information about other mass tort cases, the specific plaintiffs and their claims should be representative of the range of cases.").

***Participation in unrelated cases.*** A multi-defendant proceeding would force defendants (and plaintiffs) to participate in cases where they have not been named. For example, there is currently only one consolidated action that names Raymond James as a defendant out of the collection of cases sought to be centralized. Instead of focusing exclusively on that one consolidated action, Raymond James would be forced to monitor and, in some way, participate in all cases and issues pending before the MDL, including those exclusively concerning other defendants and other programs, due to the potential implications for Raymond James' consolidated action. This is true not only for Raymond James, but for other defendants (and plaintiffs) as well. *See In re Proton-Pump Inhibitor*, 273 F. Supp. 3d at 1361-62 (where "the named defendants vary from action to action," multi-defendant centralization "appears unlikely to serve the convenience of most, if not all, defendants and their witnesses"); *see also In re Invokana*, 223 F. Supp. 3d at 1348 (multi-defendant centralization not warranted where some defendants named in relatively small number of cases); *In re Ambulatory Pain Pump-Chondrolysis Prod. Liab. Litig.*, 709 F.

Supp. 2d 1375, 1377 (J.P.M.L. 2010) (denying centralization of 102 actions in part because many defendants were named "in only a minority of actions" and some were sued in "but a handful"); *In re Video Game Addiction Prod. Liab. Litig.*, MDL 3109, 2024 WL 2884795, at *1 (J.P.M.L. June 5, 2024) (denying consolidation in part because "[t]he related actions also involve over 30 different defendants, and many are involved in just one or two actions . . . .").

*Unnecessarily outsized case management orders and protocols.* The frequency of case management and discovery conferences in an industry-wide MDL would far exceed what would be required of Raymond James in a single consolidated action. Further, agreeing to discovery protocols, protective orders, and similar discovery tools would be unnecessarily complicated. This will result in decreased efficiencies and increased cost to the parties and the Court.

*Protection of trade secrets between direct-competitor defendants.* Movants here seek an industry-wide MDL consisting of direct competitors in the financial services industry, which "likely would complicate case management due to the need to protect trade secret and confidential information." *In re CP4 Fuel Pump*, 412 F. Supp. 3d at 1367. For this reason, "[t]he Panel is 'typically hesitant to centralize litigation against multiple, competing defendants which marketed, manufactured and sold similar products.'" *Id.*; *In re Tropicana Orange Juice Mktg. & Sales Pracs. Litig.*, 867 F. Supp. 2d 1341, 1342 (J.P.M.L. 2012) ("Further, the introduction of competing defendants into the litigation, and the need to protect trade secret and confidential information from full disclosure to the parties, would complicate case management. Because industry-wide centralization likely will result in inefficiencies and delay, it is not appropriate in this instance."); *In re Watson Fentanyl Patch Prod. Liab. Litig.*, 883 F. Supp. 2d 1350, 1351 (J.P.M.L. 2012) ("Centralization of all actions against all manufacturers will add few efficiencies to the resolution of this litigation," and "could complicate these matters, as defendants may need to erect

complicated confidentiality barriers, since they are business competitors."); *see also In re Yellow Brass Plumbing Component Prod. Liab. Litig.*, 844 F. Supp. 2d 1377, 1378 (J.P.M.L. 2012).

An industry-wide MDL would likely result in case management inefficiencies for the transferee court—potentially having to erect and enforce multiple confidentiality barriers in discovery—as well as impose an unnecessary risk upon each defendant of accidental disclosure of trade secret or other proprietary information and resulting competitive harm.

***A majority of the affected parties oppose centralization.*** Given the inefficiencies, delay, and expense that centralization would present, the vast majority of defendants and plaintiffs oppose centralization. Where the parties "who would be most affected by centralization . . . do not believe that [it] would be beneficial," centralization is not warranted. *In re Varsity Spirit Athlete Abuse Litig.*, 677 F. Supp. 3d 1376, 1378 (J.P.M.L. 2023); *see also In re CVS Caremark Corp. Wage & Hour Emp. Pracs. Litig.*, 684 F. Supp. 2d 1377, 1379 (J.P.M.L. 2010) (denying centralization where "[a] clear majority of plaintiffs, as well as all defendants, oppose centralization").

