**BEFORE THE UNITED STATES**
**JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| **IN RE:  CASH SWEEP PROGRAMS CONTRACT LITIGATION** | **MDL No. 3136** |

**DEFENDANTS WELLS FARGO & COMPANY, WELLS FARGO BANK, N.A., AND WELLS FARGO CLEARING SERVICES, LLC, D/B/A WELLS FARGO ADVISORS, LLC'S OPPOSITION TO PLAINTIFFS' MOTION FOR TRANSFER**

## INTRODUCTION

The Panel should deny this motion seeking to graft together an array of actions brought by different plaintiffs on behalf of different putative classes against different competitor defendants regarding their separate and unique cash sweep deposit.  To the extent the transfer of actions filed against the same defendant and its affiliates is necessary, the parties can accomplish that on their own pursuant to 28 U.S.C. § 1404 ("Section 1404").

This proposed multidistrict litigation seeks to consolidate different putative class actions filed against ten separate sets of banks, brokerage firms and their affiliates (the "Underlying Actions")[1] pursuant to 28 U.S.C. § 1407 ("Section 1407").  The plaintiffs in these actions allege that these competitor financial institutions offered customers unreasonably low interest rates as part of their respective "cash sweep" programs—a feature of investment accounts which allows account holders to accrue interest, typically in FDIC-insured accounts or money market funds, on temporarily uninvested cash.  The defendant financial institutions in the Underlying Actions all have separate cash sweep programs, with different customer contracts and disclosures, and paid different rates during different times to their customers.  The plaintiffs—a diverse mix of corporate and individual customers with retirement, advisory, and traditional brokerage accounts—allege the defendants breached purported contractual obligations and fiduciary duties and violated various federal and state laws.  Plaintiffs do not claim that the defendants engaged in any cross-institution combined activity in respect of the claims.

---

[1] The "Underlying Actions" include those listed in Movants' Third Corrected Schedule of Actions (*see* Docket 8-1), as well as any notices of related cases filed to date (*see, e.g.*, Docket No. 59-1).

These Underlying Actions—all effectively single-defendant actions[2]—are now clustered in a handful of jurisdictions through transfer motions filed under Section 1404 and/or the first-to-file rule, and plaintiffs' voluntary dismissals.  As a result, many of the Underlying Actions against each defendant have already been consolidated in the same district before the same judge (or should be soon), including the Underlying Actions against Wells Fargo.

There is no need for this Panel to centralize the Underlying Actions into a single multidistrict litigation.  The parties have already significantly organized the actions through Section 1404 transfers and other means, which this Panel has repeatedly emphasized "is preferable to Section 1407 centralization."  *In re Hudson's Bay Co. Customer Data Sec. Breach Litig.*, 326 F. Supp. 3d 1372, 1373 (J.P.M.L. 2018).  The separate actions against each of the financial institutions can be litigated more efficiently in those courts where most of the cases have already been consolidated with respect to each particular defendant institution.

Movants also fail to meet their burden of showing the Section 1407 requirements have been met, much less that consolidating the Underlying Actions against disparate competitor defendants would enhance efficiency.  Rather, centralizing all of the Underlying Actions before a single judge would not result in any real efficiencies given the need to deal with the facts specific to each defendant and its particular cash sweep program.  This Panel routinely declines similar requests for industry-wide consolidation of the type sought here, and this Motion should likewise be denied.

---

[2] Each of the Underlying Actions names only one defendant firm, and in some cases also certain of the defendant firms' affiliates, as in the Underlying Actions against Wells Fargo & Company, Wells Fargo Bank, N.A., and Wells Fargo Clearing Services, LLC, d/b/a Wells Fargo Advisors, LLC (collectively, "Wells Fargo").

