BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

|  |  |
|---|---|
| IN RE CASH SWEEP LITIGATION | ) MDL No. 3136 <br> ) <br> ) **RESPONSE OF PLAINTIFFS JAMIE** <br> ) **CANALES, GOPAL CHAKRAVARTHY,** <br> ) **TED LOURENCO, AND DAVID M.** <br> ) **MORRIS IN SUPPORT OF MOTION TO** <br> ) **TRANSFER AND CONSOLIDATE** <br> ) **PURSUANT TO 28 U.S.C. §1407** |

Plaintiffs Jamie Canales, Gopal Chakravarthy, Ted Lourenco, and David M. Morris ("Plaintiffs")[1] by and through their undersigned counsel, respectfully submit this memorandum of law in response to Plaintiffs' Motion for Transfer and Consolidation Pursuant to 28 U.S.C. §1407 ("Motion" or "Mot.") (ECF 1). Plaintiffs agree that transfer and centralization into a single district court is appropriate and that the United States District Court for the Southern District of New York is the best-suited transferee court. Following the filing of the Motion, Canales' case was voluntarily transferred to that court.

## INTRODUCTION

The Related Actions all involve two overriding common issues that should have a common answer, regardless of the defendant financial institution. First, they share a common legal issue: whether brokerage firms that sweep uninvested cash in their customers' accounts into deposit

---

[1] *Canales v. JPMorgan Chase & Co., et al.*, No. 1:2024-cv-08377 (S.D.N.Y.); *Chakravarthy v. Wells Fargo & Co.*, *et al.*, No. 2:24-cv-08831-FMO-BFM (C.D. Cal.); *Lourenco v. Ameriprise Fin., Inc., et al.*, Case No. 2:24-cv-08825-MRA-KS (C.D. Cal.); *Morris v. The Charles Schwab Corporations, et al.*, No. 2:2024-cv-00985 (M.D. Fla.). Contrary to accusations of some parties, none of Plaintiffs' complaints can accurately be called a copycat because they strategically focus their claims on the rights of a class of retirement accountholders with sweep accounts, which federal law requires the Defendants to pay reasonable rates of interest. Other complaints against the Defendants that Plaintiffs sued do not sufficiently address the important focus courts should give to retirements accounts.

accounts at banks they own are legally required to pay a "reasonable rate of interest." Second, they share a common factual issue: what a "reasonable rate of interest" has been during the class period. Transfer and consolidation of the Related Actions will allow a single district court judge to efficiently develop processes to produce common answers to these common questions.

It is critical for a single standard to apply to the cash sweep programs used across the banking industry because our financial institutions form the backbone of the American economy, playing a critical role in business development, commerce, consumer protection, and economic stability. Consistent regulatory standards that apply uniformly to all banks are essential to ensure fairness, transparency, and trust in the financial system. Plaintiffs support transfer and centralization of the Related Actions because a consolidated action is more likely to produce a common answer to the common questions presented by these similar lawsuits, which will benefit both consumers and the defendant financial institutions. Conversely, if centralization is denied, there is a risk that banks will be subject to materially different standards. This may create systemic risks, distort competition, and undermine confidence in the financial system. Thus, the most prudent course of action is for the Court to grant the Motion, as it has in other comparable situations where there was a financial industry-wide practice that was best handled by a single court.

## ARGUMENT

### I. Transfer and Centralization Are Appropriate

The Related Actions should be transferred and consolidated or coordinated for pretrial proceedings. Under 28 U.S.C. §1407(a), the Panel may transfer and consolidate cases that meet three requirements: (1) the cases "involv[e] one or more common questions of fact;" (2) transfer and consolidation or coordination will further "the convenience of parties and witnesses;" and (3) transfer and consolidation or coordination "will promote the just and efficient conduct of [the] actions." Transfer to and centralization in the Southern District of New York satisfies each.

### A. The Related Actions Involve Common Questions of Fact.

As Movants identify in the Motion, there is a rampant financial services industry-wide problem with the nation's largest brokerage firms and affiliated banks for years shortchanging interest owed to accountholders holding brokerage and retirement accounts. Funds in "cash sweep accounts" are required by law and contract to earn a reasonable rate of interest, yet the brokerage firms and banks have put their self-interest ahead of their millions of retirement and brokerage account customers, in breach of their fiduciary duties. These financial institutions invested their customers' funds for their own benefit, reaping profits far exceeding their payment of an unreasonably low rate of interest on the uninvested funds in the retirement and brokerage accounts.

