**BEFORE THE UNITED STATES
JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| **IN RE:** Cash Sweep Programs Contract Litigation | MDL Docket No. 3136 |

**RESPONSE OF BANK OF AMERICA CORPORATION AND MERRILL LYNCH,
PIERCE, FENNER & SMITH INCORPORATED IN OPPOSITION TO MOTION FOR
TRANSFER AND CONSOLIDATION PURSUANT TO 28 U.S.C. § 1407**

**TABLE OF CONTENTS**

PAGE

INTRODUCTION ........................................................................................................................ 1

BACKGROUND .......................................................................................................................... 2

    A.    The Cases Involving Merrill and BAC ........................................................... 2

    B.    Other Cash Sweep Cases and the Motion ...................................................... 4

ARGUMENT ................................................................................................................................ 4

    A.    The Absence of Questions of Fact Common to the More than 30 Cases Precludes Coordination or Consolidation. ..................................................... 5

    B.    Coordination or Consolidation of the More than 30 Cases Would Not Convenience the Parties or the Witnesses. ...................................................... 6

    C.    Coordination or Consolidation of the More than 30 Cases Would Be Neither Just Nor Efficient. ............................................................................... 8

    D.    Coordination or Consolidation in an Industry-Wide MDL Is Not Warranted Because Other Alternatives for Efficient Streamlining Exist and Are Being Utilized. ............................................................................................... 10

CONCLUSION ........................................................................................................................... 11

Bank of America Corporation ("BAC") and Merrill Lynch, Pierce, Fenner & Smith Incorporated ("Merrill"), by their counsel and pursuant to Rule 6.1(c) of the Rules of Procedure for the United States Judicial Panel on Multidistrict Litigation (the "Panel"), oppose the Motion for Transfer of Actions to the Southern District of New York filed pursuant to 28 U.S.C. § 1407 for a Coordinated and/or Consolidated Proceeding (hereafter, the "Motion") by Safron Capital Corp. and Brickman Investments Inc. (collectively, "Movants").

## INTRODUCTION

There is no legal or practical justification for coordination or consolidation here. Movants seek to consolidate more than 30 putative class actions filed across the country against at least 12 financial institutions and certain of their respective affiliates. While each of the actions concerns cash sweep programs—"service[s] provided by a broker or dealer where it offers its customer the option to automatically transfer free credit balances in the securities account of the customer to either a money market mutual fund product . . . or an account at a bank whose deposits are insured by the Federal Deposit Insurance Corporation," 17 C.F.R. § 240.15c3-3(a)(17)—there are meaningful differences between and among the cases that make them inappropriate for MDL-treatment.

These differences include, for example, that the cases involve different types of institutions, different disclosures, different eligibility, different rates, different procedures for rate-setting, different fee structures, and different customers. Furthermore, the relevant agreements contain different terms and different choice of law provisions, and plaintiffs bring different claims and legal theories. The underlying actions are in different procedural postures, with certain actions against Merrill significantly more advanced than the actions against other defendants. While each defendant (or set of affiliated defendants) can assess coordination or

consolidation of some or all of the actions filed against it, ordering an industry-wide MDL would exacerbate, rather than remedy, the problem of duplicative litigation and we expect would result in additional delay, inconvenience to the parties, and inefficient use of judicial resources.

The cases against BAC and Merrill illustrate this point. The first case against Merrill was filed as a putative class action in 2019 and is the longest-pending putative class action that Movants seek to consolidate into an MDL. In the five years since, Merrill has prevailed on a motion to dismiss; prevailed in part on a motion for leave to amend; completed fact discovery and expert discovery; prevailed against Plaintiff's class certification motion (without prejudice); prevailed (in whole or in part) on two *Daubert* motions to strike the testimony and opinions of plaintiff's two experts; and is now briefing a summary judgment motion that could dispose of the case entirely. There will be no efficiency in coordinating that case with cases against other institutions, especially cases that were commenced in recent months. The same holds true with the three other cases against Merrill and/or its affiliates that Movants have identified for potential coordination in an MDL. One overlaps nearly entirely with the first case other than the alleged class period; the others may not, but they likewise do not overlap in any factually or legally meaningful way with the nearly 30 other cases against other institutions.

In sum, Movants cannot satisfy the applicable standard for transfer and coordination or consolidation under Section 1407. The Motion should be denied.

