## BEFORE THE UNITED STATES JUDICIAL PANEL
## ON MULTIDISTRICT LITIGATION

|  |  |  |
|---|---|---|
| IN RE: CASH SWEEP PROGRAMS CONTRACT LITIGATION | ) ) ) ) ) ) ) | MDL Docket No. 3136 |

## PNC INVESTMENTS, LLC AND THE PNC FINANCIAL SERVICES GROUP, INC.'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR TRANSFER AND CONSOLIDATION PURSUANT TO 28 U.S.C. § 1407

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 2

ARGUMENT ...................................................................................................................... 4

    I.    The Underlying Actions Do Not Involve Common Questions of Fact. ................ 5

    II.    Consolidation Will Not Further the Convenience of the Parties. ........................... 8

    III.    Consolidation Will Not Promote Efficiency. ........................................................ 10

CONCLUSION .................................................................................................................. 11

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Baby Food Mktg., Sales Pracs. & Prods. Liab. Litig.*,
  544 F. Supp. 3d 1375 (J.P.M.L. 2021).......................................................................................6

*In Re: Benzoyl Peroxide Marketing, Sales Practices, and Prods. Liab. Litig.*,
  2024 WL 3629067 (J.P.M.L. Aug. 1, 2024)..............................................................................8

*In re Chinese-Manufactured Drywall Prod. Liab. Litig.*,
  2010 WL 11747797 (J.P.M.L. June 15, 2010) ..........................................................................6

*In re Cincinnati Ins. Co. COVID-19 Bus. Interruption Prot. Ins. Litig.*,
  492 F. Supp. 3d 1347 (J.P.M.L. 2020)................................................................................4, 10

*In re COVID-19 Bus. Interruption Prot. Ins. Litig.*,
  482 F. Supp. 3d 1360 (J.P.M.L. 2020)................................................................................8, 9

*In re CP4 Fuel Pump Mktg., Sales Pracs. & Prods. Liab. Litig.*,
  412 F. Supp. 3d 1365 (J.P.M.L. 2019)..............................................................................5, 11

*In re Credit Card Payment Prot. Plan. Mktg. & Sales Pracs. Litig.*,
  753 F. Supp. 2d 1375, 1375-76 (J.P.M.L. 2010) ....................................................................5

*In re Ins. Companies "Silent" Preferred Provider Org. (PPO) Litig.*,
  517 F. Supp. 2d 1362 (J.P.M.L. 2007).....................................................................................6

*In re Janus Mut. Funds Inv. Litig.*,
  310 F. Supp. 2d 1359 (J.P.M.L. 2004).....................................................................................9

*In re Japanese Elec. Prod. Antitrust Litig.*,
  388 F. Supp. 565 (J.P.M.L. 1975)............................................................................................5

*In re: London Silver Fixing, Ltd., Antitrust Litig.*,
  52 F. Supp. 3d 1381 (J.P.M.L. 2014).......................................................................................5

*In re: Mortg. Indus. Foreclosure Litig.*,
  996 F. Supp. 2d 1379 (J.P.M.L. 2014).....................................................................................6

*In re Mortg. Lender Force-Placed Ins. Litig.*,
  895 F. Supp. 2d 1352 (J.P.M.L. 2012) ..................................................................................11

*In re Multidistrict Litig. Involving Banking Agreements with Stirling Homex
  Corp.*, 388 F. Supp. 572 (J.P.M.L. 1975) ...............................................................................9

*In re Pharmacy Ben. Plan Administrators Pricing Litig.*,
206 F. Supp. 2d 1362 (J.P.M.L. 2002)...................................................................6

*In re Pilot Flying J Fuel Rebate Contract Litig (No. II)*,
11 F. Supp. 3d 1351, 1352 (J.P.M.L. 2014)........................................................9

*In re Proton-Pump Inhibitor Prod. Liab. Litig.*,
273 F. Supp. 3d 1360 (J.P.M.L. 2017)........................................................5, 8, 11

*In re Secondary Ticket Mkt. Refund Litig.*,
481 F. Supp. 3d 1345 (J.P.M.L. 2020)........................................................4, 5, 7

*In re Table Saw Prod. Liab. Litig.*,
641 F. Supp. 2d 1384 (J.P.M.L. 2009)............................................................6, 9

