**BEFORE THE UNITED STATES**
**JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| **IN RE: CASH SWEEP PROGRAMS CONTRACT LITIGATION** | **MDL NO. 3136** |

# VARADY PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION FOR TRANSFER OF ACTIONS TO THE SOUTHERN DISTRICT OF NEW YORK PURSUANT TO 28 U.S.C. § 1407

Plaintiffs Daniel Varady, Daniel Gruber, Karen Schreiman, Manuel Vallin, and Joel Browne ("Varady Plaintiffs")[1] hereby submit this response in opposition to Plaintiffs' Motion for Transfer and Consolidation Pursuant to 28 U.S.C. § 1407 (ECF No. 1) and supporting brief (ECF No. 1-1) ("the Motion") filed by only two plaintiffs, Safron Capital Corp. and Brickman Investments Inc. As explained below, the requirements for centralization under Section 1407 are not met in this case, and transfer would in fact hinder the efficient functioning of the cases. Accordingly, the Varady Plaintiffs respectfully request that the Panel deny Movants' request.

## I. INTRODUCTION

Plaintiffs Safron Capital Corp. and Brickman Investments Inc. ("Movants") request transfer of the 29 actions[2] referenced in their motion (the "listed actions"), as well as any future tag-along cases, to the U. S. District Court for the Southern District of New York. But the requirements for transfer and consolidation under 28 U.S.C. § 1407 are not met here.

The centralization that Movants seek is not just unnecessary—it would be detrimental to the efficient conduct of the cases. Where, like here, the actions against each defendant will involve only independent factual determinations about each defendant's conduct, and not factual questions common to *all defendants*, centralization is inappropriate. Repeatedly, the Panel has declined to create industry-wide MDLs concerning allegations of corporate conduct that are merely similar, and not coordinated. This is especially true where the parties and courts have already expended

---

[1] Daniel Varady, Daniel Gruber, and Karen Schreiman are the named plaintiffs in the action titled, *Varady v. Wells Fargo & Co., et al*, Case No. 3:24-cv-04917 (N.D. Cal.), and Manuel Vallin and Joel Browne are the named plaintiffs in the action titled, *Vallin v. PNC Investments, LLC, et al.*, Case No. 2:24-cv-01295 (W.D. Pa.).

[2] *See* Third Corrected Schedule of Actions (hereinafter "Schedule of Actions"), ECF No. 8-1. Although 31 entries appear on Movants' Schedule, two of those actions (No. 3, *Frey*, 0:24-cv-03360, D. Minn.; No. 15, *Vu*, 3:24-cv-01358) were voluntarily dismissed prior to its filing.

substantial work organizing their cases to maximize convenience and efficiency. Indeed, Section 1407 functions as a last resort when alternatives to centralization—such as informal coordination and individual transfers—are insufficient for solving coordination problems between actions.

Here, the parties and courts have organized this litigation into eleven defendant-specific actions consolidated in the judicial districts where the defendants are headquartered. Only a handful of the listed actions were filed outside of those "hubs," and all but one of those cases are subject to a pending motion to transfer pursuant to Section 1404. These efforts can and will address the multidistrict character that remains in this litigation.

For these reasons, explained more fully below, Section 1407's requirements for centralization are unmet in this case, and the Panel should deny the Motion.

## II. BACKGROUND

Since the first several cash-sweep-related actions were filed, the parties and courts have worked effectively to identify and consolidate actions against each of the eleven defendant brokerages (and any related entities). As to the 31 actions listed in the motion for transfer, these efforts are as follows:

**Ameriprise**

Two proposed class actions against Ameriprise entities[3] were filed in the District of Minnesota on July 29, 2024 (*Mehlman*, 0:24-cv-03018), and August 21, 2024 (*Bender*, 0:24-cv-03359), and assigned to Judge John R. Tunheim. The court consolidated the actions and appointed interim co-lead counsel. *See Mehlman*, ECF No. 50. Plaintiffs have since filed a consolidated class

[3] The Ameriprise defendants include Ameriprise Financial, Inc.; Ameriprise Financial Services, LLC; and American Enterprise Investment Services, Inc.

action complaint. *See Mehlman*, ECF No. 58. A third case filed in the District of Minnesota (*Frey*, 0:24-cv-03360) was voluntarily dismissed.

Another proposed class action against Ameriprise, filed three months after *Mehlman* on October 14, 2024, is pending in the Central District of California (*Lourenco*, 2:24-cv-08825). The *Mehlman* Plaintiffs and Ameriprise both moved to transfer *Lourenco* to the District of Minnesota pursuant to 28 U.S.C. § 1404(a). *Lourenco*, ECF Nos. 26, 30.

