**BEFORE THE UNITED STATES**
**JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

|  |  |  |
|---|---|---|
| In re: | ) | MDL No. 3136 |
|  | ) |  |
| Cash Sweep Programs Contract Litigation | ) |  |
|  | ) |  |
|  | ) |  |
|  | ) |  |

**SWEEPS PLAINTIFFS' RESPONSE IN OPPOSITION TO SAFRON CAPITAL CORP. AND BRICKMAN INVESTMENTS INC.'S MOTION FOR TRANSFER AND CONSOLIDATION PURSUANT TO 28 U.S.C. § 1407**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ................................................................................................... ii

I.  INTRODUCTION ......................................................................................................... 1

II.  BACKGROUND ............................................................................................................ 4

III.  ARGUMENT .................................................................................................................. 9

    A.  The Request for Centralization Fails to Satisfy Section 1407's Statutory Criteria ........................................................................................... 9

        1.  None of the Related Financial Institution Actions Share a Common Question of Fact .......................................................... 9

        2.  Centralization Would Inconvenience the Parties and Witnesses ........................................................................................ 15

        3.  Centralization Will Not Advance the Just and Efficient Prosecution of the Actions ........................................................ 17

    B.  This Section 1407 Request is an Improper Effort to End-Run Court-Ordered Deadlines ................................................................................... 20

IV.  CONCLUSION ............................................................................................................. 20

## TABLE OF AUTHORITIES

CASES                                                                                          PAGE(S)

*In re Baby Food Mktg., Sales Pracs. & Prod. Liab. Litig.*,
    544 F. Supp. 3d 1375 (J.P.M.L. 2021)....................................................................12, 17, 19

*In re Bank of Am. Fraudulent Account Litig.*,
    707 F. Supp. 3d 1415 (J.P.M.L. 2023)....................................................................19

*In re Benzoyl Peroxide Mktg., Sales Pracs. & Prods. Liab. Litig.*,
    2024 WL 3629067 (J.P.M.L. Aug. 1, 2024) ............................................................13

*In re Best Buy Co., Inc., Cal. Song-Beverly Credit Card Act Litig.*,
    804 F. Supp. 2d 1376 (J.P.M.L. 2011)....................................................................19

*In re Checking Acct. Overdraft Litigation*,
    626 F. Supp. 2d 1333 (J.P.M.L. 2009)....................................................................14

*In re COVID-19 Bus. Interruption Prot. Ins. Litig.*,
    482 F. Supp. 3d 1360 (J.P.M.L. 2020)....................................................................9, 12, 13

*In re Credit Card Payment Prot. Plan Mktg. & Sales Pracs. Litig.*,
    753 F. Supp. 2d 1375 (J.P.M.L. 2010)....................................................................12, 15

*In re Credit Union Checking Acct. Overdraft Litig.*,
    158 F. Supp. 3d 1363 (J.P.M.L. 2016)....................................................................11, 15, 17

*In re CVS Caremark Corp. Wage & Hour Emp. Pracs. Litig.*,
    684 F. Supp. 2d 1377 (J.P.M.L. 2010)....................................................................20

*In re Gerber Probiotic Prods. Mktg. & Sales Pracs. Litig.*,
    899 F. Supp. 2d 1378 (J.P.M.L. 2012)....................................................................19, 20

*In re Highway Acc. Near Rockville, Conn., on Dec. 30, 1972*,
    388 F. Supp. 574 (J.P.M.L. 1975)............................................................................9

*In re Honey Prod. Mktg. & Sales Pracs. Litig.*,
    883 F. Supp. 2d 1333 (J.P.M.L. 2012)....................................................................13

*In re IDT Corp. Calling Card Terms Litig.*,
    278 F. Supp. 2d 1381 (J.P.M.L. 2003)....................................................................18

*In re Janus Mutual Funds Investment Litigation*,
    310 F. Supp. 2d 1359 (J.P.M.L. 2004)....................................................................14

*In re Kohl's Tel. Consumer Prot. Act (TCPA) Litig.*,
    220 F. Supp. 3d 1363 (J.P.M.L. 2016)....................................................................16

*In re Lehman Brothers Holdings, Inc., Sec. & Emp. Ret. Income Sec. Act (ERISA) Litig.*,
   598 F. Supp. 2d 1362 (J.P.M.L. 2009) ................................................................. 14

*In re Mortg. Lender Force-Placed Ins. Litig.*,
   895 F. Supp. 2d 1352 (J.P.M.L. 2012) .......................................................... *passim*

*In re Multidistrict Litig. Involving Banking Agreements with Stirling Homex Corp.*,
   388 F. Supp. 572 (J.P.M.L. 1975) ........................................................................ 17

*In re Nat'l Ass'n for Advancement of Multijurisdiction Prac. Litig.*,
   52 F. Supp. 3d 1377 (J.P.M.L. 2014) ................................................................... 13

*In re New York Tax Foreclosure Surplus Litig.*,
   2024 WL 3629066 (J.P.M.L. Aug. 2, 2024) ......................................................... 19

*In re Paycheck Prot. Program Agent Fees Litig.*,
   481 F. Supp. 3d 1335 (J.P.M.L. 2020) .................................................... 11, 13, 15

*In re Pilot Flying J Fuel Rebate Contract Litig (No. II)*,
   11 F. Supp. 3d 1351 (J.P.M.L. 2014) ................................................................... 17

*In re Plumbing Fixture Cases*,
   298 F. Supp. 484 (J.P.M.L. 1968) ........................................................................ 18

*In re Republic Nat'l-Realty Equities Sec. Litig.*,
   382 F. Supp. 1403 (J.P.M.L. 1974) ................................................................ 18, 19

*In re Secondary Ticket Mkt. Refund Litig.*,
   481 F. Supp. 3d 1345 (J.P.M.L. 2020) .......................................................2, 12, 13, 19

*In re Unumprovident Corp. Sec., Derivative & "ERISA" Litig.*,
   280 F. Supp. 2d 1377 (J.P.M.L. 2003) ................................................................. 14

*In re Yellow Brass Plumbing Component Prods. Liab. Litig.*,
   844 F. Supp. 2d 1377 (J.P.M.L. 2012) ................................................................. 13

STATUTES

28 U.S.C. § 1407(a) ...........................................................................................1, 2, 9

This response to the request for centralization, consolidation, and transfer by RGRD (defined below) is filed on behalf of a consortium of plaintiffs ("Sweeps Plaintiffs," as defined below) whose counsel here serve as Court-appointed Interim Class Counsel in four of the 11 sets of actions subject to the proposed MDL, and are seeking such appointment in four other of the remaining actions—a combined two-thirds of all identified cases. Because the proposed MDL fails to satisfy the statutory criteria for centralization under Section 1407, and for additional reasons set forth below, Sweeps Plaintiffs respectfully request that the JPML deny the motion.

