BEFORE THE UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

| | | |
|---|---|---|
| IN RE CASH SWEEP PROGRAMS | ) | MDL No. 3136 |
| CONTRACT LITIGATION, | ) | |
| | ) | |

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR TRANSFER AND
CONSOLIDATION PURSUANT TO 28 U.S.C. §1407

Plaintiffs Safron Capital Corp. ("Safron") and Brickman Investments Inc. ("Brickman") (collectively, "Plaintiffs") respectfully submit this reply in support of their Motion for Transfer and Consolidation Pursuant to 28 U.S.C. §1407 (ECF 1) ("MDL Motion" or "Mot.").

## INTRODUCTION

The responses to the MDL Motion confirm that consolidation is necessary. The class actions subject to the MDL Motion ("Related Actions") involve essentially the same alleged misconduct giving rise to the same or analogous causes of action; result in the same type of harm to class members for the same reasons during overlapping time periods; and involve identical or substantially similar contractual language that must be interpreted pursuant to the same law (in the overwhelming majority of cases) or the same legal principles (in the remainder). MDL consolidation will allow for the efficient, fair, and cohesive resolution of the multitude of common issues among the Related Actions. Conversely, allowing the Related Actions to proceed separately in dozens of individual actions in courtrooms around the United States would result in a monumental waste of party and court resources and practically guarantee inconsistent rulings on core legal and factual issues. The parties opposing consolidation ("MDL Opponents") overstate the importance of individualized issues, all of which can be effectively managed in consolidated proceedings, as routinely occurs in such cases. Since Plaintiffs filed the MDL Motion, the Related Actions have continued to proliferate, further confirming that consolidation is appropriate and the best path forward to efficiently and fairly adjudicate the rights of all parties.

## ARGUMENT

### I.    The Related Actions Should Be Consolidated in a Single MDL Under Section 1407

The Related Actions should be transferred to and consolidated in a single action for pretrial proceedings under Section 1407. The Panel may transfer and consolidate where (1) the cases

- 1 -

"involv[e] one or more common questions of fact"; (2) transfer and consolidation or coordination will further "the convenience of parties and witnesses"; and (3) transfer and consolidation or coordination "will promote the just and efficient conduct of [the] actions." 28 U.S.C. §1407(a). The Related Actions meet each of these requirements. Mot. at 3-7.

A.     **The Related Actions Involve Common Questions of Fact**

The Related Actions all hinge on one core question of fact: whether the paltry interest rates offered to customers under the defendants' respective cash sweep programs are reasonable. Indeed, *every* Related Action alleges breach of contract and/or breach of fiduciary duty based on the defendants' failure to pay a reasonable rate of interest. And those allegations stem not from defendant-specific practices like their individual rate-setting mechanisms, but from the defendants' shared practice of "sweeping" uninvested customer cash into incredibly low-interest accounts controlled by affiliated and unaffiliated financial institutions in exchange for substantially higher fees.

The MDL Opponents ignore this common thread and instead focus on granular differences between the defendants and their respective cash sweep programs. *See, e.g.*, Merrill Lynch Opposition, ECF 74 at 3 (citing "meaningful differences between and among the cases" such as "different types of institutions, different disclosures, different eligibility, different rates, different procedures for rate-setting, different fee structures, and different customers"). Section 1407, however, requires "common *questions* of fact," not common facts. *See* 28 U.S.C. §1407.[1] The Panel has held that Section 1407 "does not require a complete identity or even a majority of common factual issues as a prerequisite to transfer." *In re MLR, LLC, Patent Litig.*, 269 F. Supp. 2d 1380, 1381-82 (J.P.M.L. 2003). Therefore, even the existence of "a number of individualized

---

[1]    Unless otherwise noted, all emphasis is added and citations are omitted.

factual issues . . . does not negate the common ones." *In re. Xarelto (Rivaroxaban) Prods. Liab. Litig.*, 65 F. Supp. 3d 1402, 1404 (J.P.M.L. 2014).

Though the Related Actions differ in some ways, these differences are immaterial compared to the shared facts that form the basis of the Related Actions: the sweep program agreements are substantially similar, govern the same conduct relating to the common practice of "sweeping" uninvested customer cash into low-interest accounts, and raise the common question of whether the sweep interest rates were reasonable. *See United States v. 429.59 Acres of Land*, 612 F.2d 459, 464 (9th Cir. 1980) ("[T]he determination of a reasonable rate of interest is a question of fact[.]"); *Schmalz v. Sovereign Bancorp, Inc.*, 868 F. Supp. 2d 438, 458 (E.D. Pa. 2012) ("[T]he reasonableness of the interest rate is generally a question of fact that requires the presentation of evidence.") (collecting cases). Indeed, the central issue in the cases – what constitutes a "reasonable" rate of interest for the cash sweep accounts maintained by defendants – is ***identical*** and subject to the exact same evidentiary proof in all related cases.