**III.   Other Case Management Options Are Superior to Multi-Defendant Centralization.**

"Centralization under Section 1407 should be the last solution after considered review of all other options." *In re Best Buy Co., Inc. California Song-Beverly Credit Card Act Litig.*, 804 F. Supp. 2d 1376, 1378 (J.P.M.L. 2011). And where, as here, there are relatively few actions at issue,[13] the "proponent of centralization bears a heavier burden to demonstrate that centralization is appropriate." *In re Colgate Optic White Toothpaste Mktg. & Sales Pracs. Litig.*, 232 F. Supp. 3d 1346, 1347 (J.P.M.L. 2016).

The two actions originally filed against Raymond James have already been consolidated and are presently pending in the Middle District of Florida, Tampa Division—the division where

---

[13] Most defendants are named in only one action each, and none are named in more than four.

both cases are "most directly connected" and would be "most conveniently advanced." Opinion and Order, *Conran v. Raymond James Fin., Inc.*, No. 2:24-cv-780, ECF 33 (Oct. 25, 2024 M.D. Fla.) (Ex. B). A sprawling multi-defendant MDL in a different court, half-way across the country makes little sense because Raymond James and the *Schmidlin/Conran* plaintiffs have taken steps to self-organize and efficiently manage these cases without an MDL. *See In re Baby Food*, 544 F. Supp. 3d at 1378 (denying multi-defendant centralization, noting "[w]e believe it is better to allow the parties' attempts to self-organize play out before centralizing any part of this litigation"). That is especially true here where Movants have fallen far short of satisfying their burden to establish that multi-defendant centralization is appropriate.

Given there are other pathways for the parties and the Panel to ensure the just and efficient litigation of the cases, the Court should deny Movants' request for multi-defendant centralization.

## IV. Centralization Is Inappropriate as to Raymond James.

For the reasons discussed above, centralization of the 19 separate putative class actions is unwarranted, but this is especially true as to Raymond James. Contrary to Movants' arguments, the Middle District of Florida—not the Southern District of New York—is the most suitable forum to litigate the consolidated *Schmidlin/Conran* action against Raymond James. Raymond James is not headquartered in New York, no cash sweep cases are pending against Raymond James in New York, Movants do not identify any documents, witnesses, events, or facts relevant to Raymond James in New York, the relevant Raymond James agreements are governed by Florida law not New York law, no New York state claims are brought against Raymond James, and New York is not in any way convenient for Raymond James. Movants' request to remove the consolidated *Schmidlin/Conran* case out of the Middle District of Florida, Tampa Division—where a material share of the relevant discovery, witnesses, and evidence will be located—and transfer it to a distant

jurisdiction with no ties to the case would create significant inefficiencies and substantially increase expenses to Raymond James. There is simply no justification for centralization of the cases naming Raymond James. As such, the Panel should refuse to consolidate them.

## CONCLUSION

Movants do not and cannot justify their request for multi-defendant centralization. In the context of cases as disparate and defendant-specific as those involved here, such centralization would produce few if any efficiencies, while imposing disproportionate burden on a majority of the parties. Nor can the desire of Movants or their counsel for a lead role, or for a centralized forum that is local to them, justify their request.[14] Raymond James respectfully requests that the Panel deny Movants' Motion for Transfer and Consolidation Pursuant to 28 U.S.C. § 1407 as to cases/claims filed against Raymond James.

Dated: November 27, 2024

Respectfully submitted,

By: /s/Traci McKee
Traci T. McKee (FBN: 53088)
FAEGRE DRINKER BIDDLE & REATH LLP
1500 Jackson Street, Suite 201
Fort Myers, Florida 33901
Telephone: (239) 286-6900
Facsimile: (239) 244-9053
Email: traci.mckee@faegredrinker.com

*Counsel for Defendants Raymond James Financial, Inc.; Raymond James Financial Services Advisors, Inc.; Raymond James Financial Services, Inc.; and Raymond James & Associates, Inc.*

---

[14] *See In re New York Area Emple. Ret. Income Sec. Act (ERISA) & Empl. Practices Litig. No. II*, 555 F. Supp. 3d 1367, 1368 (J.P.M.L. 2021) (although the Panel's "primary purpose is not to divine the motives and strategies of the various litigants," "where a Section 1407 motion appears intended to further the interests of particular counsel more than those of the statute, we would certainly find less favor with it") (citations omitted).