**BACKGROUND**

I.      **Summary of the Underlying Actions**

Seven Underlying Actions have been filed against Wells Fargo relating to its cash sweep program starting on July 30, 2024. *See* Schedule of Actions, Docket No. 8-1 at Nos. 26–31; Docket No. 63-1 at No. 2.[3] Four of the Underlying Actions against Wells Fargo—*Bujold*, *Cobb*, *Nadolny*, and *Varady*—have been consolidated into the same action in the Northern District of California before the Honorable Vince Chhabria. *See In re Wells Fargo Cash Sweep Litig.*, No. 3:24-cv-04616 (N.D. Cal.). Section 1404 motions to transfer the remaining cases against Wells Fargo— *Brickman*, *Chakravarthy*, and *Christner*—are pending or will be filed. Notably, *Christner* was filed in the Southern District of New York on November 22, 2024 by the same lawyers who filed this Section 1407 motion, likely in the hope of bolstering their MDL request.

On November 6, 2024, proposed intervenors Keith Bujold, Edward Nadolny, and Darren Cobb (also plaintiffs in *In re Wells Fargo Cash Sweep Litigation*) moved to intervene and to transfer *Brickman* under the first-to-file rule and Section 1404 from the Southern District of New York to the Northern District of California. *Brickman*, No. 1:24-cv-07751-AS, Docket Nos. 17– 20. On November 12, 2024, Bujold, Nadolny, and Cobb also moved under the first-to-file rule and Section 1404 to transfer *Chakravarthy* from the Central District of California to the Northern District of California. *Chakravarthy*, No. 2:24-cv-08831-FMO-BFM, Docket No. 19. Wells Fargo filed partial joinders to both transfer motions to facilitate consolidation of all Underlying

---

[3] *Bujold v. Wells Fargo & Co., et al.*, No. 3:24-cv-04616 (N.D. Cal. July 30, 2024); *Nadolny v. Wells Fargo & Co., et al.*, No. 3:24-cv-04633 (N.D. Cal. July 31, 2024); *Varady, et al. v. Wells Fargo & Co., et al.*, No. 3:24-cv-04917 (N.D. Cal. July 31, 2024); *Cobb v. Wells Fargo & Co., et al.*, No. 3:24-cv-06696 (N.D. Cal. Sept. 24, 2024); *Brickman Invs. Inc. v. Wells Fargo & Co., et al.*, No. 1:24-cv-07751-AS (S.D.N.Y. Oct. 11, 2024); *Chakravarthy v. Wells Fargo & Co., et al.*, No. 2:24-cv-08831-FMO-BFM (C.D. Cal. Oct. 14, 2024); *Christner v. Wells Fargo & Co., et al.*, No. 1:24-cv-08953 (S.D.N.Y. Nov. 22, 2024).

Actions against Wells Fargo in one forum.  *See Brickman*, No. 1:24-cv-07751-AS, Docket No. 27 (Nov. 18, 2024); *Chakravarthy*, No. 2:24-cv-08831-FMO-BFM, Docket No. 24 (Nov. 21, 2024).

The motion to transfer *Chakravarthy* will be fully briefed on December 3, 2024.  *See Chakravarthy*, No. 2:24-cv-08831-FMO-BFM, Docket No. 28 (Nov. 25, 2024).  On November 26, 2024, the Honorable Arun Subramanian denied without prejudice the motion to intervene and to transfer *Brickman* to the Northern District of California, declining to grant such a request while this Section 1407 motion is pending before this Panel.  *Brickman*, No. 1:24-cv-07751-AS, Docket No. 39.  Motions to transfer the recently-filed seventh case against Wells Fargo will be filed in due course.