These problems are particularly acute with respect to retirement accountholders who are included in all the Related Actions. As many of the complaints allege, there are specific provisions of the Internal Revenue Code, Department of Treasure Regulations, and ERISA statute, which prohibit interested party transactions with respect to retirement accounts unless they bear a reasonable rate of interest. *See* 26 U.S.C. §4975(e)(1)(B); 26 C.F.R. §54.4975-6(b)(1), (3); 29 U.S.C. §1108(b)(1). Consistent ruling on the application of those laws, and commonly worded contractual language, will promote efficiency in all Related Actions. Further, even for non-retirement accountholders, many of the Related Actions allege colorable claims that, in an interested party transaction, the failure to a pay a reasonable interest is a breach of Regulation Best Interest (17 CFR § 240.15l-1, commonly known as "Reg. BI") and a breach of fiduciary duty. Even if the transferee court ultimately concludes that the obligation to pay a reasonable rate of interest applies only to some, but not all brokerage accounts, that determination will greatly benefit all parties by bringing needed clarity and consistency to this major legal question.

The common questions of fact at issue in the Related Actions are reminiscent of what happened to deposit accountholders who suffered widespread wrongdoing by national and regional

banks across the country that assessed overdraft fees using a transaction posting process contrary promises made to accountholders. The Panel consolidated and centralized cases against dozens of banks in *In re Checking Acct. Overdraft Litig.*, MDL No. 2036, beginning in 2009 with the nation's largest banks, to allow a single judge to organize and preside over numerous related actions alleging an identical practice that harmed millions of accountholders. *See In re Checking Acct. Overdraft Litig.*, 659 F. Supp. 2d 1363 (J.P.M.L. 2009). In accordance with Section 1407, that MDL led to consistent pretrial rulings applicable to the defendant banks, resulted in consistent class certification rulings, and ultimately lead to the settlement of almost every case that proceeded on the merits, with over one billion dollars recovered for accountholders.

In the current Related Actions, the nation's largest brokerage firms and affiliated banks took advantage of their customers in a uniform way. Recognizing the Panel subsequently has declined to create industry-wide MDLs in certain circumstances following MDL No. 2036, the Panel should not be dissuaded to do so this time.[2] At the end of the day, the overdraft MDL proved very successful to allow important common issues of fact and law to be resolved and efficiently lead to the resolution of class actions for millions of accountholders before a single, experienced jurist. If it is ever determined, after consultation with the transferee judge, that the clear benefits of an MDL that currently exist are outweighed by other considerations that develop following the maturity of the pretrial proceedings, the Panel can cease to transfer subsequently filed cases against newly named defendants to the MDL. *In re Checking Acct. Overdraft Litig.*, 818 F. Supp. 2d 1373 (J.P.M.L. 2011).[3]

---

[2] In *In re Credit Card Payment Prot. Plan Mktg. & Sales Prac. Litig.*, 753 F. Supp. 2d 1375 (J.P,M.L. 2010), the Panel did not follow *In re Checking Acct. Overdraft Litig.* precedent because it did not see "similarly uniform conduct sufficient to justify centralization," but such uniform conduct is presented here.

[3] The Panel's decision to limit the size of that MDL may have been influenced by the presiding MDL transferee judge being on senior status when he conferred with the Panel on not adding

The Panel also created an industry-wide MDL in *In re 100% Grated Parmesan Cheese Mktg. and Sales Pracs. Litig.*, 201 F.Supp.3d 1375 (J.P.M.L. 2016) (MDL Nos. 2705, 2707, 2708). The Panel noted: "Section 1407 does not require a complete identity of factual issues or parties as a prerequisite to transfer, and the presence of additional facts is not significant when the actions arise from a common factual core." *Id.* at 1378. And the Panel recently opted to create another industry-wide MDL in *In re Oral Phenylephrine Mktg. & Sales Pracs. Litig.*, 709 F. Supp. 3d 1380 (J.P.M.L. 2023) (MDL No. 3089), finding enough commonality and benefit to join numerous OTC medication manufacturers and retailers in one MDL because common factual and legal issues were shown to apply to over a dozen defendants.