## BACKGROUND

A.   **The Cases Involving Merrill and BAC**

The first of these "sweeps" cases was filed against Merrill in 2019 under the case caption *Valelly v. Merrill, Lynch, Pierce, Fenner & Smith Incorporated*, No. 1:19-cv-07998-VEC (S.D.N.Y. 2019). The plaintiff in *Valelly* asserts a breach of contract claim against Merrill on behalf of a putative class of Merrill brokerage customers who held self-directed retirement

accounts, alleging that Merrill breached the agreements governing Merrill's sweep program for retirement accounts—the Retirement Asset Savings Program ("RASP")—by failing to pay "reasonable" rates on RASP.  (*See* ECF No. 1, Ex. 17 (*Valelly* Am. Compl.).)  Over the next several years, the parties to the *Valelly* action have engaged in extensive pre-trial motion practice, including a motion to dismiss, a motion for leave to amend, a motion for class certification, and two rounds of *Daubert* motions.  The parties are currently briefing Merrill's summary judgment motion, which may dispose of the case entirely.

The same counsel that commenced the *Valelly* action then brought a follow-on putative class action under the case caption *McCrary v. Merrill Lynch, Pierce, Fenner & Smith Incorporated*, No. 1:23-cv-10768-VM (S.D.N.Y. 2023), asserting the same claims and legal theories against Merrill but for a later class period.  While these two cases are not currently consolidated or coordinated, Merrill has filed a motion under Rule 12(f) of the Federal Rules of Civil Procedure to conform the two complaints to one another, which in turn Merrill expects will streamline discovery and avoid unnecessary motion practice.

On October 11, 2024, shortly before filing this Motion, Movants' counsel filed the third action against Merrill, under the case caption *Safron Capital Corp. v. Bank of America Corporation*, No. 1:24-cv-07743-MMG (S.D.N.Y.) ("*Safron*")—as well as actions against other financial institutions (*see, e.g.*, *Brickman Invs. Inc. v. Wells Fargo & Co.*, No. 1:24-cv-07751-AS (S.D.N.Y.)).  The *Safron* complaint asserts eight causes of action against Merrill and BAC, including claims for breach of fiduciary duty, violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c)-(d), unjust enrichment, and violation of Section 349 of the New York General Business Law.  (*See* ECF No. 1, Ex. 8 (*Safron* Compl.).)  The parties

have negotiated a briefing schedule for Merrill and BAC's anticipated motion to dismiss, which has been so-ordered by the court, with briefing to be completed by February 28, 2025.

The fourth action against Merrill was filed on November 13, 2024 under the case caption *Campton v. Merrill Lynch, Pierce, Fenner & Smith Incorporated*, No. 1:24-cv-08629-MMG (S.D.N.Y.). The *Campton* complaint—which has not yet been served—asserts many of the same claims at issue in *Safron* against BAC and Merrill and its affiliate, Managed Account Advisors LLC. (*See* ECF No. 12, Ex. A (*Campton* Compl.).) On November 21, 2024, the court accepted the *Campton* action as related to *Safron*.

### B.   Other Cash Sweep Cases and the Motion

In the past year, approximately 30 additional cash sweep cases have been filed in eight different jurisdictions, against at least 12 defendant financial institutions and their respective affiliates. (*See* ECF No. 8-1 (Third Corrected Schedule of Actions).) Movants seek to consolidate the *Valelly*, *McCrary*, *Safron*, and *Campton* actions into an MDL with these newly filed cases, the majority of which remain in the preliminary stages. Merrill and BAC oppose the Motion.

### ARGUMENT

The Motion for transfer and centralization should be denied because Movants fail to demonstrate that the underlying actions involve "one or more common questions of fact," or that transfer would convenience the parties and witnesses and "promote the just and efficient conduct" of the actions. 28 U.S.C. § 1407(a). The Motion should also be denied because other suitable alternatives to transfer exist. *See In re Best Buy, Co. Cal. Song-Beverly Credit Card Act Litig.*, 804 F. Supp. 2d 1376, 1378 (J.P.M.L. 2011) ("[C]entralization under Section 1407 should be the *last solution* after considered review of all other options . . . ." (emphasis added)).

4

A.  **The Absence of Questions of Fact Common to the More than 30 Cases Precludes Coordination or Consolidation.**

The Motion should be denied because Movants fail to demonstrate that the underlying sweeps cases implicate common questions of fact.