*In re Treasury Sec. Auction Antitrust Litig.*,
148 F. Supp. 3d 1360 (J.P.M.L. 2015)................................................................5

*In re Unumprovident Corp. Sec., Derivative & "ERISA" Litig.*,
280 F. Supp. 2d 1377 (J.P.M.L. 2003)................................................................5

*In re Video Game Addiction Products Liability Litig.*,
2024 WL 2884795 (J.P.M.L. June 5, 2024) ...................................................4, 5, 9

*In re Yellow Brass Plumbing Component Prods. Liab. Litig.*,
844 F. Supp. 2d 1377 (J.P.M.L. 2012)................................................................4

**Statutes**

28 U.S.C. § 1407...........................................................................................1, 4, 5, 10

# INTRODUCTION

Movants' Motion for Transfer and Consolidation Pursuant to 28 U.S.C. § 1407, ECF No. 1 ("Motion" or "Mot."), is a misguided attempt to consolidate into a single multidistrict proceeding in New York thirty-one actions against eleven financial institutions in eight jurisdictions challenging each institution's unique cash sweep program for retail brokerage customers ("Underlying Actions").[1] This Panel, rightfully, is "skeptical" of such requests, imposes a "heavy burden" on movants seeking such relief, and has repeatedly denied such attempts to consolidate industry-wide litigation. Movants' Motion warrants the same outcome here.

*First*, the Underlying Actions do not involve the requisite common issues of fact. While all defendants offer a cash sweep program to retail brokerage customers, the commonality stops there. Each institution's unique cash sweep program, contracts, disclosures, and applicable state law mean that plaintiff- and defendant-specific questions overwhelm any purported common questions.

*Second*, consolidating the Underlying Actions would not further the convenience of the parties, particularly PNC Investments LLC ("PNCI") and The PNC Financial Services Group, Inc. ("PNCFSG," and, together with PNCI, "PNC"). PNC is named in only one action; that action was brought in its home forum in Pittsburgh, Pennsylvania; and that is the forum where one of the named plaintiffs resides (the other lives in Alabama). Consolidation in New York would only make litigating the action against PNC less convenient.

---

[1] Movants are Safron Capital Corp. (the plaintiff in Underlying Actions *Safron Cap. Corp. v. Morgan Stanley, et al.*, No. 1:24-cv-07750-ALC (S.D.N.Y. 2024) and *Safron Cap. Corp. v. Bank of America Corp., et al.*, No. 1:24-cv-07743-MMG (S.D.N.Y. 2024)) and Brickman Investments Inc. (the plaintiff in Underlying Action *Brickman Invs. Inc. v. Wells Fargo & Co. et al.*, No. 1:24-cv-07751-AS (S.D.N.Y. 2024)) ("Movants").

1

*Third*, given the lack of common questions of fact, consolidation would not be efficient. In fact, given the strategic positioning of the defendants in the Underlying Actions in the financial services industry, consolidation would only increase complexity and inefficiency: the court before which the cases would be consolidated would need to ensure that any proprietary and confidential information of the defendant financial institutions is protected from disclosure among defendants.

For these and the reasons set forth herein, Movants' Motion should be denied.

## **BACKGROUND**

Beginning in August 2019, several putative class actions were filed in eight different jurisdictions against eleven financial institutions challenging the rates of interest each paid on uninvested cash in retail brokerage accounts pursuant to each institution's "cash sweep" program. *See* Schedule of Actions, ECF No. 1-2. One of the financial institutions against whom suit has been brought is PNC.

PNCI offers its retail brokerage customers a proprietary cash sweep program known as the PNC Investments, LLC Proprietary Bank Deposit Sweep Program ("BDSP"). *See* First Am. Class Action Compl. ¶ 2, *Vallin v. PNC Invs., LLC et al.*, No. 2:24-cv-01295-MJH-KT (W.D. Pa. Oct. 18, 2024), ECF No. 29 ("Amended Complaint" or "Am. Compl."), attached here as Exhibit 1.[2] The terms of the BDSP provide that uninvested cash in a customer's brokerage account is swept daily into an FDIC-insured interest-bearing deposit account at PNC Bank N.A. *Id.* ¶ 33. The BDSP's terms and conditions are set forth in agreements unique to PNCI. *Id.* ¶ 34. The agreements applicable to each customer depend on that customer's account type—*e.g.*, brokerage, retirement,