**Charles Schwab**

Three proposed class actions against Charles Schwab entities[4] were filed beginning on August 28, 2024, in the Central District of California (*Loughran*, 2:24-cv-07344; *Saunders*, 2:24-cv-07638; *Davis*, 2:24-cv-08410) and consolidated before Judge Monica Ramirez Almadani under the caption *In re: Charles Schwab Cash Sweep Litigation* (*Loughran*, ECF No. 32). The court ordered the parties to propose a schedule for filing a consolidated complaint and defendants' response. (*Id.*) The *Loughran* Plaintiffs have filed an unopposed motion for appointment as interim lead counsel, which remains pending. A fourth proposed class action, filed October 24, 2024, is pending in the Middle District of Florida (*Morris*, 2:24-cv-00985).

[4] The Charles Schwab defendants are Charles Schwab Corporation and Charles Schwab & Co., Inc.

**E*Trade**

One proposed class action against E*Trade entities[5] was filed on February 1, 2024, in the District of New Jersey (*Burmin*, 2:24-cv-00603) and assigned to Judge Esther Salas. The parties have fully briefed the defendants' motion to dismiss there.

**JPMorgan Chase**

Two proposed class actions[6] against JPMorgan Chase entities[7] were filed on August 23, 2024 (*Bodea*, 1:24-cv-6404), and August 28, 2024 (*Lopez*, 1:24-cv-06489), in the Southern District of New York and were consolidated under the caption *In re: JPMorgan Chase Cash Sweep Program* before Judge Lorna G. Schofield. A third case filed in the Central District of California on September 19, 2024 (*Canales*, 1:24-CV-08377), was transferred to the Southern District of New York pursuant to 28 U.S.C. § 1404. *Canales* was assigned to Judge Schofield (*Canales*, ECF No. 37), designated as related to *In re: JPMorgan Chase Cash Sweep Program* (*id.*), and is pending consolidation, which is unopposed by the parties (*Canales*, ECF No. 39). The plaintiffs in *Bodea* and *Canales* are briefing competing motions for appointment of interim lead counsel (*id.*).

**LPL Financial**

Three proposed class actions against LPL entities[8] were filed beginning on July 17, 2024, in the Southern District of California (*Peters*, 3:24-cv-01228; *Nevitt*, 3:24-cv-01358; *White*, 3:24-

[5] The E*Trade defendants are E*Trade Securities LLC and Morgan Stanley Smith Barney LLC ("MSSB"). The complaint alleges that MSSB acquired E*Trade and became broker-dealer of its accounts during the class period. *See Burmin*, ECF No. 13-1, Compl. ¶¶4–7.

[6] Movants' Third Corrected Schedule of Actions (ECF No. 8-1) fails to indicate that the *Lopez* action was filed separately and consolidated with *Bodea*. Movants' Schedule also does not reflect the successful transfer of *Canales* and assignment to Judge Schofield. *Id.*

[7] The JPMorgan Chase defendants are JPMorgan Chase & Co. and J.P. Morgan Securities LLC.

[8] The LPL Financial defendants are LPL Financial LLC and LPL Financial Holdings Inc.

cv-01724) and consolidated before Judge Todd Robinson. The court ordered an initial case management schedule for the filing of a consolidated complaint and defendants' response. *Peters,* ECF No. 30. The court also appointed interim co-lead counsel. *Peters*, ECF No. 37. A fourth case filed in the Southern District of California (*Vu*, 3:24-cv-01484) was voluntarily dismissed.

**Merrill Lynch**

*Valelly v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, a proposed class action, was filed in the Southern District of New York (No. 1:19-cv-07998) in August 2019 and is pending before Judge Valerie E. Caproni. Judge Caproni recently issued an opinion deciding competing *Daubert* motions, and that case is proceeding. *See Valelly v. Merrill Lynch, Pierce, Fenner, & Smith, Inc.,* No. 19-cv-7998 (VEC), 2024 WL 4476088 (S.D.N.Y. Oct. 11, 2024). Another proposed class action against Merrill Lynch was later filed in that District (*McCrary*, 1:23-cv-10768) on December 11, 2023. The *McCrary* Plaintiff noticed her action as related to *Valelly* (*McCrary*, ECF No. 4), but Judge Caproni declined to designate the case as related (*McCrary*, ECF No. 5), presumably because the allegations in *Valelly* involved an earlier (pre-2019) period and has been pending for some time. The *McCrary* action was reassigned to Judge Victor Marrero. *McCrary*, ECF No. 20.