## I.     INTRODUCTION

The request for centralization should be denied. The class actions identified in this proposed MDL target 11 financial institutions and their affiliates (each, a "Financial Institution") concerning each Financial Institution's operation of its "cash sweep" program. For example, there are sets of lawsuits against Wells Fargo, Morgan Stanley, JPMorgan, and others. But the separate claims alleged against each Financial Institution arise out of each Financial Institution's unique and specific alleged breaches of unique and specific contractual and other obligations to their distinct customer bases. The financial products, sweep services, and the classes in each case are entirely separate and distinct from one another. The cases are in disparate procedural stages, and there is no overlapping discovery, evidence, parties, or anything else favoring Section 1407 centralization. Moreover, nearly all of the Financial Institution cases are already subject to a consolidation order that has or will combine all related Financial Institution actions before the same judge in each respective proper home court.

In other words, this is the precise scenario that the JPML has repeatedly recognized is inappropriate for centralization: the cases do not meet the threshold criteria for transfer under Section 1407 because none of the separate Financial Institution cases share a single common question of "fact." 28 U.S.C. § 1407(a). Moreover, and not surprisingly, in light of the utter lack

of any common questions of fact, centralization would not promote the "convenience of parties and witnesses" nor "promote the just and efficient [prosecution of the] actions." *Id.*

In fact, the opposite is true.  The proposed MDL here is exactly the type of disfavored "industry-wide" MDL that the JPML has traditionally rejected—as it does not involve any joint conduct by any of the defendants or any indivisible harm flowing from the same misconduct.  *See, e.g.*, *In re Secondary Ticket Mkt. Refund Litig.*, 481 F. Supp. 3d 1345, 1346 (J.P.M.L. 2020).  For decades, the Panel has been rightly "skeptical of requests to centralize claims filed against multiple defendants who are competitors in a single MDL because it often will not promote judicial efficiency or serve the convenience of the parties and witnesses." *Id.*

Here, centralization would inject disruption and delay into related class actions that are already subject to consolidation orders, have court-appointed leadership structures, have begun (and in one instance completed) discovery, and are proceeding in an organized fashion.  The cases are pending in Defendants' respective home jurisdictions (or are in the process of being transferred there under Section 1404), and they are overseen by experienced judges.  To date, besides the plaintiffs who filed the MDL application, virtually all parties who have taken a position have opposed the MDL—including numerous defendants and the vast majority of plaintiffs.

The lack of any merit to the proposed MDL flows from the fact that it appears manufactured to support the interests of a set of plaintiffs and their counsel who missed court-established deadlines, and not out of any legitimate concern that centralization would benefit the parties or the courts.  Specifically, this MDL request was filed on October 30, 2024, nearly two-and-a-half months after the sweeps class actions against Wells Fargo had been filed and consolidated by Judge Chhabria in the Northern District of California, weeks after a court-ordered deadline for motions seeking appointment of interim class counsel in that case, and on the eve of the hearing

date for those leadership applications.  This proposed MDL was the centerpiece of a last-minute request to stay the fully-briefed leadership motions in deference to this just-filed MDL by two law firms—RGRD and Edelsberg (defined below), that also included pages of briefing seeking the MDL proponent's appointment as interim class counsel if the stay was denied.[1]  This timing is no accident, and highlights the motivations behind this proposed MDL, as well as its lack of merit.

Indeed, Wells Fargo is not the only example.  After Ameriprise was sued in two different (and now consolidated) class actions in its home court of the District of Minnesota, Edelsberg filed a case against Ameriprise in the Central District of California.  Similarly, after Charles Schwab had been sued in three different (and now consolidated) actions in the Central District of California, Edelsberg filed suit against it in the Middle District of Florida.  And RGRD has now filed another Wells Fargo case in New York—even though it previously moved to intervene in the consolidated *Wells Fargo* action in California.  These two firms have repeated this playbook across the country to manufacture "outlier cases" that RGRD now argues the JPML must centralize.  But the JPML has repeatedly held that Section 1404 transfer should be attempted first—and that Section 1407 centralization is to be avoided as a "last solution."  Consistent with this case law, Sweeps Plaintiffs and Defendants in various cases have sought Section 1404 transfer of the outlier actions filed by RGRD and Edelsberg to the home jurisdictions where previously consolidated actions Financial Institutions actions are pending.  That is the appropriate outcome here, not Section 1407 centralization of actions that do not share any common questions of fact.

As set forth below, Sweeps Plaintiffs respectfully request that the JPML deny the request for centralization, and permit the consolidated sweeps cases already proceeding in an organized fashion in their home courts to remain where they belong.

---

[1] *In re Wells Fargo Cash Sweep Litig.*, No. 24-cv-04616 (N.D. Cal.), ECF No. 74 at 4.