The MDL Opponents do not dispute that the Related Actions share these common facts. Some argue, however, that "defendant-specific questions overwhelm any purported common questions." *See, e.g.*, PNC Opposition, ECF 75 at 1. History suggests otherwise. In the Related Action *Valelly*, for instance, Merrill Lynch moved for summary judgment because, in its view, the plaintiff failed to meet her "burden of showing that Merrill's sweep rates were unreasonable." *Valelly v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, No. 1:19-cv-07998-VEC (S.D.N.Y.) ("*Valelly*"), ECF 196 at 12. But Merrill Lynch's summary judgment argument did not rely on any unique characteristics of its cash sweep program. To the contrary, Merrill Lynch called the sweep programs offered by competitors "similar products," and argued that, to determine the reasonableness of its sweep rate, its sweep rate "must be judged in comparison to the rates paid on

other sweep accounts" offered by its competitors. *Id.* at 15-16. Thus, in Merrill Lynch's own view, institution-specific practices like rate-setting procedures and eligibility requirements play no role in the reasonableness determination.

In fact, Merrill Lynch's hired expert expressed the same view. She compared the interest rate offered under the Merrill Lynch's retirement account cash sweep program to the rates listed on the Crane Brokerage Sweep Index, an index of rates offered under 11 cash sweep programs, including non-retirement programs run by MDL Opponents Ameriprise, E*TRADE, Merrill Lynch, Morgan Stanley, Raymond James, Schwab, UBS, and Wells Fargo. *Id.* at 20-22; *see also id.* at 8 n.4 (listing sweep products included in the Sweep Index). In evaluating the programs underlying the Sweep Index, she "identified differences in how these programs are implemented," but concluded "the differences are not substantive and do not affect their suitability as comparators" for the relevant sweep program. *Valelly*, ECF 260 at 6-7. Put simply, the differences between the way the programs run, the way they choose interest rates, and the disclosures they make are irrelevant to the question of reasonableness.

The MDL Opponents' other attempts to defeat commonality likewise miss the mark. The claim that "each Financial Institution's unique contracts and fiduciary duties are different and are subject to different states' laws," ECF 77 at 12, is unavailing because, regardless of the fiduciary duties involved, whether there was a breach of those duties is dependent on the resolution of common factual questions - the first requirement for centralization. Moreover, the overwhelming majority of the contracts at issue are governed by the same law – the law of New York – and the remaining few which look to other state laws will still apply the same legal principles. In any event, the fact that in a minor subset of cases such duties may be subject to different state laws is also no impediment, as "it is within the very nature of coordinated or consolidated pretrial

proceedings in multidistrict litigation for the transferee judge to be called upon to apply the law of more than one state." *In re Air Crash Disaster at John F. Kennedy Int'l Airport on June 24, 1975*, 407 F. Supp. 244, 246-47 (J.P.M.L. 1976).

The MDL Opponents' additional claims regarding the purported lack of support for centralization[2] have no effect under the Panel's precedent. *See, e.g.*, *In re Acetaminophen - ASD/ADHD Prods. Liab. Litig.*, 637 F. Supp. 3d 1372, 1377 (J.P.M.L. 2022) (centralizing 18 related actions against nine defendants, despite all nine defendants opposing centralization); *In re Asbestos & Asbestos Insulation Material Prods. Liab. Litig.*, 431 F. Supp. 906, 910 (J.P.M.L. 1977) ("The virtually unanimous opposition of the parties to transfer . . . is not by itself determinative of the question of transfer under Section 1407. In an appropriate situation, the Panel has the power to order transfer in multidistrict litigation even if all parties are opposed to transfer."). Moreover, the MDL Motion does not lack support because seven other plaintiffs in the Related Actions join Safron and Brickman in supporting centralization through the proposed MDL.[3]

### B. Centralization Will Promote the Just and Efficient Conduct of the Related Actions and the Convenience of Parties and Witnesses

Centralizing the Related Actions will advance efficiencies in a number of ways. Most importantly, by allowing a single transferee court to hear and resolve pretrial motions, centralization will guarantee consistent rulings on common issues in the Related Actions and prevent duplicative judicial efforts. *See In re Ivy*, 901 F.2d 7, 9 (2d Cir. 1990) (the transferee

---

[2]    Bernstein Litowitz Plaintiffs' Opposition, ECF 77 at 15.

[3]    *See* Canales Response in Support, ECF 73 at 8-11 (jointly filed by four plaintiffs of Related Actions); DM Cohen, Inc. Response in Support, ECF 60 at 1. Plaintiffs McKinney and Christner, who recently filed the Related Actions, *McKinney v. Morgan Stanley*, No. 1:24-cv-08860 (S.D.N.Y.) ("*McKinney*"), and *Christner v. Wells Fargo & Co.*, No. 1:24-cv-08953 (S.D.N.Y.) ("*Christner*"), also support the MDL Motion.

court's resolution of common jurisdictional questions would serve "[c]onsistency as well as economy"); *see also Multidistrict Litigation Manual* §5:6 (2024) (listing consistency and judicial economy as factors the Panel considers in determining whether centralization will promote just and efficiency conduct of litigation).  All of the Related Actions, for example, allege breach of contract and/or breach of fiduciary duty for failure to pay a "reasonable" rate of interest in connection with the relevant cash sweep program, and those allegations will likely face the same or similar challenges at the motion to dismiss stage.  Centralizing the Related Actions before a single transferee court will negate the risk of inconsistencies in the resolution of these common challenges, all while saving the time and resources of the parties, witnesses, and other courts.[4]

The proceedings in the Related Actions *Valelly* and *Burmin v. E\*TRADE Securities LLC*, 2:24-cv-00603-ES-MAH (D.N.J.) ("*Burmin*"), help illustrate this point.  In *Valelly*, the defendants moved to dismiss the plaintiffs' breach of contract claims because the complaints compared the defendants' sweep account rates to "non-FDIC-insured and/or non-sweep products" – allegedly inadequate benchmarks to which a factfinder could compare the sweep rates to determine their reasonableness.  *Valelly*, ECF 17 at 25-26.  The district court agreed, expending judicial resources to evaluate New York state law and issue a written opinion dismissing the complaint without prejudice.  *See Valelly*, ECF 31.