Twenty-eight other Underlying Actions have been filed against nine other financial services firms (and their affiliates).  As detailed below, the Underlying Actions against these financial institutions have either been consolidated before the same judge for the actions against each respective defendant, or consolidation efforts are underway.[4]

## II. Movants Safron Capital Corporation and Brickman Investments Inc.'s Request to Create a Single Industry-Wide MDL Against Competing Defendants

On October 30, 2024, plaintiffs Safron Capital Corporation and Brickman Investments Inc. ("Movants") filed a motion before this Panel seeking to consolidate all Underlying Actions against every different defendant into a single multidistrict proceeding in the Southern District of New York (the "MDL Motion" or "Mot.").  Docket No. 1.  In setting a briefing schedule on the MDL Motion, this Panel directed the parties to "address what steps they have taken to pursue alternatives to centralization," such as "informal coordination of discovery and scheduling" and "seeking Section 1404 transfer of one or more of the subject cases."  Docket No. 5.  As explained in detail

---

[4] This does not include the Underlying Actions against Bank of America and one Underlying Action against Morgan Stanley, which are at significantly different procedural stages.

below, those "alternatives to centralization" have been effective and obviate the need for a multidistrict litigation.

## ARGUMENT

### I.     There Are Alternatives to Centralization That Obviate the Need for a Multidistrict Litigation

Movants suggest that the only alternative to a multidistrict litigation is for dozens of cases against the same defendants to proceed individually, resulting in duplicative discovery, inconsistent rulings, and other purported inefficiencies. *See* Mot. at 5–7. This ignores that the Underlying Actions have already been largely consolidated into a handful of districts, and most assigned to a single judge within each district, without this Panel's intervention. Many of the Underlying Actions that have not already been consolidated have pending transfer motions filed under the first-to-file doctrine and/or Section 1404. These consolidation efforts are the precise "alternatives to centralization" that this Panel instructed the parties to address (*see* Docket No. 5) and show that multidistrict litigation is unnecessary here.

This Panel has "emphasized that centralization under Section 1407 should be the last solution after considered review of all other options." *In re Coll. Athlete Comp. Antitrust Litig.*, No. MDL 3105, 2024 WL 1597524, at *1 (J.P.M.L. Apr. 11, 2024) (cleaned up). "These options include Section 1404 transfer, dismissal or stay under the first-to-file doctrine, agreement by plaintiffs to voluntarily dismiss their actions in favor of one district, and cooperation among the parties and the various transferor courts." *In re Bank of Am. Fraudulent Acct. Litig.*, 707 F. Supp. 3d 1415, 1416 (J.P.M.L. 2023); *see also In re Hudson's Bay Co. Customer Data Sec. Breach Litig.*, 326 F. Supp. 3d 1373 ("[W]e repeatedly have noted that where a reasonable prospect exists that the resolution of a Section 1404 motion or motions could eliminate the multidistrict character of a litigation, transfer under Section 1404 is preferable to Section 1407 centralization.") (cleaned up).

Here, there are other, more effective solutions that obviate the need for multidistrict consolidation.  As noted above, the majority of the Underlying Actions against Wells Fargo have already been consolidated into the same action in the Northern District of California before the Honorable Vince Chhabria.  *See In re Wells Fargo Cash Sweep Litig.*, No. 3:24-cv-04616.  Of the three not-yet-consolidated actions against Wells Fargo, one has a motion to transfer to the Northern District of California pending and another will have a motion to transfer to the Northern District of California renewed in the event this Panel denies the MDL Motion.  *See Chakravarthy*, No. 2:24-cv-08831-FMO-BFM, Docket No. 19 (C.D. Cal. Nov. 12, 2024); *id.*, Docket No. 28 (Nov. 25, 2024); *Brickman*, No. 1:24-cv-07751-AS, Docket Nos. 17–20 (S.D.N.Y. Nov. 6, 2024); *id.*, Docket No. 39 (Nov. 26, 2024).  Motions to transfer the just-filed seventh case against Wells Fargo will be filed shortly.  Thus, centralization under Section 1407 is unnecessary here.  *See, e.g.*, *In re Bank of Am. Fraudulent Acct. Litig.*, 707 F. Supp. 3d at 1416 (denying Section 1407 centralization where there was a "reasonable prospect that the[] actions may be consolidated in a single district by means of Section 1404 transfers").