The Panel has consistently held cases involving overlapping factual issues are particularly appropriate for transfer and consolidation or coordination. Each of the Related Actions shares a common core of operative factual allegations stated in the Motion. Mot. at 4. In essence, as to all Defendants:

- Defendants opened brokerage and retirement accounts with a sweep account for accountholders to temporarily hold investors' funds not invested in stocks, bonds, mutual funds, and other investments.

- Federal law and many of the Defendants' account agreements expressly required Defendants to pay a reasonable rate of interest on funds in the sweep accounts. There is also commonality with New York law being incorporated as the governing law.

- Defendants ignored the reasonable rate of interest requirement by paying accountholders little interest while the money was deposited in the sweep accounts, while using those funds as banks regularly do to invest the money for their own

---

additional new defendant-banks to MDL No. 2036. Additionally, Plaintiffs do not expect the creation of a sweep account MDL could balloon into the inclusion of an unmanageable number of class action cases, the Panel's concern in denying an MDL in *In re Credit Union Checking Account Overdraft Litigation*, 156 F. Supp. 3d 1363 (J.P.M.L. 2016) (observing threat of cases against an unknown number of the 6,600 existing credit unions). For that MDL motion, the Panel was also concerned numerous states' laws would apply, but as the Motion in this case points out, New York law is consistently the Defendants' choice of law included in the brokerage and retirement account agreements, even for Defendants not headquartered in New York. Mot. at 2, 10 n.4.

financial gain.

- Plaintiffs and class members were injured by Defendants' conduct and are entitled to a determination of the appropriate class-wide measure of damages.

The similarity of claims among the lawsuits filed means any court assigned to handle one of these cases must address the same key factual issues across all cases. Regardless of the Defendants, the outcome of each case filed thus far will likely depend on once central and fundamental question: whether Defendants were legally and contractually required to pay a higher rate of reasonable interest to sweep accountholders than Defendants consistently paid to them. This core issue compels centralization under Section 1407(a) for the sake of efficiency and the avoidance of "inconsistent rulings." *In re Insulin Pricing Litig.*, MDL No. 3080, 2023 WL 9290540, at *4 (J.P.M.L. Dec. 6, 2023).[4]

### B. Centralization Will Be More Convenient for the Parties and Witnesses.

Centralization of the Related Actions will save Plaintiffs and Defendants the burden of prosecuting and defending competing and overlapping class actions in multiple federal district courts across the country. The Related Actions against each of the Defendants will require essentially the same discovery, including: (1) the terms and conditions governing the payment of interest on sweep accounts associated with the brokerage and retirement accounts; (2) the policies and procedures applied to set interest rates to be paid on the sweep accounts; (3) the interest rates paid to sweep accountholders; (4) the sweep account marketing materials, disclosures, and communications to accountholders promising to pay reasonable rates of interest; (5) the tremendous financial gain earned from investing money held in sweep accounts without paying the accountholders the promised reasonable rate of interest; and (6) expert testimony supporting

---

[4] In the alternative, there is sufficient justification to create defendant-specific MDLs, over which the same transferee judge would preside. Although not a serious issue given protections readily employed in MDLs involving competitors, separate MDLs would quell this concern.

liability and classwide damages. Without consolidation, Plaintiffs would be required to issue, and Defendants would be required to respond to, multiple and duplicative discovery requests seeking the same information, and key witnesses would be required to sit for numerous and duplicative depositions. *See In re Digital Advert. Antitrust Litig.*, 555 F. Supp. 3d 1372, 1375 (J.P.M.L. 2021) ("Centralization will promote the just and efficient conduct of the litigation by eliminating duplicative discovery"). While there has been some informal organization of cases against certain Defendants pursuant to 28 U.S.C § 1404, overall, centralization of the cases against the Defendants in the Related Actions will provide convenience for the parties to have the most prominent factual and legal issues resolved.[5]

Finally, besides convenience for the parties and witnesses, centralization will optimize judicial efficiency. This approach allows a single judge to oversee identical claims, governed by the same laws, developing a common and cohesive pre-trial process that reduces costs for everyone involved. *See In re Aftermarket Auto. Lighting Prods. Antitrust Litig.*, 598 F. Supp. 2d 1366, 1367 (J.P.M.L. 2009) (finding consolidation would "eliminate duplicative discovery, prevent inconsistent pretrial rulings, and conserve the resources of the parties, their counsel and the judiciary"). Rulings on merits and other pretrial discovery issues will no doubt benefit all parties. Therefore, transfer and centralization for consolidated or coordinated pretrial proceedings is appropriate to accommodate the convenience of parties and witnesses.