Movants contend that centralization of the actions is warranted because they "raise many common factual and legal questions." (Mot. at 4.) That is not so. The principal similarity across these cases is that the defendants are financial institutions alleged to have offered "unreasonable" rates on sweep programs. Beyond that—and as evidenced by the list of purported "common" questions Movants identified in their Motion (*id.* at 4)—other questions are highly individualized, as each defendant offers different sweep programs and different rates on such programs; structures its rate offerings differently; imposes distinct eligibility requirements; and follows its own internal procedures for rate setting.

Movants' so-called common questions—such as "whether defendants paid unreasonably low interest rates to cash sweep program customers"; "whether defendants made material misstatements and omitted material facts regarding the cash sweep programs"; and "whether defendants violated their contractual obligations, fiduciary duties, or other laws in connection with their establishment and operation of cash sweep programs" (*id.*)—are not common factual questions and answers to them will depend on defendant-specific facts. The highly individualized nature of these determinations precludes consolidation. *See, e.g.*, *In re Mortg. Lender Force-Placed Ins. Litig.*, 895 F. Supp. 2d 1352 (Mem.), 1353–54 (J.P.M.L. 2012) (denying transfer and consolidation where the actions "involve[d] not only different defendants but different lender agreements with insurers, different alleged abuses, and different mortgage loan documents"); *In re Credit Card Payment Prot. Plan. Mktg. & Sales Pracs. Litig.*, 753 F. Supp. 2d 1375 (Mem.), 1376 (J.P.M.L. 2010) (denying centralization where cases did not

5

involve "similarly uniform conduct" because there were "different defendants . . . different products, marketing, cardholder agreements, and customer claim administration").

**B.      Coordination or Consolidation of the More than 30 Cases Would Not Convenience the Parties or the Witnesses.**

Contrary to Movants' contention (Mot. at 5), coordination or consolidation would not convenience the parties and witnesses. None of Movants' arguments is persuasive.

*First*, Movants assert that consolidation would avoid duplicative discovery, and that "[w]ithout consolidation, Plaintiffs would be required to issue, and defendants would be required to respond to, multiple and duplicative discovery requests seeking the same information, and key witnesses would be required to sit for numerous, and duplicative, depositions." (*Id.* at 6.) But Movants do not explain how or why that would be the case here, where discovery has been and will continue to be defendant-specific.

Discovery propounded against Merrill by the *Valelly* and *McCrary* plaintiffs demonstrates the inherently institution-specific nature of discovery in these actions. In both cases, for example, the plaintiffs sought extensive discovery into Merrill's rate-setting processes. None of this discovery would assist a trier of fact in determining whether any other defendant (i) offered a "reasonable" rate on *its different* sweep program; (ii) breached *its* respective agreements with *its* own customers; or (iii) made any alleged misstatements or omissions in *its* respective sweep program agreements or disclosures. As such, few if any efficiencies in discovery would be gained by ordering centralization of these actions, and the Panel routinely rejects such requests where "individualized discovery and legal issues . . . will be substantial." *In re: Wells Fargo Bank, N.A., Mortg. Corp. Force-Placed Hazard Ins. Litig.*, 959 F. Supp. 2d 1363 (Mem.), 1364 (J.P.M.L. 2013) (denying centralization where "the pending actions involve[d] different originating lenders, mortgage agreements with materially different terms . . .

Case MDL No. 3136 Document 74 Filed 11/27/24 Page 9 of 14

and differing disclosures"); *see also, e.g.*, *In re: Watson Fentanyl Patch Prods. Liab. Litig.*, 883 F. Supp. 2d 1350 (Mem.), 1351 (J.P.M.L. 2012) (denying request for centralization where "[e]ach group of cases against each [defendant] will involve unique product—and defendant-specific issues (such as the different product designs, manufacturing processes, regulatory histories, and company documents and witnesses) that will overwhelm the few common issues" identified by plaintiff).