---

[2]     The Motion cites to the original complaint in the Underlying Action involving PNC ("PNC Action"), but that complaint is no longer operative. The Amended Complaint is currently the operative complaint in the PNC Action. On November 25, 2024, the court in the PNC Action granted a Joint Stipulation Regarding Scheduling, permitting Plaintiffs to file a Second Amended Complaint by December 13, 2024. *See* Order, *Vallin*, No. 2:24-cv-01295-MJH-KT (W.D. Pa. Nov. 25, 2024), ECF No. 42, attached here as Exhibit 2.

or advisory.  *Id.* ¶¶ 31, 34.  The terms of each agreement are specific to PNCI's relationship with its customers and the terms of the BDSP are unique to PNCI.  *Id.*

On September 11, 2024, Plaintiff Manuel Vallin ("Plaintiff Vallin"), an Alabama-resident brokerage client of PNCI, filed a complaint against PNCI and its ultimate corporate parent, PNCFSG, in the U.S. District Court for the Western District of Pennsylvania, challenging the interest rate paid on uninvested cash swept into the FDIC-insured interest-bearing deposit accounts provided by the BDSP.  Mot. Ex. 24 (Compl., *Vallin v. PNC Investments, LLC et al.*, No. 2:24-cv-01295-MJH-KT (W.D. Pa. Sept. 11, 2024), ECF No. 1).  On October 18, 2024, Plaintiff Vallin and Plaintiff Joel Browne, a Pennsylvania-resident former advisory client of PNCI ("Plaintiff Browne," and together with Plaintiff Vallin, "Plaintiffs"), filed an Amended Complaint.  Plaintiffs' Amended Complaint  asserts five claims for relief on behalf of a putative class of "[a]ll persons in the United States who had cash deposits or balances in the [BDSP] from September 11, 2018 to the present": (1) breach of fiduciary duty; (2) gross negligence; (3) breach of the implied covenant of good faith and fair dealing; (4) breach of contract; and (5) unjust enrichment.  Ex.1, Am. Compl. ¶¶ 89, 100-132.

On October 30, 2024, Movants—who filed three of the last of the Underlying Actions, approximately five years after the first-filed Underlying Action, and who have asserted no claim against PNC—filed a motion to consolidate thirty-one actions against eleven financial institutions in eight jurisdictions into a single multidistrict action in the U.S. District Court for the Southern District of New York.  *See* Mot.  Ignoring that the Underlying Actions are filed against eleven different financial institutions, each defendant financial institution has a unique cash sweep program, each defendant financial institution has unique agreements with and disclosures provided to its customers, and each defendant financial institution's customer agreement selects its own

governing law, Movants assert that all Underlying Actions should be consolidated for pretrial purposes simply because all Underlying Actions allege that "the defendants unlawfully used customer cash to generate revenue while paying unreasonably low, below-market interest rates to customers." Mot. at 1. And Movants seek to consolidate those cases in *Movants'* chosen forum, ignoring the seven other forums chosen by the other plaintiffs.[3]

## ARGUMENT

Multidistrict litigation ("MDL") is only appropriate where the underlying actions involve "common questions of fact" and where transfer and consolidation will further "the convenience of parties and witnesses" and "the just and efficient conduct of such actions." 28 U.S.C. § 1407(a); *see also In re Cincinnati Ins. Co. COVID-19 Bus. Interruption Prot. Ins. Litig.*, 492 F. Supp. 3d 1347, 1349 (J.P.M.L. 2020) ("Common factual questions . . . are not the sole prerequisite for centralization under Section 1407."). Critically, movants seeking to consolidate an industry-wide MDL—like Movants here—bear a "***heavy burden*** to show that the actions will share sufficient overlap that including them will promote the just and efficient conduct of the litigation." *In re Video Game Addiction Prods. Liab. Litig.*, 2024 WL 2884795, at *1 n.5 (J.P.M.L. June 5, 2024) (emphasis added); *see also In re Yellow Brass Plumbing Component Prods. Liab. Litig.*, 844 F. Supp. 2d 1377, 1378 (J.P.M.L. 2012) (noting that the Panel is "typically hesitant to centralize litigation against multiple, competing defendants"). That is because consolidation of industry-wide actions "often will ***not*** promote judicial efficiency," *In re Secondary Ticket Mkt. Refund Litig.*, 481 F. Supp. 3d 1345, 1346 (J.P.M.L. 2020) (emphasis added), given such cases often require "separate discovery and motion tracks"—undermining the very efficiency that