Movant Safron Capital filed a proposed class action against two Merrill Lynch entities[9] on October 11, 2024, in the same District (*Safron Capital Corp.* ("*Safron I*"), 1:24-cv-07743), assigned to Judge Margaret Garnett (*Safron I.*, ECF No. 4), and noticed by the plaintiff as related to *McCrary* and *Valelly* (*Safron I*, ECF Nos. 7, 8). The court has not yet made a determination on

[9] The Merrill Lynch entities named in *Safron I* are Merrill Lynch, Pierce, Fenner & Smith, Inc. and its parent company Bank of America Corporation. The recently filed *Campton* case names Managed Account Advisors, LLC, a Merrill Lynch affiliate, in addition to the other Merrill Lynch entities.

relation. A fourth, more recently filed proposed class action in the District (*Campton*, 1:24-cv-08629) does not appear in Movants' Schedule of Actions but has been noticed as a potential tag-along on the J.P.M.L. docket (ECF No. 12). *Campton* has been designated as related to *Safron I* and assigned to Judge Garnett. *Campton*, ECF No. 10.

**Morgan Stanley**

Two proposed class actions were filed on June 14, 2024 (*Estate of Sherlip*, 1:24-cv-04571), and October 11, 2024 (*Safron Capital Corp.* ("*Safron II*"), 1:24-cv-07750), against Morgan Stanley entities[10] in the Southern District of New York and assigned to the Judge Valerie Caproni. The parties have consented to consolidation of those actions and stipulated to a schedule for filing motions for appointment of interim class counsel, consolidated pleadings, and responsive filings. (*Safron II*, ECF No. 32.)

**PNC Investments**

One proposed class action was filed against PNC entities[11] on September 11, 2024, in the Western District of Pennsylvania (*Vallin*, 2:24-cv-01295). The case is before Judge Marilyn J. Horan. The parties have met and conferred about the defendants' anticipated motion to dismiss and agreed to a schedule for the filing of an amended complaint and briefing on any motion to dismiss. Judge Horan approved of the parties' stipulation. *Vallin*, ECF No. 42. The plaintiffs' amended complaint is due on December 13, 2024. *Id.*

---

[10] The Morgan Stanley defendants are Morgan Stanley, Morgan Stanley & Co. LLC, and Morgan Stanley Smith Barney LLC.

[11] The PNC defendants are PNC Investments, LLC; PNC Financial Services Group, Inc.; and National Financial Services, LLC.

**Raymond James**

Two proposed class actions against Raymond James entities[12] were filed beginning on August 27, 2024, in the Middle District of Florida (*Schmidlin*, 8:24-cv-02041; *Conran*, 8:24-cv-02511) and consolidated before Judge Kathryn Kimball Mizelle (*Conran*, ECF No. 53). The court ordered the plaintiffs to file a motion requesting appointment of interim lead counsel and set a schedule for the filing of a consolidated complaint and defendants' motion to dismiss. *Schmidlin*, ECF No. 41.

**UBS Financial**

Two proposed class actions against UBS Financial Services, Inc. were filed on August 22, 2024 (*Goldsmith*, 1:24-cv-06354), and September 3, 2024 (*Davitt*, 1:24-cv-06692), in the Southern District of New York and consolidated before Judge Gregory Woods. *Goldsmith*, ECF No. 29. The court appointed interim class counsel in the consolidated action (*id.*) and endorsed the parties' stipulated schedule for the filing of consolidated pleadings and of any request to file a motion to dismiss. *Goldsmith*, ECF No. 31.

**Wells Fargo**

Four proposed class actions against Wells Fargo entities[13] were filed beginning on July 30, 2024, in the Northern District of California (*Bujold*, 3:24-cv-04616; *Nadolny*, 3:24-cv-04633; *Varady*, 3:24-cv-04917; *Cobb*, 3:24-cv-06696). The cases have been assigned to Judge Vince Chhabria and consolidated under the caption *In re: Wells Fargo Cash Sweep Litigation*. *Bujold*,

[12] The Raymond James defendants are Raymond James Financial, Inc.; Raymond James & Associates, Inc.; Raymond James Financial Services Advisors, Inc.; and Raymond James Financial Services, Inc.

[13] The Wells Fargo defendants are Wells Fargo & Co.; Wells Fargo Clearing Services (d/b/a Wells Fargo Advisors); and Wells Fargo Bank, N.A.