## II.     BACKGROUND

This proposed MDL targets lawsuits against 11 Financial Institutions concerning each Financial Institution's operation of its "cash sweep" program.  For example, there are sets of lawsuits against Wells Fargo (named defendants include Wells Fargo & Co., Wells Fargo Bank, N.A., and Wells Fargo Clearing Services) and Morgan Stanley (named defendants include Morgan Stanley and Morgan Stanley Smith Barney LLC).  The claims alleged against each set of Financial Institutions are overlapping and arise out of the same alleged breaches of contractual and other obligations owed to the distinct customers of those institutions.  But despite the similarity of claims, conduct, and classes for each Financial Institution, the consistencies stop there.[2]

The claims against *different* Financial Institutions do not arise out of any common facts. There are no claims of a conspiracy or joint conduct against the different Financial Institutions, the alleged harm and damages to the separate customer classes of each Financial Institution are different, and that harm is caused solely by the specific and independent conduct of each specific Financial Institution.  In fact, while certain alleged legal causes of action are the same, the cases against different Financial Institutions have at least the following key differences:

- *Different Defendants in Different Locations.* Each action names a distinct Financial Institution as a defendant, and no case names any unaffiliated Financial Institution defendant. The Financial Institutions are headquartered in different locations. For example, in the case against JPMorgan, all the JPMorgan entities that are named are headquartered in New York, New York, while the entities named in the Ameriprise case are all headquartered in Minneapolis.[3]

- *Different Contracts and Terms.* The relationship between a Financial Institution

---

[2] References to "¶__" and "Ex. __" are to the paragraphs and exhibits, respectively, to the accompanying Declaration of Salvatore J. Graziano; "Mot." refers to the Brief in Support of Motion for Transfer and Consolidation (ECF No. 1-1); all emphasis is added and all internal citations are omitted unless otherwise noted.  "Sweeps Plaintiffs" refers to the plaintiffs in the eight consolidated actions against Ameriprise, LPL, UBS, Charles Schwab, Raymond James, Wells Fargo, JPMorgan, and Morgan Stanley as set forth in Ex. A.

[3] *Mehlman v. Ameriprise Financial, Inc.*, No. 24-cv-3018 (D. Minn.), ECF No. 58.

and its customers is governed by the unique contractual terms of each Financial Institution's specific customer contract(s). No two Financial Institutions have the same customer contract, and the interpretation of each Financial Institution's unique contractual terms will be unique to that Financial Institution. *See infra* at 10.

- ***Different Key Factual Assertions.*** The key facts and allegations in each case—such as the interest rates paid to cash sweep customers at various points in time by the respective Financial Institution, and the changes in those interest rates—vary from one Financial Institution to another. For example, at various points in time, Ameriprise cash sweep clients earned a maximum of .30% interest on their swept cash, whereas Wells Fargo cash sweep clients earned only .02%. The differences in these rates varied by Financial Institution throughout the course of the alleged period of wrongdoing, independently of one another. *See infra* at 10.

- ***Different Evidence and Witnesses.*** The key evidence that will be the focus of discovery and used to prove liability at trial is entirely distinct and based on each Financial Institution's particular alleged misconduct. To illustrate, the individuals who determined the interest rates for each Financial Institution are located in different jurisdictions and separately employed by each Financial Institution. For example, Raymond James has stated that its rates are established by a Rate Setting Committee whose members are all located in Tampa, as are the relevant data and documents, while the rates paid to Merrill Lynch customers are set by its affiliate Bank of America's Deposit Pricing Working Group, whose members and documents are in New York.[4]

- ***Different States Laws and Different Defenses.*** Each Financial Institution's contract contains a choice-of-law provision that is the same for all of its customers, but the choice of law varies from one Financial Institution to another. For example, Ameriprise's contract applies Minnesota law, while Morgan Stanley's contract applies New York.[5]

- ***Different Procedural Stages.*** The cases identified in the proposed MDL are at vastly different procedural stages. The earliest case, filed in April 2019, has completed fact and expert discovery, and the court recently ruled on *Daubert* motions. Among the more recently filed cases, four have established leadership structures pursuant to court-ordered interim counsel and consolidation orders, another four are awaiting interim counsel appointment, and where necessary, the parties in those actions have filed Section 1404 transfer motions to "self-organize" related cases against each Financial Institution. ¶¶4, 9, 14, 16.

---

[4] *Compare Conran v. Raymond James Financial, Inc.*, No. 24-cv-2511 (M.D. Fla.), ECF No. 23, *with Valelly v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, No. 19-cv-7998 (S.D.N.Y.), ECF No. 96.

[5] *Compare Mehlman v. Ameriprise Financial, Inc.*, No. 24-cv-3018 (D. Minn.), ECF No. 58, *with Estate of Bernard J. Sherlip v. Morgan Stanley*, No. 24-cv-4571 (S.D.N.Y.), ECF No. 40.

On the other hand, because all cases against a single Financial Institution overlap, the cases against the particular Financial Institution have been consolidated and are largely proceeding in the Financial Institution's home jurisdiction.  Sweeps Plaintiffs have sought to consolidate all other related cases against the same Financial Institution—including by moving for Section 1404 transfer of out-of-district cases filed against Ameriprise, Wells Fargo, and Charles Schwab to the respective defendant's home district.

The Financial Institutions in each action have largely supported these efforts.  For example, on October 21, 2024, the JPMorgan defendants sought transfer of the sole satellite action filed against it (a request that Sweeps Plaintiffs joined), and the action has since been transferred to the Southern District of New York, where the first-filed actions are pending.  ¶16.  Similarly, on November 8, 2024, the Ameriprise defendants sought Section 1404 transfer of the sole satellite Ameriprise action to its home court in the District of Minnesota, and Sweeps Plaintiffs moved to intervene and joined that transfer request on November 13, 2024.  ¶4.  And on November 18 and 21, 2024, Wells Fargo joined Sweeps Plaintiffs' motions to intervene and transfer two copy-cat actions filed against Wells Fargo in the Southern District of New York and the Central District of California.  ¶14.  As a result, the current status of each Financial Institution action is as follows:

- *Ameriprise:*  Two related cases are consolidated before Judge Tunheim and Magistrate Judge Micko in the District of Minnesota, where Ameriprise is headquartered. The Court-appointed Interim Class Counsel has filed a consolidated complaint and, together with Ameriprise, sought Section 1404 transfer of the sole action filed outside of Minnesota (in the Central District of California).  The judge in the Central District of California has set a hearing date of January 6, 2025 on the fully briefed motions to transfer to Minnesota.  ¶¶3-4.