Later, in *Burmin*, the defendant moved to dismiss the plaintiff's breach of contract claim on nearly identical grounds, arguing that the plaintiff's comparator interest rates failed to support the allegation that the sweep rates were unreasonable.  *Burmin*, ECF 31-1 at 25-32.  That motion,

---

[4]    *See* Canales Response in Support, ECF 73 at 2, 8 ("It is critical for a single standard to apply to the cash sweep programs used across the banking industry . . . . Conversely, if centralization is denied, there is a risk that banks will be subject to materially different standards. This may create systemic risks, distort competition, and undermine confidence in the financial system.").

which remains pending, forces a different district judge in a different jurisdiction to needlessly duplicate the efforts of the *Valelly* court, and leaves the parties at the risk of an inconsistent ruling. And as the Related Actions progress and similar issues arise, the duplication of judicial efforts and risk of inconsistencies will only increase. Centralization will ensure consistent rulings on motions to dismiss, motions for class certification, and other common pretrial motions, and save district courts from wasting judicial resources resolving these common motions in the Related Actions.

The MDL Opponents mostly fail to address the efficiencies and other benefits of centralization. Instead, many MDL Opponents argue against centralization because, in their view, the need to protect trade secrets and confidential information would overwhelm a transferee court. *See, e.g.*, JP Morgan Chase Opposition, ECF 66 at 1 ("[B]ecause the defendants in these cases are competitors, consolidated discovery would raise complicated trade secret and confidentiality issues that would unnecessarily bog down the pre-trial process."). That common concern appears to rest on the misplaced assumption that the defendants will be forced to share discovery with one another. Centralization, however, will not somehow make the defendants in different Related Actions co-defendants. To the contrary, the Related Actions will "retain their separate identities." *Gelboim v. Bank of Am. Corp.*, 574 U.S. 405, 413 & n.3 (2015). If the Related Actions are centralized, in other words, the defendants will not acquire additional discovery obligations.

The defendants' concerns related to proprietary information making its way to the public docket of the transferee court would arise whether the Panel centralizes the Related Actions or not. Indeed, in *Valelly*, Judge Caproni has already granted numerous letter-motions to seal filings in order to exclude confidential information from the public record. *See, e.g.*, *Valelly*, ECF 85 & 86. A single transferee court can handle these issues using "protective orders and other protocols." *In*

*re Social Media Adolescent Addiction/Personal Injury Prods. Liab. Litig.*, 637 F. Supp. 3d 1377, 1379 (J.P.M.L. 2022).

Some of the same MDL Opponents similarly contend that centralization will not promote efficiencies because the discovery sought by the plaintiffs will be defendant-specific.  *See, e.g.*, Ameriprise Opposition, ECF 65 at 10.  For starters, that is simply incorrect.  What constitutes a reasonable rate of interest will be identical to all the banks and thus subject to common proof, either through the same expert testimony or evidence demonstrating the practices and understandings in the overall industry.  But more importantly, this argument misses the point. Even where specific documents and evidence may vary bank to bank, the **types** of documents and witness testimony sought in discovery will overlap in many ways.  And given that overlap, a single transferee judge can create a pretrial program to streamline discovery by delineating things like the period and scope of discoverable documents and testimony across all the Related Actions.  *See In re Deep Vein Thrombosis Litig.*, 323 F. Supp. 2d 1378, 1380 (J.P.M.L. 2004).  The typicality of the documents and witness testimony sought by the parties will also allow a single transferee judge to resolve common discovery issues in a wholesale fashion.

Another look at the *Valelly* proceedings shows the discovery efficiencies achievable through centralization.  There, both the plaintiff and defendant hired expert witnesses to opine on and compare the interest rates offered under the relevant cash sweep program, and both parties moved to exclude each other's expert under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).  *See Valelly*, ECF 260.  In a 33-page opinion, Judge Caproni evaluated the admissibility of the experts' opinions, including their opinions on the appropriate benchmarks to which a factfinder should compare the sweep program rates to determine their reasonableness.  *See id.*  Without centralization, different courts in different

jurisdictions will inevitably expend unnecessary resources resolving the same or similar expert-witness issues.  In a centralized proceeding, on the other hand, a single transferee court could efficiently handle common issues like this one in bulk.

Moreover, consolidation "has the salutary effect of placing all related actions before one court which can formulate a pretrial program that . . . allows pretrial proceedings with respect to any non-common issues to proceed concurrently with pretrial proceedings on common issues." *In re Lehman Bros. Holdings, Inc., Sec. & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 598 F. Supp. 2d 1362, 1364 (J.P.M.L. 2009).  Defendant-specific issues can be resolved concurrently with common issues through separate discovery and motion tracks and the certification of separate classes and/or subclasses specific to the defendants and the types of accounts held by class members.  *See id.* (the "transferee court can employ any number of pretrial techniques – such as establishing separate discovery and/or motion tracks – to efficiently manage this litigation"); *In re Janus Mut. Funds Inv. Litig.*, 310 F. Supp. 2d 1359, 1361 (J.P.M.L. 2004) (same).