Likewise, the Underlying Actions against the other nine financial institutions have largely been consolidated before individual judges, or consolidation efforts are underway.

- **JPMorgan Chase**—All of the Underlying Actions against JPMorgan Chase have been consolidated in or transferred to the Southern District of New York, where they all are pending before the same judge.  *See* Third Corrected Schedule of Actions, Docket No. 8-1 at Nos. 11, 12.

- **LPL Financial LLC**—All Underlying Actions against LPL Financial[5] are consolidated in the Southern District of California before the same judge.  *See* Docket No. 8-1 at Nos. 13, 14, 16.

---

[5] Plaintiffs voluntarily dismissed *Vu v. LPL Financial Holdings Inc. et al.*, No. 3:24-cv-01484-TWR-AHG, listed as no. 15 in Movants' Schedule of Actions (Docket No. 8-1), on October 9, 2024.

- **Raymond James Financial**—All Underlying Actions against Raymond James Financial are pending in the Middle District of Florida before the same judge and have been deemed related.  *See* Docket No. 8-1 at Nos. 22, 23.  All filings are made on the lead docket, *Schmidlin, et al. v. Raymond James Financial, Inc. et al.*, No. 8:24-cv-02041-KKM-CPT.

- **UBS Financial Services**—Two Underlying Actions against UBS Financial Services are consolidated in the Southern District of New York before the same judge.  *See* Docket No. 8-1 at Nos. 24, 25.  The third Underlying Action against UBS, filed recently on November 14, 2024, is pending in the North District of Georgia.  *See* Docket No. 59-1.

- **Ameriprise Financial**—Two of the three Underlying Actions against Ameriprise have been consolidated in the District of Minnesota before the same judge.  *See* Docket No. 8-1 at Nos. 1, 2.  A motion to transfer the third from the Central District of California to the District of Minnesota is pending.  *See id.* at No. 4.[6]

- **Charles Schwab**—Three of the four Underlying Actions against Charles Schwab have been consolidated in the Central District of California before the same judge.  Docket No. 8-1 at Nos. 6–8.  The fourth, pending in the Middle District of Florida, was filed recently on October 24, 2024 and stayed pending this Panel's decision on the MDL Motion.  *See id.* at No. 9.

- **Morgan Stanley**—Three of the four Underlying Actions against Morgan Stanley have been deemed related and are pending in the Southern District of New York before the same judge.  *See* Docket No. 8-1 at Nos. 19, 20; *see also* Docket No. 63-1 at No. 1.  The parties in two of those three actions have stipulated to consolidation in a joint letter to that court.[7]  The three Underlying Actions against Morgan Stanley that were filed in the last few months have been deemed related and are pending in the Southern District of New York before the same judge.

- **Bank of America**—The four Underlying Actions against Bank of America are pending in the Southern District of New York.[8]

- **PNC Investments**—The sole Underlying Action against PNC is pending in the Western District of Pennsylvania.  *See* Docket No. 8-1 at No. 21.

[6] Plaintiffs voluntarily dismissed *Frey v. Ameriprise Fin., Inc. et al*., No. 0:24-cv-03360-SRN-LIB, listed as no. 3 in Movants' Schedule of Actions (Docket No. 8-1), on September 17, 2024.

[7] The fourth Underlying Action against Morgan Stanley is at a significantly different procedural stage, as it was filed in February 2024 in the District of New Jersey and is undergoing discovery. See Docket No. 8-1 at No. 10.

[8] The actions against the Bank of America entities are situated differently: there is one putative class action where discovery is complete and the parties are briefing summary judgment, and others that were filed more recently.  To date, the parties in these cases appear to be coordinating in ways consistent with the procedural posture of those cases.  *See* Docket No. 8-1 at Nos. 5, 17, 18; Docket No. 12-1.