### C. Centralization Will Promote the Just and Efficient Conduct of the Related Actions.

Transfer and centralization will promote the just and efficient conduct of the Related

---

[5] Though each Defendant will be required to produce information, documents, and data unique to their brokerage and retirement accounts and policies, and provide deposition testimony, well-established protocols employed in prior MDLs will still make it convenient for discovery to occur in a proceeding before one judge. The Panel should also anticipate that both Plaintiffs and Defendants will find efficiency in using common liability and damages experts.

Actions because it will eliminate the possibility of conflicting pretrial rulings. A central and consistent legal ruling required for the Related Actions is the application of the aforementioned federal laws' requirement for the payment of reasonable rates of interest to the sweep accounts. *See supra* at 3. As the Motion points out, New York law is also consistently invoked as the governing law in the Defendants sweep account agreements. Mot. at 2, 10 n.4. Inconsistent rulings by different courts as to the application of those laws despite industry-wide non-compliance with that law would harm investors nationwide. *See In re Terrorist Attacks on Sept. 11, 2001*, 295 F. Supp. 2d 1377, 1378 (J.P.M.L. 2003) (noting that transfer is favored where there are overlapping legal issues among the various cases). Dispositive motions and motions for class certification will also require the resolution of virtually the same issues of fact and law. Having a single judge preside over those motions, even if filed separately against or by Defendants, would develop a reliably consistency that was seen in MDL No. 2036. *See generally In re Checking Account Overdraft Litig.*, No. 1:09-MD-02036 (S.D. Fla.).

The risk of conflicting pretrial rulings is high here due to the current and potential number of competing and overlapping putative nationwide classes. *See In re Plumbing Fixture Cases*, 298 F. Supp. 484, 493 (J.P.M.L. 1968) ("[It] is in the field of class action determinations in related multidistrict civil actions that the potential for conflicting, disorderly, chaotic judicial action is the greatest"); *see also In re Imagitas, Inc., Drivers' Privacy Prot. Act Litig.*, 486 F. Supp. 2d 1371, 1372 (J.P.M.L. 2007) (centralizing actions that contained "competing class allegations"); *In re IDT Corp. Calling Card Terms Litig.*, 278 F. Supp. 2d 1381, 1381 (J.P.M.L. 2003) (centralizing actions that involved "overlapping putative class actions").

**II.  The Southern District of New York Is the Most Appropriate Transferee Court.**

Plaintiffs agree with the Movants that the United States District Court for the Southern District of New York is the most appropriate forum to centralize the Related Actions. In choosing

an appropriate transferee forum, this Panel often considers "where [1] the largest number of cases is pending, [2] where discovery has occurred, [3] where cases have progressed furthest, [4] the site of the occurrence of the common facts, [5] where the cost and inconvenience will be minimized, and [6] the experience, skill, and caseloads of available judges." MANUAL FOR COMPLEX LITIG. § 20.131 (4th ed. 2004); *see also id.* § 22.33 ("[T]he Panel looks for an available and convenient transfer forum, usually one that (1) is not overtaxed with other MDL cases, (2) has a related action pending on its docket, (3) has a judge with some degree of expertise in handling the issues presented, and (4) is convenient to the parties.").

### A. Factor 1: The Southern District of New York Has the Most Cases.

According to the current Panel docket, nineteen of the Related Actions are in the Eastern Time Zone, thirteen of which are in the Southern District of New York. As the Motion correctly notes, New York is a financial hub in the United States. As such, Plaintiffs agree this factor favors the Southern District of New York. *See, e.g.*, *In re Customs & Tax Admin. of the Kingdom of Denmark (SKAT) Tax Refund Scheme Litig.*, 338 F. Supp. 3d 1347, 1349 (J.P.M.L. 2018) ("The majority of actions are concentrated in *or near this district*, and it is conveniently located for this nationwide litigation.") (emphasis added); *In re Personalweb Techs., LLC, and Level 3 Commc'ns, LLC, Patent Litig.*, 340 F. Supp. 3d 1373, 1374-75 (J.P.M.L. 2018).