*Second*, contrary to Movants' suggestion, transfer would not decrease "costs and burdens for everyone involved" (Mot. at 6), particularly where each defendant is sued in a small subset of the more than 30 actions. Transfer here would instead impose upon defendants the additional expense of participating in additional MDL proceedings, as well as the additional burdens associated with participating in discovery that may well be irrelevant to their specific cases. Unsurprisingly, the Panel has routinely denied centralization where "the named defendants vary from action to action," and where any one defendant is sued in only a handful of the underlying actions. *In re Proton-Pump Inhibitor Prods. Liab. Litig.*, 273 F. Supp. 3d 1360, 1361–62 (J.P.M.L. 2017) (denying centralization where "the named defendants vary from action to action," and highlighting that while one defendant was sued in "14 constituent actions and 23 tag-alongs," others were sued in "only eight . . . four, and . . . two" actions, respectively); *see also In re: Table Saw Prods. Liab. Litig.*, 641 F. Supp. 2d 1384 (Mem.), 1384 (J.P.M.L. 2009) (denying centralization of 42 actions where, *inter alia*, "[n]o defendant is sued in all actions, and several entities, . . . are named in, at most, two or three of them").

*Third*, the Panel has made clear its "skeptic[ism] of requests to centralize claims filed against multiple defendants who"—as here—"are competitors in a single MDL because it often will not promote judicial efficiency or serve the convenience of the parties and witnesses." *In re*

7

*Secondary Ticket Mkt. Refund Litig.*, 481 F. Supp. 3d 1345 (Mem.), 1346 (J.P.M.L. 2020); *see also In re Nat'l Ski Pass Ins. Litig.*, 492 F. Supp. 3d 1352, 1353 (J.P.M.L. 2020) ("We view requests to centralize claims filed against multiple, competing defendants in a single MDL with a skeptical eye because doing so usually adds few efficiencies and does not serve the convenience of the parties and witnesses."). As the Panel has recognized, industry-wide MDLs can create significant case management problems when competitor defendants are involved because a transferee court must implement procedures to ensure confidential information is not disclosed as part of any consolidated case. *See In re: Spray Polyurethane Foam Insulation Prods. Liab. Litig.*, 949 F. Supp. 2d 1364 (Mem.), 1364 (J.P.M.L. 2013) ("[P]lacing direct competitor manufacturer defendants into the same litigation would require protecting trade secret and confidential information from disclosure to all parties and complicate case management.").

*Finally*, implicit in Movants' contention that "many of the defendants' cash sweep agreements . . . are governed by New York state law" is the recognition that the defendant-specific agreements implicate other states' laws. (Mot. at 10.) Factual and legal differences in the state law claims asserted in the underlying actions suggest that there are few efficiencies to be realized from coordination or consolidation. *See In re Uber Techs., Inc., Wage & Hour Emp. Pracs. Litig. (No. II)*, 254 F. Supp. 3d 1376, 1378 (J.P.M.L. 2017) (denying transfer where centralization would proliferate "duplicative litigation, as nearly every action centralized would require separation and remand—ironically, exacerbating the problem of duplicative litigation that centralization is intended to remedy").

**C.     Coordination or Consolidation of the More than 30 Cases Would Be Neither Just Nor Efficient.**

Transfer and consolidation pursuant to Section 1407 is inappropriate here, where it would not further Section 1407's purposes of the "just and efficient conduct" of the underlying actions.

8

To the contrary, transfer here would *delay* the actions against Merrill and BAC, some of which are far more procedurally advanced than cases against other defendants.

The *Valelly* action has been pending against Merrill for five years, and as discussed above (*see supra* at 2–3), the parties have advanced far beyond the pleadings stage, where the majority of the actions against other defendants—all of which "were filed within the last year" (Mot. at 7)—remain.  Fact discovery in *Valelly* has been complete since early 2022, and the parties have briefed—and the *Valelly* court has ruled on—many motions, including an initial round of summary judgment motions and two rounds of *Daubert* motions.  The parties are now briefing Merrill's motion for summary judgment, which could resolve the action in its entirety.  The follow-on *McCrary* action has advanced as well; the parties are briefing a Rule 12(f) motion and are engaged in initial discovery.  Given the procedural posture of the actions against Merrill, no efficiencies will be gained by consolidating them into an MDL with cases against other defendants that are still in their infancy; instead, transfer would only delay the actions against Merrill.  Under these circumstances, the Motion should be denied.  *See, e.g.*, *In re: Teamster Car Hauler Prods. Liab. Litig.*, 856 F. Supp. 2d 1343 (Mem.), 1343 (J.P.M.L. 2012) (denying centralization where some of the underlying actions had been pending for several years); *In re Telecomm. Providers' Fiber Optic Cable Installation Litig.*, 199 F. Supp. 2d 1377 (Mem.), 1378 (J.P.M.L. 2002) (declining to centralize cases where "some constituent actions have been pending for several years" and where "many of the actions [were] procedurally so far advanced that discovery [was] completed or nearly completed, and a substantial number of class certification, summary judgment, dismissal, remand, and other motions have been fully briefed and decided or are pending in various courts").