---

[3] Plaintiffs in the PNC Action chose to file their action in the U.S. District Court for the Western District of Pennsylvania. PNC understands that Plaintiffs Vallin and Browne intend to file a response in opposition to Movants' Motion.

4

consolidation is intended to achieve. *In re CP4 Fuel Pump Mktg., Sales Pracs. & Prods. Liab. Litig.*, 412 F. Supp. 3d 1365, 1367 (J.P.M.L. 2019); *see also In re Proton-Pump Inhibitor Prods. Liab. Litig.*, 273 F. Supp. 3d 1360, 1362 (J.P.M.L. 2017).

Because Movants have not satisfied even one of the three mandatory statutory requirements, they have not met their "heavy burden" to justify consolidation.

## I.     The Underlying Actions Do Not Involve Common Questions of Fact.

Multidistrict litigation is only appropriate where the various actions involve "common questions of fact." 28 U.S.C. § 1407(a). As the authority on which Movants rely makes clear, common questions of fact are those that arise from a ***single*** event, transaction, or course of conduct at issue in each action. *See, e.g.*, *In re Unumprovident Corp. Sec., Deriv. & "ERISA" Litig.*, 280 F. Supp. 2d 1377, 1379 (J.P.M.L. 2003) (multiple actions involved allegations that single actor engaged in improper claims handling practices) (cited at Mot. at 3).[4] And the Panel considers whether those facts have sufficient overlap to warrant MDL consolidation. *See, e.g.*, *In re Credit Card Payment Prot. Plan. Mktg. & Sales Pracs. Litig.*, 753 F. Supp. 2d 1375, 1375-76 (J.P.M.L. 2010) (denying centralization, despite "some" overlapping facts, where cases lacked "sufficient common questions of fact" because there were "different defendants . . . different products, marketing, cardholder agreements, and customer claim administration"). "[G]eneral factual commonality across the actions" that is "superficial" is insufficient. *In re Secondary Ticket Mkt. Refund Litig.*, 481 F. Supp. 3d at 1346; *see also In re Video Game Addiction Products Liability*

---

[4]     *See also In re Japanese Elec. Prod. Antitrust Litig.*, 388 F. Supp. 565, 566 (J.P.M.L. 1975) (multiple actions involved allegations of single conspiracy among defendants to sell television receivers at artificially low prices) (cited at Mot. at 3); *In re Treasury Sec. Auction Antitrust Litig.*, 148 F. Supp. 3d 1360, 1362 (J.P.M.L. 2015) (multiple actions involved allegations of single conspiracy among defendants to manipulate pricing of securities) (cited at Mot. at 3); *In re: London Silver Fixing, Ltd., Antitrust Litig.*, 52 F. Supp. 3d 1381, 1381-82 (J.P.M.L. 2014) (multiple actions involved allegations of single conspiracy among defendants to manipulate prices of silver and silver derivatives) (cited at Mot. at 4).

*Litig.*, 2024 WL 2884795, at *1 (denying centralization where movants "rel[ied] on broad similarities among the actions" because the differences among the cases were "substantial"). Multidistrict litigation is also not appropriate where the cases at issue present only common *legal* claims. *See In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 2010 WL 11747797, at *2 (J.P.M.L. June 15, 2010) ("Section 1407 does not, as a general rule, empower the Panel to transfer cases solely due to the similarity of legal issues.").