ECF No. 31. Competing motions for appointment as interim class counsel are pending. *Bujold*, ECF Nos. 38, 39.

Two other proposed class actions against Wells Fargo were filed on October 14, 2024, in the Central District of California (*Chakravarthy*, 2:24-cv-08831), and by Movant Brickman Investments Inc. on October 11, 2024 in the Southern District of New York (*Brickman Investments Inc.*, 1:24-cv-07751). Wells Fargo moved to transfer both actions to the Northern District of California pursuant to 28 U.S.C. § 1404(a). *See Chakravarthy*, ECF Nos. 19, 24; *Brickman Investments*, ECF Nos. 17, 18, 27. Chakravarthy and Brickman Investments oppose the motions to transfer. *See Chakravarthy*, ECF No. 26; *Brickman Investments*, ECF Nos. 25, 37.

## III. <u>ARGUMENT</u>

### A. <u>The Listed Actions Do Not Involve Common Questions of Fact</u>

The Panel has long observed that centralization under Section 1407 requires "sufficient common questions of fact to warrant . . . transfer." *In re: Not-for-Profit Hosps. / Uninsured Patients Litig.*, 341 F. Supp. 2d 1354, 1355 (J.P.M.L. 2004). Those common questions must "predominate over individual factual issues." *In re: Westinghouse Elec. Corp. Emp't Discrimination Litig.*, 438 F. Supp. 937, 938 (J.P.M.L. 1977); *see also In re: Pharmacy Benefit Plan Adm'rs Pricing Litig.*, 206 F. Supp. 2d 1362, 1363 (J.P.M.L. 2002).

Section 1407(a)'s requirements are not met here because the actions Movants seek to centralize do not share common questions of fact. Instead, they involve eleven different brokerage institutions—each offering distinct cash sweep programs with their own contractual terms, customer disclosures about the cash sweep programs, and various rates of interest. So, while "the actions undoubtedly allege similar policies and practices . . . [,] there is no common or predominant defendant across all actions," and therefore no common fact questions to be answered. *In re:*

*Paycheck Prot. Program Agent Fees Litig.*, 481 F. Supp. 3d 1335, 1337 (J.P.M.L. 2020); *see also In re: Hotel Indus. Sex Trafficking Litig.*, 433 F. Supp. 3d 1353, 1356 (J.P.M.L. 2020).

While Movants purport to identify "many common factual and legal questions" among the listed actions (Mot. at 4), none of them are grounds for centralization. First, Movants ignore that "[c]ommon *legal* questions are insufficient to satisfy Section 1407's requirement of common factual questions." *See In re: Hotel Indus. Sex Trafficking Litig.*, 433 F. Supp. 3d at 1356 (emphasis added); *see also In re: Lawrence L. Crawford Litig.*, No. MDL 3116, 2024 WL 3628780, at *1 (J.P.M.L. 2024). But, more importantly, Movants lump all "defendants" together based on superficial similarities, ignoring that liability will hinge on factual determinations specific to each defendant's cash sweep program.

Although at a general level, these actions are similar because they include the same types of allegations, each of the eleven defendant brokerages designed and operated distinct programs that were governed by different agreements and involved different customer disclosures. The defendant brokerages also paid different rates of interest. For example, Wells Fargo at times paid interest rates of 1% on advisory accounts, while JPMorgan at times paid 5%. Accordingly, questions like whether defendants "violated their contractual obligations, fiduciary duties, or other laws," "made material misstatements and omitted material facts," and "paid unreasonably low interest rates" (Mot. at 4) are only answerable as to each defendant individually—and not all "defendants" globally, as Movants suggest. *See In re: Baby Food Mktg., Sales Practices & Prods. Liab. Litig.*, 544 F. Supp. 3d 1375, 1376 (J.P.M.L. 2021) ("The claims against each defendant thus are likely to rise or fall on facts specific to that defendant."). Because Movants fail to identify factual questions that are common to *all* the actions they seek to transfer, the motion should be denied. *See In re: Paycheck Prot. Program Agent Fees Litig.*, 481 F. Supp. 3d at 1337.