- *LPL:*  Three related cases have been consolidated before Judge Robinson in the Southern District of California, where LPL is headquartered, and Judge Robinson has appointed Interim Co-Lead Counsel. Judge Robinson has set a briefing schedule for Interim Co-Lead Counsel's filing of a consolidated complaint and LPL's response.  ¶5.

- *UBS:* Two related cases are consolidated before Judge Woods and Magistrate

Judge Gorenstein in the Southern District of New York, where UBS is headquartered. The Court-appointed Interim Class Counsel in this action is due to file a consolidated complaint on December 2, and will be seeking Section 1404 transfer of the sole action filed outside of New York in the Northern District of Georgia. ¶¶6-7.

- **Charles Schwab:** Three related cases have been consolidated before Judge Almadani in the Central District of California, and Interim Class Counsel has been appointed. A fourth Charles Schwab sweeps action was filed in the Middle District of Florida, and Court-appointed Interim Class Counsel has sought transfer of that action to the Central District of California. ¶¶8-9.

- **Raymond James:** Two related cases were consolidated in the Defendants' home jurisdiction in the Middle District of Florida on November 14, 2024. An unopposed motion for interim class counsel appointment is pending. ¶10.

- **Wells Fargo:** Four related cases have been consolidated before Judge Chhabria in the Northern District of California, where Wells Fargo is headquartered. Motions seeking appointment of interim class counsel were fully briefed by October 22, and the parties had held a Rule 26(f) conference and begun discovery. The actions were stayed on November 1, 2024 pending the resolution of this MDL request, which was filed on October 30. The fifth and seventh Wells Fargo sweeps cases were filed in the Southern District of New York and a sixth in the Central District of California. Sweeps Plaintiffs and Wells Fargo filed motions seeking Section 1404 transfer of the fifth and sixth satellite actions, and will be seeking Section 1404 transfer of the seventh action, to the Northern District of California. ¶¶11-14.

- **JPMorgan:** Two related cases have been consolidated and are pending before Judge Schofield in the Southern District of New York, where JPMorgan is headquartered, and where a leadership application has been pending since October 15. A third JPMorgan sweeps action filed in the Central District of California has been transferred on consent to Judge Schofield. ¶¶15-16.

- **Morgan Stanley:** Three cases against Morgan Stanley are pending in the Southern District of New York, where Morgan Stanley is headquartered, and where Sweeps Plaintiffs filed an amended complaint on October 9, 2024. The parties have held a Rule 26(f) conference and begun discovery. ¶17. Two other sweeps cases against Morgan Stanley, which also name E*Trade (which was purchased by Morgan Stanley in 2020), are pending in the District of New Jersey and in the Southern District of New York. ¶¶18-19.

- **Merrill Lynch:** Four sweeps cases are pending in the Southern District of New York, Merrill Lynch's home court, before Judge Caproni, Judge Marrero, and Judge Garnett. In the first such action, which has been pending since August 2019, fact and expert discovery has concluded, and the court issued a decision on the parties' Daubert motions on October 11, 2024. ¶¶20-21. Two of the subsequently-filed Merrill Lynch actions have been identified as related before Judge Garnett. ¶21.

7

- ***PNC:*** A case against PNC is pending in the Western District of Pennsylvania, where PNC is headquartered. The plaintiffs have filed an amended complaint, and a second amended complaint is due to be filed on December 13, 2024.  ¶22.

In contrast to Sweeps Plaintiffs' efforts to self-organize, beginning in September 2024, two law firms—Edelsberg Law P.A. ("Edelsberg") and Robbins Geller Rudman & Dowd LLP ("RGRD"), the firm that filed this MDL—began filing copycat complaints against certain of the Financial Institutions after missing established court deadlines to file motions for leadership.  For example, Edelsberg filed a case against Wells Fargo in the Central District of California, and RGRD filed two in the Southern District of New York—even though none of the Wells Fargo entities have their principal places of business in either of those districts and class actions against Wells Fargo had been consolidated in the Northern District of California, where Wells Fargo is headquartered, and where motions for interim class counsel had been fully briefed.  ¶¶12-14.

In fact, RGRD filed this proposed MDL on October 30, 2024—the eve of the scheduled hearing during which Judge Chhabria in the Northern District of California was set to address (and likely rule on) the leadership motions.  RGRD then filed a motion before Judge Chhabria citing this MDL as a reason to stay the case.  ¶13.  Tellingly, RGRD also requested that, in the event the court denied its request for a stay, it be considered for the role of interim lead counsel—and attached pages of briefing in support of that request.  *Id.*  Similarly, Edelsberg filed a "Notice of Partial Agreement" with RGRD's request, supporting the stay and requesting that, in the event the Panel denied centralization, Edelsberg be permitted to file its own leadership application.  *Id.*

For its part, Edelsberg has filed at least four copycat cases in jurisdictions outside the defendant's home court.  For example, after class actions were filed against Ameriprise in its home court of Minnesota, and after the cases were consolidated and Interim Co-Lead Counsel was appointed, Edelsberg filed an Ameriprise case in the Central District of California.  ¶4.  Similarly, after Charles Schwab had been sued in three different class actions in the Central District of

California, and after the cases were consolidated and leadership motions were fully briefed, Edelsberg filed suit against it in the Middle District of Florida.  ¶9.  Since the filing of this proposed MDL, RGRD has filed yet another Wells Fargo case in the Southern District of New York—even though RGRD previously moved to intervene in the consolidated *In re Wells Fargo Sweeps Litigation* in California, representing to the District Court there that it planned to "consent" to transfer the New York case to the consolidated litigation.  ¶14.  As noted, Sweeps Plaintiffs have moved to transfer each of the "outlier" actions filed by RGRD and Edelsberg, and have pushed their cases forward by holding Rule 26(f) conferences, serving discovery requests, filing consolidated amended complaints—and opposing this meritless MDL request.  ¶¶4, 9, 11, 14, 17.