A smaller set of MDL Opponents argue that centralization is inappropriate due to the progress of *Valelly*, which has reached the summary judgment stage.  *See* Campton Opposition, ECF 67 at 2; Valelly Opposition, ECF 68 at 2-3 & 11-13; Merrill Lynch Opposition, ECF 74 at 9. The progress of a single case, however, does not warrant denial of centralization.  *Cf. In re Asbestos Sch. Prods. Liab. Litig.*, 606 F. Supp. 713, 714 (J.P.M.L. 1985) (denying motion to transfer because *several* "actions [were] scheduled for trial within the next six months").  In any case, the transferee court could suggest that the Panel remand *Valelly* back to the transferor court if it found that the centralized proceedings would not benefit from ruling on summary judgment.  *See In re Merrill Lynch Auction Rate Sec. Litig.*, 2010 WL 2541227, at *2 (S.D.N.Y. June 11, 2010) ("The Court's discretion to suggest remand generally turns on the question of whether the case will benefit from

further coordinated proceedings as part of the MDL.") (cleaned up); *see also In re State Street Bank & Trust Co. Fixed Income Inv. Litig.*, 2011 WL 1046162, at *4-6 (S.D.N.Y. Mar. 22, 2011) (remanding cases to transferor court for disposition of summary judgment motions because the case would not benefit from the transferee court ruling on them).

The efficiencies of centralizing related actions involving different defendants in the same industry[5] are not just hypothetical.  Indeed, this Panel has on many occasions recognized the efficiencies to be gained from centralizing cases involving many defendants from the same industry.[6]  For example, in *In re Checking Account Overdraft Litigation* ("*Overdraft*"), the related actions alleged that different defendant financial institutions, each one operating under different contractual terms, breached their contracts by debiting purchases in order to maximize overdraft fees from their customers.  626 F. Supp. 2d 1333, 1334-35 (J.P.M.L. 2009).  Although the actions involved "some unique questions of fact from bank-to-bank," the Panel found that the actions shared "sufficient factual questions relating to industry-wide bank posting policies and procedures to warrant centralization of all actions in one MDL docket."  *Id.* at 1335.  As relevant here, the

---

[5]   Though the MDL Opponents repeatedly suggest that the MDL Motion seeks an "industry-wide" MDL, none explains how the ten groups of affiliated financial institutions named as defendants in the Related Actions (Ameriprise, Bank of America/Merrill Lynch, Charles Schwab, JPMorgan, LPL, Morgan Stanley/E*TRADE, PNC, Raymond James, UBS, and Wells Fargo) represent the entire broker-dealer industry.  The Financial Industry Regulatory Authority regulates approximately 3,500 broker-dealers.  *See On the Front Lines of Investor Protection*, FINRA.org, https://www.finra.org/rules-guidance/enforcement/customer-cooperation#:~:text=Who%20We%20Are,620%2C000%20brokers%20across%20the%20countr y (last visited Dec. 4, 2024).  Actions against the vastly smaller number of defendants here cannot possibly be considered "industry-wide."

[6]   *See In re Jan. 2021 Short Squeeze Trading Litig.*, 2021 WL 1258399, at *4 (J.P.M.L. Apr. 2, 2021) (centralizing related actions against 29 financial institutions in the online trading industry); *In re 100% Grated Parmesan Cheese Mktg. & Sales Pracs. Litig.*, 201 F. Supp. 3d 1375, 1379 (J.P.M.L. 2016) (centralizing related actions against seven defendants in the cheese manufacturing industry); *In re Hair Relaxer Mktg., Sales Pracs., & Prods. Liab. Litig.*, 655 F. Supp. 3d 1374, 1377 (J.P.M.L. 2023) (centralizing related actions against 12 defendants in the beauty and personal care industry); *In re Acetaminophen - ASD/ADHD Prods. Liab. Litig.*, 637 F. Supp. 3d at 1376 (centralizing related actions against nine defendants in the pharmaceutical retail industry).

Panel also concluded that, in light of these common questions of fact, centralization would prevent "inconsistent pretrial rulings" and "conserve the resources of the parties, their counsel and the judiciary." *Id.*

The Panel's expectation of efficiencies from centralized proceedings in *Overdraft* proved correct. For example, in a single omnibus order, the transferee court was able to efficiently dispose of motions to dismiss 15 different complaints, each of which asserted claims of "breach of contract and/or breach of an implied covenant of good faith and fair dealing" against one of nine different financial institutions. *Overdraft*, 694 F. Supp. 2d 1302, 1307-08 (S.D. Fla. 2010). And it was able to do so despite the fact that the 15 complaints collectively "assert[ed] claims under the law of twenty-one states," *see id.*, belying the opposing parties' common contention that different state-law claims make centralized adjudication of common motions impracticable. *See also, e.g.*, Order Denying Motions to Compel Arbitration, *Overdraft*, No. 09-md-2036 (S.D. Fla. May 10, 2010), ECF 447 (applying laws of four different states in denying four defendants' motions to compel arbitration under different arbitration agreements).