7

In sum, the actions against the same defendant are in the process of being consolidated so that there will be a single action (or coordinated actions) against each defendant. Accordingly, there is little if any risk that the Underlying Actions against the same financial institutions will be scattered throughout the country if this Panel does not consolidate them into a single, multidistrict litigation. Rather, the vast majority will continue as consolidated proceedings specific to the relevant defendant. As this Panel emphasized in *In re Baby Food Marketing, Sales Practices and Products Liability Litigation* when declining to centralize 38 actions against disparate baby food manufacturers, "it is better to allow the parties' attempts to self-organize play out before centralizing any part of this litigation." 544 F. Supp. 3d 1375, 1378 (J.P.M.L. 2021). These "alternatives to centralization" are far superior to a single multidistrict litigation.

## II.      Movants Fail to Meet Their Burden Under Section 1407

Movants "have the burden of demonstrating" Section 1407's requirements "that centralization will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation." *In re Acthar Gel Antitrust Litig.*, 543 F. Supp. 3d 1375, 1376 (J.P.M.L. 2021). Moreover, this Panel has repeatedly emphasized that it is "cautious when considering industry-wide centralization." *In re Baby Food Mktg., Sales Pracs. & Prods. Liab. Litig.*, 544 F. Supp. 3d at 1377. That is because "requests to centralize claims filed against multiple defendants who are competitors in a single MDL . . . often will not promote judicial efficiency or serve the convenience of the parties and witnesses." *In re Secondary Ticket Mkt. Refund Litig.*, 481 F. Supp. 3d 1345, 1346 (J.P.M.L. 2020). This MDL Motion seeking to centralize different putative class actions against ten competitor financial institutions is no exception.

In *In re Secondary Ticket Marketing Refund Litigation*, the plaintiffs sought to centralize actions against Vivid Seats, SeatGeek, and StubHub alleging they offered a functionally identical money-back guarantee to buyers for tickets to cancelled events but retroactively discontinued their

guarantee, refusing to provide refunds to customers.  This Panel held that, though there was general factual commonality across the actions, such commonality was "superficial at best," emphasizing "[a]ll defendants are separate businesses that employed different terms of use, different arbitration agreements, different marketing and different choice of law provisions" and "[t]here are no allegations of a conspiracy and no defendant is named in an action alongside another vendor competitor."  481 F. Supp. 3d at 1346.  Accordingly, "[c]reating an industry-wide MDL for all three defendants would seem to complicate pretrial proceedings more than it would streamline them."  *Id.*  The same is true here.

Here, Movants contend the Underlying Actions involve "one or more common questions of fact" because they are based on defendants' alleged "failure to pay or secure reasonable interest rates on their cash sweep program customers' cash balances."  Mot. at 4.  But, as in *In re Secondary Ticket Marketing Refund Litigation*, this purported commonality is superficial.  As Movants tacitly acknowledge, the Underlying Actions concern ten separate financial institutions that employed different cash sweep programs, with its own diverse disclosures, consent forms, agreements, marketing materials, communications with customers, policies, procedures, bank relationships, interest rates, alleged "material misstatements and omitted material facts," and "contractual obligations" (Mot. at 4, 6).  Discovery into these issues will be unique for each financial institution and will not overlap between defendants, and the fact that the defendants are competitors will only further complicate any consolidated discovery and incumber the pre-trial process.

There are thus no meaningful efficiencies to be gained from consolidating the claims against each defendant—which will require defendant-specific discovery, motion practice, and pretrial proceedings—into a single multidistrict litigation.  If anything, "centralizing competing defendants in the same MDL" will simply inject additional case management hurdles "due to the

9

need to protect trade secret and confidential information" of each defendant and "the possible need for separate discovery and motion tracks" for each defendant. *In re CP4 Fuel Pump Mktg., Sales Pracs., & Prods. Liab. Litig.*, 412 F. Supp. 3d 1365, 1367 (J.P.M.L. 2019) (denying Section 1407 centralization).

The cases Movants cite differ significantly from these circumstances and only underscore that Section 1407 centralization is inappropriate here.