### B. Factors 2 and 3: Discovery and Case Progress.

Plaintiffs agree with the Motion's position that the most advanced case is against Merrill Lynch, Pierce, Fenner & Smith, where motion practice and discovery have progressed. From that perspective, it is favorable to site the MDL in the Southern District of New York. Were the Panel to exclude the one Merrill Lynch case, *Valelly v. Merrill Lynch, Pierce, Fenner & Smith Incorporated*, No. 1:19-cv-07988-VEC (S.D.N.Y.), which is at an advanced stage and for a putative class period ending 2021 from a newly-formed MDL because of its advanced stage of

development, this factor would be neutral given the relatively early stage of the Related Actions against the other Defendants.

### C. Factors 4 and 5: The Site of the Occurrence of the Common Facts and Where Cost and Inconvenience Will be Minimized Favors the Southern District of New York.

As the Motion aptly points out, all the Defendants have a major New York presence. Even Defendants not headquartered there have consistently chosen New York law to govern the sweep accounts. The Southern District of New York is also sufficiently the locus of events. None of the other venues in which the Related Actions are pending possess a comparable evidentiary nexus or relevant industry-wide presence. As such, many, if not most, of the key witnesses and much of the evidence in this case will be located in the Southern District of New York, making it particularly convenient to host this MDL.

Moreover, the Southern District of New York would be a convenient and easily accessible location for the few parties, witnesses, and lawyers not located within the District. Cost and inconvenience will also be minimal as the District has the infrastructure to accommodate out-of-town lawyers, parties, and witnesses. All parties would have easy access to the District from multiple large airports in New York and New Jersey, serviced by numerous airlines with multiple non-stop flights. As the Motion notes, the District also benefits from an extensive public transportation system. These facts make the Southern District of New York well-suited for this MDL. Moreover, it is also becoming more prevalent for MDL judges to conduct pretrial proceedings through remote hearings, such that repeated travel for in-person hearings should not unreasonably tax the parties' resources.

### D. Factor 6: The Experience, Skill, and Caseloads of Available Judges Favors the Southern District of New York.

New York's status as the major U.S. financial hub gives potential Southern District of New

York transferee judges vast experience with issues relevant in this proposed MDL. Further, Defendants' virtually uniform selection of New York law as the law governing sweep accounts makes a New York judge well-equipped to interpret New York law. The Motion covers the experience and skill of Southern District of New York judges to preside over banking cases such as the Related Actions. This response will not repeat that information. Caseloads amongst the forty-five Southern District of New York district judges, while busy, should not be an impediment to assigning this MDL to that District.

### E. The Southern District Has Outstanding Jurists Who Will Efficiently and Effectively Manage the Consolidated Litigation.

The Southern District of New York has an abundance of eminently qualified transferee judges. Judge Jed. S. Rakoff would be a well-suited pick to presided over the MDL, given his extensive MDL[6] and class action experience and that he currently is not presiding over an MDL. He is known for his efficient management of civil cases.

Sweep account cases are pending before Judges Valeri E. Caproni, Andrew L. Carter, Jr., Margaret M. Garnett, Victor Marrero, Lorna G. Schofield, Arun Subramanian, and Gregory H. Woods. None of those judges is presiding over a pending MDL. Judge Caproni, who will be taking senior status effective January, 2025, has presided over two past MDLs,[7] and Judge Schofield, has presided over one past MDL and is also taking senior status in November, 2024.[8] Judge Schofield has presided over numerous class actions during her 12 years as a district court judge. While the other jurists assigned to Related Actions in that District have not presided over an MDL, Plaintiffs trust the Panel will select a well-qualified transferee judge willing to take on these important cases.

---

[6] MDL Nos. 1584, 1706, 1740, 1794, 1902, 1933, 2241, 2941.
[7] MDL Nos. 2548, 2573.
[8] MDL No. 2776.

## CONCLUSION

For the foregoing reasons, Reed Plaintiffs respectfully request that, pursuant to 28 U.S.C. § 1407, the Panel order the transfer and centralization of these Actions (and any future tag-along actions), for coordinated or consolidated pretrial proceedings to the United States District Court for the Southern District of New York. Alternatively, if the Panel does not see fit to create an industry-wide MDL strong consideration should be given to defendant-specific MDLs.

DATED: November 27, 2024

Respectfully submitted,

*/s/ Adam Schwartzbaum*
Adam Schwartzbaum
**EDELSBERG LAW**
20900 NE 30th Ave #417
Aventura, FL 33180
Telephone: 786-289-9471
adam@edelsberglaw.com

*Counsel for Interested Parties Jamie Canales, Gopal Chakravarthy, Ted Lourenco, and David M. Morris*