D.   **Coordination or Consolidation in an Industry-Wide MDL Is Not Warranted Because Other Alternatives for Efficient Streamlining Exist and Are Being Utilized.**

The Motion should be denied because other suitable alternatives to transfer exist. The Panel consistently emphasizes that consolidation under Section 1407 "should be the *last solution* after considered review of all other options," such as informal coordination or transfer under Section 1404. *In re Best Buy*, 804 F. Supp. at 1378 (emphasis added); *see also In re Coll. Athlete Comp. Antitrust Litig.*, MDL No. 3105, 2024 WL 1597524, at *1 (J.P.M.L. Apr. 11, 2024) (citing *In re Gerber Probiotic Prods. Mktg. & Sales Pracs. Litig.*, 899 F. Supp. 2d 1378 (Mem.), 1379–80 (J.P.M.L. 2012)); *In re Eli Lilly & Co. (Cephalexin Monohydrate) Pat. Litig.*, 446 F. Supp. 242, 244 (J.P.M.L. 1978); Manual for Complex Litigation § 20.14 (4th ed. 2004)). "[I]nformal coordination and cooperative efforts by the parties and involved courts should be sufficient to minimize or eliminate duplicative discovery and other pretrial proceedings." *In re 3M Co. Lava Ultimate Prods. Liab. Litig.*, 222 F. Supp. 3d 1347 (Mem.), 1348 (J.P.M.L. 2016).

The parties' conduct in the underlying actions demonstrates that they have already been coordinating to minimize burden on the judiciary and on the parties. For example, Merrill has filed a motion pursuant to Rule 12(f) in *McCrary*—the second of the putative class actions—to conform that action to the decisions in *Valelly*. Merrill has also been working with plaintiff's counsel to streamline and reduce discovery burdens. Other parties have employed other means of coordination, such as transfer to a single judge, coordinated briefing, and use of lead counsel where appropriate. *See, e.g.*, *In re Wells Fargo Cash Sweep Litig.*, No. 3:24-cv-04616-VC (N.D. Cal.), ECF Nos. 31, 47 (consolidating four actions against Wells Fargo); *Peters v. LPL Fin. LLC (In re LPL Fin. Sweep Litig.)*, No. 3:24-cv-01228-TWR (S.D. Cal.), ECF No. 30 (consolidating three actions against LPL); *Bodea v. JPMorgan Chase & Co. (In re JP Morgan Chase Cash Sweep Program)*, No. 1:24-cv-06404-LGS (S.D.N.Y.), ECF No. 29 (consolidating two cases

against J.P. Morgan). This underscores that the parties to any given set of cases are in the best position to coordinate suitable streamlining of motion practice and discovery for that set of actions.

## CONCLUSION

For the foregoing reasons, Merrill and BAC respectfully request that the Panel deny the Motion.

Dated: November 27, 2024

Respectfully submitted,

*/s/ Lara Samet Buchwald*
Lara Samet Buchwald
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, NY 10017
Tel: (212) 450-4000
Fax: (212) 701-5800

*Counsel for Defendants Bank of America Corporation and Merrill Lynch, Pierce, Fenner & Smith Incorporated*

**PROOF OF SERVICE**

In compliance with Rule 4.1(a) of the Rules of Procedure for the United States Judicial Panel on Multidistrict Litigation, I hereby certify that on November 27, 2024, a copy of the foregoing Response in Opposition to the Motion for Transfer and Consolidation was electronically filed with the Clerk of the United States Judicial Panel on Multidistrict Litigation using the CM/ECF system. The Panel's electronic case filing system will automatically serve copies of the above document on all registered CM/ECF users.

Dated: November 27, 2024

*/s/ Lara Samet Buchwald*
Lara Samet Buchwald
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, NY 10017
Telephone: (212) 450-4351
Facsimile: (212) 701-5351
Email: lara.buchwald@davispolk.com

*Counsel for Defendants Bank of America Corporation and Merrill Lynch, Pierce, Fenner & Smith Incorporated*