Given this standard, the Panel routinely denies consolidation where each action concerns different contracts and contractual relationships. *See In re Pharmacy Ben. Plan Admins. Pricing Litig.*, 206 F. Supp. 2d 1362, 1363 (J.P.M.L. 2002) (finding insufficient factual overlap where different plaintiffs sued different defendants under different contracts).[5] And the Panel also will deny consolidation where the claims at issue in each action are governed by the laws of different states. *See, e.g.*, *In re: Mortg. Indus. Foreclosure Litig.*, 996 F. Supp. 2d 1379 (J.P.M.L. 2014) (finding common questions of fact absent where cases involved, among other things, different state laws).[6] Finally, the Panel will deny consolidation of cases presenting similar legal claims against different defendants offering different products. *See, e.g.*, *In re Table Saw Prod. Liab. Litig.*, 641 F. Supp. 2d 1384 (J.P.M.L. 2009) (denying centralization of overlapping legal claims in cases involving different products offered by different companies).[7]

---

[5]     *See also In re Ins. Cos. "Silent" Preferred Provider Org. (PPO) Litig.*, 517 F. Supp. 2d 1362, 1363 (J.P.M.L. 2007) (denying centralization where actions were brought "against different defendant insurance companies and involve[d] different contracts").

[6]     *See also In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 2010 WL 11747797, at *2 (J.P.M.L. June 15, 2010) (denying centralization where "[e]ach of the insurance coverage questions . . . [was] likely to be decided by an application of the complaint to the policy language under the applicable state law").

[7]     *See also In re Baby Food Mktg., Sales Pracs. & Prods. Liab. Litig.*, 544 F. Supp. 3d 1375, 1376-77 (J.P.M.L. 2021) (denying consolidation of overlapping legal claims where "each defendant manufactures, markets, and distributes its own baby food products subject to different manufacturing processes, suppliers, and quality control procedures. The claims against each defendant thus are likely to rise or fall on facts specific to that defendant").

Movants' Motion presents none of the common questions of fact that justify consolidation. Movants seek to consolidate the Underlying Actions on the basis that they involve challenges to cash sweep programs at the defendant financial institutions, but the purported common questions of fact that allegedly warrant consolidation—including whether defendants "paid unreasonably low interest rates," "increased their financial gains through the payment of unreasonably low interest rates," "made material misstatements and omitted material facts," and "violated their contractual obligations, fiduciary duties, or other laws," Mot. at 4—are either, at best, "superficial" or are *legal* questions (not factual). *In re Secondary Ticket Mkt. Refund Litig.*, 481 F. Supp. 3d at 1346. Movants ignore that these questions do not turn on a single event, transaction, or course of conduct at issue in every action, but instead turn on the unique aspects of each of the eleven ***different*** defendant financial institutions' ***different*** cash sweep programs, contract terms, disclosures, and governing laws.

PNC's cash sweep program and its underlying contracts and relevant disclosures are unique to PNC and distinct from those of each of the other defendants in the Underlying Actions. PNC's contracts contain unique terms;[8] the BDSP offers different accounts into which cash is swept;[9] the BDSP paid a different interest rate than the cash sweep programs of other defendants;[10] and PNC's

---

[8]   *Compare, e.g.*, Ex. 1, Am. Compl. ¶ 35 (noting that PNC was required to pay rates that PNC "*believed to be* fair and reasonable") *with* Mot. Ex. 12 ¶ 25 (Class Action Compl., *Morris v. Charles Schwab Corp. et al.*, No. 2:24-cv-00985 (M.D. Fla. Oct. 24, 2024), ECF No. 1) (notifying customers that they "*will be paid a reasonable rate* consistent with applicable legal and regulatory requirements") (emphasis added).

[9]   *Compare, e.g.*, Ex. 1, Am. Compl. ¶¶ 29, 74 (noting PNC overwhelmingly deposits cash balances into "deposit accounts") *with* Mot. Ex. 22 ¶ 27 (Am. Class Action Compl., *Est. of Bernard Sherlip v. Morgan Stanley, et al.*, No. 1:24-cv-04571-VEC (S.D.N.Y. June 14, 2024), ECF. No. 40) (noting the availability of money market funds as vehicles for cash sweep program).