Even if some common questions of fact did exist across the listed actions, "unique questions of fact" would nonetheless "predominate over any common questions of fact." *In re: Pharmacy Ben. Plan Adm'rs Pricing Litig.*, 206 F. Supp. 2d at 1363. The Panel has denied transfer in other cases where defendant-specific facts overwhelmed any common ones. For example, it declined to establish an industry-wide MDL in *In re: COVID-19 Business Interruption Protection Insurance Litigation* because "the cases involve[d] different insurance policies with different coverages, conditions, exclusions, and policy language, purchased by different businesses in different industries located in different states." *See* 482 F. Supp. 3d 1360, 1362 (J.P.M.L. 2020) ("These differences will overwhelm any common factual questions."). Likewise, in *In re: Pharmacy Benefit Plan Administrators Pricing Litigation*, the Panel rejected a request to centralize cases against various pharmacy benefit managers (PBM) servicing different plans under different contracts because defendant-specific facts would predominate. *See* 206 F. Supp. 2d at 1363. The Panel noted that, like here, "[o]nly one PBM is a defendant in each action and there is no allegation that PBMs conspired with each other." *Id.*

The lack of any common factual connection among the defendants here distinguishes these actions from those in Movants' authorities. For example, *In re: Unumprovident Corp. Securities, Derivative & "ERISA" Litigation*, 280 F. Supp. 2d 1377, 1379 (J.P.M.L. 2003), does not stand for the proposition that allegations "against *similar* defendants arising from *similar* transactions and events" warrant centralization. (Mot. at 3 (emphasis added).) Instead, those plaintiffs all alleged that the *same* defendant "engaged in improper claims handling practices in furtherance of a company-wide effort to reduce costs and inflate revenues." *In re: Unumprovident*, 280 F. Supp. 2d at 1379. Next, in *In re: Treasury Securities Auction Antitrust Litigation*, the Panel centralized actions against several banks alleged to have conspired to manipulate prices of Treasury securities

and derivative financial products—*not* to have harmed plaintiffs through similar, independent acts. *See* 148 F. Supp. 3d 1360, 1362 (J.P.M.L. 2015); *see also In re: London Silver Fixing, Ltd., Antitrust Litig.*, 52 F. Supp. 3d 1381, 1381 (J.P.M.L. 2014) (involving "allegations that the defendant banks conspired to manipulate the prices of silver and silver derivatives" through common group membership). Likewise, *In re: Japanese Electronic Antitrust Litigation* involved allegations that "the defendants conspired to sell television receivers within the United States at artificially low prices." 388 F. Supp. 565, 566 (J.P.M.L. 1975); *see also In re: Insulin Pricing Litig.*, 709 F. Supp. 3d 1384, 1389 (J.P.M.L. 2023) (centralizing actions involving "the same alleged insulin pricing scheme between insulin manufacturers and PBMs").

In sum, because the listed actions involve very few, if any, common questions of fact, and because defendant-specific fact questions would predominate, the actions do not meet the requirements for centralization under Section 1407.

### B. <u>Centralization of the Actions Will Not Further the Convenience of the Parties and Witnesses nor Promote the Actions' Just and Efficient Conduct</u>

Centralization is also inappropriate here because the second and third statutory criteria are unmet: that transfer (2) would serve "the convenience of the parties and witnesses"; and (3) would "promote the just and efficient conduct" of the actions. 28 U.S.C. § 1407. These requirements are often analyzed together and are met when centralization would "'eliminat[e] duplicative discovery,' 'prevent[] inconsistent pretrial rulings,' and 'conserv[e] the resources of the parties, their counsel and the judiciary.'" *In re: Proton-Pump Inhibitor Prod. Liab. Litig.*, 273 F. Supp. 3d 1360, 1361–62 (J.P.M.L. 2017) (quoting *In re: Airline Baggage Fee Antitrust Litig.*, 655 F. Supp. 2d 1362, 1362–63 (J.P.M.L. 2009)) (cleaned up). None of those efficiencies, however, would result from centralizing the listed actions.

Specifically, Movants claim that centralization of the actions will "sav[e] the parties from prosecuting and defending competing and overlapping class actions in multiple federal district courts across the country." But these concerns are unfounded because any potentially overlapping class actions (*i.e.*, those against the same defendant brokerage) have been or can be consolidated in the federal judicial district where that defendant is headquartered. This arrangement is, of course, convenient to defendants located there and to the many employees who will likely be key fact witnesses. Transfer of the consolidated actions would frustrate, not further, those efficiencies and cause inconvenience for most defendants and witnesses. *See, e.g.*, *In re: Ambulatory Pain Pump–Chondrolysis Prods. Liab. Litig.*, 709 F. Supp. 2d 1375 (J.P.M.L. 2010) (denying motion for centralization where each defendant was named "in only a minority of" or in "but a handful" of actions); *In re: Table Saw Prods. Liab. Litig.*, 641 F. Supp. 2d 1384, 1385 (J.P.M.L. 2009) (denying motion where no defendant was sued in all actions, and several entities were named only in two or three). Transfer of the currently consolidated actions would also disrupt any progress the parties and courts have made moving the cases to trial. *See In re: Joel Snider*, 437 F. Supp. 3d 1371, 1371–72 (J.P.M.L. 2020) (denying motion because actions could "proceed in an orderly manner" in the would-be transferor districts).