## III.    ARGUMENT

### A.    The Request for Centralization Fails to Satisfy Section 1407's Statutory Criteria

Under Section 1407, the JPML orders centralization when three criteria are met, namely, (i) the actions involve "common questions of fact," (ii) transfer will serve "the convenience of parties and witnesses," and (iii) transfer "will promote the just and efficient conduct of such actions."  28 U.S.C. § 1407(a); *see also In re Mortg. Lender Force-Placed Ins. Litig.*, 895 F. Supp. 2d 1352, 1353-54 (J.P.M.L. 2012).  "Before transfer will be ordered, the Panel must be satisfied that ***all*** of the statutory criteria have been met."  *In re Highway Acc. Near Rockville, Conn., on Dec. 30, 1972*, 388 F. Supp. 574, 757 (J.P.M.L. 1975).  RGRD's motion fails to establish ***any***, let alone all, of the Section 1407 factors, and it should be denied.

### 1.    None of the Related Financial Institution Actions Share a Common Question of Fact

The JPML routinely denies centralization where, as here, the actions involve distinct defendants, distinct claims, distinct contracts, distinct discovery, and distinct witnesses, evidence and proof.  *See*, *e.g.*, *In re COVID-19 Bus. Interruption Prot. Ins. Litig.*, 482 F. Supp. 3d 1360,

1362 (J.P.M.L. 2020) (denying centralization where "[t]here is no common defendant in these actions—indeed, there are no true multi-defendant cases").

Here, each distinct sweep program at each Financial Institution is governed by a specific agreement, entered into with each Financial Institution's distinct customer base, concerning each Financial Institution's specific program features, and governed by different states' laws. *Compare Mehlman v. Ameriprise Financial, Inc.*, No. 24-cv-3018 (D. Minn.), ECF No. 58 at ¶37 (alleging breach of unique contractual terms), *with Estate of Bernard J. Sherlip v. Morgan Stanley*, No. 24-cv-4571 (S.D.N.Y.), ECF No. 40 at ¶¶35-36 (alleging breach of different unique contractual terms). Each Financial Institution paid different interest rates to their sweep program clients, and each Financial Institution's rates uniquely varied over time. *Compare Cobb v. Wells Fargo & Co.*, No. 24-cv-6696 (N.D. Cal.), ECF No. 1 at ¶49 ("Wells Fargo paid as little as .01% in interest and only up to .15%, with that rate falling back to .02% starting in September 2024."), *with Mehlman v. Ameriprise Financial, Inc.*, No. 24-cv-3018 (D. Minn.), ECF No. 58 at ¶7 (alleging unique rate amounts); *Davis v. Charles Schwab Corp.*, No. 24-cv-8410 (C.D. Cal.), ECF No. 1 at ¶6 (similar).

The actions against each Financial Institution allege specific misconduct by that specific Financial Institution—and evidence of that misconduct will be proven by the witnesses, documents, and discovery that are unique to each Financial Institution.  Of course, different individuals at each Financial Institution were responsible for setting the interest rates at issue, and those individuals, as well as the documents and data pertaining to their decisions, are located in the different jurisdictions. To illustrate, the personnel of Raymond James's Rate Setting Committee, which determined the rates paid to Raymond James sweep clients, are all located in the Middle District of Florida, as are the relevant data and documents.  *See Conran v. Raymond James Financial, Inc.*, No. 24-cv-2511 (M.D. Fla.), ECF No. 23 at 6-7 (rate-setting decisions made

10

by Rate Setting Committee whose members were located in Tampa, and "Defendants' documents and data related to the cash sweep programs are all located in St. Petersburg"). In contrast, rates paid to Merrill Lynch clients are set by its affiliate Bank of America's Deposit Pricing Working Group—whose members, decision-making, and documents appear to be in New York. *See Valelly v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, No. 19-cv-7998 (S.D.N.Y.), ECF No. 96 at 4 (rates set by "Deposit Pricing Working Group" based in New York).

Significantly, and highlighting just how different and unique each Financial Institution's rate-setting process is, Defendants have highlighted that their rate-setting process is "highly sensitive" and unique to the point that "if competitors were to acquire [that] information, they could make pricing decisions that could cause competitive harm"—confirming there are no common fact questions, and that centralization would invite complication. *Valelly v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, No. 19-cv-7998 (S.D.N.Y.), ECF No. 96 at 2; *see also Mortg.*, 895 F. Supp. 2d at 1354.

Accordingly, resolving the question of whether each Financial Institution paid a reasonable rate or otherwise breached its contractual or fiduciary obligations will rely on distinct, and not common, facts specifically based on each Financial Institution's unique rate-setting process. *See*, *e.g.*, *In re Paycheck Prot. Program Agent Fees Litig.*, 481 F. Supp. 3d 1335, 1336-38 (J.P.M.L. 2020) (denying centralization in litigation naming Bank of America, Wells Fargo, and JPMorgan, noting "[c]ommon factual questions are lacking, as the policies and practices for paying agent fees are unique to each" even though the "actions undoubtedly allege similar policies and practices by the defendant banks"); *In re Credit Union Checking Acct. Overdraft Litig.*, 158 F. Supp. 3d 1363, 1364-65 (J.P.M.L. 2016) (denying centralization of actions concerning operation of overdraft programs because "each action is brought against a different credit union on behalf of

a different class," and there would be no "duplicative discovery or conflicting pretrial rulings on discovery disputes, class certification, or other matters"); *Mortg.*, 895 F. Supp. 2d at 1353-54 (denying centralization of "alleged industry-wide practice among banks and insurers concerning abuses in the placement of force-placed insurance" because cases involved "not only different defendants but different lender agreements with insurers, different alleged abuses, and different mortgage loan documents"); *In re Credit Card Payment Prot. Plan Mktg. & Sales Pracs. Litig.*, 753 F. Supp. 2d 1375, 1375-76 (J.P.M.L. 2010) (denying centralization as each bank "defendant appears to have offered several different products" which were "subject to different disclosures").[6]

RGRD's MDL request whistles past these dispositive factual differences, and misleadingly suggests the cases do have some facts in common. This is wrong.  For instance, while RGRD suggests the cases share a common factual question as to "whether defendants paid unreasonably low interest rates to cash sweep program customers," the answer to that question does not concern common facts because each Financial Institution paid different rates to different classes of customers at different points in time. Mot. at 4. Similarly, RGRD cites the supposedly "common" question of "whether defendants violated their contractual obligations, fiduciary duties, or other laws" in operating each Financial Institution's own sweep program.  But this question obviously lacks a common answer as well, given that each Financial Institution's unique contracts and fiduciary duties are different and are subject to different states' laws, and were allegedly breached by that specific Financial Institution's unique conduct in violation of those separate duties.  *See,*