The efficiencies anticipated by the Panel also came to light in the transferee court's disposition of common discovery motions filed by different defendants. In one instance, two defendants moved to strike the declaration of an expert witness, who offered testimony in support of the plaintiffs' motions for class certification. Order Denying Defendants BancorpSouth Bank and PNC Bank, N.A.'s Motions to Strike the Declaration of Arthur Olsen, *Overdraft*, No. 09-md-2036 (S.D. Fla. Apr. 23, 2012), ECF 2650. In rejecting the defendants' motion, the transferee court relied on its previous rejection of the "same argument" to strike the same expert witness made by two different defendants. *Id.* at 2-3. A couple months later, the transferee court rejected yet another defendant's "substantially identical" motion, relying on its previous four denials. *Id.*;

Order Denying Capital One, N.A.'s Motion to Exclude Testimony from Plaintiffs' Expert Witness Arthur Olsen, *Overdraft*, No. 09-md-2036 (S.D. Fla. June 15, 2012), ECF 2768.

The *Overdraft* proceedings also invalidate the MDL Opponents' concerns that their desire to protect proprietary information would complicate matters.  Like here, the defendant financial institutions in *Overdraft* were competitors, and the transferee court prevented the disclosure of trade secrets and other confidential business information by entering stipulated protective orders and sealing documents.  *See, e.g.*, Stipulated Protective Order, *Overdraft*, No. 09-md-2036 (S.D. Fla. July 16, 2010), ECF 688.[7]  In fact, transferee courts have regularly entered protective orders in MDLs involving different defendants from the same industry.  *See, e.g.*, Agreed Confidentiality Order, *In re 100% Grated Parmesan Cheese Mktg. & Sales Practices Litig.*, No. 16-cv-5802 (N.D. Ill. Apr. 15, 2019), ECF 355.  Nothing would prevent a transferee court from doing the same thing here.

    **C.**    **The Related Actions' Different Benchmarks for the Reasonableness of Interest Rates Support, Rather Than Undermine, Centralization**

The MDL Opponents point to the Related Actions' different standards for the reasonableness of interest payments,[8] but these differences support rather than undermine centralization.  As discussed above, the Related Actions involve the same core issue – whether defendants' sweep interest payments are reasonable.  Reasonableness is not explicitly defined in defendants' sweep agreements, thus requiring courts adjudicating the Related Actions to determine standards for reasonableness.  This is best accomplished by a single judge from a centralized district establishing a unified standard, rather than multiple judges from different districts

---

[7]    Wells Fargo, JPMorgan, and Bank of America, all defendants in Related Actions here, were parties to this stipulated protective order.

[8]    *See, e.g.*, Ameriprise Opposition, ECF 65 at 7-8; Bank of America Opposition, ECF 74 at 5; Wells Fargo Opposition, ECF 72 at 9.

establishing inconsistent standards, as would be the case under the MDL Opponents' preferred approach.

The need for a centralized, unified standard is evident from the competing standards of reasonableness set forth in the Related Actions, which are tied to several different benchmarks. For example, some Related Actions use money market fund rates as a reasonableness benchmark, while others rely on treasury bill rates.[9]  Still others propose multiple other benchmarks, such as the federal funds rate, the overnight repo rate, and other competitors' rates.[10]  The result is a wide range of interest rates tied to the different benchmarks, from as low as 2.03% to as high as 5.73%. This patchwork approach risks inconsistency that would not only waste judicial resources and prejudice the parties, but also severely undermine public confidence in the financial system. Instead, the transferee court will be able to determine a single, objective standard of what represents a reasonable rate of interest for cash sweep programs in general under the circumstances.  Proof of this rate will largely consist of evidence common to all banks and cash sweep programs generally.

*In re 100% Grated Parmesan Cheese Litigation* is instructive.  There, the Panel centralized related actions, which commonly (but separately) alleged that nine competing corporate defendants deceived consumers by marketing products containing cellulose as "100%" parmesan cheese. 201 F. Supp. 3d at 1377.  Though the plaintiffs in the related actions brought claims under the laws of ten different states, the transferee court was able to adjudicate the defendants' motions to dismiss at once because all the laws "share[d] a common requirement: to state a claim a plaintiff

---

[9]    *Compare Frey v. Ameriprise Fin., Inc.*, No. 0:24-cv-03360-SRN-LIB (D. Minn.), *and Saunders v. Charles Schwab Corp.*, No. 2:24-cv-07638-MRA-E (C.D. Cal.), *with Canales v. JPMorgan Chase & Co.*, No. No. 1:2024-cv-08377-LGS (S.D.N.Y.) ("*Canales*").

[10]    *See, e.g., Campton v. Merrill Lynch Pierce, Fenner & Smith Inc.*, No. 1:24-cv-08629-UA (S.D.N.Y.) ("*Campton*").

must allege conduct that plausibly could deceive a reasonable consumer."  Memorandum Opinion and Order, *Parmesan Cheese*, No. 16-cv-5802 (N.D. Ill.), ECF 216 at 11.  This commonality enabled the transferee court to apply a uniform "reasonable consumer" standard to each defendant's similarly labeled "100%" grated parmesan cheese products, even though each defendant's packaging, ingredients, and manufacturing processes differed.  *See id.* at 13-17.

Like *Parmesan Cheese*, centralizing the Related Actions here would allow a transferee court to apply a uniform reasonableness benchmark to the similar cash sweep products offered by the defendants, even in light of any defendant-specific idiosyncrasies.