For example, four of the cases Movants cite involved antitrust claims alleging the defendants all conspired with each other—allegations that are noticeably absent here. In *In re Treasury Securities Auction Antitrust Litigation* (Mot. at 3–4), the underlying actions alleged 20 bank defendants conspired to manipulate Treasury securities auctions overseen by the Federal Reserve Bank of New York, as well as the market for derivative financial products. 148 F. Supp. 3d 1360, 1361 (J.P.M.L. 2015). The Panel found centralization was appropriate because, unlike here, there was a complete overlap among the defendants named in the actions, the plaintiffs alleged collusion among all defendants, discovery for all actions would involve the same third parties, and all parties supported centralization. *Id.* at 1361–62.

Similarly, this Panel granted Section 1407 centralization in *In re London Silver Fixing, Ltd.* 52 F. Supp. 3d 1381, 1381 (J.P.M.L. 2014) (Mot. at 4) because all actions alleged the same three banks—Bank of Nova Scotia, HSBC, and Deutsche Bank—conspired with London Silver Fixing to collectively fix the benchmark spot price of physical silver, and in *In re Insulin Pricing Litigation*, 709 F. Supp. 3d 1384, 1389 (J.P.M.L. 2023) (Mot. at 4–5) because all actions alleged a scheme between the same group of insulin manufacturers and pharmacy benefit managers to artificially inflate the price of insulin and other diabetes medications. *See also* Mot. at 3 (citing *In re Japanese Elec. Prod. Antitrust Litig.*, 388 F. Supp. 565, 566–67 (J.P.M.L. 1975) (consolidating

two actions against overlapping defendants alleging they conspired to sell television receivers at artificially low prices in violation of the Sherman Act)).[9]

By contrast, none of the Underlying Actions allege concerted conduct or conspiracy among the different defendants here.[10]  As a result, "individualized facts . . . will predominate over the common factual issues alleged by plaintiffs."  *In re Electrolux Dryer Prods. Liab. Litig.*, 978 F. Supp. 2d 1376, 1377 (J.P.M.L. 2013) (denying centralization); *see also In re Baby Food Mktg., Sales Pracs. & Prods. Liab. Litig.*, 544 F. Supp. 3d at 1377 (denying Section 1407 motion where 73 of the 86 related actions in the litigation were brought against a single defendant, rather than against overlapping defendants).

Citing *In re Lehman Brothers Holdings, Inc*. (Mot. at 5), Movants assert "that some plaintiffs might raise additional or different types of legal claims does not bar centralization."  598 F. Supp. 2d 1362 (J.P.M.L. 2009).  But the underlying actions in that case all involved the securities of the same company, Lehman Brothers, and the Panel thus found centralization was appropriate because "all actions can be expected to focus on a significant number of common events, defendants, and/or witnesses."  *Id.* at 1364.  By contrast, no "significant number of common events,

---

[9] *In re UnumProvident Corporation Securities Derivative, & "ERISA" Litigation* (*see* Mot. at 3) is inapt for the same reason, as this Panel consolidated actions against **one defendant** that allegedly engaged in improper claims handling practices.  280 F. Supp. 2d 1377, 1379 (J.P.M.L. 2003).  So is *In re Janus Mutual Funds Investment Litigation* (*see* Mot. at 5), which again concerned underlying actions against overlapping defendants.  310 F. Supp. 2d 1359 (J.P.M.L. 2004).