[10]   *Compare, e.g.*, Ex. 1, Am. Compl. ¶ 38 (alleging BDSP interest rate low of 0.33% in October 2024) *with* Mot. Ex. 1 ¶ 20 (Class Action Compl., *Brickman Invs. Inc.*, No. 1:24-cv-07751 (S.D.N.Y. Oct. 11, 2024), ECF No. 1) (alleging Wells Fargo Sweep Program interest rate low of 0.02% in October 2024).

disclosures regarding its BDSP are unique to PNC and different from those of other defendants.[11]

The claims in the PNC Action are also governed by state law not at issue in other Underlying Actions.  The PNC Action is the *only* Underlying Action pending in Pennsylvania, and Plaintiffs allege that Massachusetts law applies.  *See* Ex. 1, Am. Compl. ¶ 14.  Conversely, Movants contend that "[s]everal of the defendants' customer cash sweep agreements at issue are governed by New York law" and that "[s]everal [Underlying] Actions bring New York state law claims."  Mot. at 2.  It is clear that the claims in the PNC Action would not be governed by New York law and do not implicate New York state law claims.

Given the lack of true "common questions of fact" between the PNC Action and the other Underlying Actions, and the potential for questions unique to each Underlying Action to "overwhelm any common factual questions," Movants cannot meet their heavy burden required for consolidation.  *See In re COVID-19 Bus. Interruption Prot. Ins. Litig.*, 482 F. Supp. 3d 1360, 1362 (J.P.M.L. 2020) (denying consolidation because "different insurance policies with different coverages, conditions, exclusions, and policy language, purchased by different businesses . . . located in different states"—would "overwhelm any common factual questions").

## II.   Consolidation Will Not Further the Convenience of the Parties.

As the Panel has repeatedly noted, the case for convenience is "fatally undercut" where "the named defendants vary from action to action" and certain defendants appear in only a few actions.  *In re Proton-Pump Inhibitor Prod. Liab. Litig.*, 273 F. Supp. 3d at 1361; *see also In Re: Benzoyl Peroxide Marketing, Sales Practices, and Products Liability Litigation*, 2024 WL

---

[11]     *Compare, e.g.*, Ex. 1, Am. Compl. ¶ 46 (noting that PNC's agency relationship extends only to "carrying out [] directions") *with* Mot. Ex. 11 ¶ 27 (Class Action Compl., *Davis v. Charles Schwab Corp. et al.*, No. 2:24-cv-8410 (C.D. Cal. Sept. 30, 2024), ECF No. 1) (noting that Charles Schwab's agency relationship extends to "establishing" sweep program accounts with affiliated banks).

3629067, at *2 (Aug. 1, 2024) (declining to consolidate where "[a]ll but one of the suits were brought against an individual defendant or group of related defendants" and "four defendants have been sued in only one action").  That is because there is "little potential for common discovery across the litigation."  *In re COVID-19 Bus. Interruption Prot. Ins. Litig.*, 482 F. Supp. 3d at 1362.[12]  This is precisely the case here, where PNC is named as a defendant in only **one** of the **thirty-one** Underlying Actions.

Contrary to Movants' argument that centralization will further the "convenience" of the parties by "avoiding duplicative discovery," Mot. at 5, consolidation will do nothing of the sort for PNC (or Plaintiffs Vallin and Browne).  Because there is only one action against PNC, and because Plaintiffs Vallin and Browne, whose lead counsel is in California, have filed only the PNC Action, there is no risk of "duplicative discovery."  Mot. at 5.  Any discovery in the PNC Action would, however, be much less "convenien[t]" and far more cumbersome if undertaken in the context of a centralized proceeding in New York, which would also encompass discovery into the unique circumstances of each of the other defendants and plaintiffs.  Whatever the merit of consolidating multiple cases pending against the *same* defendants, no convenience is achieved by consolidating the PNC Action with the other Underlying Actions.[13]

---

[12]    *See also In re Video Game Addiction Prod. Liab. Litig.*, 2024 WL 2884795, at *1 (denying consolidation in part because "[t]he related actions also involve over 30 different defendants, and many are involved in just one or two actions"); *In re: Table Saw Prod. Liab. Litig.*, 641 F. Supp. 2d at 1384 (denying consolidation in part because "[n]o defendant is sued in all actions, and several entities . . . are named in, at most, two or three of them").