Movants also argue that centralization will avoid duplicative discovery by the parties and list several topics on which testimony and documents will likely be sought in all actions. (Mot. at 5–6.) These include "internal communications regarding the design, implementation, and oversight of the cash sweep programs"; "consent forms and agreements presented to customers"; and "marketing materials, disclosures, and related communications with customers." (*Id.* at 6.) Here, too, Movants ignore that this information will necessarily differ from defendant to defendant and that there will be little, if any, common discovery involved across the various actions. *See In*

*re: COVID-19 Bus. Interruption Prot. Ins. Litig.*, 482 F. Supp. at 1362. ("Here, there is no conceivable relevance of [one defendant]'s actions in a case alleging claims against [another defendant]. Thus, there is little potential for common discovery across the litigation."). This alone warrants denial of the Motion. *In re: Proton-Pump Inhibitor Prods. Liab. Litig.*, 273 F. Supp. 3d at 1362 (rejecting centralization of actions against various defendants because "a significant amount of the discovery in these actions appears almost certain to be defendant-specific").

Furthermore, the Panel is "typically hesitant to centralize litigation against multiple, competing defendants which marketed . . . and sold similar products." *In re: Yellow Brass Plumbing Component Prods. Liab. Litig.*, 844 F. Supp. 2d 1377, 1378 (J.P.M.L. 2012); *see also In re: Credit Card Payment Protection Mktg. & Sales Practices Litig.,* 753 F. Supp. 2d 1375 (J.P.M.L. 2010) (denying centralization of cases against competing credit card companies). This is because "creating an industry-wide MDL" with competitor defendants creates "few efficiencies" where, like here, the "factual commonality across the actions appears to be superficial at best." *In re: Secondary Ticket Mkt. Refund Litig.*, 481 F. Supp. 3d 1345, 1346 (J.P.M.L. 2020); *see In re: CP4 Fuel Pump Mktg., Sales Practices, & Prods. Liab. Litig.*, 412 F. Supp. 3d 1365, 1367 (J.P.M.L. 2019) (rejecting industry-wide MDL where "there is no allegation of conspiracy"). Instead, centralizing actions against competitors is likely to create case management challenges because of "the need to protect trade secret and confidential information" and may prolong pretrial proceedings because of "the possible need for separate discovery and motion tracks" and "additional bellwether trials." *See, e.g.*, *In re: CP4 Fuel Pump*, 412 F. Supp. at 1367; *see also In re: Proton-Pump Inhibitor Prod. Liab. Litig.*, 273 F. Supp. 3d at 1362. And although Movants argue that centralization is crucial for avoiding conflicting class determinations, that possibility "is minimal" where cases against each defendant will be litigated in the same court. *See In re:*

*Pharmacy Ben. Plan Adm'rs Pricing Litig.*, 206 F. Supp. 2d at 1363. Accordingly, "centralizing these [eleven] single-defendant cases likely would result in significant inefficiencies and delay, without producing any substantial offsetting benefits." *In re: CP4 Fuel Pump*, 412 F. Supp. 3d at 1367.

Given the different underlying facts and witnesses relating to each of the eleven defendant brokerages, the various locations of the defendants and potential witnesses, and the minimal risk of conflicting rulings on class certification, an order centralizing all cash sweep actions in a single proceeding will not "serve the convenience of the parties and witnesses" and will not "promote the just and efficient conduct of such actions." 28 U.S.C. § 1407.

### C. Consolidation in Each Defendant's Home Jurisdiction Is the More Efficient Procedural Course

The Panel has directed any parties responding to the Motion to "address what steps they have taken to pursue alternatives to centralization (including, but not limited to, engaging in informal coordination of discovery and scheduling, and seeking Section 1404 transfer of one or more of the subject cases)." *See* ECF No. 5. This is in keeping with the Panel's holding that "centralization under Section 1407 should be the last solution after considered review of all other options." *In re: Best Buy*, 804 F. Supp. 2d 1376, 1378 (J.P.M.L. 2011). Here, the actions can be litigated more efficiently as currently organized by the parties and courts, without this Panel's intervention.