---

[6] *See also COVID-19*, 482 F. Supp. 3d at 1362 (J.P.M.L. 2020) (denying centralization where there was "no common defendant in these actions—indeed, there are no true multi-defendant cases" and each case involved different contracts); *In re Baby Food Mktg., Sales Pracs. & Prod. Liab. Litig.*, 544 F. Supp. 3d 1375, 1377-78 (J.P.M.L. 2021) (denying centralization, even though there were over a dozen "multi-defendant actions," because of the "minimal number of common factual questions"); *Secondary Ticket*, 481 F. Supp. 3d at 1346 (denying centralization because "defendants are separate businesses that employed different [agreements]").

*e.g.*, *COVID-19*, 482 F. Supp. 3d at 1362-63 (denying centralization of actions against distinct insurers and noting that even "seemingly minor differences in policy language could have significant impact"). And clearly, "the amount of damages sustained by class members" is not common either. Mot. at 4. At most, there may be "common ***legal*** questions"—which are plainly "insufficient to satisfy Section 1407's requirement of common ***factual*** questions." *Paycheck*, 481 F. Supp. 3d at 1336-38; *In re Nat'l Ass'n for Advancement of Multijurisdiction Prac. Litig.*, 52 F. Supp. 3d 1377, 1378 *(*J.P.M.L. 2014) (same).

In reality, RGRD's MDL request amounts to an "industry-wide" MDL, a proposal that the JPML has repeatedly and forcefully rejected. As the JPML has held, industry-wide MDLs are appropriate only when they involve alleged antitrust conspiracies or indivisible harm from industry-wide products or conduct—none of which are alleged here. *See Secondary Ticket*, 481 F. Supp. 3d at 1346 ("We are typically skeptical of requests to centralize claims filed against multiple defendants who are competitors in a single MDL because it often will not promote judicial efficiency or serve the convenience of the parties and witnesses."); *In re Benzoyl Peroxide Mktg., Sales Pracs. & Prods. Liab. Litig.*, 2024 WL 3629067, at *2 (J.P.M.L. Aug. 1, 2024) (denying centralization and noting the JPML has been "cautious" of an "industry-wide MDL" where plaintiffs did "not allege an industry-wide conspiracy or an indivisible injury caused by multiple defendants' products or conduct"); *In re Honey Prod. Mktg. & Sales Pracs. Litig.*, 883 F. Supp. 2d 1333, 1333 (J.P.M.L. 2012) ("Plaintiffs have not alleged any conspiracy, collaboration, or other industry-wide conduct by the defendants" that would justify centralization); *In re Yellow Brass Plumbing Component Prods. Liab. Litig.*, 844 F. Supp. 2d 1377, 1378 (J.P.M.L. 2012) ("we are typically hesitant to centralize litigation against multiple, competing defendants").

None of RGRD's cases suggest otherwise or support a different result. Most concern

centralization of actions against a single defendant or related defendants—the opposite of the situation here. *See*, *e.g.*, *In re Unumprovident Corp. Sec., Derivative & "ERISA" Litig.*, 280 F. Supp. 2d 1377, 1378 (J.P.M.L. 2003) (centralizing actions brought solely against defendant UnumProvident Corporation and related entities); *In re Lehman Brothers Holdings, Inc., Sec. & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 598 F. Supp. 2d 1362, 1363-64 (J.P.M.L. 2009) (centralizing actions against ten individual defendants affiliated with Lehman Brothers). Moreover, the vast majority of the multi-defendant cases RGRD does cite fall within the well-established exception for alleged antitrust violations noted above—where the actions involve the same core liability-determinative factual question about the same alleged conspiracy.[7]

Last, while the JPML previously centralized breach of contract actions against financial institutions in *In re Checking Account Overdraft Litigation*, 626 F. Supp. 2d 1333 (J.P.M.L. 2009) and determined to centralize cases involving mutual fund misconduct in *In re Janus Mutual Funds Investment Litigation*, 310 F. Supp. 2d 1359 (J.P.M.L. 2004), those cases only show why centralization should be denied here.  In *In re Checking Account Overdraft Litigation*, all of the actions involved "industry-wide bank posting policies and procedures," in contrast to the bespoke cash sweep programs here.  *Checking Acct.*, 626 F. Supp. 2d at 1335.  And in *Janus*, the cases involved the same industry-wide scheme involving Canary Capital Partners' "market timing/or late trading" with each defendant fund.  *Janus*, 310 F. Supp. 2d at 1361; *In re Janus Mut. Funds Inv. Litig.*, MDL No. 1576 (J.P.M.L.), ECF No. 23 at 45 ("*All* of the cases to date focus on allegedly

---

[7] *See* Mot. at 3-4 (citing *In re Japanese Elec. Prods. Antitrust Litig.*, 388 F. Supp. 565 (J.P.M.L. 1975); *In re Treasury Sec. Auction Antitrust Litig.*, 148 F. Supp. 3d 1360 (J.P.M.L. 2015); *In re London Silver Fixing, Ltd., Antitrust Litig.*, 52 F. Supp. 3d 1381 (J.P.M.L. 2014); *In re Insulin Pricing Litig.*, 709 F. Supp. 3d 1384 (J.P.M.L. 2023)).

illustrative transactions between the *Canary Parties*" and various defendants).[8]

Moreover, in sharp contrast to the foregoing cases, there is no support for centralization other than from RGRD, Edelsberg, and other late-filed plaintiffs' counsel.  In fact, numerous parties—Morgan Stanley, Wells Fargo, Ameriprise, UBS, JPMorgan, LPL, Raymond James, Merrill Lynch, and several plaintiffs—are already on record as opposing the MDL.  ECF No. 69 at 2 (Morgan Stanley opposing MDL as "a baseless attempt by the Movants and their counsel— who filed their cases long after other putative class actions against the same defendants had been filed—to garner some control of these cases from other plaintiffs and their counsel"); ECF Nos. 64-68, 70-72, 74 (eight Financial Institutions and other plaintiffs opposing); *see also Lourenco v. Ameriprise Financial, Inc.*, No. 24-cv-8825 (C.D. Cal. Nov. 8, 2024), ECF No. 26.  Sweeps Plaintiffs—who account for the vast majority of the plaintiffs in these cases—also oppose it.