### D.    Centralization Under Section 1407(a) Is Superior to Multiple Venue Transfers Under Section 1404(a)

Many of the MDL Opponents also argue that Section 1404(a) transfers will accomplish the same efficiencies as Section 1407.  *See, e.g.*, UBS Opposition, ECF 64 at 5.  Yet, none of the MDL Opponents explain how Section 1404(a) "could eliminate the multidistrict character" of the Related Actions.  *See In re Gerber Probiotic Prods. Mktg. & Sales Practices Litig.*, 899 F. Supp. 2d 1378, 1379 (J.P.M.L. 2012) (explaining that the Panel "previously ha[s] denied centralization where there [wa]s a 'reasonable prospect' that the resolution of Section 1404 motions could eliminate the multidistrict character of the actions before [it]") (citing *In re Republic W. Ins. Co. Ins. Coverage Litig.*, 206 F. Supp. 2d 1364, 1365 (J.P.M.L. 2002)).  At best, Section 1404(a) might allow the Related Actions against specific defendants to be transferred to the same district for consolidation under Federal Rule of Civil Procedure 42.  But that process would still leave defendant-specific consolidated actions involving the same common questions of fact scattered across the country.

Section 1404(a) is not a "meaningful alternative" to Section 1407 in litigation involving "many actions pending in many districts."  *Multidistrict Litigation Manual* §5:49 (2024).  That is

particularly true where, like here, the prospect of additional potential tag-along actions is high. *See In re Bank of Am. Cal. Unemployment Benefits Litig.*, 544 F. Supp. 3d 1366, 1368 (J.P.M.L. 2021) (Section 1404 did not "provide a reasonable prospect for eliminating the multidistrict character of the litigation" given the "strong likelihood of additional potential tag-along actions"). All but one of the Related Actions originated in the past year, and since Brickman and Safron filed the instant MDL Motion, four additional tag-along actions have been filed.[11]   More tag-along actions will likely follow, and only Section 1407 is fit to accomplish wholesale organization and efficiencies amongst these actions as they continue to be filed. *See Parmesan Cheese*, 201 F. Supp. 3d at 1378 (finding that "a single, multi-product MDL [wa]s necessary to ensure the just and efficient conduct" of the multi-defendant litigation, particularly given the "significant overlap in the central factual issues, parties, and claims"); *In re Acetaminophen - ASD/ADHD Prods. Liab. Litig.*, 637 F. Supp. 3d at 1375-76 ("Neither informal coordination nor Section 1404 provides a practicable alternative given the number of involved actions, districts, parties, and counsel. . . . Additionally, there is a strong likelihood of more potential tag-along actions considering the tag-along activity to date.").

## II.   The Southern District of New York Is the Best Forum for Centralization of the Related Actions

In choosing an appropriate transferee forum, this Panel often considers (1) "where the largest number of cases is pending, [(2)] where discovery has occurred, [(3)] where cases have progressed furthest, [(4)] the site of the occurrence of the common facts, [(5)] where the cost and inconvenience will be minimized, and [(6)] the experience, skill, and caseloads of available judges." *Manual for Complex Litig. (Fourth)* §20.131 (2004); *see also id.* §22.33.   The Southern

---

[11]   *See DM Cohen, Inc. v. UBS Financial Services Inc.*, No. 1:24-cv-05226-SDG (N.D. Ga.) ("*DM Cohen Inc.*"), ECF 1; *Campton*, ECF 1; *McKinney*, ECF 1; *Christner*, ECF 1.

District of New York satisfies each of these factors, and thus, is the best forum to facilitate the expeditious resolution of this litigation.  Mot. at 8-14.

A. **The Southern District of New York Is the Site of the Occurrence of the Common Facts and the Most Convenient and Cost-Effective Venue**

The Southern District of New York is the best forum for this litigation because it is the site of the occurrence of the common facts.  Mot. at 9-12.  All defendants operate their cash sweep programs in New York, offer the sweep programs to customers in New York, and disseminate their cash sweep-related documents in New York.  Most of the complaints filed in the Related Actions involve cash sweep agreements governed by New York state law[12] and claims arising under New York state law.[13]  Accordingly, many plaintiffs in the Related Actions filed their complaints in the Southern District of New York or fully support the MDL Motion to transfer and consolidate the Related Actions there.[14]

---

[12]  *See* Mot. at 10 n.4 (citing 16 cases involving the New York law-governed sweep programs of Bank of America/Merrill Lynch, Morgan Stanley/E*TRADE, JPMorgan, UBS, and Wells Fargo); *see also McKinney*, ECF 1; *Christner*, ECF 1; *Campton*, ECF 1; *DM Cohen, Inc.*, ECF 1 (four additional cases involving the New York law-governed sweep programs of Morgan Stanley/E*TRADE, Wells Fargo, Bank of America/Merrill Lynch, UBS, and JPMorgan).