[10] Even the Movants—Brickman Investments, Inc. and Safron Capital Corp.—who have brought separate actions asserting RICO Statute claims against Wells Fargo, Morgan Stanley, and Bank of America—implicitly acknowledge there is no industry-wide concerted effort or conspiracy here, as they only allege that each respective defendant and its affiliates are an "'enterprise' within the meaning of the RICO Statute," and do not allege there was any collusion between any of the separate defendants in the Underlying Actions.  *See Brickman*, No. 1:24-cv-07751-AS, Docket No. 1 (Oct. 11, 2024) ¶¶ 32, 64, 66; *Safron Capital Corp. v. Morgan Stanley, et al.*, No. 1:24-cv-07750, Docket No. 1 (Oct. 11, 2024) ¶¶ 29, 63; *Safron Capital Corp. v. Bank of America Corp.*, *et al.*, No. 1:24-cv-07743, Docket No. 1 (Oct. 11, 2024) ¶¶ 30, 64.

defendants, and/or witnesses" exist across the Underlying Actions here.  Accordingly, contrary to Movants' assertion, there are no "duplicative discovery requests" and "duplicative depositions" that would support the creation of an industry-wide multidistrict litigation.  Mot. at 6.

None of Movants' other authority supports their misguided contention that industry-wide centralization is warranted here.  *See* Mot. at 5–6 (citing *In re Pilot Flying J Fuel Rebate Cont. Litig.*, 11 F. Supp. 3d 1351, 1351 (J.P.M.L. 2014) (centralizing actions against the same company alleging the same fraudulent scheme because the actions would require depositions of the same company officers and employees and involve the same document discovery); *In re Multidistrict Litig. Involving Banking Agreements with Stirling Homex Corp.*, 388 F. Supp. 572 (J.P.M.L. 1975) (deciding *where* to consolidate actions and not *whether* to consolidate actions under Section 1407, because the Parties had agreed Section 1407 consolidation was appropriate)).

Movants also cannot rely on purported common legal questions.  *See* Mot. at 4 (arguing that all Underlying Actions require determination of the reasonableness of defendants' interest rates and whether defendants made material misstatements or omissions, among others). Multidistrict litigation is not appropriate where the cases at issue present only common legal claims.  *See In re Hotel Indus. Sex Trafficking Litig.*, 433 F. Supp. 3d 1353, 1356 (J.P.M.L. 2020) ("[C]ommon legal questions are insufficient to satisfy Section 1407's requirement of common factual questions.") (quoting *In re ABA Law School Accreditation Litig.*, 325 F. Supp. 3d 1377, 1378 (J.P.M.L. 2018)); *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, MDL No. 2047, 2010 WL 11747797, at *2 (J.P.M.L. June 15, 2010) ("Section 1407 does not, as a general rule, empower the Panel to transfer cases solely due to the similarity of legal issues.").

Finally, Movants argue that the "risk of conflicting and inconsistent pretrial rulings is exceptionally high" here simply because the Underlying Actions are predominantly putative class

actions, and that if their MDL Motion is denied, "valuable judicial resources would be wasted." Mot. at 7. But this ignores that the defendants in the Underlying Actions are differently situated with disparate cash sweep programs that have material differences, such that "unique questions of fact predominate over any common questions of fact." *In re Pharmacy Benefit Plan Adm'rs Pricing Litig.*, 206 F. Supp. 2d 1362, 1363 (J.P.M.L. 2002) (denying centralization of five putative class actions where "only one [pharmacy benefit manager] is involved in each action" and "there is no allegation that the [pharmacy benefit managers] conspired with each other"). In such circumstances, Movants fail to meet their burden to show Section 1407 centralization of different claims against ten competing financial institutions would be appropriate, much less beneficial to the parties and judicial economy.

## CONCLUSION

For the foregoing reasons, the Panel should deny the MDL Motion.


Dated:    November 27, 2024                              Respectfully submitted,


                                                          */s/ David G. Hille*
                                                         David G. Hille
                                                         Gregory M. Starner
                                                         WHITE & CASE LLP
                                                         1221 Avenue of the Americas
                                                         New York, NY 10020-1095
                                                         T: (212) 819-8200

                                                         **Counsel for Defendants:**
                                                         **WELLS FARGO & COMPANY,**
                                                         **WELLS FARGO BANK, N.A., AND**
                                                         **WELLS FARGO CLEARING SERVICES,**
                                                         **LLC, D/B/A WELLS FARGO ADVISORS,**
                                                         **LLC**