[13]    The authorities cited by Plaintiffs are distinguishable precisely because they involve common defendants (and/or allegations of coordination among defendants) and thus common discoverable material.  *See* Mot. at 5 (citing *In re Janus Mut. Funds Inv. Litig.*, 310 F. Supp. 2d 1359, 1361 (J.P.M.L. 2004) (involving "common defendants and/or witnesses")); *id.* (citing *In re Pilot Flying J Fuel Rebate Contract Litig (No. II)*, 11 F. Supp. 3d 1351, 1352 (J.P.M.L. 2014) (involving two related entities as defendants whose management was alleged to have "centrally driven" the alleged scheme)); *id.* at 5-6 (citing *In re Multidistrict Litig. Involving Banking Agreements with Stirling Homex Corp.*, 388 F. Supp. 572, 573 (J.P.M.L. 1975) (involving members of "banking consortium" as defendants, one of which led the relevant negotiations)).

Tellingly, nearly all of Movants' purported reasons for transferring and consolidating the Underlying Actions do not apply to PNC: PNCI is not headquartered in New York, Mot. at 2, Plaintiffs Vallin and Browne are not located in New York, *id.*, PNCI is not an existing cash sweep defendant in an action in the Southern District of New York, *id.*, PNCI does not operate a cash sweep program governed by New York law, *id.*, PNCI does not face claims brought under New York law, *id.*, and the vast majority of PNCI's documents and witnesses are not located in New York, *id.* Rather, both PNCFSG and PNCI are headquartered in Pittsburgh, Ex. 1, Am. Compl. ¶¶ 9-10, Plaintiffs in the PNC Action are residents of Pennsylvania and Alabama, *id.* ¶¶ 7-8, the PNC Action is pending in the Western District of Pennsylvania, *id.* at 1, PNC's relevant documents and key witnesses are located in the Western District of Pennsylvania, and Plaintiffs allege that their state law claims arise under Massachusetts law, *id.* ¶ 14.

Accordingly, because consolidation will be less, not more, convenient for PNC, the Panel should decline to consolidate the PNC Action with the Underlying Actions.

### III.   <u>Consolidation Will Not Promote Efficiency.</u>

Finally, as discussed above, the myriad unique factual issues implicated by each action— and the PNC Action specifically—would not make consolidation efficient. *See supra* Section I; *see also* 28 U.S.C. § 1407(a); *see also In re Cincinnati Ins. Co. COVID-19 Bus. Interruption Prot. Ins. Litig.*, 492 F. Supp. 3d at 1350 (finding that "efficiency [] is best obtained outside the MDL context" when there are significant factual differences among the underlying actions).

Consolidation is also particularly inappropriate here due to the strategic positioning of the various defendants in the financial services industry. The Panel is "typically hesitant to centralize litigation against multiple, competing defendants which marketed, manufactured and sold similar products" because consolidation is likely to "complicate case management due to the need to

protect trade secret and confidential information." *In re Proton-Pump Inhibitor Prod. Liab. Litig.*, 273 F. Supp. 3d at 1362.  Here, much of the discovery at issue in the Underlying Actions, including defendants' design, marketing, and oversight of their respective cash sweep programs constitutes confidential proprietary information, the disclosure of which among defendants could harm their respective standing in the industry.  *See* Mot. at 6 (listing purportedly discoverable information including "internal communications regarding the design, implementation, and oversight of the cash sweep programs," policies and procedures for the programs, agreements with customers, agreements and correspondence with banks, "the structure of cash sweep deposit accounts," "how these accounts were maintained," and "marketing materials, disclosures, and related communications with customers").  Defendants, including PNC, therefore need to protect their "confidential information from full disclosure to the parties." *In re Mortg. Lender Force-Placed Ins. Litig.*, 895 F. Supp. 2d 1352, 1354 (J.P.M.L. 2012).  And, as a result, consolidation likely would require the erection of "complicated confidentiality barriers," rendering consolidation only more burdensome and less efficient. *In re CP4*, 412 F. Supp. 3d at 1367 n. 4.

## <u>CONCLUSION</u>

For the foregoing reasons, the Panel should deny Movants' Motion.

Dated: November 27, 2024

Respectfully submitted,

 */s/Robert K. Smith*

Robert K. Smith (MA Bar No. 681914)
**WILMER CUTLER PICKERING
  HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: 617-526-6000
robert.smith@wilmerhale.com

*Counsel for PNC Investments, LLC and The
PNC Financial Services Group, Inc.*

12