Movant's argument for centralization overlooks that each defendant brokerage's cash sweep program is already the subject of a consolidated, soon-to-be-consolidated, or solitary action in the federal district court where that brokerage is headquartered. There are currently consolidated actions pending for claims against seven of the eleven defendants, as set forth above in Part II. And interim lead counsel has been appointed in the Ameriprise, LPL, and UBS consolidated

actions. Motions for appointment of interim lead counsel are pending in the Charles Schwab, J.P. Morgan Chase, and Wells Fargo consolidated actions and are forthcoming in the Raymond James action. Plaintiffs have filed a consolidated complaint in the Ameriprise action, and the courts have scheduled the filing of consolidated pleadings in the remaining cases.

Actions against two other brokerages may soon be similarly consolidated. Judge Caproni (S.D.N.Y.) has designated the two proposed class actions against the Morgan Stanley entities as related (*Estate of Sherlip*, 1:24-cv-04571; *Safron II*, 1:24-cv-07750) and has issued an order to show cause in *Safron II* why they should not be consolidated (*Safron II*, ECF No. 15). In the proposed class actions against Merrill Lynch, the *Safron I* and *Campton* cases have been deemed related and assigned to Judge Garnett. *See Campton*, ECF No. 10.[14] And the proposed class actions against the remaining individual brokerages, PNC Investments (*Vallin*, 2:24-cv-01295 (W.D. Penn.)) and E*Trade (*Burmin*, 2:24-cv-00603 (D.N.J.)), are solitary cases that currently require no consolidation or other action to proceed efficiently.

"Creating [these] defendant-specific 'hubs' ultimately may prove the most efficient means of moving the litigation toward resolution" for the reasons set forth above. *In re: Benzoyl Peroxide Mktg., Sales Pracs. & Prod. Liab. Litig.*, No. MDL 3120, 2024 WL 3629067, at *2 (J.P.M.L. Aug. 1, 2024); *see also In re: Baby Food Mktg., Sales Practices and Prods. Liab. Litig.*, 544 F. Supp. 3d at 1377 (denying § 1407 transfer where "[m]ost of the 73 defendant-specific actions in this litigation have been filed or transferred to the district where that defendant is (or was) headquartered"). And, here, the listed actions have already substantially consolidated themselves or are on track to do so. It is no matter that other cases remain pending or that additional cases may be filed outside those districts. This Panel has "repeatedly . . . noted that where a reasonable

[14] No determination has been made whether those actions are related to *McCrary*.

prospect exists that the resolution of a Section 1404 motion or motions could eliminate the multidistrict character of a litigation" centralization under Section 1407 is disfavored. *In re: Hudgson's Bay Co. Customer Data Sec. Breach Litig.*, 326 F. Supp. 3d 1372, 1373 (J.P.M.L. 2018) (citations and quotation marks omitted).

From the procedural record of the listed actions, it is evident that the parties have undertaken diligent efforts to organize the various cash sweep actions on a defendant-specific basis. Among the listed actions, the vast majority of Plaintiffs (all but five) filed complaints in the defendants' home districts, including all of those who were first to file.[15] Plaintiffs and defendants then cooperated to have the related actions consolidated in the respective districts, which has been achieved as to seven of the nine defendants facing multiple actions. As to the remaining two defendants (Morgan Stanley, Merrill Lynch), the cases have been related, and the parties have taken steps to consolidate them and advance the litigations.

To the extent that other cases remain pending outside those defendant-specific "hubs," those defendants can work towards effecting the transfer or re-filing of those cases—whether through motions to transfer pursuant to 28 U.S.C. § 1404 or through cooperation with plaintiffs. Already, the *Mehlman* Plaintiffs (Ameriprise) have moved for transfer of *Lourenco* to the District of Minnesota. *See Lourenco*, ECF No. 30, 2:24-cv-08825 (C.D. Cal.). Plaintiffs and defendants in *In re: Wells Fargo Cash Sweep Litigation* have likewise moved for transfer of *Chakravarthy*, 2:24-cv-08831 (C.D. Cal), and *Brickman Investments, Inc.*, 1:24-cv-07751 (S.D.N.Y.) to the Northern

[15] The five exceptions are *Lourenco* (Ameriprise), 2:24-cv-08825 (C.D. Cal.); *Morris* (Charles Schwab), 2:24-cv-00985 (M.D. Fla.); *Canales* (JP Morgan Chase), 1:24-cv-08377 (C.D. Cal.) (since transferred to S.D.N.Y.); *Chakravarthy* (Wells Fargo), 2:24-cv-08831 (C.D. Cal.); and *Brickman Investments* (Wells Fargo), 1:24-cv-07751 (S.D.N.Y.). Each of these outlier-district cases was the last to be filed against the respective defendant among the listed actions. *Lourenco*, *Morris*, *Canales*, and *Chakravarty* were all filed by attorney Scott Edelsberg of Edelsberg Law, PA, and *Brickman Investments* was brought by one of the Movants.