### 2.    Centralization Would Inconvenience the Parties and Witnesses

Given the lack of common factual inquiries, it naturally follows that centralization would not serve the convenience of parties or witnesses. *See Paycheck*, 481 F. Supp. 3d at 1337 (denying centralization as inconvenient where "there is no common or predominant defendant across all actions").  Requiring the parties to litigate in a forum away from each Financial Institution's home district would be inherently *inconvenient.* The evidence underlying each sweep action, including key witnesses, is not only unique to each Financial Institution's individual sweep program, but

---

[8] The JPML has repeatedly distinguished *In re Checking Account Overdraft Litigation* in cases that are on all fours with the facts here.  *See, e.g., Mortg.*, 895 F. Supp. 2d at 1353 (denying centralization and distinguishing *Checking Acct.*, noting it "involved relatively straightforward conduct" and the same factual "questions relating to industry-wide bank posting policies and procedures"); *Credit Card*, 753 F. Supp. 2d at 1375-76 (denying centralization, noting the cases involving different contracts unique to each bank were "markedly different from other industry-wide litigation" at issue in *Checking Acct.*); *Credit Union*, 158 F. Supp. 3d at 1364-65 (distinguishing *Checking*, and noting that in later stages of that proceeding the Panel stopped transferring actions as they "threatened to significantly hinder the resolution of the already-centralized actions").

largely located in the disparate jurisdictions where each Financial Institution is headquartered. *See supra* Section III.A.1.

The inconvenience to the parties and the courts is illustrated by a previous transfer decision in this litigation. Specifically, a case against Raymond James was previously transferred from the Fort Myers Division to the Tampa Division of the same District on the basis of convenience to the parties—confirming there would be substantial *inconvenience* involved with requiring parties and witnesses located in Minnesota, California, and Florida to travel to New York. *Conran v. Raymond James Fin., Inc.*, 2024 WL 4581276, at *2-3 (M.D. Fla. Oct. 25, 2024) (transferring to the Tampa Division because that was where cases would be "most conveniently advanced" given evidence and "number of witnesses in Tampa vastly outweigh[] those here in the Fort Myers Division").

Two additional factors render centralization especially inappropriate and inconvenient here. First, the cases are each at different stages of litigation, with discovery having concluded in one, well underway in others, and just begun in some. *See In re Kohl's Tel. Consumer Prot. Act (TCPA) Litig.*, 220 F. Supp. 3d 1363, 1364 (J.P.M.L. 2016) (denying centralization because "[t]he procedural disparity among the cases also weighs against centralization" with "some of the actions [] commenced only within the past several months" while "others have been pending far longer"). Second, each Financial Institution will likely claim its rate-setting process is "highly sensitive" and confidential, meaning centralization will complicate discovery. Indeed, Merrill Lynch has already made this objection here. *Valelly v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, No. 19-cv-7998 (S.D.N.Y.), ECF No. 96 at 2; *see also Mortg.*, 895 F. Supp. 2d at 1353-54 (denying centralization because "placing [direct competitors] into the same action would complicate case management due to the need to protect trade secret and confidential information").

RGRD's application ignores this, and instead contends centralization will promote

convenience by "avoiding duplicative discovery." This is false. To the contrary, discovery here will be specific to each Financial Institution—there simply is no overlap across cases. Each of the categories of discovery RGRD outlines would be specific to each Financial Institution, including the "internal communications," policy documents, agreements, correspondence, and so forth. The proof of Defendants' misconduct will involve testimony from each Financial Institution's distinct witnesses who are most likely located near the Financial Institution's headquarters. *See, e.g.*, *Mortg.*, 895 F. Supp. 2d at 1353 (denying centralization where contracts varied and "individualized discovery" issues were likely "numerous and substantial"); *Credit Union*, 158 F. Supp. 3d at 1364 (denying centralization where discovery would "be chiefly, and perhaps even entirely, unique" where there was "no overlap" among cases); *Baby Food*, 544 F. Supp. 3d at 1376-77 (denying centralization where most "discovery and pretrial practice will be defendant-specific"). There is no "convenience" that can be achieved through centralization here.[9]

### 3. Centralization Will Not Advance the Just and Efficient Prosecution of the Actions

The lack of any common questions of fact, and the inconvenience to the parties and witnesses that centralization would impose, confirms an MDL would not advance the just and efficient prosecution of these actions. By and large, the cases have already been appropriately consolidated and are proceeding apace in the courts where they belong. The judges presiding over the cash sweep actions are actively overseeing their prosecution, having consolidated related actions, entered briefing schedules, appointed interim class leadership, and issued orders on

---

[9] By contrast, each of RGRD's cited cases centralized actions involving common defendants with overlapping discovery. *Cf. In re Pilot Flying J Fuel Rebate Contract Litig (No. II),* 11 F. Supp. 3d 1351, 1351 (J.P.M.L. 2014) (two defendants across all actions); *In re Multidistrict Litig. Involving Banking Agreements with Stirling Homex Corp.*, 388 F. Supp. 572, 572 (J.P.M.L. 1975) (defendants part of single "banking consortium").

motions to dismiss, discovery, and expert testimony.  ¶¶3-22.  The actions are already "self-organized" in the manner repeatedly stressed in the case law, and highlighted by the Panel in this case.  Indeed, the Panel here instructed the parties to "address what steps they have taken to pursue alternatives to centralization," including "***seeking Section 1404 transfer of one or more of the subject cases***" (ECF No. 5)—and Sweeps Plaintiffs have followed this direction by seeking Section 1404 transfer of the "outlier" actions filed by RGRD and Edelsberg to the courts where related actions are already consolidated, and where the cases properly belong.[10]