[13]  The following 19 Related Actions included New York state law claims:  *McKinney*, ECF 1; *Christner*, ECF 1; *Campton*, ECF 1, *DM Cohen, Inc.*, ECF 1; *Canales*, ECF 1; *Valelly*, ECF 55; *Burmin*, ECF 1; *Safron Capital Corp. v. Bank of Am. Corp.*, No. 1:24-cv-07743-MMG (S.D.N.Y.), ECF 1; *Brickman Invs. Inc. v. Wells Fargo & Co.*, No. 1:24-cv-07751-AS (S.D.N.Y.), ECF 1; *Safron Capital Corp. v. Morgan Stanley*, No. 1:24-cv-07750-VEC (S.D.N.Y.), ECF 1; *Varady v. Wells Fargo & Co.*, No. 3:24-cv-04917 (N.D. Cal.), ECF 1, 37; *Nadolny v. Wells Fargo & Co.*, No. 3:24-cv-04633 (N.D. Cal.), ECF 1; *Cobb v. Wells Fargo & Co.*, No. 3:24-cv-06696 (N.D. Cal.), ECF 1; *Davitt v. UBS Fin. Servs. Inc.*, No. 1:24-cv-06692 (S.D.N.Y.), ECF 1; *McCrary v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, No. 1:23-cv-10768-UA (S.D.N.Y.) ("*McCrary*"), ECF 1; *Bodea v. JPMorgan Chase & Co.*, No. 1:24-cv-06404 (S.D.N.Y.), ECF 1; *Bujold v. Wells Fargo & Co.*, No. 3:24-cv-04616 (N.D. Cal.), ECF 1; *Goldsmith v. UBS Fin. Servs. Inc.*, No. 1:24-cv-06354-GHW-GWG (S.D.N.Y.), ECF 1; and *Estate of Bernard J. Sherlip v. Morgan Stanley*, No. 1:24-cv-04571-VEC (S.D.N.Y.).

[14]  *See* notes 12 & 13, *supra* (referencing a total of 12 Related Actions filed in, and one Related Action transferred to, the Southern District of New York); Canales Response in Support, ECF 73 at 8-11 (four plaintiffs voicing support for the MDL Motion); DM Cohen, Inc. Response in Support, ECF 60 at 1 (additional plaintiff voicing support for the MDL Motion).

The Southern District of New York is also the best forum because it is the most convenient and cost effective for all parties, witnesses, and counsel.  Many defendants and their affiliates have headquarters and/or offices in New York;[15] all defense counsel have offices in New York;[16] and several plaintiffs' counsel have offices in or near New York.[17]  The Southern District of New York is also the most accessible and offers the best infrastructure to accommodate out-of-town parties, witnesses, and counsel, including multiple international airports, extensive public transportation, and many hotels and offices.  For these reasons, the Panel routinely transfers multi-district litigation to the Southern District of New York.[18]

---

[15]   Merrill, Lynch, Pierce, Fenner & Smith Inc. (headquarters); Morgan Stanley (headquarters); Morgan Stanley & Co. LLC (headquarters); Morgan Stanley Smith Barney LLC (headquarters); JPMorgan Chase & Co. (headquarters); JP Morgan Securities LLC (headquarters); Bank of America Corporation (offices); UBS Financial Services Inc. (offices); Wells Fargo Clearing Services, LLC, d/b/a Wells Fargo Advisors (offices); Wells Fargo Bank, N.A. (offices); Raymond James Financial Services Inc. (offices); LPL Financial Services Inc. (offices); Charles Schwab & Co., Inc. (offices); and Ameriprise Financial Services, LLC (offices)

[16]   Davis Polk & Wardwell LLP; Blank Rome LLP; Fried, Frank, Harris, Shriver & Jacobson LLP; O'Melveny & Myers LLP; White & Case LLP; Katten Muchin Rosenman LLP; Jones Day; Dorsey & Whitney LLP; Marino Tortorella & Boyle, PC; Foley & Lardner, LLP; Faegre Drinker Biddle & Reath LLP; Buchanan Ingersoll & Rooney, PC; Gibson, Dunn and Crutcher LLP; Morgan Lewis and Bockius LLP; and Wilmer Cutler Pickering Hale and Dorr LLP.

[17]   Robbins Geller Rudman & Dowd LLP; Johnson Fistel, LLP; Bernstein Litowitz Berger & Grossmann LLP; Buzin Law, P.C.; Simmons Hanly Conroy LLC; Wolf Popper LLP; Shamis & Gentille, P.A.; and Nussbaum Law Group, P.C.

[18]   *See, e.g.*, *In re London Silver Fixing, Ltd., Antitrust Litig.*, 52 F. Supp. 3d 1381, 1381 (J.P.M.L. 2014) (selecting the Southern District of New York because several defendant banks "have corporate offices in the district"); *In re Credit Default Swaps Antitrust Litig.*, 978 F. Supp. 2d 1374, 1375 (J.P.M.L. 2013) (selecting the Southern District of New York because the "district has a strong connection to this litigation, inasmuch as most defendants are based there"); *In re Mun. Derivatives Antitrust Litig.*, 560 F. Supp. 2d 1386, 1387 (J.P.M.L. 2008) (transferring to the Southern District of New York in part because "relevant documents and witnesses are likely to be found there"); *In re Invs. Funding Corp. of N.Y. Sec. Litig.*, 437 F. Supp. 1199, 1203 (J.P.M.L. 1977) (selecting the Southern District of New York because defendants were "headquartered within that district and therefore many of the relevant documents and witnesses are located in the New York vicinity"); *In re WorldCom, Inc., Sec. & "ERISA" Litig.*, 226 F. Supp. 2d 1352, 1355 (J.P.M.L. 2002) (transferring to the Southern District of New York because multiparty litigation "will benefit from centralization in a major metropolitan center that is well served by major airlines, provides ample hotel and office accommodations, and offers a well-developed support system for legal services"); *In re Merrill Lynch & Co., Inc., Rsch. Reps. Sec. Litig.*, 223 F. Supp.