District of California. In fact, only one case remains (*Morris*, 2:24-cv-00985, M.D. Fla.) where no steps have been taken towards transfer to the defendant's (here, Charles Schwab) home district. These are exactly the "alternatives to centralization" that this Panel directed the parties to address. *See* ECF No. 5.

Accordingly, "[a]s there exists a 'reasonable prospect' that these pending motions will moot the multidistrict character of this litigation, centralization is not warranted." *In re: Epipen (Epinephrine Injection, USP) Emp. Ret. Income Sec. Act (ERISA) Litig.*, 276 F. Supp. 3d 1384, 1385 (J.P.M.L. 2017).

### D. If the Panel Creates a Multi-Defendant MDL, the Actions Should Be Centralized in the Northern District of California

Should the Panel decide that a multi-defendant MDL is appropriate, which it is not, the Varady Plaintiffs propose that the Northern District of California be selected as the transferee court given the four current cases against the Wells Fargo entities consolidated before Judge Chhabria and the two cases subject to pending motions to transfer. The Northern District of California is the most appropriate venue for transfer because it is located in a major and convenient metropolitan area with ready access from all parts of the country and is experienced in managing multidistrict litigation.

The Northern District of California "provides a convenient and easily accessible location for . . . geographically dispersed litigation." *In re: Viagra (Sildenafil Citrate) Prod. Liab. Litig.*, 176 F. Supp. 3d 1377, 1378 (J.P.M.L. 2016); *see also In re: Wells Fargo Home Mort. Overtime Pay Litig.*, 435 F. Supp. 2d 1338, 1340 (J.P.M.L. 2006) (same). The courthouse for the San Francisco Division, where the Wells Fargo cases are currently pending, is particularly accessible by large, nearby airports and an efficient mass transit system, conveniences that this Panel values. *See In re: Worldcom, Inc., Sec. & ERISA Litig.*, 226 F. Supp. 2d 1352, 1355 (J.P.M.L. 2002).

Further, the Northern District of California's long track record of handling numerous, complex MDLs shows it has the necessary resources and experience to manage these proceedings. *See, e.g.*, *In re: Compression Labs, Inc. Pat. Litig.*, 360 F. Supp. 2d 1367, 1369 (J.P.M.L. 2005) (district is "[w]ell equipped with the resources that this complex docket is likely to require").

## IV. CONCLUSION

For the foregoing reasons, Movants have failed to meet all the criteria for centralization under 28 U.S.C. § 1407, and the Motion should be denied.

DATED: November 27, 2024

Respectfully submitted,

**GIBBS LAW GROUP LLP**

By: /s/ *Rosemary M. Rivas*
Eric H. Gibbs (CA SBN 178658)
Rosemary M. Rivas (CA SBN 209147)
David Stein (CA SBN 257465)
Linda P. Lam (CA SBN 301461)
Rosanne L. Mah (CA SBN 242628)
1111 Broadway, Suite 2100
Oakland, California 94607
(510) 350-9700 (tel.)
(510) 350-9701 (fax)
ehg@classlawgroup.com
rmr@classlawgroup.com
ds@classlawgroup.com
lpl@classlawgroup.com
rlm@classlawgroup.com

Brian E. Johnson
**GIBBS LAW GROUP LLP**
211 N. Union St., Suite 100
Alexandria, VA 22314
(510) 350-9700 (tel.)
(510) 350-9701 (fax)
bej@classlawgroup.com

*Attorneys for Plaintiffs Daniel Varady, Daniel Gruber, and Karen Schreiman*

*Varady v. Wells Fargo & Co., et al.*
Case No. 3:24-cv-04917 (N.D. Cal.)

*Attorneys for Plaintiffs Manuel Vallin and Joel Browne*

*Vallin v. PNC Investments, LLC, et al.*
Case No. 2:24-cv-01295 (W.D. Pa.)