RGRD disregards this reality, and instead contends centralization would promote the efficient prosecution of these cases because there is a risk of conflicting or inconsistent pretrial rulings.  Mot. at 6-7.  This too is wrong.  There is no risk of inconsistent pretrial rulings because there is no factual overlap—each set of actions against each Financial Institution involves its own specific and unique cash sweep program, contractual language, and discovery.  Nor is there any risk of inconsistent class rulings—as the classes are not overlapping but entirely and definitionally distinct, and will be asserted and assessed pursuant to separate consolidated pleadings.[11]

Rather than create any efficiencies, centralization here will invite needless complications

---

[10] Specifically, Sweeps Plaintiffs have sought Section 1404 transfer in "outlier" cases filed by Edelsberg in Ameriprise, Charles Schwab, and Wells Fargo, and by RGRD in Wells Fargo.  ¶¶4, 9, 14.

[11] None of RGRD's corresponding cases involve centralization of different cases against different defendants, as RGRD requests here. *In re Republic Nat'l-Realty Equities Sec. Litig.*, 382 F. Supp. 1403, 1404 (J.P.M.L. 1974) (centralizing 18 actions concerning the same relationship between an insurance company and corporation in which the company had a substantial interest); *In re Plumbing Fixture Cases*, 298 F. Supp. 484, 487-88 (J.P.M.L. 1968) (denying party's request that the actions be transferred in part for "all pretrial purposes except determination of the class action questions"); *In re IDT Corp. Calling Card Terms Litig.*, 278 F. Supp. 2d 1381, 1381 (J.P.M.L. 2003) (centralizing two actions involving common defendants where parties did not oppose transfer).  Indeed, while RGRD cites *Republic Nat'l-Realty* for its warning about the "possibility of conflicting class determinations," that risk was present in that case because, unlike here, the cases there had overlapping classes. 382 F. Supp. 1403.

and frustrate the already orderly prosecution of sweep customers' claims—including by requiring a single judge to oversee entirely factually distinct cases while carefully managing and segregating distinct discovery that will include competitively-sensitive information that cannot be shared across cases.  *See Mortg.*, 895 F. Supp. 2d at 1354 (denying centralization, noting in proposed MDL with defendants Wells Fargo and JPMorgan that they are "direct competitors with each other" and centralization would "complicate case management due to the need to protect trade secret and confidential information"); *Secondary Ticket*, 481 F. Supp. 3d at 1346 (denying industry-wide MDL where centralization would "complicate pretrial proceedings more than it would streamline them"); *Baby Food*, 544 F. Supp. 3d at 1377-78.

Rather, transfer under Section 1404—as many of the Financial Institutions and Sweeps Plaintiffs have pursued—is, far and away, the most efficient way to organize these cases.  As the JPML has repeatedly stressed, "transfer under Section 1404 or the first-to-file doctrine is preferable to Section 1407 centralization," *Baby Food*, 544 F. Supp. 3d at 1378, which is to be used only as a "**last solution** after considered review of all other options."  *In re Best Buy Co., Inc., Cal. Song-Beverly Credit Card Act Litig.*, 804 F. Supp. 2d 1376, 1378 (J.P.M.L. 2011); *In re New York Tax Foreclosure Surplus Litig.*, 2024 WL 3629066, at *2 (J.P.M.L. Aug. 2, 2024) (same); *In re Bank of Am. Fraudulent Account Litig.*, 707 F. Supp. 3d 1415, 1416 (J.P.M.L. 2023) (same).  Indeed, Section 1404 transfer is almost always preferable to MDL centralization because "Section 1404(a) transfer is **for all purposes, including trial.**"  *In re Gerber Probiotic Prods. Mktg. & Sales Pracs. Litig.*, 899 F. Supp. 2d 1378, 1380 (J.P.M.L. 2012).

By contrast, RGRD's Section 1407 request will be for pre-trial purposes **only**, and any centralized cases **must** be remanded to the originating courts absent waiver after pretrial proceedings have concluded.  That would be a particularly wasteful and prejudicial outcome here

given that the judges who are now already effectively overseeing these cases will be forced to revisit them years from now, and will then need "time to re-familiarize themselves with the actions" for trial following remand.  *Id.*  The JPML should avoid this problematic result.

**B.     This Section 1407 Request is an Improper Effort to End-Run Court-Ordered Deadlines**

In addition to failing to satisfy Section 1407, RGRD's motion should also be denied because it appears manufactured to advance the interests of one set of plaintiffs' counsel and leveraged by others—rather than address a legitimate concern about case organization. Indeed, the MDL request here was filed on the eve of a leadership hearing in the case against Wells Fargo, and this proposed MDL was the sole basis that RGRD and Edelsberg cited to insert themselves into that case after missing the leadership motion deadline.  *See*, *e.g.*, Wells Litigation, ECF No. 84 at 20:1-2 ("I think you're probably a little too late to the party here.").  Both RGRD and Edelsberg have continued to demonstrate that the supposed "need" for an MDL is illusory by filing copycat complaints in satellite jurisdictions, which has required the parties to waste resources seeking Section 1404 transfers to bring the cases before the proper court.

But that only underscores why the Panel should reject centralization, as the MDL request appears "intended to further the interests of particular counsel more than those of the statute."  *In re CVS Caremark Corp. Wage & Hour Emp. Pracs. Litig.*, 684 F. Supp. 2d 1377, 1379-80 (J.P.M.L. 2010).  The Panel should not encourage litigation tactics that have already wasted the time and resources of the parties, district courts, and the JPML itself, and pointlessly obstructed and delayed the prosecution of cash sweep customers' important claims.  The motion should be denied.

**IV.     CONCLUSION**

For these reasons, Sweeps Plaintiffs respectfully request that the Panel deny the motion.

Dated: November 27, 2024

Respectfully submitted,

_/s/ Salvatore J. Graziano_

Salvatore J. Graziano
**BERNSTEIN LITOWITZ BERGER**
**   & GROSSMANN LLP**
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
salvatore@blbglaw.com

_Counsel for Sweeps Plaintiffs_