While some MDL Opponents argue that litigating in other venues would be more appropriate for them individually,[19] these arguments should be rejected because the Panel "look[s] to the overall convenience of the parties and witnesses, not just those of a single plaintiff or defendant in isolation." *In re Watson Fentanyl Patch Prods. Liab. Litig.*, 883 F. Supp. 2d 1350, 1351-52 (J.P.M.L. 2012); *see also In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 669 F. Supp. 3d 1375, 1380 (J.P.M.L. 2023) (*"*transfer is appropriate if it furthers the expeditious resolution of the litigation taken as a whole, even if some parties to the action might experience inconvenience or delay"). As discussed above, the overall convenience of the parties and witnesses is best served in the Southern District of New York rather than any other district. Further, any inconvenience of parties and witnesses outside the Southern District of New York will be minimized by remote ESI discovery, depositions, and pretrial proceedings. *See In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 669 F. Supp. 3d at 1380 ("centralization is for pretrial proceedings only, and there usually is no need for parties or witnesses to travel to the transferee court for depositions or court hearings."). Finally, MDL Opponents' individual preferences for other venues throughout the country would prevent consolidation of the Related Actions, resulting in inconsistent rulings, different standards, and wasted resources. *See* Sections I.A.-C., *supra*.

**B.    The Southern District of New York Is the Venue with the Most Related Actions**

Thirteen of 35 Related Actions were filed in or transferred to the Southern District of New York, far more than in any other district.[20] Several of the Related Actions were subsequently

---

2d 1388, 1390 (J.P.M.L. 2002) (transferring to the Southern District of New York because, among other reasons, it "is conveniently located for many parties and witnesses").

[19]    *See, e.g.*, Ameriprise Opposition, ECF 65 at 10-11; Wells Fargo Opposition, ECF 72 at 2, 6; Bank of America Opposition, ECF 74 at 2, 7-9.

[20]    *See* note 14, *supra*.

consolidated.  As a result of the consolidations, over half of the Related Actions (12 of 23) are currently pending in the Southern District of New York, which is also well in excess of the number of Related Actions pending in any other district.[21]  This data strongly supports the Southern District of New York as the most appropriate forum to host this MDL.  Mot. at 8; *Manual for Complex Litig. (Fourth)* §20.131 (2004) (the Panel considers "where the largest number of cases is pending" when choosing a transferee forum).

Additionally, discovery has progressed the furthest in the Southern District of New York, where the first and second-filed Related Actions are pending.  *See* Mot. at 9; *Valelly*, ECF 1 (filed Aug. 27, 2019); *McCrary*, ECF 1 (filed Dec. 11, 2023).  This factor also weighs in favor of centralization in the Southern District of New York.  *See In re Merrill Lynch & Co., Inc., Auction Rate Sec. (ARS) Mktg. Litig.*, 626 F. Supp. 2d 1331, 1333 (J.P.M.L. 2009) (centralizing cases in the Southern District of New York before the judge handling the first-filed related action).  All subsequent other Related Actions were filed within the last year, including ten new Related Actions pending in the Southern District of New York.

Finally, as discussed in the MDL Motion, the experience and skill of the judiciary heavily favors the Southern District of New York.  Mot. at 12-14.

### III.   Alternatively, the Related Actions Should Be Consolidated in Multiple Defendant-Specific MDLs Under Section 1407

In the event that the Court denies Plaintiffs' request to transfer the Related Actions to a single MDL within the Southern District of New York, Plaintiffs respectfully request that, in the alternative, the Panel transfer Related Actions to multiple defendant-specific MDLs before a single

---

[21]   *See* Ex. A (listing the consolidated Related Actions).

judge in the Southern District of New York.  The proposed MDLs subject to this request are specified in Exhibit A attached hereto.

This alternative is consistent with prior Panel decisions and will provide similar benefits to those described above, including streamlined and non-duplicative discovery, efficient and cost-effective proceedings, and uniform rulings on critical issues such the reasonableness of sweep interest rates.  *See, e.g.*, *In re. Am. Med. Sys., Inc., Pelvic Repair Sys. Prods. Liab. Litig.*, 844 F. Supp. 2d 1359, 1360 (J.P.M.L. 2012) (centralizing multiple defendant-specific MDLs in a single district because such centralization "will eliminate duplicative discovery; prevent inconsistent pretrial rulings; and conserve the resources of the parties, their counsel and the judiciary").

## CONCLUSION

For the foregoing reasons, and the reasons set forth in the MDL Motion, Plaintiffs respectfully request that, pursuant to Section 1407(a), the Panel order the transfer and centralization of the Related Actions and any future tag-along actions to the Southern District of New York for consolidated or coordinated pretrial proceedings.

DATED:  December 4, 2024

ROBBINS GELLER RUDMAN & DOWD LLP
STEPHEN R. ASTLEY
ANDREW T. REES
RENE A. GONZALEZ
SCOTT I. DION


*s/ Stephen R. Astley*
STEPHEN R. ASTLEY

225 NE Mizner Boulevard, Suite 720
Boca Raton, FL  33432
Telephone:  561/750-3000
sastley@rgrdlaw.com
arees@rgrdlaw.com
rgonzalez@rgrdlaw.com
sdion@rgrdlaw.com

ABRAHAM FRUCHTER & TWERSKY LLP
JACK G. FRUCHTER
450 7th Ave 38th Floor
New York, NY  10123
Telephone:  212/279-5050
jfruchter@aftlaw.com

*Attorneys for Plaintiffs Safron Capital Corp. and*
*Brickman Investments Inc.*